**E-FILED on** 10/27/09

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| MANDANA D. FARHANG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>INDIAN INSTITUTE OF TECHNOLOGY, KHARAGPUR; TECHNOLOGY ENTREPRENEURSHIP AND TRAINING SOCIETY; PARTHA P. CHAKRABARTI; PALLAB DASGUPTA; GURASHISH S. BRAR; RAKESH GUPTA; PRAVANJAN CHOUDHURY; SUBRAT PANDA; ANIMESH NASKAR, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. C-08-02658 RMW<br><br>ORDER RE PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT IIT'S COUNSEL<br><br>[Re Docket No. 29] |

Plaintiff Mandana Farhang moves to disqualify counsel for defendant Indian Institute of Technology's ("IIT"), Orrick Herrington & Sutcliffe LLP ("Orrick"), because Orrick, she asserts, previously represented her and obtained confidential information material to the instant case. The court has reviewed the papers filed and heard the arguments of counsel. Since a critical factual issue was not adequately answered by the papers, the court finds that an evidentiary hearing is necessary. Therefore, the court defers ruling on disqualification pending the hearing.

# I. BACKGROUND

## A. Current Litigation

In the current lawsuit, commenced on May 27, 2008, Farhang accuses IIT and others of taking her intellectual property (software code to be developed into a commercial product integrating corporate applications into mobile devices for the Indian Railways). IIT is represented by Orrick. Plaintiff alleges that she initiated discussion with IIT in May of 2003 concerning a joint business venture and they then unsuccessfully negotiated over a three year period during which time defendants developed the product. Plaintiff further claims that defendants then stopped communicating with her and terminated their relationship. She now sues on theories of breach of contract and fraud, among others.

## B. Orrick's Prior Representation of Plaintiff

In June of 2000 Farhang retained Orrick "in connection with . . . [her] negotiations concerning . . . [her] employment agreement" with a company named Ikonodyne. Orrick contends that its representation was limited and dealt only with the drafting and negotiation of an employment agreement for plaintiff with Ikonodyne. The parties do not appear to dispute that the employment agreement to be negotiated involved a business relationship that would deal with the rights of Farhang and Ikonodyne with respect to intellectual property originally invented by Brian Kenville of Ikonodyne and one of his former colleagues and in collaboration with plaintiff. Farhang, however, alleges that Orrick's representation involved more than just the unsuccessful negotiation of an employment agreement with Ikonodyne. "The negotiations regarding my employment agreement soon turned into negotiations regarding the separation of my and Mr. Kenville's ownership interests in the Invention, and the formation of a joint venture called NEWCO." Farhang Decl. dtd. June 12, 2009 ¶ 4. She also claims that the current litigation involves "[t]he confidential plans I shared with Orrick beginning in June 2000 about partnering with the Indian Institute and its affiliates." *Id.* at ¶ 2(d). Although Farhang does not claim that Orrick ever dealt with the IIT on her behalf, she does claim she first had discussions with IIT in March 2000 when she was working for Ikonodyne.

Orrick's representation of plaintiff ended in January 2001. Farhang initiated litigation against Ikonodyne's founders, in which Orrick was not involved, in 2001 which was settled in May 2003.

Farhang allegedly acquired rights to the invention as part of her settlement with Kenville which enabled her to "immediately embark upon my plans to develop and market the Invention in partnership with Indian Institute of technology — which I did." Farhang Decl. dtd. May 22, 2009 ¶ 14. The relationship lasted about three years and the current lawsuit arises out of disputes arising from that relationship.

Orrick's billing records for the period of time during which it represented Farhang reflect that she was billed for a total of 19.5 hours of time: James Telfer - 19 hours; Greg Schick - 0.25 hours and Richard Rahm - 0.25 hours. Telfer and Schick were in Orrick's Compensation and Benefits Group while Rahm was in the Employment Law Group. None of the three was still with Orrick at the time the instant lawsuit was filed. Telfer left January 14, 2008; Schick left June 8, 2007 and Rahm departed September 23, 2003.

Farhang claims that Orrick spent more than 20 hours in representing her and that she spoke with a corporate attorney at Orrick in addition to the attorneys who worked under Telfer's supervision. She also says that Telfer told her that he had shared her confidential information with Jonathan Ocker, who was then and still is a partner at Orrick.

**C. Farhang's Motion to Disqualify**

Farhang moves to disqualify Orrick on the basis that its prior representation of her precludes it from representing IIT in the current litigation pending before the court.

## II. ANALYSIS

**A. Issues Raised by Motion for Disqualification of Counsel**

A motion to disqualify counsel implicates two competing issues: the current client's right to the attorney of its choice versus the need to maintain ethical standards of professional responsibility. *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 705 (2003). Counsel has an unquestionable duty to its former client to ensure the permanent confidentiality of matters disclosed to counsel in the course of the prior representation. *Derivi Construction & Architecture, Inc. v. Wong*, 118 Cal. App. 4th 1268, 1273 (2004). On the other hand, a court must be mindful that where there is not a legitimate risk of the use of confidential material, a litigant may seek disqualification of her former counsel in order to gain a tactical advantage. *See Optyl v. Eyewear Fashion International Corp.*, 760

F.2d 1045, 1050 (9th Cir. 1985); *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 851-52 (2006).

Conduct of counsel is governed by Rule 3-310(E) of the Rules of Professional Conduct of the State Bar of California. *See Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383, 1387 (N.D. Cal. 1992). Rule 3-310(E) provides that an attorney "shall not, without the informed written consent of the client or former client accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information *material* to the employment." (Emphasis added).

In determining whether a substantial relationship exists between successive representations, the court must first determine if the attorney had a direct and personal relationship with the former client. *Jessen*, 111 Cal. App. 4th at 710-711. If the answer is yes, then the question is whether the subjects of the prior and current representations are substantially related, regardless of the attorney's actual knowledge. *Id.*; *Flatt*, 9 Cal. 4th 275, 283 (1994). Attorney Telfer, the Orrick attorney who "managed the representation of Ms. Farhang on behalf of Orrick," clearly had a direct and personal relationship with Farhang. Telfer Decl. dtd. May 12, 2009 ¶ 4. They communicated directly with one another concerning the negotiation of an employment agreement with Ikonodyne, and, according to Attorney Telfer and Farhang, also discussed "the formation of a new entity "NEWCO" that would own certain rights to intellectual property regarding an invention ('the Invention'); and . . . [Farhang's] ownership of NEWCO and rights associated with the Invention." *Id.* at ¶¶3-4; *see* Farhang Decl. dtd. May 22, 2009.

### B. Substantial Relationship

The court of appeal in *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* identified three factors the court should consider in applying the substantial relationship test: (1) similarities between the two factual situations, (2) the legal questions posed, and (3) the nature and extent of the attorney's involvement with the cases. 229 Cal. App. 3d 1445, 1456 (1991).

In determining if two cases are substantially related, *Ahmanson* clarified,

> the courts focus less on the meaning of the words substantial and relationship and look instead at the practical consequences of the attorney's representation of the former client. The courts ask whether confidential information material to the

> current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation.

*Id.* at 1454; *See also Trone v. Smith*, 621 F.2d 994, 1000-01 (9th Cir. 1980). *Jessen* elaborated on the *Ahmanson* test, and concluded that

> successive representations will be "substantially related" when the evidence . . . supports a rational conclusion that information material to the evaluation, prosecution, settlement, or accomplishment of the former representation given its factual issues is also material to the evaluation, prosecution, settlement, or accomplishment of the current representation given its factual and legal issues.

*Jessen*, 111 Cal. App. 4th at 713.

The facts and issues involved in Orrick's prior representation do appear to overlap with facts and issues raised in Farhang's current litigation against IIT. Farhang's rights to what she calls "the IP" were at issue during the prior representation and now are at issue in Farhang's claims against IIT. In its prior representation Orrick tried to negotiate an employment agreement for Farhang and later advised her regarding securing her ownership in those IP rights. It would appear that at a minimum that Orrick's representation would have involved confidential discussion concerning Farhang's ownership and contribution toward the development of the IP and the initial and potential value of the IP. The nature of the IP, Farhang's intent to develop it and its value would all seem material to the evaluation, prosecution, and settlement of Farhang's current litigation against IIT. Farhang had at least mentioned her interest in partnering with IIT to Telfer.

Orrick argues that the extent of Telfer's relationship was limited, consisting of 19 hours of billed work. While 19 hours is not a large amount of time, it is certainly enough time for confidential information to be passed regarding, for example, the value and nature of the IP. Furthermore, it is evident from the record that Telfer and Farhang's attorney-client relationship encompassed more than what the actual billable hours suggest. The time record reflects entries between June 27, 2000 and October 27, 2000, a four month period. Kaufmann Decl. ¶ 3. The client file, however shows activity through January 8, 2001, an additional two and a half months beyond the billed period.

Orrick also contends that the legal questions posed in the prior representation are unrelated to the current litigation. Orrick argues that the prior representation only dealt with the creation and negotiation of a standard employment agreement between Farhang and Ikonodyne, whereas the

ORDER RE PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT IIT'S COUNSEL—No. C-08-02658 RMW
5

current representation deals with improper conduct alleged on the part of IIT and the other defendants. Yet, the prior representation actually dealt with the creation of a new corporate entity that would own certain rights to the IP, and Farhang's ownership of the corporation and rights associated with the IP, thus creating a contractual basis for Farhang's control of the IP.

Orrick also argues that the present litigation involves a different factual situation, that the current acts of misconduct alleged in the complaint are not related to an employment agreement drafted three years earlier in relation to a different company, Ikonodyne. Yet, Farhang's IP rights are central to both matters. Farhang's rights to the IP were established upon her departure from Ikonodyne and then she, apparently in a new company, then partnered with defendants in an endeavor to market and develop the same IP.

The court finds that a substantial relationship exists between the current litigation and Orrick's prior representation of Farhang.

### C. Imputed Knowledge

Rule 3-310(E) of the State Bar Rules of Professional Conduct prohibits the use of confidential information in adverse representation. It states that a member of the bar "shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." Furthermore, "it has long been recognized that knowledge obtained by one member of a firm of lawyers is imputed to all the other members." *Rosenfeld Construction Co. v. Superior Court*, 235 Cal. App. 3d 566, 573 (1991). The imputed knowledge doctrine has been extended to any employee (not just attorneys) at the law firm who assists attorneys. *In re Complex Asbestos Litig.*, 232 Cal. App.3d 572, 596 (1991).

While Telfer and possibly Schick and Rahm obtained confidential information material to the current law suit, the question remains whether, after their departures, their knowledge continues to be imputed to all the attorneys at Orrick. Rule 3-310 is the relevant law in California. However, it does not specifically address the instance where the "tainted" attorneys (those attorneys who originally worked on the case and received confidential information) have departed

the firm. Recent California cases have held that, in these situations, the courts may look to the ABA Model Rules of Professional Conduct. *Goldberg v. Warner/Chappell Music, Inc.*, 125 Cal. App. 4th 752, 765 (2005); *Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324, 1337 (2001); *Dieter v. Regents of the Univ. of Cal.*, 963 F. Supp. 908, 912 (E.D. Cal. 1997). ABA Model Rule 1.10(b) provides:

> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the firm, unless: (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and (2) any lawyer remaining in the firm has [protected] information . . . that is material to the matter.

Therefore, although the prior representation appears substantially related to Farhang's current lawsuit against IIT, Orrick is not automatically disqualified from representing IIT, if the lawyers who did the work for Farhang are no longer with the firm. The critical question is whether the conflicted attorneys, prior to leaving, shared Farhang's confidential information with other attorneys in the firm or whether other attorneys had any dealings with Farhang.

Recent decisions in California have used the Model Rules in precisely this context, when "tainted" attorneys have departed a firm. *Goldberg* held that where the evidence establishes that noone other than the departed attorney had any dealings with the client or obtained confidential information then the attorney's former firm is not vicariously disqualified from representing an adverse client. *Goldberg*, 125 Cal. App. 4th at 765-66. Goldberg brought suit against her former employer for wrongful termination. Goldberg moved to disqualify her employer's counsel, Mitchell Silberberg & Knupp LLP ("MS & K"), because six years earlier a former MS & K partner, Salomon (who left MS & K three years prior to the underlying lawsuit), had consulted with Goldberg regarding the written employment contract.

> If an attorney worked on a matter "substantially related" to the matter in which he or she seeks to represent a party adverse to a former client, the presumption is conclusive that the *attorney* is possessed of confidential information that would impact the present matter. Where tainted attorneys and nontainted attorneys are working together at the same firm, there is not so much a conclusive presumption that confidential information has passed as a pragmatic recognition that the confidential information will work its way to the nontainted attorneys at some point. When, however, the relationship between the tainted attorneys and nontainted attorneys is in the past, there is no need to "rely on the fiction of imputed knowledge to safeguard client confidentiality" and opportunity exists for a

"dispassionate assessment" of whether confidential information was actually exchanged."

*Id.* at 765 (citing *Adams*, 86 Cal. App. 4th at 1335).

If Telfer, Schick and Rahm were the only attorneys at Orrick who were exposed to Farhang's confidential information, *Adams* and *Goldberg*, which applied the ABA Model Rules, would govern and would require the court to make a dispassionate assessment of whether confidential information was actually exchanged. The presumption of imputed knowledge is rebuttable when "the firm can prove no current member or associate is actually possessed of confidential information concerning the client." *Goldberg*, 125 Cal. App. 4th at 755.[1]

Orrick argues that it has not been established that there are any attorneys present at Orrick who actually have protected information from the original representation of Farhang. However, it is Orrick's burden to rebut the presumption of imputed knowledge by proving that no current attorney has confidential information. *Id*. Farhang cites to Telfer's declaration that "[i]n representing Ms. Farhang, I shared her client confidences with others within the firm." Telfer Decl. dtd. May 12, 2009 ¶ 6. This vague reference does not suggest that current Orrick attorneys were the ones with whom Telfer shared Farhang's confidences. The most logical inference is that he is referring to Shick and Rahm, both of whom left Orrick before Farhang instituted her litigation against IIT.

In her reply, Farhang provides a second declaration in which she states that Telfer had told her that he had shared her confidential information with Jonathan Ocker, who is a current partner at Orrick. Farhang Decl. dtd. June 12, 2009 ¶ 3(f). She also declares that "[m]y confidential communications with Orrick involved discussions with an attorney in Orrick's Corporate Practice Group." *Id.* at ¶ 3(a). She, however, does not provide any information as to the identity of that attorney or whether that attorney is still employed at Orrick. These allegations are vague and

---

[1] Farhang's contention that Craig Kaufman, the Orrick attorney who is responding to the present motion, has confidential information in his possession is not relevant. Pl.'s Mot. to Disqualify Counsel 18:2-4. Kaufman did not acquire the confidential information during the course of the initial representation of Farhang. He acquired it from the client file in order to respond to Farhang's motion, and also to ethically shield the current Orrick team from being exposed to the information. This is a legitimate practice, and is necessary in order for Orrick to respond to Farhang's motion.

ORDER RE PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT IIT'S COUNSEL—No. C-08-02658 RMW
8

since they were raised in Farhang's reply, Orrick has not had a fair opportunity to address them.

The court is concerned about the impact the resolution of this motion will have. On the one hand, the maintenance of the fiduciary relationship between Orrick and Farhang is of paramount importance. On the other hand, the court is concerned with the unfairness that may result if IIT is deprived of the counsel of its choice. The court finds that an evidentiary hearing is necessary to make a dispassionate assessment of whether confidential information was actually exchanged between Farhang and any attorney still working at Orrick. Orrick bears the burden to show that no current Orrick attorney was privy to confidential information provided by Farhang.

### III. ORDER

There appears to be a factual gap as to whether any attorney remaining at Orrick has protected information from the previous representation of Farhang that is material to the current matter. The parties shall meet and confer and then contact the courtroom deputy (408/535-5375) to set an evidentiary hearing on this issue.

DATED: 10/27/09

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

ORDER RE PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT IIT'S COUNSEL—No. C-08-02658 RMW
9

Notice of this document has been sent to:

**Counsel for Plaintiff:**

Mandana D Farhang
Post Office Box 274
Tiburon, CA 94920

**Counsel for Defendant IIT:**

Craig R. Kaufman          ckaufman@orrick.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 10/27/09                    JAS
                                       **Chambers of Judge Whyte**