**E-FILED on** 1/13/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MANDANA D. FARHANG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>INDIAN INSTITUTE OF TECHNOLOGY, KHARAGPUR; TECHNOLOGY ENTREPRENEURSHIP AND TRAINING SOCIETY; PARTHA P. CHAKRABARTI; PALLAB DASGUPTA; GURASHISH S. BRAR; RAKESH GUPTA; PRAVANJAN CHOUDHURY; SUBRAT PANDA; ANIMESH NASKAR, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. C-08-02658 RMW<br><br>ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT<br><br>**[Re Docket No. 29]** |

Plaintiff Mandana Farhang moves to disqualify counsel for defendant Indian Institute of Technology, Kharagpur ("IIT"), Orrick Herrington & Sutcliffe LLP ("Orrick"). For the reasons set forth below, the court denies the motion.

**I. ANALYSIS**

Ms. Farhang seeks disqualification of Orrick because Orrick previously represented her and allegedly obtained confidential information material to the instant case.[1]

---

[1] The factual background to the current litigation and Orrick's prior representation of plaintiff is described in the court's October 27, 2009 order.

ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT —No. C-08-02658 RMW
CCL

## A. Legal Standard

Rule 3-310(E) of the State Bar Rules of Professional Conduct states that a member of the bar "shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." Furthermore, "it has long been recognized that knowledge obtained by one member of a firm of lawyers is imputed to all the other members." *Rosenfeld Construction Co. v. Superior Court*, 235 Cal. App. 3d 566, 573 (1991). Because Rule 3-310(E) does not specifically address the instance where the "tainted" attorneys (those attorneys who originally worked on the case and received confidential information) have departed the firm, California courts have looked to the ABA Model Rules of Professional Conduct when dealing with this circumstance. *Goldberg v. Warner/Chappell Music, Inc.*, 125 Cal. App. 4th 752, 765 (2005); *Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324, 1337 (2001); *Dieter v. Regents of the Univ. of Cal.*, 963 F. Supp. 908, 912 (E.D. Cal. 1997). ABA Model Rule 1.10(b) provides:

> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the firm, unless: (1) the matter is the same or substantially related to that which the formerly associated lawyer represented the client; and (2) any lawyer remaining in the firm has [protected] information . . . that is material to the matter.

Consequently, when the "tainted" attorney has departed the firm, the presumption of imputed knowledge is rebutted when "the evidence establishes that no one other than the departed attorney had any dealings with the client or obtained confidential information." *Goldberg*, 125 Cal. App. 4th at 755. The firm seeking to rebut the presumption of imputed knowledge bears the burden of showing that no attorney still at the firm has material confidential information. *Id.*

## B. The Court's Prior Findings

After reviewing the papers and hearing the arguments of counsel, the court issued an initial order on this disqualification motion on October 27, 2009. As set forth in its October 27, 2009 order, the court found that the current litigation is substantially related to Orrick's prior representation of Ms. Farhang. However, none of the three attorneys who billed time to Ms. Farhang's matter are still employed at Orrick. Because there was a factual gap as to whether any

1 attorney remaining at Orrick has protected information from the previous representation of Ms.
2 Farhang that is material to the current litigation, the court found that an evidentiary hearing on this
3 issue was necessary.

### C. Findings Pursuant to the Evidentiary Hearing

On January 12, 2010, the court held an evidentiary hearing to enable a dispassionate assessment of whether material confidential information was actually exchanged, directly or indirectly, between Ms. Farhang and any attorney still working at Orrick. As discussed above, Orrick has the burden of establishing that no current Orrick attorney has confidential information material to the current litigation. *Goldberg*, 125 Cal. App. 4th at 755. After considering the testimony of witnesses, submitted declarations and exhibits, and the arguments of counsel, the court finds that Orrick has met its burden.

In her second declaration submitted to the court in support of her motion to disqualify counsel, Ms. Farhang alleged that: (1) she had discussed confidential information with an attorney in Orrick's Corporate Practice Group, and (2) Mr. Telfer, an attorney who worked on her case but is no longer employed at Orrick, told her that he had shared her confidential information with other members of the firm, including Jonathan Ocker, a current partner at Orrick and head of its Compensation and Benefits Practice Group. Second Decl. of Mandana D. Farhang in support of the Mot. to Disqualify Counsel ¶ 3. In addition, at the evidentiary hearing, counsel for Ms. Farhang argued, for the first time, that confidential information had been shared with attorneys in Orrick's Intellectual Property ("IP") Practice Group.

#### 1. Ms. Farhang's Alleged Discussion with a Corporate Attorney

Ms. Farhang testified that she had spoken directly with a corporate attorney at Orrick regarding the formation of a corporate entity called NEWCO; however, she was unable to recall the name of the corporate attorney. In response to Ms. Farhang's concerns regarding her alleged discussion of confidential information with a corporate attorney, an Orrick attorney testified that he had personally interviewed every corporate attorney firm-wide who had been employed by Orrick at the time Orrick represented Ms. Farhang and was still an employee at Orrick. None of these employees recalled having ever heard of Ms. Farhang or having received any confidential

information relating to Orrick's representation of Ms. Farhang. In addition, Mr. Kaufman, the Orrick attorney tasked with investigating the potential conflict issues raised in this case, testified that he had performed a broad search for Ms. Farhang's name in Orrick's timekeeping database and had found no mention of her name in the time entries of any attorney still at Orrick. Based on the testimony heard at the evidentiary hearing and the declarations submitted to the court, the court finds that Orrick has established that no corporate attorney still at Orrick has confidential information material to the current litigation.

### 2. Mr. Telfer's Alleged Consultation with Mr. Ocker

Ms. Farhang testified that she believed that Mr. Telfer had consulted with Mr. Ocker during Orrick's previous representation of her. As evidenced by two emails addressed to Mr. Telfer that were submitted to the court under seal as Exhibits 4 and 5, she had expressed interest in knowing what Mr. Ocker thought about a couple of issues relating to her agreement with Ikonodyne. Ms. Farhang did not present any written evidence, such as a reply email from Mr. Telfer, showing that Mr. Telfer had in fact consulted with Mr. Ocker regarding her matter. She did testify that her oral conversations with Mr. Telfer had led her to believe that he had consulted with Mr. Ocker regarding these issues. She conceded that she was not present during any such consultation; therefore, she did not have firsthand knowledge as to whether Mr. Telfer actually consulted with Mr. Ocker.

In a supplemental declaration submitted to the court, Mr. Telfer stated, "In connection with Mandana Farhang's representation, I may have consulted with another partner, Jonathan Ocker at Orrick but due to the amount of time that has passed, I can not recollect that discussion." Supplemental Decl. of James Telfer in support of Mot. to Disqualify Counsel ¶ 6. The court finds this statement provides little help in determining whether Mr. Telfer actually communicated material confidential information to Mr. Ocker since apparently Mr. Telfer cannot recall whether he did or did not consult with Mr. Ocker.

Mr. Ocker testified that he and Mr. Telfer had never discussed Ms. Farhang's case and that he had never been exposed to any information relating to Orrick's previous representation of Ms. Farhang. He further testified that although he was the head of the practice group to which Mr. Telfer had belonged, as a matter of practice, he did not routinely supervise and consult on matters on

which Mr. Telfer worked. In light of Ms. Farhang's lack of firsthand knowledge regarding whether Mr. Telfer had actually consulted with Mr. Ocker, and Mr. Telfer's inability to remember whether he had consulted with Mr. Ocker or not, the court finds that Mr. Ocker's testimony is sufficient to establish that he did not receive any confidential information relating to Orrick's previous representation of Ms. Farhang.

### 3. Mr. Telfer's Alleged Consultation with IP Attorneys

At the evidentiary hearing, counsel for Ms. Farhang argued, for the first time, that confidential information had been shared with IP attorneys at Orrick. Ms. Farhang testified that she had asked Mr. Telfer to consult with Orrick's IP attorneys on IP-related issues. Her testimony regarding this request is corroborated to some extent by an email dated October 22, 2000 that was submitted to the court under seal as Exhibit 6. That email expresses Ms. Farhang's interest in having Orrick's "Intellectual Property guys" look at the portion of her employment agreement pertaining to rights to technology. However, Ms. Farhang did not present any written evidence, such as a reply email from Mr. Telfer or written advice from an IP attorney, showing that Mr. Telfer had in fact consulted with any IP attorneys regarding her matter. She did testify that her oral conversations with Mr. Telfer had led her to believe that he had consulted with IP attorneys regarding her concerns. She conceded that she was not present during any such consultation; therefore, she did not have firsthand knowledge as to whether Mr. Telfer actually consulted with any IP attorneys on her behalf. She was also unable to identify by name any IP attorneys with whom Mr. Telfer may have consulted on her matter. Further, her email expressing an interest in having IP attorneys look at the technology portion of her employment agreement was sent toward the end of her relationship with Orrick, and she acknowledged that the counsel who thereafter negotiated a settlement with Ikonodyne did not look at her IP rights because they turned out not to be an issue.

Prior to the evidentiary hearing, Ms. Farhang submitted two separate declarations to the court in support of her motion to disqualify counsel. Though she specifically alleged contact with a corporate attorney and the sharing of information with Mr. Ocker, neither of these declarations mention the possibility that her confidential information may have been shared with Orrick's IP attorneys. Likewise, neither Mr. Telfer's initial declaration nor his supplemental declaration in

support of Ms. Farhang's motion to disqualify counsel mention any consultation with IP attorneys or the possibility that confidential information was shared with Orrick's IP attorneys.

As mentioned above, Mr. Kaufman testified that he had performed a broad search for Ms. Farhang's name in Orrick's timekeeping database and had found no mention of her name in the time entries of any attorney still at Orrick – including IP attorneys. Based on the testimony heard at the evidentiary hearing and the declarations submitted to the court, the court finds that Orrick has established that no attorney still at Orrick, IP or otherwise, has confidential information material to the current litigation.[2] Having rebutted the presumption of imputed knowledge, Orrick is not barred from representing IIT in the current litigation.

## II. ORDER

For the foregoing reasons, the court denies the motion to disqualify counsel for defendant IIT. The parties are to confer regarding a hearing date for the pending motion to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and pursuant to the doctrine of forum non conveniens and are to contact the courtroom deputy, Jackie Garcia, (408) 535-7375, to set a hearing date.

DATED: 1/13/10

RONALD M. WHYTE
United States District Judge

---

[2] Ms. Farhang expressed concern that anyone at Orrick could have accessed her closed file at Orrick. Although this is theoretically possible, there is no evidence anyone did, except for Mr. Kaufman for the purpose of investigating Ms. Farhang's assertion of a conflict. Furthermore, having reviewed the client file submitted by Orrick, which contains all the documents that Orrick still has from its prior representation of Ms. Farhang, the court finds that it does not, by itself, contain any confidential information that is material to the current litigation.

**Notice of this document has been electronically sent to:**
**Counsel for Plaintiff:**
Micah R. Jacobs        mjacobs@mbvlaw.com

**Counsel for Defendant:**
I. Neel Chatterjee     nchatterjee@orrick.com
Craig R. Kaufman       ckaufman@orrick.com
Nitin Gambhir          ngambhir@orrick.com
Theresa Ann Sutton     tsutton@orrick.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 1/13/10                         CCL
                                   **Chambers of Judge Whyte**