IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MANDANA D. FARHANG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>INDIAN INSTITUTE OF TECHNOLOGY, KHARAGPUR; TECHNOLOGY ENTREPRENEURSHIP AND TRAINING SOCIETY; PARTHA P. CHAKRABARTI; PALLAB DASGUPTA; GURASHISH S. BRAR; RAKESH GUPTA; PRAVANJAN CHOUDHURY; SUBRAT PANDA; ANIMESH NASKAR,<br><br>Defendants. | No. C-08-02658 RMW<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION<br><br>**[Re Docket No. 60]** |

Plaintiff Mandana D. Farhang ("Farhang") brings this action for breach of contract, breach of fiduciary duty, fraud, and misappropriation of trade secrets arising out of a non-disclosure agreement between defendant Indian Institute of Technology, Kharagpur ("IIT") and M.A. Mobile, Ltd. ("M.A. Mobile"), an entity of which Farhang is the sole owner.[1] IIT now moves to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and under the doctrine of forum non

---

[1] It is unclear why M.A. Mobile is not a party plaintiff.

**United States District Court**
For the Northern District of California

conveniens. For the reasons stated below, the court denies IIT's motion to dismiss for lack of subject matter jurisdiction and defers ruling on the motion to dismiss for lack of personal jurisdiction and under the doctrine of forum non conveniens pending an amended complaint.

## I. BACKGROUND

IIT is an Indian educational and research institution incorporated under the Indian "Institutes of Technology Act, 1961" with its principal place of business in Kharagpur, West Bengal, India. First Am. Compl. ("FAC") ¶ 14. IIT is funded and run by, and is an arm of, the Indian government. *Id.* On approximately August 11, 2003, IIT signed a Mutual Nondisclosure Agreement ("NDA") with M.A. Mobile. FAC Ex. A (hereinafter "NDA"). The NDA includes a choice-of-law clause providing that the agreement would be governed by United States and California law. NDA ¶ 10. It also states, "Each of the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state courts located in Santa Clara County, California, as applicable, for any matter arising out of or relating to this Agreement." *Id.* The NDA provides that information exchanged under the agreement would be kept in confidence and disclosed only to persons who have agreed to be bound by the terms of the NDA. NDA ¶ 1. The NDA further provides that parties to it shall not make, use, or sell any product or other item derived from the confidential information of the other party. *Id.* at ¶ 6. The complaint alleges that IIT breached this agreement by disclosing confidential information to persons or entities who had not agreed to be bound by its terms, and by "making, having made, using, and/or selling intellectual property" which was derived from material protected by the NDA. FAC ¶ 31.

The complaint alleges that in or around February of 2004, M.A. Mobile and Farhang entered into a joint venture agreement with IIT to develop and market technology disclosed in a patent application entitled "Dynamic Rendering Of Content That Includes Query Expressions" ("the Technology"). FAC ¶¶ 9(a), 12. The allegedly breached non-disclosure agreement was between only M.A. Mobile and IIT, while the joint venture agreement included Farhang as an individual party. *Id.* at ¶ 12. The complaint does not include much detail about the terms of the joint venture agreement, but it does state that the parties agreed that they would jointly develop the Technology, then own and market it through a specially formed entity. *Id.* at ¶ 37. In May of 2006 (and possibly

prior to that date), the complaint states, the defendants "made a decision to seek to keep the Technology and its enhancements for their own account, to prevent M.A. Mobile [and Farhang] from participating in the marketing of the Technology and its enhancements, and to prevent the Technology and its enhancements from being transferred to the new entity that M.A. Mobile [and Farhang] had created pursuant to the terms of the joint venture agreement . . . ." *Id.* at ¶ 39. The complaint states that defendants then "took steps to implement that decision." *Id.* Those steps included false representations to M.A. Mobile and Farhang that the new entity (called "Cool e-mobile") would be formed as well as years of allegedly feigned progress and negotiations toward the goal of creating the joint venture. *Id.* at ¶¶ 57-58.

Farhang filed her original complaint in this court on May 27, 2008 and her amended complaint on July 9, 2009. IIT now moves to dismiss the FAC for lack of subject matter jurisdiction, lack of personal jurisdiction, and under the doctrine of forum non conveniens.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

The parties agree that IIT qualifies as a foreign state under the Foreign Sovereign Immunities Act ("FSIA"). FAC ¶ 1(a). Under the FSIA, a foreign state is immune from jurisdiction in the United States unless a statutory exception applies. 28 U.S.C. § 1604. A foreign state is not immune if it "has waived its immunity, either explicitly or by implication." 28 U.S.C. § 1605(a)(1). In addition, under the commercial activity exception set forth in 28 U.S.C. § 1605(a)(2), a foreign state is not immune from suit in any case:

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Farhang asserts that IIT is not immune from suit under both the waiver and the commercial activity exception.

#### 1. Waiver of Sovereign Immunity

Section 1605 of the FSIA provides that a foreign state is not immune in any case "in which the foreign state has waived its immunity either explicitly by implication, notwithstanding any

withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. § 1605(a)(1). The waiver exception is narrowly construed. *Joseph v. Office of the Consulate General of Nigeria*, 830 F.2d 1018, 1022 (9th Cir. 1987). Implicit waivers are ordinarily found only where: "(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity." *Id.* (quoting *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir. 1985)). These three circumstances in which a foreign state implicitly waives immunity come from the FSIA's legislative history. *Frolova*, 761 F.2d 370, 377 (7th Cir. 1985). "Since the FSIA became law, courts have been reluctant to stray beyond these examples when considering claims that a nation has implicitly waived its defense of sovereign immunity." *Id.*

Farhang argues that IIT has waived sovereign immunity under the second of these possible implicit waivers. "[I]t is clear that a sovereign party has waived immunity where a contract *specifically* states that the laws of a jurisdiction within the United States are to govern the transaction." *Joseph*, 830 F.2d at 1022. Moreover, the Ninth Circuit has held that an explicit choice-of-law provision is not required for there to be a waiver of immunity. *Id.* at 1023.

> Waiver by contract is premised on an agreement by the parties that the United States courts may become involved in disputes arising pursuant to the contract. Where an agreement contemplates adjudication of a dispute by the United States courts, the waiver exception should be applied, regardless of whether the governing law is explicitly identified.

*Id.* (citations omitted). In *Joseph*, the Ninth Circuit examined language in a lease agreement providing that, if an action arising out of or concerning the lease were commenced, the prevailing party shall be entitled to recover attorney's fees. *Id.* at 1022. Based on this provision, the Ninth Circuit found that the lease contemplated participation of the United States courts in settling disputes between the parties, and therefore, the defendant had implicitly waived sovereign immunity. *Id.* at 1023.

The NDA at issue in this case states:

> This agreement shall be governed in all respects by the laws of the United States and by the laws of the State of California without application of the principles of conflicts of law. Each of the parties irrevocably consents to the exclusive personal jurisdiction

of the federal and state courts located in Santa Clara County, California, as
applicable, for any matter arising out of or relating to this Agreement. . . .

NDA ¶ 10. The choice-of-law provision clearly constitutes an implicit waiver of IIT's sovereign immunity. The jurisdictional-consent clause also constitutes an implicit waiver of sovereign immunity because it illustrates that the parties contemplated adjudication of a dispute by the United States courts. *Joseph*, 830 F.2d at 1023. Accordingly, IIT has implicitly waived sovereign immunity with respect to any claim "arising out of or relating to" the NDA. NDA ¶ 10.

Farhang asserts five claims in this suit: (1) breach of the NDA, (2) breach of the joint venture agreement, (3) breach of fiduciary duty arising out of the joint venture agreement, (4) fraud in the interactions between M.A. Mobile and IIT, and (5) misappropriation of trade secrets included in the Technology at issue in the NDA. There can be little doubt that Farhang's claim for breach of the NDA arises out of the NDA. The remaining claims all concern further dealings between M.A. Mobile and IIT regarding use of the Technology and confidential information covered by the NDA. Farhang's theory of her case, in brief, appears to be that:

> [D]efendants, acting within the constraints of the NDA, either breached the joint venture agreement or, in purporting to enter the joint venture agreement, fraudulently intended: (a) not to abide by its terms, but rather to use their sham participation in the venture as a means to misappropriate the Technology and its enhancements; and (b) carried out that intent.

FAC ¶ 13. In other words, Farhang alleges that IIT either breached the joint venture agreement with Farhang or, in the alternative, defrauded her as part of a scheme to misappropriate the Technology, in breach of the NDA. The NDA requires both parties to protect disclosed confidential information from unauthorized use or dissemination and proscribes use of the confidential information in a product or other item. NDA ¶¶ 1, 2, 6. M.A. Mobile appears to have worked with IIT to develop enhancements to the Technology and to enter a joint venture agreement under the assumption that IIT would comply with the NDA. FAC ¶¶ 54-57. In fact, the complaint's allegations of fraud describe IIT pursuing a joint venture agreement for the purpose of enabling a breach of the NDA. FAC ¶ 54. After promising to participate in a joint venture agreement, the complaint alleges, defendants "in fact did not participate with M.A. Mobile and with Farhang, individually, in a joint venture that would own and market the Technology and its enhancements. Instead, those defendants

ignored the requirements of the NDA, further developed the Technology for their own account and misappropriated the Technology and its enhancements." FAC ¶ 61. Thus, the alleged breach of the NDA is closely factually related to Farhang's claims for breach of the joint venture agreement, breach of fiduciary duty, fraud, and misappropriation of trade secrets. Because of the close relationship between the alleged breach of the NDA and Farhang's other claims, the court concludes that they all arise out of or relate to the NDA. Accordingly, all of Farhang's claims fall within the scope of IIT's implicit waiver of sovereign immunity.

IIT asserts that any waiver of sovereign immunity based on provisions of the NDA are limited to parties privy to the NDA and do not extend to Farhang, who was not a party to the NDA. Farhang contends that, though she was not a party to the NDA, she may bring claims based on the NDA because she "stands in the shoes" of M.A. Mobile, both as an assignee of M.A. Mobile and as a third party beneficiary under the contract.

The cases cited by IIT do not stand for the general proposition that only claims brought by parties to a contract are included in a contractual waiver of sovereign immunity. In the cases where district courts held that the contractual waiver of sovereign immunity did not extend to the third party plaintiff, they were not faced with a plaintiff who alleged third party beneficiary or assignee status. *See Keller v. Transportes Aereos Militares Ecuadorianos*, 601 F. Supp. 787, 789 (D.D.C. 1985) (waiver of sovereign immunity in a credit agreement to finance the cost of an airplane did not extend to third party plaintiff suing for injuries incurred by airplane crash); *Ohntrup v. Firearms Center Inc.*, 516 F. Supp. 1281, 1285 (E.D. Pa. 1981) (waiver of sovereign immunity in contract between gun manufacturer and retailer did not extend to third party plaintiff suing for injuries from malfunctioning gun). In fact, in *Cargill Int'l S.A. v. M/T Pavel Dybenko*, the one case involving a plaintiff who alleged third party beneficiary status, the Second Circuit reversed the district court's finding that it lacked subject matter jurisdiction and remanded the case to the district court for a determination of whether the plaintiff could prove its third party beneficiary status and thus establish subject matter jurisdiction. 991 F.2d 1012, 1015 (2nd Cir. 1993).

Consequently, if Farhang is in fact able to "stand in the shoes" of M.A. Mobile, either as an assignee or as a third party beneficiary to the contract, then IIT's waiver of sovereign immunity

applies to her claims. The court therefore must determine whether Farhang is a proper assignee or a third party beneficiary to the NDA.

### a. Assignee Status

Farhang alleges that on or about June 25, 2003, she transferred ownership of the Technology to M.A. Mobile, and as consideration for that transfer, M.A. Mobile assigned to her:

> 100% of all rights, title, interest, and obligation in, all claims ASSIGNOR has or may have in the future against any person, entity, or government, arising out of or relating to any and all rights, assets and/or intellectual property owned by ASSIGNOR in the past, present, or future. ASSIGNOR hereby does and will automatically assign any and all such future claims to assignee as they arise, and at the time they arise.

FAC ¶ 10; Decl. of Mandana D. Farhang in support of Pl.'s Opp. ("Farhang Decl.") Ex. A. On approximately August 11, 2003, M.A. Mobile and IIT entered into the NDA. FAC ¶ 25. Based on the prior assignment, Farhang claims that she may bring suit against IIT for claims arising out of the NDA as an assignee of M.A. Mobile. In response, IIT points to the language in the NDA stating that "[t]his Agreement may not be assigned or otherwise transferred by either party, in whole or in part, without the prior written consent of the other party, and any such attempted transfer or assignment without consent shall be null and void." NDA ¶ 9. Under the June 25, 2003 agreement between Farhang and M.A. Mobile, M.A. Mobile assigns to Farhang all claims it currently has and promises to assign its future claims to Farhang at the time such future claims may arise.[2] However, M.A. Mobile's ability to actually assign its future claims under the NDA to Farhang is limited by the terms of the NDA, which clearly states that assignments require IIT's prior written consent. Because M.A. Mobile lacked the power to assign its rights under the NDA to Farhang without IIT's prior written consent, and it appears that no such written consent has been given, Farhang does not have standing to bring suit as an assignee of M.A. Mobile.

In the FAC, Farhang's sole basis for bringing suit for breach of the NDA and for misappropriation of trade secrets is her alleged status as an assignee of M.A. Mobile. FAC ¶¶ 34, 77, 80, 82, 84. As discussed above, Farhang does not have standing to bring suit for these claims as

---

[2] An assignment of future rights is generally ineffective, except as a promise to assign. 10 Witkin § 723.

an assignee of M.A. Mobile; thus, the court dismisses Farhang's First and Fifth claims for relief (for breach of the NDA and for misappropriation of trade secrets). Because Farhang may have standing to bring these claims as a third party beneficiary (as discussed below), dismissal of these claims is with leave to amend.

### b. Third Party Beneficiary Status

In opposition to IIT's motion to dismiss, Farhang contends she has standing to sue as a third party beneficiary of the NDA. However, she has neither pled that she is a third party beneficiary nor alleged facts sufficient to support such a theory in the FAC.

A party seeking to establish third party beneficiary status has the burden of showing that the contracting parties intended to confer a direct benefit to the alleged third party beneficiary. *Alling v. Universal Manufacturing Corp.*, 5 Cal. App. 4th 1412, 1439 (1992).

> It is not necessary that the intent to benefit the third party be manifested by the promisor; it is sufficient that the promisor *understand* that the promisee has such intent. Neither is it necessary that the contract identify or refer to the third party beneficiary by name; the beneficiary may recover if he or she can show that it was intended that he or she be benefited by the contract.

*Id.* at 1440. "Whether the third party is an intended beneficiary or merely an incidental beneficiary involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered." *Prouty v. Gores Tech. Group*, 1231 Cal. App. 4th 1225, 1233 (2004). "If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person." *Id.* at 1232. On the other hand, the mere fact that performance of the contract would inure to the benefit of the third party is insufficient to make the third party an intended beneficiary. *Id.* at 1233.

Farhang contends in her opposition to the motion to dismiss that she is an intended third party beneficiary of the NDA because: (1) pursuant to a contractual arrangement with M.A. Mobile, she was entitled to receive 100% of any money that M.A. Mobile might obtain from or through the Technology covered by the NDA, and (2) prior to the execution of the NDA, she had informed IIT about this contractual arrangement between her and M.A. Mobile. Farhang Decl. ¶¶ 6, 21. The purpose of the NDA was to protect confidential information relating to the Technology from being

disclosed or used to make unauthorized products. NDA ¶¶ 1, 6. Since Farhang was entitled to any profits that M.A. Mobile might receive from the Technology, the NDA necessarily benefited her. By informing IIT that she was contractually entitled to any profit that M.A. Mobile might receive from the Technology, Farhang made clear to IIT that she was the real beneficiary of the NDA and that M.A. Mobile intended for the NDA to benefit her. Though the NDA does not refer to Farhang, there is no requirement that a contract identify intended third party beneficiaries. *Alling*, 5 Cal. App. 4th at 1440.

In *Alling*, the court found that a holder of patented technology was an intended third party beneficiary of a purchase agreement between its exclusive licensee and a manufacturer because the manufacturer "was aware . . . [that the patent holder] was not simply an incidental beneficiary . . . reaping some relatively minor percentage of profit therefrom; by intent, it was to be directly and substantially benefited through the anticipated results of the Purchase Agreement," which was to expand the commercial potential of the patented technology and quicken the pace of market development. 5 Cal. App. 4th at 1440. Similarly, IIT was aware that Farhang was not simply an incidental beneficiary gaining some relatively minor benefit from the NDA; to the contrary, M.A. Mobile intended for Farhang to be directly and substantially benefited by the NDA, as she was entitled to any profits that M.A. Mobile might reap from the Technology. Because the terms of the NDA necessarily benefit Farhang, it appears that the parties contemplated for the NDA to benefit Farhang. *Prouty*, 1231 Cal. App. 4th at 1232.

The question of whether Farhang is an intended third party beneficiary of the NDA is a close call, but the court finds that Farhang has proffered in her opposition papers sufficient evidence that she is an intended third party beneficiary (such that IIT's waiver of sovereign immunity would apply to her claims) to justify allowing her to amend her complaint to attempt to assert such status. The court therefore grants Farhang leave to amend her complaint to state that she is a third party beneficiary of the NDA and to plead facts sufficient to support this claim.

### 2. Commercial Activity Exception

The commercial activity exception of 28 U.S.C. § 1605(a)(2) provides an alternative basis for finding that IIT is not immune from suit under the FSIA. Under the commercial activity exception, a foreign state is not immune from suit in any case:

> in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Farhang asserts that IIT's conduct falls within both the second and the third prongs of the commercial activity exception.

#### a. Domestic Act in Connection with Extraterritorial Commercial Activity

To qualify under the second prong of the commercial activity exception, Farhang's claims must be based "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2). Farhang points to IIT's alleged recruitment and solicitation of Farhang, through emails, calls, and meetings in California, as acts performed in the United States in connection with the proposed joint venture agreement. Farhang Decl. ¶¶ 7-9. However, Farhang has not shown how her claims are based upon these emails, calls, and meetings in California. For this reason, the requirements of the second prong of the commercial activity exception are not met.

#### b. Extraterritorial Act in Connection with Extraterritorial Commercial Activity and Causing a Direct Effect in the United States

To qualify under the third prong of the commercial activity exception, Farhang's claims must be based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Farhang alleges that IIT entered or purported to enter into a joint venture agreement with M.A. Mobile and Farhang for the development and marketing of the Technology, and that this conduct constitutes commercial activity under the FSIA. FAC ¶ 1(c).

The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The legislative history of the FSIA provides further guidance as to what constitutes "commercial activity," suggesting that courts should "inquire whether the activity in question is one which private persons ordinarily perform or whether it is peculiarly within the realm of governments." *de Sanchez v. Banco Central De Nicaragua*, 770 F.2d 1385, 1392 (5th Cir. 1985) (quoting *Jurisdiction of U.S. Courts in Suits Against Foreign States: Hearings on H.R. 11315 Before Subcomm. on Administrative Law and Governmental Relations of the House Comm. on the Judiciary*, 94th Cong., 2d Sess. 53 (1976) (statement of Monroe Leigh, Legal Advisor, U.S. Dep't of State)). The Ninth Circuit has adopted this approach, holding that "an activity is commercial unless it is one that only a sovereign state could perform." *Park v. Shin*, 313 F.3d 1138, 1145 (9th Cir. 2002).

It is undisputed that entering into a joint venture for commercial purposes constitutes "commercial activity" under the FSIA. Nonetheless, IIT contends that it did not engage in any commercial activity because it "expressly extricated itself from the proposed joint venture" and Farhang "continued to engage in discussions with IIT knowing full-well that IIT was incapable of forming a joint venture with anyone." Def.'s Reply at 13. These statements by IIT acknowledge that IIT was at least involved in discussions with Farhang regarding a proposed joint venture; otherwise, there would be no need to "extricate" itself and Farhang could not have "continued" to engage in such discussions. According to the FAC, defendants represented to Farhang that they intended to form a joint venture with M.A. Mobile and Farhang and spent months feigning progress and negotiations toward the goal of creating a joint venture. FAC ¶¶ 53, 57-58. Regardless of whether the joint venture was successfully consummated, IIT's conduct is sufficient to constitute commercial activity. If defendants had actually intended to form a joint venture at the time, their discussions with Farhang would be commercial in nature since engaging in preparatory discussions to set the groundwork for the formation of a joint venture is an activity which private persons ordinarily perform and is not "peculiarly within the realm of governments." *de Sanchez*, 770 F.2d at 1392. In

the alternative, if defendants had never intended to form a joint venture and were merely misleading Farhang to gain access to the Technology, their discussions with Farhang would still be commercial in nature since making fraudulent representations to gain access to confidential information is also an activity which private persons ordinarily perform and is not "peculiarly within the realm of governments." *Id.*

The acts upon which Farhang's claims are based are described in paragraphs 31, 39, 52 to 61, and 72 of the FAC. In short, the complaint alleges that, after promising to participate in a joint venture agreement to gain access to the Technology, defendants "in fact did not participate with M.A. Mobile and with Farhang, individually, in a joint venture that would own and market the Technology and its enhancements. Instead, those defendants ignored the requirements of the NDA, further developed the Technology for their own account and misappropriated the Technology and its enhancements." FAC ¶ 61. These acts were carried out "in connection with" IIT's representation that it intended to enter into a joint venture agreement with Farhang. FAC ¶¶ 54-58.

Moreover, these acts had a "direct effect" in the United States. A "direct effect" under the FSIA is present when money that was to be paid to a location in the United States is not forthcoming as a consequence of the extraterritorial act. *Republic of Argentina v. Weltover*, 504 U.S. 607, 619 (1992). Under the terms of the contemplated joint venture agreement, 72% of the profits were to be paid to M.A. Mobile at its principal place of business in Marin County, California, and to Farhang, individually, at her residence in Marin County, California. FAC ¶ 1(c). Farhang alleges that because IIT acted fraudulently and misappropriated the Technology and its enhancements (in breach of the NDA, the joint venture agreement, and its fiduciary duty), profits that would have been paid to California were not forthcoming.

The court concludes that the present action is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The commercial activity exception thus provides a basis for finding that IIT is not immune from suit in this action.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION—No. C-08-02658 RMW
CCL                12

## B. Personal Jurisdiction

Personal jurisdiction is a waivable right, and parties to a contract may agree in advance to submit to the jurisdiction of a given court. *Dow Chemical Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005). The NDA states that "[e]ach of the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state courts located in Santa Clara County, California, as applicable, for any matter arising out of or relating to this Agreement." NDA ¶ 10.

IIT argues that Farhang cannot rely upon this jurisdictional-consent clause because she is not a party to the NDA. In support of this proposition, IIT cites two Ninth Circuit cases, one of which is unpublished.[3] However, these cases merely hold that a forum selection clause is insufficient for the exercise of general personal jurisdiction. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). If Farhang is able to amend her complaint to successfully plead third party beneficiary status to the NDA, Farhang need not rely upon the jurisdictional-consent clause to establish general personal jurisdiction. By the plain language of the NDA, IIT has consented to this court's exercise of specific personal jurisdiction over it for "any matter arising out of or relating to" the NDA. NDA ¶ 10. Though Farhang is not a party to the NDA, this jurisdictional-consent clause is not limited to disputes between M.A. Mobile and IIT; rather, it expressly covers "any matter arising out of or relating to" the NDA. *Id.* As discussed above, each claim asserted by Farhang arises out of or relates to the NDA.

Therefore, if Farhang successfully alleges third party beneficiary status in an amended complaint, the NDA would provide the court with specific personal jurisdiction over IIT for the claims Farhang asserts. For this reason, the court defers ruling on the motion to dismiss for lack of personal jurisdiction pending an amended complaint.

## C. Forum Non Conveniens

The parties to the NDA, by its terms, consented exclusively to personal jurisdiction in the courts of Santa Clara County, California for disputes arising out of or relating to the NDA, with a

---

[3] IIT's citation of *Ting v. Orbit Commc'n. Co.*, 1997 WL 8470 (9th Cir. Jan. 7, 1997), does not appear to fall within any exception to the bar on citing unpublished decisions in Ninth Circuit Rule 36-3.

limited exception for enforcement of judgments. NDA ¶ 10. The NDA also includes a choice-of-law clause providing that the agreement shall be governed by United States and California law. *Id.* These provisions of the NDA constitute a forum selection clause, selecting Santa Clara County, California as the forum for any disputes arising out of or relating to the NDA. As discussed above, each claim asserted by Farhang arises out of or relates to the NDA. If Farhang is able to amend her complaint to successfully plead third party beneficiary status to the NDA, it would appear that this forum selection clause should be enforced.

Typically, under the doctrine of forum non conveniens, a court may dismiss a case when there is an adequate alternative forum and trial in the chosen forum would be so oppressive and vexatious to the defendant as to be out of all proportion to the plaintiff's convenience. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). But when a case involves a forum selection clause in a "freely negotiated international commercial transaction" and the alleged inconvenience that would result from being forced to litigate in the contractual forum was foreseeable at the time of contracting, the Supreme Court has made clear that "the party seeking to escape his contract [must] show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 (1972), *overruled in part on other grounds by Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007). Though IIT points to some inconvenience that would result from trying the case in this court, it appears that any such inconvenience was foreseeable at the time IIT freely entered into the NDA. IIT has not shown that the present forum would deprive it of a meaningful day in court.

If Farhang successfully pleads third party beneficiary status to the NDA in an amended complaint, it would not be unfair, unjust, or unreasonable to hold IIT to the forum selection clause in the NDA. For this reason, the court defers ruling on the motion to dismiss under the doctrine of forum non conveniens pending an amended complaint.

**D. Indian Proceedings**

The court understands that there are concurrent proceedings taking place in the High Court at Calcutta, covering subject matter that substantially overlaps with the present action. However, it is unclear from the record which parties have been served in the Indian proceedings. The court is not satisfied that the inferences IIT draws as to service based on the language of the Indian court necessarily means that Farhang has been served, particularly since Farhang denies service. The court also notes that the present action was filed before IIT brought suit in the High Court at Calcutta. Nonetheless, if further information is brought to the court's attention, the court would not be precluded from staying this action pending the outcome of the Indian proceedings.

## III. ORDER

For the reasons stated above, the court:

1. Denies IIT's motion to dismiss for lack of subject matter jurisdiction;
2. Dismisses Farhang's claims for breach of the NDA and for misappropriation of trade secrets with thirty days leave to amend to assert her claims as a third party beneficiary; and
3. Defers ruling on IIT's motion to dismiss for lack of personal jurisdiction and under the doctrine of forum non conveniens.

DATED: 1/26/10

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Micah R. Jacobs		mjacobs@mbvlaw.com

**Counsel for Defendant IIT:**

I. Neel Chatterjee		nchatterjee@orrick.com
Craig R. Kaufman		ckaufman@orrick.com
Nitin Gambhir		ngambhir@orrick.com
Theresa Ann Sutton		tsutton@orrick.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 1/26/10					CCL
						**Chambers of Judge Whyte**