1   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
      nchatterjee@orrick.com
2   THERESA A. SUTTON (STATE BAR NO. 211857)
      tsutton@orrick.com
3   NITIN GAMBHIR (STATE BAR NO. 259906)
      ngambhir@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road Menlo Park, CA  94025
5   Telephone:      650-614-7400
    Facsimile:      650-614-7401
6
    Attorneys for Defendant
7   INDIAN INSTITUTE OF TECHNOLOGY KHARAGPUR

8                    UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                       SAN JOSE DIVISION

11  | M.A. MOBILE LTD., a limited liability | Case No.  C-08-02658-RMW (HRL) |
    company chartered in Dominica; and
12  MANDANA D. FARHANG,

13              Plaintiffs,                    **INDIAN INSTITUTE OF**
                                               **TECHNOLOGY, KHARAGPUR'S**
14       v.                                    **MOTION TO DISMISS SECOND**
                                               **AMENDED COMPLAINT**
15  INDIAN INSTITUTE OF TECHNOLOGY             **PURSUANT TO FED.R.CIV.P.**
    KHARAGPUR, an Indian Institute of          **12(B)(6)**
16  Technology incorporated under the "Institutes
    of Technology Act, 1961"; TECHNOLOGY       Date:       May 28, 2010
17  ENTREPRENEURSHIP AND TRAINING              Time:       9:00 A.M.
    SOCIETY, an Indian society; PARTHA P.      Dept:       Courtroom 6, 4th Floor
18  CHAKRABARTI; PALLAB DASGUPTA;              Judge:      Honorable Ronald M. Whyte
    PRAVANJAN CHOUDHRY; SUBRAT
19  PANDA; ANIMESH NASKAR; and DOES 1
    through 100, inclusive,
20
               Defendants.
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND ................................................................................................ 2

        A.      Procedural Background............................................................................ 2

        B.      Relevant Factual Allegations ................................................................. 3

III.    ARGUMENT ..................................................................................................... 5

        A.      M.A. Mobile Lacks The Capacity To Maintain An Action In California............... 5

        B.      Farhang Does Not Plead Any Facts Supporting Her Claim For Breach of
                NDA ..................................................................................................... 6

        C.      Plaintiffs' Second Claim For Breach Of Joint Venture Agreement Should
                Be Dismissed.......................................................................................... 7

                1.      IIT Informed Plaintiffs it Could Not Contract With Them, And
                        Plaintiffs "Accepted" ................................................................... 7

                2.      Plaintiffs Fail to Identify an Enforceable Contract ..................................... 8

                3.      Any Alleged Contract is Unenforceable Because it is Missing
                        Essential Terms .............................................................................. 9

                4.      The Alleged Contract is Unenforceable Because The Parties' Rights
                        and Responsibilities Are Not Reasonably Certain ................................ 10

        D.      Plaintiffs' Fraud and Breach of Fiduciary Duty Claims Are Preempted ............. 11

        E.      Plaintiffs Fail To Show The Existence Of A Fiduciary Duty ............................... 11

        F.      Plaintiffs' Fraud Claim Does Not Meet Rule 9(b)'s Particularity
                Requirement ...................................................................................... 12

                1.      Plaintiffs' Fraud Claim Fails to Satisfy Rule 9(b)'s Particularity
                        Requirements.......................................................................... 13

        G.      Plaintiffs Fail To State A Claim For Trade Secret Misappropriation ................... 15

                1.      Plaintiffs Lack Standing Under Trade Secrets Act ................................... 15

                2.      Plaintiffs Fail to Allege the Existence of a Trade Secret ......................... 16

                        a.      Plaintiffs Fail To Identify Their Trade Secrets With
                                Particularity ...................................................................... 17

                        b.      The Alleged Secrets Do Not Have Independent Economic
                                Value Because they are Confidential .......................................... 18

                        c.      Plaintiffs Fail to Show that They The Alleged Trade Secrets
                                Were The Subject of Reasonable Efforts to Maintain
                                Secrecy ........................................................................... 18

                3.      IIT Did Not Misappropriate Any Trade Secrets .................................... 19

                        a.      Farhang, not IIT, is Responsible for the Alleged
                                Dissemination of Confidential Information .................................... 19

                        b.      IIT Cannot Not Misappropriate its Own Information.......................... 21

        H.      Plaintiffs Have Not Established That They Were Harmed As A Result of
                IIT's Actions ...................................................................................... 21

**TABLE OF CONTENTS**
(continued)

**Page**

IV.   CONCLUSION ........................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Ashcroft* v. *Iqbal*,
129 S. Ct. 1937, 1949-50 (2009)..................................................... 5, 6, 12,15, 18, 19

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)..................................................................... 5, 6, 12, 19, 20

*Bly-Magee* v. *California*,
236 F.3d 1014 (9th Cir. 2001)............................................................. 13

*Bradley* v. *Chiron Corp.*,
136 F.3d 1317 (9th Cir. 1998)............................................................. 16

*Branch* v. *Tunnell*,
14 F.3d 449 (9th Cir. 1994)................................................................. 4

*Cahill* v. *Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996)................................................................. 5

*Digital Envoy, Inc.* v. *Google, Inc.*,
370 F. Supp. 2d 1025 (N.D. Cal. 2005) ................................................. 11

*Edwards* v. *Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004)............................................................. 12

*Foley* v. *Bates*,
2007 WL. 1430096 (N.D. Cal. 2007)................................................. 13, 15

*Galbraith v. County of Santa Clara*,
307 F.3d 1119, 1127 (9th Cir. 2002)....................................................... 4

*Goodworth Holdings Inc.* v. *Suh*,
239 F. Supp. 2d 947 (N.D. Cal. 2002) ................................................. 9, 10

*Memry Corp.* v. *Ky. Oil Tech., N.V.*,
2006 U.S. Dist. LEXIS 94393............................................................. 16

*Nuebronner on Behalf of Mercatura Trust v. Young*,
No. 95-55682, 1997 WL 168345, at *3 (9th Cir. April 8, 1997) ................... 13, 14

*Sprewell* v. *Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)................................................................. 5

*Swartz* v. *KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)............................................................. 13

*Vess* v. *Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)......................................................... 12, 13

**TABLE OF AUTHORITIES**
(continued)

Page

**STATE CASES**

*Advanced Modular Sputtering, Inc.* v. *Super. Ct.*,
132 Cal. App. 4th 826 (2005) ................................................................. 11

*Badie* v. *Bank of America*,
67 Cal. App. 4th 779 (1998) ................................................................. 11

*Banner Ent't, Inc.* v. *Super. Ct.*,
62 Cal. App. 4th 348 (1998) ................................................................. 9

*Bustamante* v. *Intuit, Inc.*,
141 Cal. App. 4th 199 (2006) ................................................................. 10

*Cadence Design Sys., Inc.* v. *Avant! Corp.*,
29 Cal. 4th 215 (2002) ................................................................. 15, 18, 19

*Charnay* v. *Cobert*,
145 Cal. App. 4th 170 (2006) ................................................................. 11, 12

*Connor* v. *Great W. Sav. Loan Ass'n*,
69 Cal. 2d 850 (1968) ................................................................. 9

*Crouse* v. *Brobeck, Phleger & Harrison*,
67 Cal. App. 4th 1509 (1998) ................................................................. 12

*Diodes* v. *Franzen*,
260 Cal. App. 2d 244 (1968) ................................................................. 17

*Engalla* v. *Permanente Medical Group, Inc.*,
115 Cal. 4th 951 (1997) ................................................................. 14

*K.C. Multimedia, Inc.* v. *Bank of America Technology & Operations, Inc.*,
171 Cal. App. 4th 939 (2009) ................................................................. 11, 12

*Louis Lesser Enterprises, Ltd.* v. *Roeder*,
209 Cal. App. 2d 401 (1962) ................................................................. 9

*Menefee* v. *Ostawari*,
228 Cal. App. 3d 239 (1991) ................................................................. 8

*Roth* v. *Malson*,
67 Cal. App. 4th 552 (1998) ................................................................. 7

*Tate* v. *Canonica*,
180 Cal. App. 2d 898 (1960) ................................................................. 22

*United Medical Management Ltd.* v. *Gatto*,
49 Cal. App. 4th 1732 (1996) ................................................................. 6

**TABLE OF AUTHORITIES**
(continued)

Page

**FEDERAL STATUTES**

Fed. R. Civ. P. 8(a)(2) ................................................................................ 5

Fed. R. Civ. P. 12(b)(6) ...................................................................... 2, 3, 4, 5

Fed. R. Civ. P. 9(b) ......................................................... 2, 12, 13, 14, 15

**STATE STATUTES**

Cal. Civ. Code § 47 .................................................................................. 14

Cal. Civ. Code § 339 .................................................................................. 8

Cal. Civ. Code § 1531 .................................................................................. 8

Cal. Civ. Code § 1550 ................................................................................ 10

Cal. Civ. Code § 3426.1 .............................................................................. 15

Cal. Civ. Code § 3426.1(b) ........................................................................ 19

Cal. Civ. Code § 3426.1(d) .................................................................. 17, 18

Cal. Civ. Code § 3426.7(b) ........................................................................ 11

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF MANDANA FARHANG:

PLEASE TAKE NOTICE THAT at 9:00 A.M. on May 28, 2010, or as soon thereafter as counsel may be heard, in Courtroom 6, 4th Floor of this Court, located at 280 South First Street, San Jose, California, before the Honorable Ronald M. Whyte, Defendant Indian Institute of Technology, Kharagpur will and hereby does move this Court for an Order dismissing Plaintiffs' Second Amended Complaint ("SAC") on the grounds that it fails to state a claim pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on this Notice of motion and Motion, the following Memorandum of Points and Authorities, the pleadings and papers on file in this action, any matters of which the Court may or must take judicial notice, any evidence or argument presented at the hearing on the motion, and any other matters the Court deems proper.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This is a case about a prospective deal in India that never came to fruition. The SAC asserts a laundry list of claims that shows that Plaintiffs Mandana Farhang and M.A. Mobile are frustrated that the deal never happened. Frustration with a deal never happening does not, and should not, give rise to any cause of action.

Plaintiffs assert five causes of action: breach of contract, breach of a joint venture agreement, breach of fiduciary duty, fraud, and trade secret misappropriation. The Plaintiffs do not identify which plaintiff is asserting which claim against which defendant. The Plaintiffs, while making a very large number of confusing and seemingly inconsistent allegations, do not identify some of the basic elements of numerous claims.

The claims fail for the following reasons:

1. M.A. Mobile may not maintain an action in this state because it is not qualified to do business in California.

2. Plaintiffs' First through Third claims rest on a faulty assumption that several contracts were formed. The complaint sets forth a very complicated set of allegations related to a purported non-disclosure agreement and a convoluted listing of alleged "oral and written contracts." At no time does she allege any particular facts as to the specific

1    breach by IIT.

2    3. Plaintiffs' Third and Fourth claims for breach of fiduciary duty and fraud are preempted by the California Uniform Trade Secrets Act.

3

4    4. Plaintiffs' Third claim (breach of fiduciary duty) does not establish the existence of a fiduciary duty. The complaint, while using the term "joint venture" repeatedly, is in fact discussing an arms-length discussion related to a prospective business transaction. Such relationships are not the type activities constituting a fiduciary relationship.

6    5. The Fourth claim, which appears to be a claim for fraud, has not been adequately pled pursuant to Fed. R. Civ. P. Rule 9(b) because it alleges no specific fraudulent statement(s), reliance or cognizable harm.

8    6. The Fifth claim for trade secret misappropriation alleges that IIT misappropriated Plaintiffs' trade secrets, including IIT's own proprietary "enhancements" to Plaintiffs' alleged technology. The Complaint does not identify any specific use or disclosure of any information Plaintiffs claim to be a trade secret.

As the SAC does not state a claim as to any cause of action and the plaintiff has now had three attempts to revise their claims, the SAC should be dismissed with prejudice in its entirety.[1]

## II.   BACKGROUND

### A.   Procedural Background

Farhang filed her initial complaint in May 2008, asserting claims for breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, fraud, interference, conversion, and conspiracy. Dkt. No. 1. Defendant IIT filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and a separate motion based on the Court's lack of personal and subject matter jurisdiction. Dkt. Nos. 44, 45.

Before the Court could resolve either motion, Farhang filed a First Amended Complaint ("FAC") to attempt to remedy the defects raised in IIT's motions. Dkt No. 57. In the FAC, Farhang voluntarily dropped five of her claims, and added a claim for trade secret misappropriation. *Id.* IIT re-filed its motions to dismiss based on the deficiencies in Farhang's FAC. On January 26, 2010, the Court denied IIT's motion to dismiss for lack of jurisdiction, but dismissed two of Farhang's claims, and granted her leave to amend.[2] Dkt. No. 107. This SAC

[1] Several other defendants have been named in this action. This motion, however, is being filed on behalf of Defendant Indian Institute of Technology, Kharagpur only. None of the remaining defendants has been served, despite the complaint having been filed two years ago. For that reason, the SAC should be dismissed in its entirety as to all defendants.
[2] The parties agreed to await resolution of IIT's Rule 12(b)(6) motion until the Court resolved the companion motion. Given the significant changes in the SAC to the allegations in the FAC, a

1    followed.  Dkt. No. 111.  Farhang added M.A. Mobile Ltd. as a co-plaintiff, and asserts claims for

2    relief based on breach of contract, breach of fiduciary duty, fraud, and trade secret

3    misappropriation.

4         **B.    Relevant Factual Allegations**

5         The crux of this complaint is that IIT purportedly "lured" Farhang and/or M.A. Mobile

6    into a joint venture so IIT could use their "technology" (claimed as the trade secrets) for its own

7    purposes.[3]  As the record demonstrates, however, Farhang approached IIT in April 2003 through

8    defendant Chakrabarti in an effort to take advantage of IIT's "highest level contacts in

9    government and industry," including "the most coveted customer in all of India," Indian

10   Railways.  Dkt. No. 1, ¶ 38; *see also* SAC, ¶ 1.  Farhang envisioned IIT's role as a means to

11   "forgo the otherwise mandatory tender process when signing up the largest Indian government

12   entities such as the 'Indian Railways.'"  Dkt. No. 1, ¶¶ 37, 38; SAC, ¶ 54(c).

13        In exchange for IIT's technical expertise, high level contacts and red-tape elimination,

14   Farhang agreed to provide "consulting time, [and] manhours" – largely from her other

15   "affiliates."  SAC, ¶ 55(c)(1), 52.  Farhang also agreed to take a 72% of the revenue generated

16   from the proposed joint venture.  SAC, ¶ 2(c)(5).  The complaint is devoid of any other factual

17   allegations describing Plaintiffs' responsibilities under the proposed agreement. Notably, the

18   Complaint does not allege any exclusivity in the anticipated deal and also does not allege any

19   terms related to termination of the anticipated relationship.

20        The SAC alleges that IIT entered into a Mutual Nondisclosure Agreement at the outset of

21   the relationship.[4]  The NDA purports to protect "confidential information" disclosed by one party

22   to the other, but explicitly excludes from its protection information that is independently

23   developed.  Dkt. No. 45, Ex. B.  The parties also discussed plans for forming an Indian joint

---

24   new 12(b)(6) motion is warranted. These changes indicate that Farhang's claims lack merit, as

25   many of them contradict each other or have evolved in an apparent response to IIT's two prior
     Rule 12(b)(6) motions.  *See, generally,* Dkt. Nos. 44, 62.

26   [3] According to the SAC, M.A. Mobile owns the "patent-pending technology," though Farhang
     originally alleged that she "and her affiliates ("TNR") own full right and title to the intellectual

27   property and other property described herein ("the IP")."  Dkt. No. 1, ¶ 5.  The record is silent as
     to who owns any work performed by IIT.

28   [4] IIT disputes that Farhang or M.A. Mobile executed the NDA at or near the time IIT signed it,
     but for purposes of this motion, IIT will assume they had.

venture, called Cool e-mobile, "for the purpose of developing and marketing certain patent-pending technology." SAC, ¶ 2(b)(2). Though Farhang ultimately formed Cool e-mobile Pvt. Ltd. in India in 2006, IIT does not have an ownership interest in that company. SAC, ¶ 33.

In addition to discussions related to a potential joint venture between Farhang and defendant TIETS, beginning in June 2004, IIT and Farhang sought to negotiate a temporary license agreement to enable IIT to further develop and market Plaintiffs' "technology" until such time as "definitive agreements with respect to the formation of the joint venture" were executed. Dkt. No. 64, Ex. B. The "letter agreement" was never executed. SAC, ¶ 41.

In early 2003, after IIT executed the NDA, Farhang delivered to IIT a copy of her "IP." Dkt. No. 1, ¶ 28. IIT then spent the better part of three years "enhancing" the technology and providing technical assistance to Farhang, without any compensation. Declaration of Nitin Gambhir in Support of IIT's Motion to Dismiss ("Gambhir Decl."), Ex. A.[5] When the deal did not materialize (for reasons that are not entirely clear from the record), Farhang accused IIT of improperly disclosing her alleged trade secrets to IBM and the Indian Railways for IIT's own account. *See e.g.,* Dkt. No. 1, ¶ 1; SAC, ¶ 2(c)(6). These allegations contradict Plaintiffs' allegation that "[i]t was known to Plaintiff and Defendants that other competing technology could achieve similar objectives achieved by the Technology." SAC, ¶ 98. Despite such competition, and without a confidentiality agreement, Farhang caused a "confidential business plan" to be sent to IBM's Deputy General Manager and further disclosed her "technology" to the Indian Railways in an effort to land it as a customer. Dkt. No. 1, ¶ 76.

Shortly thereafter, Farhang admits, she "continued to pursue the goal of perfecting a demonstration for the Indian Railways," but her efforts ultimately "did not materialize." Dkt. No. 1, ¶ 84. Plaintiffs now claim that they are entitled to damages "greater than $30,000,000." SAC, ¶¶ 65, 71, 76, 91, 103.

---

[5] It is well-established, and warranted in this case, that a defendant may attach to a Rule 12(b)(6) motion the documents referred to in a complaint to show that those documents do not support Plaintiffs' claim. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) overruled on other grounds, *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002). In paragraph 54(b), Plaintiffs refer to various communications during May and June 2005 to support their allegations. IIT is, therefore, permitted to attach them to this motion, without converting it to a motion for summary judgment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   ARGUMENT

A party may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) if, from the face of the complaint, a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) requires the Court to take all allegations in Plaintiff's complaint as true, and construe all inferences from them in the light most favorable to them. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  While a plaintiff does not need detailed factual allegations, he must nonetheless "provide the grounds of his entitle[ment] to relief . . . [which] requires more than labels and conclusions, and a formulaic recitation of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The court need not credit conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Rule 12(b)(6) must be read in conjunction with the pleading requirements of Rule 8(a)(2). *Sprewell*, 266 F.3d at 988.  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8(a)(2) requires a "showing, rather than a blanket assertion, of entitlement to relief . . . [w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 556 n.3.  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id*.

### A.   M.A. Mobile Lacks The Capacity To Maintain An Action In California

M.A. Mobile may not maintain a lawsuit in California because it is not qualified to do business here.  M.A. Mobile is a foreign corporation chartered under the laws of the Commonwealth of Dominica (SAC, ¶9) and, as such, must obtain a certificate of qualification from the Secretary of State before it may a) transact business here or b) "maintain any action of proceeding." Cal. Corp. Code § 2105.  M.A. Mobile has not obtained such a certificate and is,

thus, not permitted to prosecute its claims in this state.  Gambhir Decl., ¶ 2; *see United Medical Mgmt. Ltd. v. Gatto*, 49 Cal. App. 4th 1732, 1740-1741 (1996).

## B.     Farhang Does Not Plead Any Facts Supporting Her Claim For Breach of NDA

Plaintiffs allege that IIT breached the NDA by a) "disclosing the Technology and Confidential Information to persons and entities who had not previously agreed to be bound by terms and conditions substantially similar to those of the NDA," b) by "making, having made, using, and/or selling intellectual property, for defendant's own account, which used, incorporated, and/or derived from the Technology," and c) by failing to return confidential information.  SAC, ¶ 62(a)-(c).  Plaintiffs do not, however, allege any facts demonstrating to whom IIT improperly disclosed the Technology or how and when it did so.  Plaintiffs also fail to plead any facts showing that IIT made, used or sold the intellectual property for its own account.  They fail to show that IIT has retained any of their confidential information. They fail to identify any specific person IIT exposed to confidential information.

While Plaintiffs need not provide detailed factual allegations, plaintiffs must nonetheless "provide the 'grounds' of [her] 'entitle[ment] to relief' . . . [which] requires more than labels and conclusions, and a formulaic recitation of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. 544 at 555 (citations omitted).  The court need not credit conclusory allegations, unwarranted deductions of fact, or unreasonable inferences.  *See Iqbal*, 129 S. Ct. at 1949-50.

No facts in the SAC suggest that IIT improperly disclosed confidential information to anyone.  Plaintiffs' allegation that IIT improperly disclosed information to the IITK incubation board is based on the supposition that IIT had a "separate relationship with IBM."  SAC, ¶ 49. This allegation is insufficient to provide a "plausible" basis for liability, especially in light of Farhang's own admitted disclosure to IBM (Dkt. No. 1, ¶ 76) and the Indian Railways. SAC, ¶ 53; Dkt. No. 1, ¶ 60.  Further, Plaintiffs proffer no facts to support the notion that the incubation board (with whom Plaintiffs sought to partner) had not agreed to maintain confidentiality.

Plaintiffs' assertion that IIT made, used or sold their "technology" also is unsupported.

1    This allegation is based on Plaintiffs' mischaracterization of IIT's complaint to the High Court of

2    Calcutta, in which it describes the work IIT engineers performed for Farhang without

3    remuneration.  IIT does not, as Plaintiffs suggest, "admit" that it is misusing Plaintiffs'

4    technology.  SAC, ¶ 59; Gambhir Decl. Ex. A at 11.  Instead, IIT asserts they spent years

5    enhancing Farhang's software only to be told IIT *cannot* use it. Gambhir Decl. Ex. A at 11.

6          Finally, Plaintiffs' new allegation that IIT has not returned all of the confidential

7    information they provided IIT, is equally unsupported.  In her original complaint, Farhang

8    concedes that IIT returned the only item she gave it, the "IP."  Dkt. No. 1, ¶ 80.  Further,

9    plaintiffs do not identify any contractual obligation requiring return of information.  In addition,

10   plaintiffs do not identify a single item (other than "IP") that they actually gave to IIT, nor do they

11   identify what they requested be returned, when or how the request was made, and what IIT's

12   response was.

### C.    Plaintiffs' Second Claim For Breach Of Joint Venture Agreement Should Be Dismissed

13
14         Plaintiffs' claim for breach of the purported joint venture agreement must be dismissed

15   because no such contract exists.  Under California and Indian law the "existence of a contract is a

16   necessary element to an action based on contract."  *Roth v. Malson*, 67 Cal. App. 4th 552, 557

17   (1998).[6]  Plaintiffs fail to plead the necessary elements for contract formation and, without a

18   contract, there can be no breach.

19         Even if Plaintiffs could show a contract was formed, they have not alleged facts sufficient

20   to establish that IIT breached it by using their technology for its own purposes.  As discussed

21   above, Plaintiffs have no evidence of such use.  Thus, there is no breach.

### 1.    IIT Informed Plaintiffs it Could Not Contract With Them, And Plaintiffs "Accepted"

22
23
24         In each of the complaints, Farhang concedes that by May 2005, IIT informed her that it

25   was incapable of contracting with her (and her "affiliates").  *See* Dkt. No. 1, ¶ 56; FAC,

26
_____

[6] Plaintiffs allege that the parties intended to form an "Indian Joint Venture."  SAC, ¶ 2(b)(2).

27   Consequently, formation of the alleged joint venture must comply with the Indian Contract Act of
     1872, as well as the Companies Act and other relevant laws.  The Indian Contract Act is, in all

28   relevant respects, substantially similar to California contracts law.  *See* concurrently filed Request
     for Judicial Notice, Ex. A.

IIT MOTION TO DISMISS SAC
C-08-02658-RMW (HRL)

¶ 59(c)(1); and SAC, ¶ 52.  Importantly, in the original complaint, Farhang also admitted that she and her affiliates were not dissuaded by IIT's rejection.  Dkt. No. 1, ¶ 56.  Instead, Farhang "accepted the modification" (*id.*) to the proposed venture, thereby excusing IIT from any alleged participation in a joint venture.  *See* Indian Contract Act, § 62 ("if the parties to a contract agree to substitute a new contract for it, or to rescind or alter it, the original contract need not be performed"); *see also* Cal. Civil Code § 1531.  In fact, Plaintiffs prepared a draft licensing agreement to permit IIT to temporarily market the "technology" in which Plaintiffs "understood and agreed that [IIT] shall not have an ownership interest in the joint venture described herein . . . ." Dkt. No. 64, Ex. B at 1.  Plaintiffs now improperly seek to hold IIT accountable for an alleged breach of a contract to which it was admittedly not a party.

### 2.    Plaintiffs Fail to Identify an Enforceable Contract

Plaintiffs erroneously allege that IIT participated in a joint venture despite the lack of a written contract.  SAC, ¶ 33(e).  To the extent Plaintiffs are alleging the joint venture was based on an oral contract, their claim must be dismissed because a) it is time-barred by the two-year statute of limitations and b) to the extent the parties intended to form a joint venture at all, they expected it to be in writing.

Under California law, an action based on the breach of an oral contract must be brought within two years of said breach.  Cal. Code Civ. Proc. § 339. "A cause of action for breach of contract ordinarily accrues at the time of breach regardless of whether any substantial damage is apparent or ascertainable." *Menefee v. Ostawari*, 228 Cal. App. 3d 239, 246 (1991).  All of the alleged acts appear to have occurred more than two years prior to May 27, 2008, the date this lawsuit was filed. Consequently, Plaintiffs' claim for breach of an oral contract is time-barred.

Even if Plaintiffs could show that the two year bar does not affect the parties' alleged contract, the lack of a written contract is fatal to their claim. "When it is clear . . . that both parties contemplate that acceptance of [a] contract's terms would be signified [in writing], the failure to sign the agreement means that no binding contract [is] created." *Banner Ent., Inc. v. Super. Ct.*, 62 Cal. App. 4th 348, 358 (1998).  Here, the parties intended that any partners in the joint venture would "formalize the terms . . . with the necessary contracts and consents, and [obtain] all

necessary government licenses and approvals." Dkt. No. 64, Ex. A at 2; *see also* Ex. B at 2. Because the parties did not execute any of the contemplated contracts, no joint venture agreement was formed. Plaintiffs' claim for breach thereof should be dismissed.

**3.  Any Alleged Contract is Unenforceable Because it is Missing Essential Terms**

A "joint venture exists if there is an agreement between the parties under which they have a 'joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and right of joint control.'" *Goodworth Holdings Inc. v. Suh,* 239 F. Supp. 2d 947, 956 (N.D. Cal. 2002), *quoting Connor v. Great W. Sav. Loan Ass'n,* 69 Cal.2d 850, 863 (1968) (citations omitted); *see also* Indian Accounting Standard (AS) 27 at ¶¶ 3, 7(d). A legally binding agreement, however, is not formed where "essential element[s are] reserved for . . . future agreement." *Louis Lesser Enterprises, Ltd. v. Roeder*, 209 Cal. App. 2d 401, 408 (1962); Indian Contract Act § 29.

The SAC demonstrates that the alleged agreement does not satisfy basic California and Indian law. The complaint does not adequately allege an "understanding as to the sharing of profits and losses." *Id.* Instead, Plaintiffs allege they were entitled to "72 % of the profits earned through the development and marketing of the Technology" and that defendant TIETS demanded a three percent share; the SAC is devoid, however, of any facts showing what share was allocated to the other purported joint venturers/defendants.[7] SAC, ¶¶ 2(c)(5), 40; *see also* Dkt. No. 64, Ex. B ("[IIT] shall not have an ownership interest in the joint venture . . . .") The SAC also fails to describe how the venture's losses were to be apportioned. These failings are fatal under California and Indian law.

The claim also fails, because Plaintiffs do not demonstrate that the purported venturers enjoyed a "right of joint control." *Goodworth Holdings Inc.*, 239 F. Supp. 2d at 956 (citation omitted); Indian Accounting Standard (AS) 27 at ¶ 4(b). Plaintiffs allege that defendant

---

[7] The SAC does not specify who or what holds the remaining 25% of the equity in the proposed venture. One of the licensing agreements identifies several, non-party shareholders and purports to assign percentages to them. To the extent these additional shareholders had any role in the operation or management of the joint venture, neither the SAC or draft letter agreements suggest that IIT consented to such involvement or was informed as to the nature of their involvement. The terms of the "joint venture" are, thus, terminally vague, and a contract was not formed.

1    Chakrabarti was a Cool e-mobile cofounder and Chief Technology Officer.  Mr. Chakrabarti is

2    not IIT.  Furthermore, even if he were, a title alone does not bestow joint control upon him, as the

3    allegations demonstrate. For instance, the SAC alleges that IIT was to sign Indian Railways as

4    Cool e-mobile's first customer, yet IIT was not permitted to market the "technology" to Indian

5    Railways without Farhang's permission.  Dkt. No. 1, ¶ 43.  In addition, when Mr. Chakrabarti

6    requested permission to accept payment on the venture's behalf, Farhang denied that request.  *Id.*

7    Importantly, the draft temporary licensing agreement makes clear that Farhang would enjoy far

8    more control in the management of the proposed venture than any other purported member.  Dkt.

9    No. 64, Ex. B (". . . Ms. Farhang shall have the power to vote all shares held by the other

10   shareholders at meetings of the shareholders" on certain matters).  Plaintiffs' conclusion that IIT

11   "participat[ed] and control[led]" the venture is insufficient to salvage their second claim for relief.

12              **4.     The Alleged Contract is Unenforceable Because The Parties' Rights
                        and Responsibilities Are Not Reasonably Certain**

13

14         The purported joint venture contract also fails because the terms of the alleged agreement

15   are too vague and indefinite to be enforceable.  A contract is unenforceable unless its terms are

16   reasonably certain.  Indian Contract Act § 29; *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199,

     209 (2006).  "The terms of a contract are reasonably certain if they provide a basis for
17
     determining the existence of a breach and for giving an appropriate remedy." *Bustamante*, 141
18
     Cal. App. 4th at 209, *citing* Rest. 2d Contracts § 33(2).  The SAC does not satisfy this basic
19
     requirement for contract formation.
20
           For instance, Plaintiffs allege that IIT promised to develop and exploit the technology and
21
     secure a contract with Indian Railways.  The SAC does not, however, provide any facts showing
22
     what "develop and exploit" means, how IIT was expected to carry such a promise out, who would
23
     own the "developed and exploited" technology, or what evidence there is that IIT failed to
24
     perform its promise.  The SAC is equally unclear as to Plaintiffs' obligations.  Indeed, the SAC is
25
     completely devoid of facts demonstrating what Plaintiffs offered in exchange for IIT's offer to
26
     develop the technology.  Indian Contract Act § 25 ("An agreement made without consideration is
27
     void"); *see* Cal. Civ. Code § 1550.  For example, M.A. Mobile is not alleged to have any rights or
28

1  responsibilities under the proposed joint venture, while Farhang's contribution appears to be

2  limited to "critical business resources such as expert consulting resources, time and the other

3  manhours of Plaintiff agents . . . ." SAC, ¶ 52.  As a general rule, "'[a]n agreement that provides

4  that the . . . performance to be rendered, shall be left to the will and discretion of one of the

5  parties is not enforceable . . . ." *Badie v. Bank of America*,  67 Cal. App. 4th 779, 797 (1998).

6  Nothing in the SAC suggests that Farhang or M.A. Mobile are required to act or do anything in

7  furtherance of the alleged joint venture.  Thus, the "agreement" is illusory and unenforceable.

8          **D.       Plaintiffs' Fraud and Breach of Fiduciary Duty Claims Are Preempted**

9          Plaintiffs' Third and Fourth claims for relief should be dismissed because they are

10  California Civil Code Section 3426.7(b) "preempts common law claims that are 'based on the

11  same nucleus of facts as the misappropriation of trade secrets claim for relief.'"  *K.C. Multimedia,*

12  *Inc. v. Bank of America Tech.  & Operations, Inc*., 171 Cal. App. 4th 939 (2009).  Here, "every

13  cause of action is factually dependent on the misappropriation allegation," and thus is preempted

14  *Id.* at 959, *quoting Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826, 831

15  (2005).

16          The gravamen of Plaintiffs' breach of fiduciary duty and fraud claims is that IIT used

17  Plaintiffs' "confidential business information including global strategies . . . for its own benefit."

18  SAC, ¶¶ 74, 81(b) ("further develop and market the Technology for those Defendants' own

19  account; and misappropriate the Technology and its enhancements for the sole benefit of IITK").

20  The "conduct at the heart of th[ese claims] is the asserted disclosure of trade secrets by" IIT.  That

21  same conduct underpins Plaintiffs' fifth claim for trade secret misappropriation. Their claim for

22  breach of fiduciary duty and fraud are, thus, "based on the same nucleus of facts" as the trade

23  secret misappropriation claim.  *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 962 quoting *Digital*

24  *Envoy, Inc. v. Google, Inc*., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005).  As a result, they are

25  preempted.  *Id.*

26          **E.       Plaintiffs Fail To Show The Existence Of A Fiduciary Duty**

27          "To establish a cause of action for breach of fiduciary duty, a plaintiff must demonstrate

28  the existence of a fiduciary relationship, breach of that duty, and damages."  *Charnay v. Cobert*,

- 11 -

1  145 Cal. App. 4th 170, 182 (2006).  To this end, Plaintiffs erroneously allege that "[t]he joint

2  venture agreement, and the activities of the parties pursuant thereto . . . created a fiduciary

3  relationship between and among the parties."  SAC, ¶ 52.  No such relationship exists here.

4  Indeed, the SAC alleges that IIT refused to enter into a joint venture.  SAC, ¶ 52; *see also* Dkt.

5  No. 1, ¶ 56.  Specifically, in 2005, IIT communicated to Farhang that it was statutorily incapable

6  of partnering or entering a joint venture with her.  Dkt. No. 1, ¶¶ 56, 58, 65.  Plaintiff

7  acknowledged this fact and "accepted."  *Id*. ¶ 56.

8  Further, a fiduciary duty "applies only to situations where one partner could take

9  advantage of his position to reap personal profit or act to partnership's detriment."  *See Crouse v.*

10  *Brobeck, Phleger & Harrison*, 67 Cal. App. 4th 1509, 1551 (1998) (citation omitted).  Plaintiffs'

11  naked assertion that "IITK had a unique and superior position in the Joint Venture and as a

12  technology expert upon whom Plaintiffs relied for guidance, confidentiality and loyalty" (SAC, ¶

13  74) is precisely the type of "defendant-unlawfully-harmed-me accusations" rejected by the

14  Supreme Court.  *Iqbal* at 1949, *citing Twombly*, 550 U.S. at 555.  Indeed, the SAC demonstrates

15  that Farhang held the superior position.  Farhang's allocation of Cool e-mobile's profits would

16  have been 72% compared to TIETS 3% share.  In addition, Farhang was to have the right to vote

17  every non-IIT-related share as she saw fit.  Dkt. No. 64, Ex. B at 5.  In addition, Farhang was the

18  CEO of Cool e-mobile, while IIT held no position whatsoever.  Dkt. No. 64, Ex. B.  Farhang's

19  superior position is further evidenced by her unilateral refusal to wire funds to IIT at its request to

20  help it secure the contract with Indian Railways or to permit IIT to make presentations without

21  Farhang's prior approval.  Dkt. No. 1, ¶ 59.  Plaintiffs cannot demonstrate that IIT was in a

22  superior bargaining position with respect to the proposed relationship and, thus, their Third Claim

23  for Relief should be dismissed.

24      **F.      Plaintiffs' Fraud Claim Does Not Meet Rule 9(b)'s Particularity Requirement**

25  Plaintiffs' fraud claim should be dismissed because it does not satisfy the heightened

26  pleading requirement of Federal Rule of Civil Procedure 9(b): "in alleging fraud or mistake, a

27  party must state with particularity the circumstances constituting the fraud or mistake."  Fed. R.

28  Civ. P. 9(b); *see also Edwards v. Marin Park, Inc*., 356 F.3d 1058, 1065-66 (9th Cir. 2004); *Vess*

1    v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  Specifically, Rule 9(b) "requires

2    pleading facts that by any definition are 'evidentiary': time, place, persons, statements made,

3    explanation of why or how such statements are false or misleading." *Nuebronner on Behalf of*

4    *Mercatura Trust v. Young*, No. 95-55682, 1997 WL 168345, at *3 (9th Cir. April 8, 1997)

5    (citation omitted); *Foley v. Bates*, No. C 07-0402 PJH, 2007 1430096, at *11 (N.D. Cal. May 14,

6    2007).  In other words, Plaintiffs must include "the who, what, when, where, and how" of the

7    fraud.  *Vess*, 317 F.3d at 1106 (citations omitted).  Allegations that are vague or conclusory are

8    insufficient to satisfy Rule 9(b)'s 'particularity' requirement.  *Bly-Magee v. California*, 236 F.3d

9    1014, 1019 (9th Cir. 2001).

10         Further, where several defendants are sued in connection with an alleged fraudulent

11   scheme, a plaintiff must "inform each defendant separately of the allegations surrounding his

12   alleged participation in the fraud."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764–765 (9th Cir. 2007)

13   (citation omitted).  Plaintiffs' conclusory allegations do not satisfy this basic requirement.

14   Instead, the SAC contains numerous allegations that generally ascribe behavior to *all* of the

15   defendants or to defendant Chakrabarti, alone.  To the extent Plaintiffs allege alternatively that

16   Mr. Chakrabarti acted in his individual capacity and on IIT's behalf, the allegations are unclear.

17   For instance, at times Plaintiffs explicitly allege conduct by IIT (*e.g.*, "IITK insisted that Plaintiffs

18   create an Indian corporate entity to further the Joint Venture's initial goal . . ."), but they

19   otherwise attribute statements directly to Mr. Chakrabarti (*e.g.*, Chakrabarti transmitted an email

20   on August 24, 2004 to Plaintiff and others . . .").  SAC, ¶¶ 33, 40, respectively.  Such pleading

21   improperly leaves to the defendants the obligation to parse through the complaint to figure out

22   what it is alleged to have done and runs afoul of Rule 8's "notice" requirements, as well as 9(b)'s

23   heightened standard.  Plaintiffs' failure to plead each defendants' role in the allegedly fraudulent

24   activity is fatal to their claim.  For this reason alone, Plaintiffs' fraud claim fails.

25         **1.    Plaintiffs' Fraud Claim Fails to Satisfy Rule 9(b)'s Particularity
             Requirements**

26

27         Plaintiffs' fraud claim should be dismissed because they have not shown, with sufficient

     particularity, that IIT engaged in fraudulent activity.  The elements of fraud are (1)

28

misrepresentation of fact; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance;

and (5) resulting damage. *Engalla v. Permanente Medical Group, Inc.*, 115 Cal. 4th 951, 974

(1997).  The basis for Plaintiffs' fraud claim appears to be that the Defendants:

> a) falsely and knowingly represented to [Plaintiffs] . . . that if
> [Plaintiffs] would allow those Defendants to retain, and to
> participate in the further development of, the Technology, those
> Defendants would participate with [Plaintiffs] in a Joint Venture to
> market the Technology and its enhancements.

SAC, ¶¶ 81(a), 82.

> b) promised a Joint Venture that would mutually benefit the
> participants;

*Id.* ¶ 81(c).

> c) made false and misleading statements about Plaintiff's
> technology in publicly filed documents and in internal
> communications with the IITK engineering team.[8]

*Id.* ¶ 81(d).  These allegations do not satisfy Rule 9(b)'s particularity requirement.  First, as noted

above, they do not describe with any specificity what IIT's role was in the allegedly fraudulent

activity.  Second, Plaintiffs do not provide the requisite "explanation of why or how such

statements are false or misleading" or in what way Plaintiffs reasonably relied on them.

*Nuebronner*, No. 95-55682, 1997 WL 168345, at *3.  In fact, as best as IIT can tell, Plaintiffs

ascribe the following statements to IIT in support of their fraud claim:

- that a Joint Venture was already in place regardless of the
  formalities of memorializing the Joint Venture with
  appropriate documentation, SAC, ¶ 33(e);

- that forming an Indian company and completing the Joint
  Venture would still take time, SAC, ¶ 37;

- if the permission was not granted immediately, Cool e-
  mobile would lose the opportunity to present the
  Technology at the upcoming meeting with the Indian
  Railways, *id.*; and

- The final company formation will take time.  If we do not

---

[8] These statements cannot form the basis of a fraud claim.  Plaintiffs do not allege that the
statements were made to them or that they relied on any such public statements to their detriment.
In fact, Plaintiffs appear to be referring to statements IIT made in a complaint filed in India, in
which IIT describes the development work it performed at Farhang's request and without
remuneration.  Those statements cannot form the basis of tort liability, as they are privileged
pursuant to Cal. Civ. Code § 47.

use this time now, we will lose the early customers.

*Id.* Nothing in the SAC or the record suggests that these statements are false or misleading. Nor do they suggest that IIT intended to defraud Plaintiffs. In fact, these statements are entirely consistent with IIT's desire to see the project to fruition. They do not necessarily suggest that IIT sought to fraudulently lure Plaintiffs into disclosing their secrets for IIT's benefit. Consequently, not only do they fail to satisfy Rule 9(b), they do not demonstrate entitlement to relief. *Iqbal*, 129 S. Ct. at 1949.

Moreover, to the extent Plaintiffs allege they relied on IIT's "participation" in the proposed business deal, Plaintiffs' fraud theory fails. As Plaintiffs acknowledged, in May 2005, IIT reminded Plaintiffs that it was "barred, under Indian law, from participating in the Joint Venture." SAC, ¶ 55(c)(1). Farhang, alleges that she "accepted the modification." Dkt. No. 1, ¶ 56. Despite knowing that IIT could not participate, Plaintiffs continued to negotiate a licensing agreement to allow IIT to market a product to Indian Railways. SAC, ¶ 41. Notably, the SAC is devoid of any suggestion that, after IIT indicated it could not officially participate, Plaintiffs demanded that IIT discontinue its work on the technology enhancements or asked IIT to return the technology.

As the complaint fails to describe any statements IIT made to "lull" Plaintiffs into negotiating a proposed business deal, or how they were false, Plaintiffs fail to meet Rule 9(b)'s particularity requirement. *Foley*, 2007 WL 1430096, at *11. Their claim should be dismissed.

### G.   Plaintiffs Fail To State A Claim For Trade Secret Misappropriation

Plaintiffs allege that IIT misappropriated their trade secrets. SAC, ¶ 101. Their claim must be dismissed because Plaintiffs have not alleged facts sufficient to show a) they own the alleged trade secrets, b) that IIT misappropriated any purported secrets, or c) that Plaintiffs suffered harm as a result of IIT's actions. Cal. Civ. Code § 3426.1, *et seq.* (describing elements of trade secret misappropriation); *Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal. 4th 215, 220-23 (2002).

### 1.   Plaintiffs Lack Standing Under Trade Secrets Act

In order to sustain their trade secrets claim, Plaintiffs must demonstrate they own the

1    alleged secrets. *See generally, Memry Corp. v. Ky. Oil Tech., N.V.*, 2006 U.S. Dist. LEXIS 94393,

2    *24-26 (N.D. Cal. Dec. 18, 2006).  Plaintiffs' ownership of the alleged "Technology" is

3    questionable and, thus, their trade secret claim must be dismissed.

4           Where allegations in an amended complaint contradict those in a prior complaint, the

5    Court need not accept the new alleged facts as true, and may, in fact, strike the changed

6    allegations as "false and sham." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324 (9th Cir. 1998).

7    As discussed above, in her original complaint, Farhang alleged that she and her "affiliate" TNR

8    "own full right and title to the intellectual property and other property described herein."  Dkt.

9    No. 1, ¶ 5; *see also id.* ¶ 32.  In response to IIT's first motion to dismiss—in which it argued

10   Farhang lacked standing to sue because IIT entered into an NDA with M.A. Mobile (who was not

11   mentioned in the original complaint)—Farhang amended her complaint, replacing all mention of

12   "TNR" with "M.A. Mobile."  In each complaint, however, Farhang alleged that the company was

13   the owner of the "full right and title to the intellectual property." *Id.*; see also FAC, ¶ 5.  Because

14   the original complaint was written a year before the FAC and two years prior to the SAC, it

15   "represented a fresher recollection . . . and clearly constituted a comprehensive statement of

16   Plaintiff's allegations and claims." *Bradley,* 136 F.3d at 1324-25.  The Court should, therefore,

17   reject "allegations in the second amended complaint as a 'sham.'" *Id.*  Like the *Bradley* plaintiff,

18   Farhang "could not, in good faith, have so diametrically reversed [her] recollection and position

19   between the time of the filing of [her] original complaint and that of [her] second amended

20   pleading." *Id.* at 1324 (citations omitted).  Because TNR rather than Plaintiffs allegedly own the

21   trade secrets at issue here, Plaintiffs lack standing to sue for the alleged misappropriation.  For

22   this reason alone, Plaintiffs' Fifth Claim for Relief should be dismissed.

23          **2.      Plaintiffs Fail to Allege the Existence of a Trade Secret**

24          Even if Plaintiffs had standing to bring a claim, they have not alleged that a trade secret

25   exists.  According to the SAC, Plaintiffs allege that the "Technology and its enhancements" and

26   other "Confidential Information" constitute their trade secrets.  SAC, ¶¶ 98-100.  A trade secret is

27              information, including a formula, pattern, compilation, program,
             device, method, technique, or process, that derives independent
28           economic value, actual or potential, from not being generally

                                        - 16 -

known to the public or to other persons who can obtain economic
value from its disclosure or use, and is the subject of efforts that are
reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).  Plaintiffs allegations do not satisfy this threshold standard because

the SAC does not: 1) describe the alleged trade secrets with particularity, 2) demonstrate that the

alleged trade secrets possess independent economic value, or 3) show that Plaintiffs took

reasonable efforts to maintain secrecy.

### a.      **Plaintiffs Fail To Identify Their Trade Secrets With Particularity**

The SAC does not contain facts sufficient to identify Plaintiffs' alleged trade secrets.

According to the SAC, the alleged trade secrets include the "Technology and enhancements"  and

other "Confidential Information."  SAC, ¶ 100.  To state a claim, however, Plaintiffs must

"describe the subject matter . . . with sufficient particularity to separate it from matters of general

knowledge in the trade or of special knowledge of those persons who are skilled in the trade."

*Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968).  Moreover, the complaint must

include more than "circumlocutions and innuendoes, and hints that the so-called secret process

[or possessed confidential information] had something to do with" Plaintiffs' TTE product.  *Id*. at

252.  "The bare conclusion that plaintiff has a 'secret process' is insufficient."  *Id*.

Plaintiffs' allegations do not satisfy this basic prerequisite.  The SAC does not describe

IIT's "enhancements" at all.[9]  Further, Plaintiffs' reference to a catch-all "Confidential

Information" category fails to identify any particular or specific trade secrets allegedly shared

with IIT.  SAC, ¶ 27.  Instead, it is a laundry list of potential trade secrets.  Some of the items

listed could not even have existed during the period in which IIT had access to Plaintiffs'

technology (*e.g.*, prototypes, customer lists, and reports on past performance).  SAC, ¶ 27.  Even

if some of the purported information did exist, the original complaint suggests that the only

information IIT obtained from Plaintiffs was a CD containing unspecified "IP."  Dkt. No. 1, ¶ 80.

Plaintiffs have not alleged more than an "innuendo" that something secret exists.  Thus, their

claim must be dismissed.

---

[9] As discussed below, Plaintiffs do not own the "enhancements" developed by IIT and thus
cannot claim them as a trade secret.

- 17 -

1

2

    **b.**  **The Alleged Secrets Do Not Have Independent Economic Value**
        **Because they are Confidential**

3

   Plaintiffs fail to show the Technology possessed independent economic value because of

4

its secrecy and, thus, their claim must be dismissed.  Plaintiffs' complaint misconstrues the

5

requirement that a trade secret derive its value from "not being generally known to the public . . .

6

," *Cadence*, 29 Cal.4th at 221, and instead alleges that the technology "was particularly valuable

7

because it not only enables fluid mobile access of data through handheld devices, but also enables

8

*dynamic, real-time* access and parsing of data that is not dependent upon continuous wireless data

9

connection."  SAC, ¶ 25.  The complaint misses the point and, consequently, Plaintiffs have not

10

sufficiently alleged that the "trade secrets" hold the requisite independent economic value.

   Moreover, far from alleging that the secrecy of the technology made it valuable, the SAC

11

demonstrates that, at least by August 2005, "other competing technology could achieve similar

12

objectives achieved by the Technology," and that there was "significant competition in the mobile

13

space to achieve similar objectives."  SAC, ¶¶ 98, 99; *see also* Dkt. No. 1, ¶ 64.  Plaintiffs'

14

assertion that IIT and Indian Railways expressed strong interest in the Technology is consistent

15

with the Technology being widely known and available, and thus does not suggest that its alleged

16

secrecy gave it any specific value.  SAC, ¶ 99.  The mere possibility that Plaintiffs' alleged trade

17

secrets were valuable is insufficient to withstand a motion to dismiss.  *See Iqbal*, 129 S. Ct. at

18

1949.  This claim should be denied.

19

20

    **c.**  **Plaintiffs Fail to Show that They The Alleged Trade Secrets**
        **Were The Subject of Reasonable Efforts to Maintain Secrecy.**

21

   Even if Plaintiffs had sufficiently pled ownership of trade secrets that derive value from

22

their secrecy, they have not demonstrated that the "Technology" and related Confidential

23

Information were "the subject of efforts that are reasonable under the circumstances to maintain

24

[their] secrecy."  Cal. Civ. Code  § 3426.1(d).  Contrary to the conclusory allegation that

25

Plaintiffs "[took] great care not to disclose [the trade secrets] to individuals who were not bound

26

by confidentiality obligations, or potential competitors," (SAC, ¶ 103), Farhang admits that she

27

disclosed, without benefit of a confidentiality agreement, the "confidential business plan" to a

28

director of IBM (Dkt. No. 1, ¶ 76), the "mobile markup language" to Sun (SAC, Ex. A), and a

key marketing strategy to defendant Chakrabarti. *Id*. (". . . my vision was to build a very inexpensive hand held device and give that away (for free) in order to gain market share"). Plaintiffs also admit that they provided technical details to the Indian Railways and that Farhang engaged in discussions with "Sun, Microsoft, Motorola and Sprint," all of which were "interested in the technology." SAC, ¶ 53, Ex. A. These communications are hardly indicia of efforts to maintain secrecy.

### 3.     IIT Did Not Misappropriate Any Trade Secrets

#### a.     Farhang, not IIT, is Responsible for the Alleged Dissemination of Confidential Information

Plaintiffs' Fifth Claim for Relief must be dismissed because Plaintiffs fail to allege facts showing that IIT misappropriated their alleged trade secrets. Misappropriation is defined as

> Acquisition of a trade secret of another by a person who knows or
> has reason to know that the trade secret was acquired by improper
> means; or (2) Disclosure or use of a trade secret of another without
> express or implied consent by a person who: (A) Used improper
> means to acquire knowledge of the trade secret; or (B) At the time
> of disclosure or use, knew or had reason to know that his or her
> knowledge of the trade secret was (i) Derived from or through a
> person who owed a duty to the person seeking relief to maintain its
> secrecy or limit its use; or (ii) Acquired under circumstances giving
> rise to a duty to maintain its secrecy or limit its use; or (iii) Derived
> from or through a person who had utilized improper means to
> acquire it; or (C) Before a material change of his or her position,
> knew or had reason to know that it was a trade secret and that
> knowledge of it had been acquired by accident or mistake.

*Cadence*, at 220-221, citing § 3426.1(b). Plaintiffs allege that "Defendants, during and after May, 2006, and possibly earlier, disclosed or used the Technology and its enhancements without the express or implied consent of Plaintiffs . . . ." SAC, ¶ 100.[10] Plaintiffs make several conclusory statements alleging IIT's improper disclosure, none of which finds support in facts and all of which fail to meet the minimum threshold of facial plausibility. *Iqbal*, 129 S. Ct. at 1949, *citing Twombly*, 550 U.S. at 570.

For instance, Plaintiffs allege that IIT disclosed trade secrets to "other corporate entities . . . who were also seeking to provide a similar solution to the Indian Railways," as well as to

---

[10] Plaintiffs do not (and cannot) allege that IIT acquired their alleged trade secret by "improper means." Plaintiffs "sent the IP via Federal Express to IIT" after it emailed "the signed NDAs on or about August 12, 2003." Dkt. No. 1, ¶ 28.

"members of the IITK community" and "members of TIETS." SAC, ¶¶ 100-101. And, although Plaintiffs allege that "there is significant evidence" that IIT made these disclosures improperly, (SAC, ¶ 59), the complaint is completely devoid of any such facts. Instead, the SAC merely implies that IIT disclosed information to IBM, but does not allege that it actually did so. SAC, ¶¶ 47, 49. Indeed, Farhang's admission in the original complaint belies any suggestion that IIT had a role in disseminating information to IBM. Specifically, Farhang alleged that in May 2006, her Indian counsel sent "a copy of Cool e-mobile's confidential business plan (marked as such) and copies of various legal documents . . . to the Members of the Governing Board of the Incubation Society, one of whom was a Mr. P. Bhattacharya, D. [Deputy] General Manager, IBM Global Services, IBM India Pvt Ltd." Dkt. No. 1, ¶ 76.

In addition, the original complaint confirms that Farhang (and her "affiliates"), in June 2005, met with "a top Minister of the Indian Railways to discuss Cool e-mobile and the IP," which led to an "invitation to make a formal presentation to the relevant decision making committee." Dkt. No. 1, ¶ 60. Furthermore, Farhang's "COO" sent "a proposal to the Indian Railways in compliance with their invitation to do so."[11] Dkt. No. 1, ¶ 79.

Plaintiffs also allege that IIT "disseminated information about the Technology to third parties working on similar mobile technology," that "shockingly similar technology has surfaced in the hands of key competitors who were sitting on the IITK incubation board," and that "shockingly similar technology, drawing directly off the trade secrets disclosed to Defendants, has appeared in the very same vertical market that Defendants were targeting." Dkt. No. 1, ¶¶ 60, 65. In light of Plaintiffs' admissions of unsolicited, unprotected disclosures, these allegations are insufficient to raise Plaintiffs' right to relief above "the speculative level." *Twombly*, 550 U.S. at 555.

---

[11] Plaintiffs also suggest that IIT disclosed trade secrets to Indian Railways without Plaintiffs' authorization. In fact, Farhang authorized IIT to meet with Indian Railways. Dkt. No. 1, ¶ 43. Although Plaintiffs now suggest they were duped into permitting such disclosure, the record does not support their theory because, as Plaintiffs admit, IIT never met with Indian Railways. Dkt. No. 1, ¶ 55. Instead, Plaintiffs concede that the "first real meeting with the Indian Railways only took place because Plaintiff's agent, seeing the unusual delay and strange lack of response by the IITK Team, decided to approach Indian Railways on her own for the benefit of the Joint Venture." SAC, ¶ 53.

1    Indeed, Farhang approached IIT to collaborate on the proposed venture at a time when

2    "there was significant competition in the mobile space to achieve similar objectives," and "it was

3    known to Plaintiff . . . that other competing technology could achieve similar objectives achieved

4    by the Technology."  SAC, ¶ 98-99.  Plaintiffs thus fail to state a claim for misappropriation

5    through disclosure.

6           **b.      IIT Cannot Not Misappropriate its Own Information**

7           Plaintiffs allege that IIT admitted that it misappropriated Plaintiffs' trade secrets by

8    developing "other 'interesting applications'" and building a "mobile technology platform" despite

9    having not been authorized to do so.  SAC, ¶ 100.  This purported "admission" was, in fact, a

10   complaint by IIT that it expended significant resources over three years developing "interesting

11   applications" at Farhang's request and without compensation.  Gambhir Decl., Ex. A ¶¶ 20, 22.

12          Moreover, despite Plaintiffs' conclusory allegations that "[a]ll such applications

13   developed from the Technology should be the property of Plaintiff, and were clearly

14   misappropriated by Defendants for their sole benefit," no plausible allegation supports this legal

15   conclusion.  First, Plaintiffs offer no facts suggesting the parties agreed Plaintiffs would own

16   IIT's "enhancements."  At best, the parties appear to have considered transferring ownership of

17   the end product to Cool e-mobile, if and when a joint venture was formed.  Dkt. No. 64, Exs. A,

18   B.  The parties did not form any such relationship, nor did IIT sign any agreements purporting to

19   assign to Plaintiffs its ownership rights in its work.  Instead, the terms of the NDA expressly

20   permit IIT to independently develop and use its own proprietary information.  Dkt. No. 45, Ex. B.

21   Plaintiffs may not, therefore, unilaterally claim IIT's "interesting applications" as their own.

22          Second, because IIT did not assign its rights in its development work, it cannot be liable

23   for misappropriating it.  And, even if it could, there is no evidence whatsoever that IIT has used

24   Plaintiffs' "technology" or its own "interesting applications" for anyone's benefit – including its

25   own.  Plaintiffs' trade secret misappropriation must be dismissed.

26   **H.      Plaintiffs Have Not Established That They Were Harmed As A Result of IIT's Actions**

27          Even if Plaintiffs satisfactorily alleged that IIT breached the NDA or misappropriated

28

1    alleged trade secrets, they cannot show that IIT's actions were a substantial factor in causing

2    Plaintiffs' injuries.  *See Tate v. Canonica*, 180 Cal. App. 2d 898, 907 (1960).  As discussed

3    above, Plaintiffs themselves disclosed confidential information and "business plans" to IBM's

4    Deputy General Manager, (Dkt. No. 1, ¶ 76), the "mark up language" to Sun, Microsoft, Motorola

5    and Sprint (SAC, Ex. A), and technical details to "a top Minister of the Indian Railways." Dkt.

6    No. 1, ¶¶ 60, 79.  Furthermore, Plaintiffs admit that there was "significant competition in the

7    mobile space" and that "other competing technology could achieve similar objectives achieved by

8    the Technology." SAC, ¶¶ 98, 99.  Thus, any injuries allegedly incurred by Plaintiffs, including

9    the alleged failure to secure Indian Railways as a customer, (SAC, ¶ 103), was self-inflicted or a

10   result of the competitive marketplace, rather than IIT's acts.

11   **IV.    CONCLUSION**

12          For the reasons stated herein, Plaintiffs' SAC should be dismissed with prejudice.

13   Dated: March 22, 2010                          ORRICK, HERRINGTON & SUTCLIFFE LLP

14

15                                                  /s/ I. Neel Chatterjee /s/
                                         _____
16                                                  I. NEEL CHATTERJEE
                                                    Attorneys for Defendants
17                                        INDIAN INSTITUTE OF TECHNOLOGY
                                                    KHARAGPUR
18

19

20   OHS West:260879625.3

21

22

23

24

25

26

27

28