# EXHIBIT A

G. A. NO.          OF 2009

C. S. NO.  171 OF 2009

IN THE HIGH COURT AT CALCUTTA

ORDINARY ORIGINAL CIVIL JURISDICTION

ORIGINAL SIDE

INDIAN          INSTITUTE          OF

TECHNOLOGY,   KHARAGPUR,   an

authority  created  under  the  Indian

Institute of Technology Act, 1961, P.O.

IIT,   Kharagpur,   District:   West

Midnapur  outside  the  jurisdiction  of

the Hon'ble Court.

.......     PETITIONER

- VERSUS –

1.   Ms. Mandana D. Farhang, having

her office and carrying on business  at

6A,  Kiran  Shankar  Roy  Road,  2nd

Floor,  Kolkata – 700  001,  within  the

jurisdiction of the Hon'ble Court.

2.   Ms.   Varsha   Singh,   Chief Operating Officer, Cool E-MOBILE Pvt. Limited and working for gain at 6A, Kiran Sankar Roy Road, 2nd Floor, Kolkata   -700001,   within   the jurisdiction of the Hon'ble Court;

3.   Cool  E-MOBILE  Pvt.  Limited  a company   registered   under   the Companies  Act,  1956,  having  its registered office at 6A, Kiran Shankar Roy Road, 2nd Floor, Kolkata – 700 001, within  the  jurisdiction  of  the Hon'ble Court.

....RESPONDENTS

To

The  Hon'ble  Surinder  Singh  Nijjar  the  Chief  Justice  and  His Companion Justices of the said Hon'ble Court.

The  humble  petition  of  the  petitioner abovenamed most respectfully –

3

<u>S H E W E T H :</u>

1.      The petitioner is an Educational Institution and does not function on profit motive. The said Institute at Kharagpur is the first institute among the IITs and was established in 1950 as Government Institution. The Petitioner was incorporated under the Indian Institute of Technology (Kharagpur) Act, 1956. With a view to declare certain Institutions apart from the Petitioner as Institutions of National Importance such as Indian Institute of Technology, Bombay, the Indian Institute of Technology, Kanpur and the Indian Institute of Technology, Madras, Institutes of Technology Act, 1961(hereinafter referred to as the said Act) was enacted by way of Central Legislation. Thereafter, by Institute of Technology Act, 1963 (29 of 1963) Section 2 of the said Act was amended by bringing the College of Engineering and Technology, Delhi within the fold the said Act as Institute of National Importance. The matter was coordinated through Prof. Partha Pratim Chakrabarti, Dean (Sponsored Research Industrial Consultancy Centre) of the Petitioner and Prof. Pallab Dasgupta, of the Department of Computer Science & Engineering of the Petitioner.

2.      In November 2002 and again in April 2003 the respondent no.1, a resident of USA and presumably a citizen of USA, on her own

approached through e-mail Professor Partha Pratim Chakrabarti (for short 'PPC'), a member of Faculty of Computer Science and Engineering, IIT, Kharagpur, to develop the technology in the area of Mobile Note Book representing that she possessed actual Source Code and Patent Documents and wanted the same to be developed into a software for mobile applications.

3.      The potency of a Source Code cannot be examined until the same is received on a CD (Compact Disc) and examined in the Computer.  The usual practice is to sign a mutual Non Disclosure Agreement (for short 'NDA') between the person claiming to be the owner and the receiver who has to work on the same, before handing over the CD.

4.      The respondent no.1 wanted a mutual NDA to be signed before sending the CD to Prof. PPC at IIT, Kharagpur.  The NDA as prepared by the respondent no.1 was sent by email to IIT, Kharagpur and in good faith was signed by PPC and Prof. Pallab Dasgupta and in August 2003 sent back to respondent no.1 for her signature with the request that the respondent no.1 upon signing of NDA and sent one copy thereof to IIT, Kharagpur.

A copy of the e-mail containing such request is annexed hereto and marked with the **letter "A"**.

5.  Respondent no.1 upon receipt of the said NDA signed by PPC on 08.09.2003 sent through Federal Express a CD in a sealed envelop which was received by PPC in Kharagpur on 21.09.2003.

6.  PPC constituted a team comprising of **Prof. Pallab Dasgupta** and four students headed by PPC himself.

7.  PPC in good faith and expectation that NDA will be signed by respondent no.1 took up the work of examination of the CD.

8.  Upon examination it was discovered by PPC and his team that the said CD was incomplete and suffered from the following deficiencies:

  (i)  The Code was incomplete with big gaps;

  (ii)  It did not compile into an executable form which could work.

9.      The aforesaid deficiencies were communicated to respondent no.1 by PPC through e-mail dated 23rd November 2003 and again on 5th November 2003. The respondent no.1 first by e-mail dated 2nd November 2003 admitted that there was still a good deal of work to be done and by her e-mail dated 5th November 2003 assured that respondent no.1 would try to find a code where there were executable demos.

10.     In the circumstances, the said team led by PPC started completing the Code and enhancing the CD sent by respondent no.1. Thereafter, the said team also conceived the idea of developing an application software to be used for Railway system.  The work took more than two years.  In the meantime, a soft copy of the demo was prepared and forwarded to the respondent nos. 1 and 2 through e-mail and was successfully loaded and confirmed to be working on July 2, 2005.

        A copy of the email related to successful demo loading is annexed hereto and marked with the **letter "B"**.

11.     In the meantime, on or about 07.07.2004 respondent no.1 without signing NDA and sending it to the plaintiff, started negotiation

for execution of a Letter of Intent and sent a draft thereof on 07.07.2004 a copy whereof is annexed hereto and marked with the letter "C". Respondent no.1 however replaced the said Letter of Intent by a fresh and different Letter of Intent on 08.10.2005, which was inconsistent in terms of claim of ownership of the patent and could not be accepted.

A copy of the said fresh and different letter of intent is annexed hereto and marked with the letter "D"

12.    While the negotiation for finalization of the Letter of Intent was going on, the respondent no.1 by her letter dated 21.10.2005 asked the petitioner to defend the patent ownership which had so far been claimed by her and on the faith whereof PPC and his team had started to work on the said CD. In answer to queries, respondent no.1 explained that the Patent of which she claimed to be the owner had been applied for grant but was rejected by the Patent Department of USA.

13.    The petitioner thus discovered that the claim of ownership of the patent as made by respondent no.1 was false and misleading.

8

14.    In October 2005 it came to the knowledge of the Petitioner that the patent was already in a rejected state since 2004 and the Petitioner was subsequently asked to help defend the original claim. It also revealed that the Applicant of the Patent was Lawrence Hartstook et al. However the Respondent No.1 claimed to have rights of the patent. The Petitioner, through M/s. Sandersons and Morgans asked Respondent Nos. 1 and 2 about the details of ownership of technology by asking for ---'the details of the patent status of the "patent pending technology" and the owners and assignees of the patent, if any', but received no reply to the same. In this view the ownership of the technology remained unclear to the petitioner and on receipt of new version of LOI mentioning another party to be the owner of the technology, the ownership issue was found to be completely inconsistent. In view of this, the right of Respondent No. 1 with respect to the mutual NDA is also in question. Furthermore, the Respondent No. 1 did not sign the NDA and sent back NDA signed by her.

15.    In March 2006 the Respondent No.1 through her UK based lawyer Mr. Ron Jenkins informed that the patent application of the respondent No.1 was again rejected. On being questioned on these issues, the Respondent No.1 and her UK based lawyer, Mr. Ron

Jenkins, began to intimidate the Petitioner and its team. The Petitioner provided a reply for the Patent Office, but as on date the status of patent has not yet been communicated by the respondent No.1.

16.    Finding that the proposed LOI materially defective including confusion regarding ownership of technology, the Petitioner decided not to proceed with the LOI and intimated the respondent No.1 accordingly.

17.    The Respondent No.1 began to harass the Petitioner by sending threatening letters through her lawyers and complaints to police to try and coerce the Petitioner and their team to do her will by asking them to sign up several documents and provide them with all rights to technology developed by the Petitioner. However, suitable rebutting reply was provided to them by the Petitioner through the Late Dr. P C Chunder, Solicitor and Advocate and the petitioner terminated all negotiations in this matter in June, 2006.

A copy of the said letter dated 7th June, 2006 is annexed hereto marked with the **letter "E"**

18.     The petitioner and his team have not received any amount whatsoever from the respondent no.1 for the research and development work done by them.  The Petitioner was not interested to proceed with further work and incur further expenses for further developing the said CD of respondent no.1.

19.     By a letter dated 31st August 2006 petitioner through its Advocate,  Shri Ranjan Kumar Sarkar, although not obliged to, in a bona fide gesture, returned the CD as supplied by the respondent no.1 as also the CD with the enhanced software as developed by the said team headed by PPC in course of last two years to the respondent no.1 through her designated Indian lawyer, namely Singhania & Company under registered post and the lawyer of the respondent no.1 by a letter has acknowledged receipt of the same.

        A copy of the said letter dated 31st August, 2006 is annexed hereto and marked with the **letter "F"**

20.     In August 2006, the Petitioner also returned all materials provided to it by the Respondent No.1 to the respondent No.1 through her designated Indian Lawyers and agent at that time, namely

Singhania & Co and Respondent No. 1 has received the same. During this long period from 2003, the Petitioner through its highly qualified faculty members and students had immensely developed the technology provided initially by the Respondent No.1 (which was originally very primitive and rudimentary, incomplete and not working) to an advanced level and developed many interesting applications, especially for Indian scenarios like railways. After the negotiation came to a close, the Petitioner provided the Respondent No.1 a copy of the significantly enhanced technology (including source code) developed by the Petitioner but categorically told her not to use it without permission of the Petitioner. The lawyers of the Respondent No.1 acknowledged receipt of the same in October 2006 and the Petitioner's lawyers replied to her in November 2006. The said technology as contained in the CD of the Respondent No. 1 developed by the Petitioner on the software helps the following:

a. Enables rapid prototyping and deployment of applications.

b. Java based GUI tool with drag and drop support to add components to applications.

c. Allows seamless integration to backend/legacy enterprise database systems.

d. Provides easy synchronization of date between the handheld and the backend server.

e. Its flexibility can e exploited here to get user customized view of stored data.

f. Extends the role of a browser by processing local data.

g. This enables Task Applications running on the handheld device to operate seamlessly even when client is offline.

Copies of the abovementioned letters are annexed hereto and marked with the letter "G".

21.   The above platform can now be used for quickly developing a large number of unique applications. The following three very interesting applications were developed at 'lab-scale' or 'bench-scale' or 'prototype' level as it may be called

a.   **Hand-held TTE Assistant for Railways**: The TTE Assistant will enable the TTE to perform his duties seamlessly using the Assistant with minimal paper work facilitating.

i.   Current Reservation

ii.   RAC  Clearance

    iii.    Waiting List

    iv.    On Board Ticketing Service

    v.    Real Time Train tracking

    vi.    Value additions – List of Doctors, Station Info etc.

**b.**    **Billing Application for Power Company:** It was planed to be used for billing application through a Browser Interface provided to the user who is doing the billing job. It facilitates:

    i.    Entering Meter readings and transmitting the same on site

    ii.    Billing.

    iii.    Printing receipt.

    iv.    Extensions to

**c.**    **Generic Multi-Utility Salesperson :** It was planned to have a generic salesperson who has franchise from a number of diverse organizations like medical companies, insurance companies, etc to go to client sites and perform multi-functional activities.

22.    The aforesaid work of development of the CD of the respondent no.1 was carried out by the said team engaged by the petitioner lawfully and not intending to do so gratuitously. Costs and

expenses involved in the aforesaid **work of development which was**
initiated at the request of respondent no.1 and continued till the end
of June 2006 and the outcome of the work in the form of the software
contained in the CD was prepared in August 2006 and made over to
the respondent no.1 in August 2006.  Copy whereof is annexed hereto
and marked with the **letter "H".** Particulars of cost and expenses are
given herein below:

| | |
|---|---|
| Expenses for manpower development | Rs. 4,94,40,000 |
| Equipment, Accessories, Computational support | Rs. 2,50,00,000 |
| Constituency, Meetings, Travel | Rs.      9,30,000 |
| Institute overheads | Rs. 2,26,11,000 |
| Taxes for Government (Service Tax) | Rs. 1,27,37,530 |
| **Total** | **Rs. 11,07,18,530** |

(Rupees Eleven Crore Seven Lakh Eighteen Thousand Five Hundred
Thirty)

23.     The respondent No.1 has not made any contribution towards
the aforesaid costs and expenses of development work. The plaintiff
has special interest and right in respect of the said developed CD. The
respondents to are in any event nor entitled to use or exploit the

developed CD without first reimbursing the plaintiff of the costs and expenses for development work mentioned above.

24.       It is also revealed from further investigation that immediately after receiving the technology from the Petitioner, in December 2006, Respondent No.1 submitted an application in India for opening up a company called "Cool e- Mobile Private Limited", the Respondent No.3 herein with the same general scope as that of what was planned earlier. The Respondent No.3 was incorporated under the Companies Act, 1956 in India in January 2007 with Corporate Identity No.U72900WB2007FTC112504 in Registrar of Companies, West Bengal. It reveals from the Memorandum of Association of the Respondent No.3 that the Respondent No.1 personally owns 99% of equity shares of the Respondent No.3 and she is a Director thereof. There are two other Directors, one of whom owns 1% share and the shareholding of the third person who was included after formation of the company, is not known. This company has been declared to be a subsidiary of a foreign company. The main objectives as enumerated in its Memorandum of Association of the respondent no 3 are, inter alia, as follows:

"To install, design, develop, manufacture, sell, buy, maintain, operate and provide mobile computing and telecommunications applications and services of all types including but not limited to mobile and telecommunications network systems, software programmes and applications, systems for communications, electronic products, components, accessories thereof and all types of hardware, machinery, instruments and accessories required for achieving the above objects."

A copy of the said Memorandum of Association of the Respondent No.3 is annexed hereto and marked with the **letter "I"**

25.    Respondent no.1 is holder of 99% of issued share capital of respondent no.3. Respondent no.3 is the alter ego of respondent no.1. Respondent no.1 is carrying on business through the agency of respondent no.3 at 6A, Kiran Shankar Roy Road, Kolkata – 700 001, within the aforesaid jurisdiction.

26.    The petitioner has reason to believe, apprehend and state that respondent nos. 1 and 2 have wrongfully assigned the technology developed by the petitioner's said team to respondent no. 3 for exploitation without the consent of the plaintiff.

27.      Respondent no.1 is wrongfully claiming to be the owner of the software technology developed by the petitioner's said team which has been handed over in a CD to the respondent no.1 through her lawyer as mentioned hereinbefore.   The said CD contained the following essential matters:

(i)        Source Code;

(ii)       Demonstrations;

(iii)      Documentation.

An photo- copy of the said ~~developed~~ CDs is annexed hereto and marked with the **letter "J"**. Photograph of the CD of Respondent no.1 and photograph of the CD as prepared by the petitioner and its team and handed over to the respondent no.1 are annexed hereto and identified **"X"** and **"Y"** respectively.

28.      The respondent no.1 however is wrongfully through the respondent no.3 disputing the petitioner's ownership of the aforesaid software developed by the petitioner a gist whereof is set out in Annexure "H" hereto and the photographs of the CDs  as "X" and "Y" hereto. Accordingly, petitioner claims declaration as prayed for.

29.      It was and is incumbent upon respondent no.1 and /or her assign or nominee including respondent no.3 not to use the said CD

sent by the petitioner and the developed software contained therein without the prior permission of the petitioner in any manner whatsoever including demonstration to others or additional development of the same for any particular application. The respondent no.1 has not sought any permission of the petitioner and should be restrained from using the said Software developed by the petitioner. The respondents are threatening to invade petitioner's right to property and the invasion is such on cannot compensated adequately in money. Injunction is also necessary to avoid multiplicity of judicial proceedings.

30. In utilizing the software developed by the Petitioner, the respondents invaded the Petitioner's absolute right for possessing the said software developed by the Petitioner and unless the Respondents are restrained from utilizing the said software and directed to return the same to the Petitioner, the Petitioner would suffer irreparable loss and prejudice. Invasion is such that compensation in terms of money would not afford adequate relief to the Petitioner. Injunction as prayed for herein is also necessary to avoid multiplicity of judicial proceedings.

31. The Respondent Nos.1 to 3 and each of them in league with each other have fraudulently and unauthorisedly utilized the software

developed at the Petitioner institute without the permission of the Petitioner for their commercial gain at the initiative of the Respondent No.1, who deliberately did not conclude the deal by executing the NDA and prevented finalization of LOI, by providing incomplete and inconsistent information of the technology and its ownership.

32.     After receiving the developed technology and the CD in August 2006, the respondents wrongfully claimed ownership thereof and initiated efforts to utilize and market the same without seeking permission of the petitioner. In so far as the petitioner is aware, the respondents have not yet succeeded in marketing the technology developed by the petitioner, but unless restrained may succeed in near future.

33.     The said CD and technology as developed by the petitioner as aforesaid are property of the petitioner and are of special value. The petitioner is entitled to return of the said CD with technology as developed by the petitioner and damages @ Rs. 50000.00 (Rupees Fifty Thousand only) per diem for wrongful detention thereof.

34.     The Petitioner received summons on April 8, 2009 from United States District Court, Northern District of California along with a copy of complaint for damages in a case filed by the Respondent

No.1 against amongst the others petitioner herein for alleged breach of NDA which is not a concluded agreement and is not binding on the Petitioner for the reason as stated hereinbefore. Your petitioner craves reference to the said complaint of the respondent No.1 at the hearing.

35.      In the circumstances, the petitioner filed the above suit, inter alia for the following reliefs:

"The Plaintiff prays leave for under Order II Rule 2 of the Code of Civil Procedure and claims :-

(a)      A declaration that there has been no concluded Non Disclosure Agreement between the plaintiff and defendant no.1 and the said Non Disclosure Agreement as relied upon by the defendant no.1 is not valid or binding on the petitioner;

(b)      A declaration that plaintiff is the owner of the software developed by the team engaged by the plaintiff and contained in the Compact Disc which is Annexure – "D" hereto and particulars whereof have been given in Annexure –"D" hereto;

(c)     Permanent injunction restraining the defendants and each of them whether by themselves or by their members or servants or agents or assigns howsoever from utilizing the said software developed by the Plaintiff without the written permission of the Plaintiff;

(d)     Decree for return of the software developed by the Plaintiff mentioned in prayer (b) hereof and compact disc of the Plaintiff by the Defendants ;

(e)     Damages and / or compensation for wrongful detention of the software developed by the plaintiff @ Rs. 50000.00 (Rupees Fifty Thousand only) per diem or such rate as the Hon'ble Court may deem fit upon enquiry from September 2006 until return thereof;

(f)     Injunction;

(g)     Costs;

(h)     Other reliefs."

The petitioner craves leave to refer to the plaint at the time of hearing of this petition, if necessary.

36. Your petitioner states that there is a strong prima facie case in favour of your petitioner for passing the said ad-interim order.

37. Your petitioner states that your petitioners is moving this application exparte and without notice since your petitioner reasonably apprehends and have reason to believe that in the event any notice of this application is served upon the said respondent no. 1, the said respondent no. 1 would take such steps which would make the instant application futile and infructuous.

38. Your petitioner states that the balance of convenience lies in favour of passing the said ad –interim order of injunction and the refusal, to pass any such order would cause greater hardship to your petitioner.

39. Unless and until the respondents and each of them whether by themselves or by their members or servants or agents or assigns howsoever are restrained from utilizing the said software developed by the Petitioner without the written permission of the Petitioner, the Petitioner would suffer irreparable loss and prejudice.

40.      Unless an order as prayed for herein is made your petitioner would suffer irreparable loss and prejudice.


41.      This application is made bonafide and in the interest of justice.

Your petitioner, therefore, humbly prays Your Lordship for an order that:-


(a)      Injunction restraining the respondents and each of them whether by themselves or by their members or servants or agents or assigns howsoever from utilizing the said software developed by the Petitioner index of which is Annexure "D" to the plaint without the written permission of the Petitioner;

(b) Injunction restraining the respondent No.3 from claiming any right in respect of the developed CD index whereof is annexure "D" to the plaint and from exploiting the same in any manner whatsoever without written permission of the petitioner ;

(c) The respondents be directed to deposit the developed CD described in annexure "D" to the plaint in Court and a Receiver be appointed to keep the same in safe custody subject to further order of Court ;

(d) Ad interim order in terms of prayer (a) above;

(e) Costs of this application be borne by the Respondents;

(f)   Such further order or orders be made and/or direction or directions be given as to this Hon'ble Court may deem fit and proper;

And your petitioner as in duty bound shall ever pray.

PETITIONER'S ADVOCATE

I Partha Pratim Chakrabarti son of Late Sital Chakraborti  aged about 47 years by faith Hindu by occupation academician residing at Qtr. NO. A 5, IIT Campus IIT, Kharagpur- 721302do hereby solemnly affirm and say as follows:

1.      I am the professor and Dean, Sponsored Research and Industrial Consultancy Centre of the petitioner and I am well acquainted with the facts and circumstances of the case. I have been duly authorised by the petitioner to swear and affirm this affidavit on its behalf.

2.      The statements made in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 21, 22, 23,  27, 28, 29, 30, 31, 32, 33 and 35 of the foregoing petition are true to my knowledge, those contained in paragraphs 31 thereof are based on information receive from the record of this case which I verily believe to be true and those contained in paragraphs 29, 36, 37, 38, 39, 40 and 41 thereof are my respectful submission to this Hon'ble Court.

Solemnly  affirmed  by  the  said

Shri  Partha  Pratim  Chakrabarti

in   the  Court  House  at  Calcutta

on   this   ...10th.....day   of   August,

2009.

Before me,

Commissioner.