1

2

3

4                                          **E-FILED on** ___6/1/10___

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12
     MANDANA D. FARHANG and M.A.          No. C-08-02658 RMW
13   MOBILE,

14              Plaintiffs,

15        v.

16   INDIAN INSTITUTE OF TECHNOLOGY,       ORDER DENYING IIT'S MOTION TO
     KHARAGPUR; TECHNOLOGY                 STAY, GRANTING BRAR'S MOTION TO
17   ENTREPRENEURSHIP AND TRAINING         DISMISS, DENYING IIT'S MOTION TO
     SOCIETY; PARTHA P. CHAKRABARTI;       DISMISS UNSERVED DEFENDANTS, AND
18   PALLAB DASGUPTA; GURASHISH S.         GRANTING IN PART AND DENYING IN
     BRAR; RAKESH GUPTA; PRAVANJAN         PART IIT'S MOTION TO DISMISS FOR
19   CHOUDHURY; SUBRAT PANDA;              FAILURE TO STATE A CLAIM
     ANIMESH NASKAR,
20                                         **[Re Docket Nos. 112, 120, 124, 126]**
                Defendants.
21

22        Defendant Indian Institute of Technology, Kharagpur ("IIT") moves to stay this action

23   pending resolution of proceedings before the High Court at Calcutta, India.  IIT also moves to

24   dismiss the Second Amended Complaint ("SAC") for failure to state a claim and moves for dismissal

25   of all unserved defendants for failure to prosecute and insufficient service of process.  Likewise,

26   defendant Gurashish S. Brar moves for dismissal for failure to prosecute.  For the reasons set forth

27   below, the court: (1) denies IIT's motion to stay, (2) grants Brar's motion to dismiss for failure to

28

United States District Court
For the Northern District of California

1  prosecute, (3) denies IIT's motion to dismiss all unserved defendants, and (4) grants in part and

2  denies in part IIT's motion to dismiss the SAC for failure to state a claim.

3  **I.  IIT'S MOTION TO STAY**

4      Plaintiff Mandana D. Farhang filed her initial complaint in this action on May 27, 2008.

5  Dkt. No. 1.  IIT was served with summons on April 8, 2009.  Dkt. No. 113 Ex. A ¶ 34.  In August

6  2009, IIT filed a complaint against Farhang with the High Court at Calcutta, India.  *Id.*  The parties

7  dispute whether Farhang has been properly served with the Indian complaint.  IIT now moves to stay

8  all claims in this action until the Indian proceedings are concluded and the determination of the High

9  Court becomes final.  Its basis for requesting a stay are the principles of international comity and

10  international abstention.

11      **A.**    **International Comity**

12      "Comity is a recognition which one nation extends within its own territory to the legislative,

13  executive, or judicial acts of another."  *In re Grand Jury Proceedings*, 709 F. Supp. 192, 195 (C.D.

14  Cal. 1989) (quoting *Somoportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d

15  Cir. 1971)).  As a matter of comity, United States courts enforce the judgments of a foreign court

16  unless those judgments "are the result of outrageous departures from our own motions [sic] of

17  'civilized jurisprudence.'" *British Midland Airways Ltd. v. Int'l Travel, Inc.*, 497 F.2d 869, 871 (9th

18  Cir. 1974).  Application of the principles of international comity "is limited to cases in which 'there

19  is in fact a true conflict between domestic and foreign law.'" *In re Simon*, 153 F.3d 991, 999 (9th

20  Cir. 1998) (quoting *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 798 (1993)).  Where there is

21  only the *possibility* of an inconsistency between a future judgment of a domestic court and a future

22  judgment of a foreign court, there is no such "true conflict."  *See Mujica v. Occidental Petroleum

23  Corp.*, 381 F. Supp. 2d 1134, 1156 (C.D. Cal. 2005).  In such cases, "[t]he potential of conflicting

24  findings is more properly characterized as raising the issue of international abstention rather than

25  international comity."  *Id.* at 1157.

26      In this case, there is no existing conflict.  Based on the evidence presented to this court, the

27  High Court at Calcutta has not issued any findings of fact, much less a final judgment in the case

28

**United States District Court**
For the Northern District of California

pending before it.[1]  It appears that the only action taken by the Indian court thus far has been to issue

a preliminary injunction restraining Farhang from utilizing the disputed intellectual property ("IP")

without IIT's written consent while the Indian action is pending.[2]  *See* Dkt. No. 113 Ex. A ¶ 41; Dkt.

No. 121 Exs. A, B, C.; Dkt. No. 133 ¶ 6.  While it is possible that a future judgment of the Indian

court may be inconsistent with a future judgment of this court, the mere potential for inconsistent

findings is insufficient to raise issues of comity.  *See Mujica*, 381 F. Supp. 2d at 1156.  Concerns

regarding the potential for future inconsistencies should be addressed in the context of the doctrine

of abstention, which focuses on parallel judicial proceedings.  *Id.* at 1157.

### B.    International Abstention

In *Colorado River*, the Supreme Court made clear that:

> [a]bstention from the exercise of federal jurisdiction is the exception, not the rule.
> The doctrine of abstention, under which a District Court may decline to exercise or
> postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to
> the duty of a District Court to adjudicate a controversy properly before it.  Abdication
> of the obligation to decide cases can be justified under this doctrine only in the
> exceptional circumstances where . . . [it] would clearly serve an important
> countervailing interest.

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  Federal

courts have a "virtually unflagging obligation" to exercise the jurisdiction they have been given.  *Id.*

at 817.       The *Colorado River* doctrine requires exercise of jurisdiction absent exceptional

circumstances because "requiring federal court dismissal would give litigants a powerful tool to

keep cases out of federal court . . . simply by filing a parallel suit [elsewhere and] would frustrate the

---

[1]  Though IIT suggests in its brief that the Indian court has made findings regarding the validity of the NDA, this claim is unsupported based on the evidence in the record.

[2]  The initial *ex parte* preliminary injunction states that IIT is "entitled to an order in terms of prayer (b) of the Notice of Motion."  Dkt. No. 121 Ex. A.  This reference to part (b) in the prayer for relief in IIT's complaint appears to be a typographical error, since part (b) seeks a permanent injunction restraining Cool e-Mobile Pvt. Limited from claiming any right with respect to the disputed IP, while part (d) seeks an interim order enjoining Farhang and other defendants in the Indian action from utilizing the IP without IIT's written permission.  Dkt. No. 113 Ex. A ¶ 41.  It seems unlikely that the Indian court intended to enjoin a defendant who had not yet been served from claiming a right to the disputed IP, based only on an *ex parte* application, as this would prevent the defendant from defending herself in the Indian proceeding.  Such an injunction would also raise serious due process concerns.

ORDER DENYING IIT'S MOTION TO STAY, GRANTING BRAR'S MOTION TO DISMISS, DENYING IIT'S MOTION TO DISMISS
UNSERVED DEFENDANTS, AND GRANTING IN PART AND DENYING IN PART IIT'S MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM—No. C-08-02658 RMW
CCL                                                     3

ability of federal courts to adjudicate cases involving American law." *Mujica*, 381 F. Supp. 2d at 1157 n.12.  Accordingly, the "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816. The Ninth Circuit has rejected the idea that federal courts should abstain simply because parallel proceedings are taking place in a foreign court, even if more progress has been made in the foreign proceeding. *See Neuchatel Swiss General Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991).  "[C]onflicting results, piecemeal litigation, and some duplication of judicial effort is the unavoidable price of preserving access to . . . federal relief." *Id.* (quoting *Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir. 1979)).

There are various factors to consider in determining whether a stay is appropriate, including: (1) whether either court has assumed jurisdiction over a res, (2) the relative convenience of the forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) what law controls, and (6) whether the foreign proceeding is adequate to protect the parties' rights. *See Nakash*, 882 F.2d 1411, 1415 (9th Cir. 1989).  "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *Id.* (quoting *Am. Int'l Underwriters, (Phillipines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988)).

However, if there is substantial doubt as to whether the foreign proceeding will resolve the federal action, there is no need to even undertake this multi-factor analysis. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 n.7 (9th Cir. 1993).

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel [] litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.  If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.  Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).  Thus, "the existence of a substantial doubt as to whether [proceedings in another forum] will resolve the federal action precludes the granting of a stay." *Intel*, 12 F.3d at 913.

United States District Court
For the Northern District of California

In *Intel*, the Ninth Circuit found that there was sufficient doubt to preclude a *Colorado River* stay because the concurrent state court proceedings would only resolve all of the issues in the federal action if it confirmed an arbitration award. 12 F.3d at 913. If, instead, the state court overturned the arbitration award, the case would need to return to federal court for further adjudication. *Id.* Consequently, there was substantial doubt that the state court proceedings would completely resolve the issues in the federal action, and a stay was not justified. *Id.*

Applying this analysis to this case,[3] the court finds substantial doubt that the Indian proceedings would resolve all of the issues in this action. In its complaint filed with the High Court at Calcutta, IIT makes the following claims: (1) IIT never entered into a valid and enforceable non-disclosure agreement ("NDA") with Farhang; (2) IIT expended time, money, and resources into developing the disputed IP; and (3) Farhang has wrongfully detained and utilized the IP. Dkt. No. 113 Ex. A ¶¶ 4-33. In the Indian proceeding, IIT seeks: (a) a declaration that there is no valid NDA between IIT and Farhang; (b) a declaration that IIT is the owner of the disputed IP; (c) a permanent injunction restraining Farhang and other defendants from utilizing the IP without IIT's written permission; (d) a decree for Farhang to return the IP; and (e) damages for wrongful detention of the IP. *Id.* ¶ 35. Meanwhile, in the instant action, plaintiffs Farhang and M.A. Mobile Ltd. bring claims against IIT and other defendants for: (1) breach of the NDA, (2) breach of joint venture agreements, (3) breach of fiduciary duty, (4) fraud, and (5) misappropriation of trade secrets. Even if a ruling by the High Court in Calcutta in favor of IIT on all counts could completely dispose of all of plaintiffs' claims in the federal action, there can be no doubt that a ruling by the High Court in Calcutta against IIT would leave various issues for this court to adjudicate. Therefore, there is substantial doubt that the Indian proceedings would completely resolve the issues in this action. Under these circumstances, granting a stay would be "a serious abuse of discretion." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28. Therefore, the court denies IIT's motion to stay this action.

---

[3] In *Intel*, the court considered whether it was appropriate to stay a federal action pending state court proceedings, rather than proceedings in a foreign court. However, the Ninth Circuit has made clear that this difference is immaterial. *See Neuchatel*, 925 F.2d at 1195 ("We reject the notion that a federal court owes greater deference to foreign courts than to our own state courts.").

ORDER DENYING IIT'S MOTION TO STAY, GRANTING BRAR'S MOTION TO DISMISS, DENYING IIT'S MOTION TO DISMISS UNSERVED DEFENDANTS, AND GRANTING IN PART AND DENYING IN PART IIT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM—No. C-08-02658 RMW
CCL

United States District Court
For the Northern District of California

## II.  BRAR'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE

Brar moves to be dismissed from this case for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  Failure to timely serve a defendant with the complaint is viewed as "a particularly serious failure to prosecute because it affects all of the defendant's preparations." *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976).  Undue delay in service of the complaint is particularly problematic when the statute of limitations on claims has run prior to service of process because:

> [o]nce the statute has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim.  If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims.

*Id.*  Federal Rule of Civil Procedure 4(m) requires service of United States defendants within 120 days after the complaint is filed.  When a plaintiff fails to meet the 120-day deadline for service, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. Proc. 4(m).

The original complaint was filed on May 27, 2008.  It appears that this complaint was filed immediately before the statute of limitations was to run on several of plaintiffs' claims.  Because Brar is a United States resident, plaintiffs were required to serve him within 120 days after the complaint was filed. Fed. R. Civ. Proc. 4(m).   Brar was not served with the original and the first amended complaint until October 27, 2009.  Dkt. No. 131 Ex. G.  The court therefore considers whether plaintiffs have shown good cause for the failure to serve Brar within 120 days of filing the initial complaint.

According to her declaration in support of her opposition to Brar's motion to dismiss, Farhang did not realize that Brar was living in the State of Washington (as opposed to India) until early August 2009.  Dkt. No. 131 ¶ 9.  Plaintiffs argue that service within three months of this realization is reasonable.  However, the evidence in the record clearly demonstrates that Farhang knew that Brar was residing in the United States prior to August 2009.  In the original complaint

1  filed on May 27, 2008, Farhang alleges, "Defendant Gurashish Brar ("Brar") is, upon information

2  and belief, a citizen of the State of Georgia." Dkt. No. 1 ¶ 10. This suggests that Farhang knew that

3  Brar was residing in the United States at the time she filed her initial complaint. Even if she had

4  reason to believe that Brar later moved to India,[4] the evidence in the record shows that Farhang

5  knew that Brar was living in the State of Washington by June 2009, or at the latest by early July

6  2009.

7  Plaintiffs' own papers opposing Brar's motion to dismiss state that Farhang knew Brar was in the

8  United States by June 2009. Dkt. No. 130 at 4. Corroborating this knowledge is a declaration filed

9  on July 6, 2009, in which Farhang refers to "Defendant Gurashish S. Brar, Citizen of India, but

10  presently residing in Redmond, Washington." Dkt. No. 55 ¶ 17(n). Likewise, in the first amended

11  complaint filed on July 9, 2009, Farhang alleges, "[o]n information and belief, defendant Gurashish

12  Brar is a citizen of the State of Washington." Dkt. No. 57 ¶ 18. In light of this knowledge, plaintiffs

13  have failed to show good cause for failing to serve Brar prior to October 27, 2009. The court also

14  notes that plaintiffs have failed to present any evidence suggesting that they could not have

15  discovered Brar's residence in Washington earlier with reasonable diligence.

16  The Ninth Circuit "has consistently held that the failure to prosecute diligently is sufficient

17  by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant

18  from the failure [because the] law presumes injury from unreasonable delay." *Anderson*, 542 F.2d at

19  524 (citations omitted). Though this presumption is rebuttable, *id.*, plaintiffs have not shown that no

20  actual prejudice occurred. The delay in serving Brar prejudiced him by depriving him of the

21  opportunity to engage in earlier preparation and participation in the suit. The prejudice caused by

22  the delay in serving Brar with the original and first amended complaint is exacerbated by plaintiffs'

23

24

25

---

26  [4] Farhang states that in late 2008, she "found further evidence that Defendant Brar had relocated to India again" but does not identify this supposed evidence. Dkt. No. 131 ¶ 9. As a matter of fact,

27  Brar has been residing in the United States since August 2004. Dkt. No. 140 ¶ 2. Plaintiffs have failed to offer evidence supporting a reasonable belief that Brar resided in India.

28

failure to timely serve Brar with the SAC[5] and by the fact that the statute of limitations on several of plaintiffs' claims had already run by the time Brar was served.  The court therefore grants Brar's motion to dismiss for failure to prosecute.

### III.  IIT'S MOTION TO DISMISS UNSERVED DEFENDANTS

IIT seeks dismissal of all unserved defendants for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b) and for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5).  It does not appear that IIT has standing to bring this motion.  The court therefore denies the motion without prejudice to the unserved defendants bringing a motion to dismiss if they are served or to their making a special appearance to challenge service.

### IV.  IIT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

IIT seeks dismissal of all claims in the SAC for failure to state a claim upon which relief can be granted.  Fed. R. Civ. Proc. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted).  The complaint must provide the grounds for a plaintiff's entitlement to relief, which requires more than labels, conclusions, and a formulaic recitation of the elements of a cause of action.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

#### A.    M.A. Mobile

IIT argues that plaintiff M.A. Mobile may not maintain a lawsuit in California because it has not complied with California Corporations Code Section 2105.  Section 2105 requires foreign

---

[5]  Based on Orrick, Herrington & Sutcliffe LLP ("Orrick")'s earlier statement that it would likely be retained to represent Brar, plaintiffs' counsel assumed that electronic service of the SAC on Orrick (IIT's counsel) sufficed to serve Brar as well.  Dkt. No. 132 ¶¶ 2-3.  However, Orrick has stated that it did not represent Brar at the time the SAC was served, *id.* ¶ 4, and Orrick did not enter an appearance on behalf of Brar until April 14, 2010 when it filed Brar's motion to dismiss for failure to prosecute, Dkt. No. 125 ¶ 2.  Consequently, the SAC was not served on Brar until April 29, 2010, two months after plaintiffs filed the SAC.

**United States District Court**
For the Northern District of California

1   corporations to obtain a certificate of qualification from the Secretary of State prior to transacting

2   intrastate business in California.  Cal. Corp. Code § 2105.  "Transact intrastate business" is defined

3   as "entering into repeated and successive transactions of its business in this state, other than

4   interstate or foreign commerce."  Cal. Corp. Code § 191.  A foreign corporation which "transacts

5   intrastate business without complying with Section 2105 shall not maintain any action or proceeding

6   upon any intrastate business so transacted in any court of this state, commenced prior to compliance

7   with Section 2105, until it has complied with the provisions thereof," paid the requisite penalties,

8   taxes, and fees, and filed with the clerk of the court receipts showing such payment.  Cal. Corp.

9   Code § 2203(c).  A defendant asserting that a foreign corporation lacks the capacity to maintain an

10   action bears the burden of proving: "(1) the action arises out of the transaction of intrastate business

11   by a foreign corporation; and (2) the action was commenced by the foreign corporation prior to

12   qualifying to transact intrastate business."  *United Medical Mgmt. v. Gatto*, 49 Cal. App. 4th 1732,

13   1740 (1996).

14     M.A. Mobile is a foreign corporation chartered under the laws of the Commonwealth of

15   Dominica.  SAC ¶ 9.  It appears that M.A. Mobile did not obtain a certificate of qualification prior to

16   the filing of the SAC.  Dkt. No. 113 ¶ 2.  However, IIT has not established that this action arises out

17   of the transaction of intrastate business by M.A. Mobile.  Therefore, the court denies IIT's motion to

18   dismiss M.A. Mobile for failure to comply with Section 2105.

19     **B.  Breach of NDA**

20     IIT contends that the SAC fails to state a claim for breach of an NDA.  The SAC alleges that

21   on or about August 11, 2003, IIT entered into an NDA with plaintiffs.  SAC ¶ 29.  Under the terms

22   of the NDA, IIT agreed to: (1) only disclose confidential information to employees and contractors

23   who are bound by a similar NDA ("Non-Disclosure Provision"); (2) not to "make, have made, use or

24   sell for any purpose any product or other item using, incorporating, or derived from" plaintiffs'

25   confidential information ("Non-Use Provision"); and (3) to return all documents and other tangible

26   items with plaintiffs' confidential information upon termination of the NDA or upon written demand

27   ("Return Provision").  *Id.*

28

United States District Court
For the Northern District of California

Plaintiffs allege that IIT breached the Non-Disclosure Provision by disclosing plaintiffs' IP and other confidential information to Indian Railways, third parties competing with plaintiffs in the development of similar mobile technology, and members of the IIT community who had not agreed to be bound by the NDA, including members of TIETS who have affiliations with third parties active in the mobile space. *Id.* ¶ 62(a). These conclusory statements, however, are not supported by adequate factual allegations. The only factual basis plaintiffs provide to support their contention that improper disclosures of confidential information were made is: (1) a research report by IIT that contained in-depth analysis of the Indian Railways' computer and database systems, and (2) an article in the *Economic Times of India,* which "described the TTE Assistant's marketing materials almost word-for-word and confirmed that the project had been awarded to IBM." *Id.* ¶¶ 46-47. The existence of the research report only indicates that IIT obtained Indian Railways information necessary for developing applications based on the IP and does not provide a basis for reasonably inferring that IIT disclosed confidential information to Indian Railways. Likewise, the *Economic Times of India* article merely suggests that marketing materials were provided to the media and fails to provide a reasonable basis for inferring that confidential information was improperly disclosed. Thus, with respect to their claim that IIT breached the Non-Disclosure Provision, plaintiffs have failed to allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Plaintiffs also claim that IIT breached the Non-Use Provision by making, having made, using, or selling products derived from plaintiffs' IP. SAC ¶ 62(b). The SAC alleges that IIT admitted to using plaintiffs' IP to develop applications, quoting from the complaint IIT filed in the High Court of Calcutta: "[IIT] through its highly qualified faculty members and students had immensely developed the technology provided initially by the Defendant No. 1 . . . and developed many interesting applications, especially for Indian scenarios like railways." *Id.* ¶ 59. If the NDA were considered standing alone, IIT's admission that it had developed applications based on plaintiffs' IP would provide ample reason to believe that IIT had breached the Non-Use Provision. In this case, however, the SAC alleges not only an NDA between plaintiffs and IIT but also a joint

venture agreement between the same parties.  Thus, the NDA must be considered in the context of the alleged joint venture agreement.

The Non-Use Provision of the NDA directly conflicts with the alleged joint venture agreement between plaintiffs and IIT.  Plaintiffs state that they entered into a joint venture agreement with IIT "for the express purpose of developing the Technology and marketing the Technology for their collective benefit," and that under this agreement, the parties were to "jointly further develop the Technology."  *Id.* ¶¶ 68-69.  Since the NDA preceded the formation of the joint venture, the subsequent joint venture agreement permitting IIT to develop plaintiffs' IP for the purposes of the joint venture appears to supersede the earlier Non-Use Provision's complete prohibition of making, having made, or using any products derived from plaintiffs' IP.  Consequently, the facts alleged regarding IIT's admission that it developed applications derived from plaintiffs' IP do not give rise to a reasonable inference that IIT breached the NDA.  The SAC does not contain facts suggesting that IIT's development of applications was outside the scope of what it was permitted to do under the joint venture agreement.  Likewise, the SAC fails to allege facts from which one could reasonably infer that IIT sold applications derived from plaintiffs' IP to either IBM or Indian Railways.

The SAC also alleges that IIT breached the Return Provision by failing to return all documents and other tangible material relating to or containing plaintiffs' confidential information upon demand.  SAC ¶ 62(c).  In particular, plaintiffs claim that IIT has only returned a single CD containing source code and has failed to return "[d]ocumentation relating to business plans, trade secrets not disclosed in the patent, and other Confidential information."  *Id.*  These factual allegations are sufficient to state a claim for breach of the Return Provision of the NDA.

IIT argues that plaintiffs cannot prove that damages resulted from any breach of the NDA.  Even if this is true, "[a] plaintiff is entitled to recover nominal damages for the breach of a contract, despite inability to show that actual damage was inflicted upon him, since the defendant's failure to perform a contractual duty is, in itself, a legal wrong that is fully distinct from the actual damages."  *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (1959); *see also* Cal. Civ. Code § 3360 ("Where a

1   breach of duty has caused no appreciable detriment to the party affected, he may yet recover

2   nominal damages.").  Thus, even if plaintiffs cannot prove actual damages, this does not provide a

3   basis for dismissing their claim for breach of the NDA.

4        The court finds that the SAC fails to state a claim based on IIT's alleged breach of the Non-

5   Disclosure and Non-Use Provisions but contains sufficient factual allegations to state a claim for

6   breach of the Return Provision.  Accordingly, the court dismisses plaintiffs' claim for breach of the

7   Non-Disclosure and Non-Use Provisions of the NDA with leave to amend but otherwise denies IIT's

8   motion to dismiss the claim for breach of the NDA.

9        **C.**     **Breach of Joint Venture Agreement**

10        The SAC alleges that, pursuant to a joint venture agreement, plaintiffs and defendants were

11   to work together to develop plaintiffs' IP and to market it though an Indian entity, Cool e-Mobile Pvt

12   Ltd. ("Cool e-Mobile").  SAC ¶ 69.  As part of this joint venture, the parties were to try to obtain the

13   Indian Railways as an initial customer, with Farhang creating Cool e-Mobile, and defendant

14   Chakrabarti acting as Chief Technology Officer ("CTO").  *Id.* ¶ 33.  In exchange for their

15   contribution to the development of plaintiffs' IP and their ability to bypass the required tender

16   process to win Indian Railways as a customer, defendants were to receive a 28% equity share in

17   profits (3% allocated to IIT and 25% allocated to Chakrabarti for distribution among the engineering

18   team).  *Id.* ¶¶ 33(c), 38, 40, 52.  Plaintiffs allege that defendants breached the joint venture

19   agreements by "abandoning all efforts to further Technology on behalf of the Joint Venture, and

20   instead working to deliberately move forward their own plans of commercialization at the expense

21   of the Joint Venture."  *Id.* ¶ 69.

22        IIT contends that the SAC fails to state a claim for breach of a joint venture agreement

23   because: (1) Farhang accepted a modification to the joint venture agreement, excusing IIT from any

24   participation in the agreement; (2) plaintiffs' claim of breach of an oral contract is time-barred; (3)

25   the parties did not intend to enter into a binding agreement prior to signing a formal, written

26   agreement; (4) the alleged joint venture agreement did not provide essential terms, such as how

27

28

ORDER DENYING IIT'S MOTION TO STAY, GRANTING BRAR'S MOTION TO DISMISS, DENYING IIT'S MOTION TO DISMISS
UNSERVED DEFENDANTS, AND GRANTING IN PART AND DENYING IN PART IIT'S MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM—No. C-08-02658 RMW
CCL                           12

United States District Court
For the Northern District of California

1   profits and losses would be shared and the right of joint control; and (5) the terms of the alleged joint

2   venture agreement were not reasonably certain.

### 1.   Acceptance of Modification

4       IIT argues that it cannot be held liable for breach of the joint venture agreement because

5   Farhang accepted a modification to the agreement, replacing IIT with IIT's Incubation Society.  In

6   the original complaint, Farhang alleged that Chakrabarti informed her in May 2005 that Indian law

7   prevented IIT from forming a joint venture company directly with her.  Dkt. No. 1 ¶ 56.  Chakrabarti

8   proposed that IIT's Incubation Society take over IIT's responsibilities and shares in the joint venture,

9   stressing that "for all intents and purposes IIT Kharagpur and the Incubation Society were one and

10  the same." *Id.*  Based on this representation, Farhang accepted the modification. *Id.*  In the SAC,

11  plaintiffs make similar allegations. *See* SAC ¶ 52 (defendants suggested getting around the "legal

12  technicality allegedly preventing joint ventures *per se* with the Indian government by using the

13  incubation program to continue a Joint Venture via the Incubation Society").  Based on the

14  allegations in both versions of the complaint, Farhang accepted replacing IIT with IIT's Incubation

15  Society as a party to the joint venture agreement only because she was led to believe they were, for

16  all practical purposes, the same entity.  Therefore, there is no basis in the complaint for concluding

17  that Farhang agreed to excuse IIT from performing its obligations under the agreement.[6]

### 2.   Statute of Limitations for Oral Contracts

19      Under California law,[7] the statute of limitations for a claim based on the breach of an oral

20  contract is two years. *See* Cal. Code Civ. Proc. § 339.  However, an action based on breach of an

---

22  [6] If IIT and its Incubation Society are in fact separate and distinct entities such that replacing IIT
23  with the Incubation Society substantively changed the nature of the joint venture agreement, this
    would call into question the validity of the modification to the joint venture agreement, in light of
24  the alleged representations made by Chakrabarti regarding the two being "one and the same."  Dkt.
    No. 1 ¶ 56.

25  [7] At some parts in its briefs, IIT appears to contend that Indian law governs the alleged joint venture
26  agreement, while at other parts, IIT appears to assert that California law governs.  Regardless, IIT
    has represented that Indian contracts law is, in all relevant respects, substantially similar to
    California contracts law. *See* Dkt. No. 112 at 7 n.6.  Plaintiffs seem to adopt the position that the
27  agreement was governed by California law.  Based on the parties' representations and their apparent
    agreement that California contracts law is applicable, the court applies California contracts law.

28

1   oral contract "shall not be deemed to have accrued until the discovery of the loss or damage suffered

2   by the aggrieved party thereunder." *Id.*

3          Because a formal letter of intent was never signed, plaintiffs' claim for breach of the joint

4   venture agreement appears to be based on the existence of an oral contract. SAC ¶ 33(e). The SAC

5   alleges that plaintiffs did not discover the breaches of the joint venture agreement until after May 27,

6   2006 due to defendants' efforts to conceal these breaches. *Id.* ¶ 70. Plaintiffs filed suit on May 27,

7   2008. Therefore, accepting the allegations in the SAC as true, their claim for breach of an oral

8   contract is not time-barred.

9                        **3.     Intent Not to be Bound**

10         When it is clear . . . that both parties contemplated that acceptance of the contract's
       terms would be signified by signing it, the failure to sign the agreement means no

11      binding contract was created. This is so even though the party later sought to be
       bound by the agreement indicated a willingness to sign the agreement. On the other

12      hand, if the respective parties orally agreed upon all of the terms and conditions of a
       proposed written agreement with the mutual intention that the oral agreement should

13      thereupon become binding, the mere fact that a formal written agreement to the same
       effect has not yet been signed does not alter the binding validity of the oral

14      agreement.

15   *Banner Entm't v. Super. Ct.*, 62 Cal. App. 4th 348, 358 (1998) (citations omitted).

16         IIT argues that the parties did not intend to be bound prior to signing a formal, written joint

17   venture agreement. Since no written agreement was ever signed, IIT contends that no binding

18   contract was formed. However, the allegations in the SAC suggest that the parties intended to be

19   bound by the terms of an oral joint venture agreement even though a formal letter of intent had not

20   yet been signed. *See* SAC ¶ 33(e) (alleging cooperation between plaintiffs and defendants "on the

21   understanding and representation by IITK that a Joint Venture was already in place regardless of the

22   formalities of memorializing the Joint Venture with appropriate documentation"). Therefore, "the

23   mere fact that a formal written agreement to the same effect has not yet been signed does not alter

24   the binding validity of the oral agreement." *Banner Entm't*, 62 Cal. App. 4th at 358.

25                       **4.     Essential Terms of a Joint Venture**

26         "A joint venture exists when there is 'an agreement between the parties under which they

27   have a community of interest, that is, a joint interest, in a common business undertaking, an

28

ORDER DENYING IIT'S MOTION TO STAY, GRANTING BRAR'S MOTION TO DISMISS, DENYING IIT'S MOTION TO DISMISS
UNSERVED DEFENDANTS, AND GRANTING IN PART AND DENYING IN PART IIT'S MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM—No. C-08-02658 RMW
CCL                                                      14

**United States District Court**
For the Northern District of California

1  understanding as to the sharing of profits and losses, and a right of joint control.'" *Connor v. Great*

2  *W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 853 (1968) (quoting *Holtz v. United Plumbing & Heating*

3  *Co.*, 49 Cal. 2d 501, 506-07 (1957)). According to IIT, no legally binding agreement was formed

4  because the alleged joint venture agreement lacked essential terms, such as how profits and losses

5  would be shared and the right of joint control. *See Louis Lesser Enterprises, Ltd. v. Roeder*, 209

6  Cal. App. 2d 401, 408 (1962) ("if an essential element is reserved for the future agreement of both

7  parties, the promise can give rise to no legal obligation until such future agreement").

8          The SAC alleges that defendants had a 28% equity share (3% allocated to IIT and 25%

9  allocated to Chakrabarti for distribution among the engineering team), with the remaining 72% of

10  profits going to M.A. Mobile and Farhang. SAC ¶¶ 2(c)(5), 33(c), 38, 40. Based on the SAC, it

11  does not appear that there was any explicit provision in the joint venture agreement for the sharing

12  of losses. However, "[a] provision to share losses may be implied in a . . . joint venture agreement."

13  *Brown v. Fairbanks*, 121 Cal. App. 2d 432, 440 (1953). As a general rule, in the absence of an

14  agreement to the contrary, losses are shared in the same proportion as profits. *See Kovacik v. Reed*,

15  49 Cal. 2d 166, 169 (1957). However, this rule only applies when parties contributing services to

16  the joint venture are to receive compensation for services rendered, which is to be paid before

17  computation of profits or losses. *Id.* If parties bring different types of "capital" to the table, which

18  are not accounted for in the computation of profits or losses, "neither party is liable to the other for

19  contribution for any loss sustained." *Id.* In other words, each party bears its own losses, and this

20  constitutes sharing of losses. *Id.* at 170. In this case, "it was expressly understood that all

21  participants were entering into the Joint Venture in return for equity interests and the promise of

22  future profits based on those equity interests, and not for cash compensation or salaries." SAC ¶

23  33(c). Thus, the agreement implicitly provided for the sharing of losses by having each party to bear

24  its own losses.

25          IIT contends there was no right of joint control because all decision-making power was in

26  Farhang's hands. However, the SAC alleges sufficient facts indicating that defendants had a right of

27  joint control. While Farhang controlled the disclosure of confidential information relating to the IP,

28

1   Dkt. No. 1 ¶ 43, IIT had the role of the "technology expert," and Chakrabarti, as CTO of the joint

2   venture, directed the engineering team's work in developing the IP, SAC ¶¶ 33(b), 52.  In addition,

3   plaintiffs allege that IIT and Chakrabarti controlled the pace and extent of the joint venture's

4   interaction with Indian Railways.  *Id.* ¶¶ 52, 53.  Therefore, the essential terms of a joint venture

5   have been adequately alleged.

6               **5.        Reasonably Certain Contract Terms**

7               IIT also claims that there was no enforceable contract because the terms of the alleged joint

8   venture agreement were not reasonably certain.  For a contract to be enforceable, its terms must be

9   reasonably certain, meaning the parties' obligations under the contract must be sufficiently clear

10   such that one can determine whether there has been a breach.  *See Bustamonte v. Intuit, Inc.*, 141

11   Cal. App. 4th 199, 209 (2006).  IIT argues that neither its nor plaintiffs' obligations under the alleged

12   joint venture agreement were reasonably certain.

13               A joint venture agreement "need not be formal or definite in every detail relating to the

14   respective rights and duties of the parties but may be implied as a reasonable deduction from their

15   acts and declarations."  *Holtz*, 49 Cal. 2d at 507.  Moreover, when parties have "manifested their

16   mutual intent to take [an] idea and make it concrete by forming a company and engaging in the

17   business together . . . [this agreement combined with] the subsequent acts of the parties as they

18   worked out the details provide[] sufficient certainty to determine the existence of a breach and a

19   remedy."  *Bustamonte*, 141 Cal. App. 4th at 213.

20               As discussed above, the essential elements of a joint venture agreement have been

21   adequately alleged.  In addition, the SAC alleges facts indicating both mutual intent to create a

22   business and a sufficiently clear understanding regarding the parties' respective obligations.  IIT was

23   to develop and commercially exploit the IP, meaning it was to try to win the Indian Railways as a

24   customer by developing relevant applications, producing marketing materials, creating

25   demonstratives for presenting the technology, and securing access to the Indian Railways.  SAC ¶¶

26   33, 33(e), 36, 52.  M.A. Mobile's contribution to the joint venture was the core technology at the

27

28

heart of the IP, which was used to derive the applications. *Id.* ¶ 2(b)(2). Farhang was responsible for providing strategic business consulting and to create Cool e-Mobile. *Id.* ¶¶ 33(a), 52.

Plaintiffs allege that IIT breached the joint venture agreement by completely abandoning the joint venture and exploiting plaintiffs' IP for its own purposes. *See* SAC ¶ 69. Based on the allegations in the SAC, the court finds that the terms of the joint venture agreement are sufficiently certain to determine whether such a breach has occurred. *See Holmes v. Lerner*, 74 Cal. App. 4th 442, 459 (1999) (finding sufficient certainty to determine existence of a breach where alleged breach was based on defendant's complete repudiation of alleged partnership agreement, not the breach of a single vague term). The court therefore denies IIT's motion to dismiss plaintiffs' claim for breach of the joint venture agreement.

### D.    Breach of Fiduciary Duty

IIT contends that plaintiffs' claim for breach of fiduciary duty is preempted. California Civil Code Section 3426.7(b) preempts common law claims that are "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)). A claim that is based on the same nucleus of facts as the trade secret claim cannot escape preemption merely because it alleges new facts, different damages, or a different theory of liability. *See id.* at 957-58 (rejecting argument for narrow view of preemption which would allow common law claims to go forward so long as they seek "something more" than trade secret relief).

The SAC alleges that defendants breached their fiduciary duty to plaintiffs by: (1) using confidential business information for their own benefit; (2) thwarting the progress of the joint venture and deceiving plaintiffs so that they could use plaintiffs' IP for their own benefit; and (3) using plaintiffs' business resources, business guidance, staff, and time to further a project for their own benefit. SAC ¶ 74. Plaintiffs appear to concede that the first two categories of alleged conduct are based on the same nucleus of facts as their trade secret claim but argue that the third category of alleged conduct is independent of their trade secret claim because it is based on use of plaintiffs'

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   resources and time, not use of plaintiffs' IP.  However, mere use of plaintiffs' resources and time,

2   standing alone, does not give rise to a cause of action.  The crux of plaintiffs' claim is their

3   allegation that defendants used these resources to develop and exploit plaintiffs' IP for their own

4   benefit.  Thus, plaintiffs' claim arising out of the third category of conduct is also based on the same

5   nucleus of facts as their trade secret claim and cannot escape preemption merely because it includes

6   "something more."  *See K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 957-58.  Accordingly, the court

7   dismisses plaintiffs' claim for breach of fiduciary duty with prejudice.

8        **E.      Fraud**

9        IIT also contends that plaintiffs' fraud claim is preempted.  Plaintiffs' fraud claim is based on

10   allegations that: (1) defendants made false representations to induce plaintiffs to permit development

11   of plaintiffs' IP and then developed and marketed plaintiffs' IP for their own benefit; (2) defendants

12   made false statements to derail the joint venture and to deceive plaintiffs so that they could use

13   plaintiffs' IP for their own benefit; and (3) defendants made false promises to induce plaintiffs to

14   lend their time, guidance, and consulting resources so that they could use it to further a project for

15   their own benefit.  SAC ¶ 81.

16        As with the breach of fiduciary duty claim, plaintiffs appear to concede that the first two

17   categories of alleged conduct are based on the same nucleus of facts as their trade secret claim but

18   argue that the third category of alleged conduct is independent because it is based on use of

19   plaintiffs' resources and time, not use of plaintiffs' IP.  Again, however, the crux of plaintiffs' claim

20   is their allegation that defendants used plaintiffs' resources and time to develop applications derived

21   from plaintiffs' IP for their own benefit.  *Id.* ¶¶ 81(c), 89.  As described in the SAC, defendants

22   sought to use plaintiffs' resources and time "all in service and implementation of" their conspiracy to

23   develop and exploit plaintiffs' IP for their own benefit.  *Id.* ¶ 84.  Thus, plaintiffs' claim arising out

24   of the third category of conduct is also based on the same nucleus of facts as their trade secret claim

25   and cannot escape preemption merely because it includes "something more."  *See K.C. Multimedia,*

26   *Inc.*, 171 Cal. App. 4th at 957-58.  The court therefore dismisses plaintiffs' claim for fraud with

27   prejudice.

28

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**F.      Trade Secret Misappropriation**

IIT argues that plaintiffs fail to state a claim for trade secret misappropriation because the SAC fails to allege sufficient facts showing: (1) that plaintiffs have standing to bring a trade secret claim; (2) the existence of a trade secret; (3) that IIT misappropriated trade secrets; and (4) that plaintiffs suffered harm as a result.

**1.      Standing**

IIT contends that the court should dismiss plaintiffs' trade secret claim for lack of standing because plaintiffs' ownership of the alleged trade secrets is questionable.  While ownership of a trade secret is clearly sufficient to establish standing, it is not clear whether ownership of the trade secret is always necessary to have standing.  *See Memry Corp. v. Ky. Oil Tech., N.V.*, 2006 U.S. Dist. LEXIS 94393, at *25 n.17 (N.D. Cal. Dec. 18, 2006).  Nonetheless, in this case, plaintiffs' claim of trade secret misappropriation appears to be based on alleged ownership rights in the trade secrets.

IIT is correct that there are inconsistencies between the original complaint and the later amended complaints regarding ownership of the core technology at the heart of the disputed IP.  In the original complaint, Farhang alleged that she and "her affiliates ('TNR') own full right and title to the intellectual property and other property described herein ('the IP')."  Dkt. No. 1 ¶ 5.  In this same pleading, Farhang defined TNR as Tuff N' Ready Global Philanthropic Holdings S.A.  *See id.* ¶ 32. The First Amended Complaint ("FAC"), however, states that the core technology belongs to M.A. Mobile.  Dkt. No. 57 ¶ 1(c).  According to the FAC, Farhang held sole beneficial interest in the core technology as of March 2003 and then transferred ownership of the core technology to M.A. Mobile on or about June 25, 2003.  *Id.* ¶¶ 9-10.  The SAC also refers to the core technology as belonging to M.A. Mobile.  *See* SAC ¶¶ 2(b)(2), 12.  Plaintiffs have not provided a satisfactory explanation for these inconsistent allegations.

The court is not required to accept as true allegations in an amended complaint that are inconsistent with allegations in an earlier complaint and may strike the changed, inconsistent allegations as false and sham.  *See Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325-26 (Fed. Cir. 1998).  However, even if the court were to strike the later allegations of ownership by M.A. Mobile

United States District Court
For the Northern District of California

as false and sham, as suggested by IIT, the original allegation that Farhang and TNR own the core

technology may still provide Farhang with standing to bring a trade secret claim.  Moreover,

plaintiffs' claim of trade secret misappropriation is not limited to disclosure of the core technology

and includes allegations that defendants misappropriated plaintiffs' business models and plans.  *See*

SAC ¶¶ 98-100.  Therefore, while the court finds these inconsistent allegations troubling, they do

not provide a basis for dismissing plaintiffs' trade secret claim.

**2.      Existence of a Trade Secret**

Trade secret is defined as "information, including a formula, pattern, compilation, program,

device, method, technique, or process, that: (1) derives independent economic value, actual or

potential, from not being generally known to the public or to other persons who can obtain economic

value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the

circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1.  IIT contends that the SAC fails to:

(a) identify the alleged trade secrets with sufficient particularity, (b) establish that the alleged

trade secrets have independent economic value, and (c) show that the alleged trade secrets were subject to

reasonable efforts to maintain their secrecy.

**a.      Identification of Trade Secrets**

> Before a defendant is compelled to respond to a complaint upon claimed
> misappropriation or misuse of a trade secret and to embark on discovery which may
> be both prolonged and expensive, the complainant should describe the subject matter
> of the trade secret with sufficient particularity to separate it from matters of general
> knowledge in the trade or of special knowledge of those persons who are skilled in
> the trade, and to permit the defendant to ascertain at least the boundaries within
> which the secret lies.

*Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968).  A plaintiff alleging trade secret

misappropriation need not "spell out the details of the trade secret" but must identify the trade secret

with sufficient particularity to give defendants "reasonable notice of the issues which must be met at

the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate

discovery."  *Id.* at 252-53.

The SAC alleges two categories of trade secrets: (1) plaintiffs' core technology described in a

patent application and (2) "specific business models and implementations" relating to this core

United States District Court
For the Northern District of California

technology.  *See* SAC ¶ 98.  Plaintiffs' core technology is described as enabling fluid mobile access

to data on handheld devices, including dynamic real-time access and parsing of data that is not

dependent upon continuous wireless data connection.  *Id.* ¶ 25.  This description, standing alone,

would be insufficient.  *See Diodes*, 260 Cal. App. 2d at 253 (where alleged trade secret is a

manufacturing process, claimant cannot merely identify the end product manufactured and must

supply data on the process itself).  However, the SAC also identifies the patent application that

discloses the core technology.  SAC ¶ 26.  Thus, plaintiffs have identified the core technology in a

way such that defendants have "reasonable notice of the issues which must be met at the time of trial

and to provide reasonable guidance in ascertaining the scope of appropriate discovery."  *Diodes*, 260

Cal. App. 2d at 252-53.

    As for the confidential "business models and implementations," this latter category of trade

secrets is not described in the identified patent application, and the only description given in the

SAC is that they include "specifics regarding the actual implementation of the global railways and

Indian Railways project."  SAC ¶ 98.  While plaintiffs are not required to spell out all the details of

their trade secrets, this vague description does not "describe the subject matter of the trade secret

with sufficient particularity to separate it from matters of general knowledge in the trade or of

special knowledge of those persons who are skilled in the trade," nor does it "permit the defendant to

ascertain at least the boundaries within which the secret lies."  *Diodes*, 260 Cal. App. 2d at 253.

Therefore, plaintiffs have failed to identify this latter category of trade secrets with sufficient

particularity.

### b.      Independent Economic Value

    A trade secret must derive "independent economic value, actual or potential, from not being

generally known to the public or to other persons who can obtain economic value from its disclosure

or use."  Cal. Civ. Code § 3426.1.  The SAC alleges that the core technology as well as specific

business models and implementations derived independent economic value from their secrecy in

light of "significant competition in the mobile space to achieve similar objectives and the known

demand for solutions to known needs and problems in the mobile platform space."  SAC ¶ 99.

1   These allegations are sufficient to meet the independent economic value requirement for trade

2   secrets at the pleading stage.

3                       **c.     Reasonable Efforts to Maintain Secrecy**

4           In addition to deriving independent economic value from its secrecy, a trade secret must be

5   "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ.

6   Code § 3426.1.  Based on the allegations in the SAC, plaintiffs took reasonable steps to maintain the

7   secrecy of the core technology by filing a patent application with non-published status and only

8   providing access to the core technology to defendants under the confidentiality obligations set forth

9   in the NDA.  SAC ¶¶ 26, 98.

10          With respect to the specific business models and implementations, it is unclear whether

11  plaintiffs took reasonable steps to maintain their secrecy.  In the original complaint, Farhang alleges

12  that she sent a confidential business plan to members of the Governing Board of the Incubation

13  Society, including a general manage for IBM.  Dkt. No. 1 ¶ 76.  According to the SAC, at least some

14  board members having independent affiliations with third party companies in the mobile space "had

15  not executed the NDA as individuals and [] had not agreed to be bound by its terms."  SAC ¶ 100.

16  The SAC also indicates that plaintiffs met with Indian Railways to discuss applications that could be

17  used by Indian Railways and engaged in "high level discussions" with Sun, Microsoft, Motorola,

18  and Sprint regarding potential implementations.  *Id.* ¶ 53, Ex. A.  Plaintiffs claim that no trade

19  secrets were disclosed in these discussions.  *See* Dkt. No. 129 at 23.  However, because plaintiffs

20  have not identified the scope and content of the business models and implementations that are

21  alleged to be trade secrets with sufficient particularity, the court cannot determine whether trade

22  secrets were in fact disclosed, either in these discussions or through the confidential business plan

23  that Farhang sent to Incubation Society board members.

24                      **3.     Allegations Regarding Misappropriation**

25          "Disclosure or use of a trade secret of another without express or implied consent by a person

26  who . . . knew that his or her knowledge of the trade secret was . . . acquired under circumstances

27  giving rise to a duty to maintain its secrecy or limit its use" constitutes trade secret misappropriation.

28

**United States District Court**
For the Northern District of California

Cal. Civ. Code § 3426.1(b).  The SAC states that defendants disclosed plaintiffs' trade secrets without their express or implied consent.  SAC ¶ 100.  This conclusory statement, however, is not supported by adequate factual allegations.  As discussed above in the section regarding breach of the Non-Disclosure Provision of the NDA, plaintiffs have failed to allege facts providing a reasonable basis for inferring that IIT improperly disclosed or used plaintiffs' trade secrets and thus have failed to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The court therefore dismisses plaintiffs' claim for trade secret misappropriation with leave to amend.  If plaintiffs are concerned about maintaining the secrecy of their trade secrets, they may identify the alleged trade secrets in a separate filing to be filed under seal in accordance with Local Rule 79-5.

## V.  ORDER

For the foregoing reasons, the court:

1.    Denies IIT's motion to stay this action;

2.    Dismisses Brar from this action;

3.    Denies IIT's motion to dismiss all unserved defendants without prejudice to the unserved defendants;

4.    Dismisses plaintiffs' claim for breach of the Non-Disclosure and Non-Use Provisions of the NDA with leave to amend within 20 days;

5.    Dismisses plaintiffs' claims for fraud and breach of fiduciary duty with prejudice; and

6.    Dismisses plaintiffs' trade secret misappropriation claim with leave to amend within 20 days.

DATED:         6/1/10         _____

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

**United States District Court**
For the Northern District of California

1   **Notice of this document has been electronically sent to:**

2   **Counsel for Plaintiff:**

3   Micah R. Jacobs            mjacobs@mbvlaw.com

4   **Counsel for Defendant IIT:**

5   I. Neel Chatterjee         nchatterjee@orrick.com
    Christopher Yeh            cyeh@orrick.com
6   Nitin Gambhir             ngambhir@orrick.com
    Theresa Ann Sutton         tsutton@orrick.com

7

8   Counsel are responsible for distributing copies of this document to co-counsel that have not
    registered for e-filing under the court's CM/ECF program.

9

10

11  **Dated:** ___6/1/10___                              _____CCL_____
                                                         **Chambers of Judge Whyte**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING IIT'S MOTION TO STAY, GRANTING BRAR'S MOTION TO DISMISS, DENYING IIT'S MOTION TO DISMISS
UNSERVED DEFENDANTS, AND GRANTING IN PART AND DENYING IN PART IIT'S MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM—No. C-08-02658 RMW
CCL                                                      24