Micah R. Jacobs (State Bar No. 174630)
MBV LAW LLP
855 Front Street
San Francisco, California 94111
Telephone:  415-781-4400
Facsimile:  415-989-5143
E-mail:  mjacobs@mbvlaw.com

Sanjiv N. Singh (State Bar No. 193525)
SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
P.O. Box 225815
San Francisco CA, 94122
Telephone:  415-816-5548
E-mail:  ssingh@sanjivnsingh.com

Attorneys for Plaintiffs
MANDANA D. FARHANG and M.A. MOBILE LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| M.A. MOBILE LTD., a limited liability company chartered in Dominica; and MANDANA D. FARHANG,<br><br>Plaintiffs,<br><br>v.<br><br>INDIAN INSTITUTE OF TECHNOLOGY KHARAGPUR, an Indian Institute of Technology incorporated under the "Institutes of Technology Act, 1961"; TECHNOLOGY ENTERPRENEURSHIP AND TRAINING SOCIETY, an Indian society; PARTHA P. CHAKRABARTI; PALLAB DASGUPTA; GURASHISH S. BRAR; RAKESH GUPTA; PRAVANJAN CHOUDHRY; SUBRAT PANDA; ANIMESH NASKAR, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. C-08-02658-RMW (HRL)<br><br>**CORRECTED VERSION OF PLAINTIFFS' RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER REGARDING EFFORTS TO SERVE INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS**<br><br>**DECLARATIONS OF MANDANA FARHANG AND SANJIV SINGH FILED CONTEMPORANEOUSLY**<br><br>**Date:  July 2, 2010**<br>**Time:  9:00 a.m.**<br>**Dept.:  8** |

MBV LAW LLP
855 FRONT STREET
SAN FRANCISCO CA 94111

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     DETAILED SUMMARY OF PLAINTIFF'S DILIGENCE
        IN PURSUING SERVICE AND PROSECUTING THIS ACTION ...................3

III.    RELEVANT LEGAL PRINCIPLES AND LEGAL ANALYSIS
        SHOWING THAT PLAINTIFFS HAVE COMPLIED WITH
        THEIR OBLIGATIONS UNDER THE HAGUE CONVENTION
        AND THAT AN ORDER DEEMING SERVICE COMPLETED
        IS APPROPRIATE ...............................................................................................7

        A.   Plaintiff's Service of Process Complied With Applicable
             Requirements of Federal Rules and the Hague Convention ....................8

             1.   Plaintiff Farhang, as a pro se litigant, is a competent
                  forwarding authority pursuant to Article 3 of the
                  Hague Convention. ...................................................................11

             2.   Even if Plaintiff Farhang's service of process was
                  defective as has been alleged, India's Central Authority
                  flouted its obligations under Article 4, resulting in
                  significant delay and preventing Plaintiff from remedying
                  the alleged defect. .....................................................................12

             3.   Plaintiffs Were Required To Wait At Least Six Months for
                  India's Central Authority To Act Before Seeking Alternative
                  Service and Indeed Gave India's Central Authority a Second
                  Chance To Act By Issuing The Comprehensive Letter To
                  Central Authority Documenting Plaintiff Farhang's Properly
                  Conformed Service Request. .....................................................14

        B.   Plaintiffs' Claims Against the Allegedly Unserved Defendants
             Should Not Be Dismissed Because Plaintiffs Have Demonstrated
             Diligent, Reasonable Efforts And Have Not Engaged in The Kind
             of Willful or Egregious Delay Meriting Dismissal. ..............................15

        C.   Statute of Limitation Concerns Should Not Be A Consideration
             In Assessing the Adequacy of Service Efforts for the Unserved
             Individual Indian Defendants and TIETS. .............................................16

        D.   None of The Individual Indian Defendants or Defendants
             TIETS Will Suffer Prejudice as a Result of the Alleged
             Delay in Service. ...................................................................................17

        E.   This Court Should Authorize Alternative Service of the
             Remaining Allegedly Unserved Defendants pursuant to
             FRCP 4(f)(3) and/or Deem the Remaining Allegedly Unserved
             Defendants Served Pursuant to FRCP 4(l)(2)(B). .................................18

IV.     CONCLUSION ..................................................................................................23

M B V   L A W   L L P
855 FRONT STREET
SAN FRANCISCO CA 94111

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY
UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -Case No. C-08-02658-
RMW (HRL)

432129.DOC

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Anderson v. Air West. Inc.*,
    542 F.2d 522, 524 (9th Circuit 1976) ..................................................15, 17

*Burda Media, Inc. v. Viertel*,
    417 F.3d 292 , 301 (2d Cir. 2005) ...............................................................19

*Dewey v.Farchone*,
    460 F.2d  (7th Cir. 1972) .............................................................................16

*Export-Import Bank of the United States v. Asia Pulp and Paper Company, Ltd.*, Dist
    Court, S.D. New York 2005 .........................................................................23

*Fox v. Regie Nationale Des Usines Renault*,
    103 F.R.D. 453, 455 (W.D. Tenn. 1984) ....................................................19

*Garg v. Winterthur*,
    525 F. Supp 2nd 315 (2007) .........................................................................19

*Henderson v. Duncan*,
    779 F. 2d 1421, 1423 (9th Cir. 1986) ...................................................15, 16

*Lemme  v. Wine of Japan Import, Inc.*,
    631 F.Supp. 456, 464 (E.D.N.Y.1986) ......................................................19

*Mayoral-Amy v. BHI Corp.*,
    180 F.R.D. 456, 459 n.4 (S.D.Fla.1998) ....................................................21

*Mullane v. 1017*1017 Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306, 314 .......................................................................................24

*Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*
    353 F. 3d 916, 926 (11th Cir. 2003)............................................................23

*Rio Properties, Inc. v. Rio Intern. Interlink*,
    284 F.3d 1007, 1014 (9th Cir. 2002) .....................................................21, 23

### Other Authorities

*Convention On The Service Abroad of Judicial and Extrajudicial Documents in Civil or
    Commercial* (15 November 1965)..................................................................8

Proskauer on International Litigation And Arbitration ................................................12

### Rules

Civ L.R. 3-9 ...............................................................................................................12
Civ. L.R. 7-2(a), .........................................................................................................2
Civ. L.R. 7-3(a) ..........................................................................................................2

Fed. R. Civ. P.
    Rule 4 .....................................................................................................14, 19

M B V   L A W   L L P
855 FRONT STREET
SAN FRANCISCO CA 94111

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY
UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -Case No. C-08-02658-
RMW (HRL)

432129.DOC

Rule 4(l)(2)(B) .................................................................................................. 8, 18, 22
Rule 4(f) ...................................................................................................................... 20
Rule 4(f)(1) ............................................................................................................ 8, 20
Rule 4(f)(3) .................................................................................................... 1, 20, 22

**M B V   L A W   L L P**
8 5 5   F R O N T   S T R E E T
S A N   F R A N C I S C O   C A   9 4 1 1 1

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY
UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -Case No. C-08-02658-
RMW (HRL)

432129.DOC

**PLAINTIFFS' RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER**

## I.  INTRODUCTION

On April 14, 2010, Defendant IITK filed a Motion To Dismiss Second Amended Complaint For Delay In Prosecution and Insufficient Service of Process on behalf of the allegedly unserved "Individual Indian Defendants" and the Defendant Technology Entrepreneurship And Training Society ("TIETS") (hereinafter the "TIETS Motion") Dkt. No. 126. On June 1, 2010, the Court dismissed the TIETS Motion without prejudice to the Individual Defendants and TIETS on the grounds that Defendant IITK did not have standing to bring such claims, reserving the rights of the unserved defendants to renew a similar motion if they were served or otherwise made a special appearance to challenge service. Dkt. No. 143.

On June 2, 2010, the Court issued an order for Plaintiffs to show cause seeking explanation from Plaintiffs as to why the Individual Indian Defendants and TIETS remain unserved ("Show Cause Order") and detailing their efforts to have those defendants properly served. Dkt. No. 144.

Pursuant to the Show Cause Order, Plaintiffs now submit this written response by June 22, 2010, and supporting Declarations of Plaintiff Mandana Farhang and counsel Sanjiv N. Singh, which show that Plaintiff both complied with the Hague Convention and have at all times acted diligently not just in trying to get these defendants served but also more generally in attending to IITK's numerous motions and in securing counsel in India to prepare and file a motion to dismiss the action in India.

To avoid any doubt, Plaintiffs have also just re-served those defendants, this time paying the fees to use Process Forwarding International, and have also concurrently filed a motion pursuant to FRCP 4(f)(3) and/or 4(l)(2)(B) requesting that this Court issue an appropriate Order for alternative service of certain Indian Defendants, which will not otherwise violate the Hague Convention, or an Order deeming service of said Defendants completed in view of the evidence showing that Plaintiffs have complied with the Hague Convention and applicable Federal Rules.

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -CASE NO. C-08-02658-RMW (HRL)

432129.DOC

Plaintiffs have been unable to confirm service through the Indian Central Authority, which is either violating Article 4 of the Hague Convention or silent in its obligation to confirm service. Plaintiffs have already significantly briefed their position on many of the relevant issues in the TIETS Motion. Dkt. No. 126; *see also* Dkt. No. 138.  While Plaintiffs have noticed the Motion for Alternative Service for July 30, 2010, in accordance with Civ. L.R. 7-2(a), Plaintiffs request and would not be opposed to the Court making an exception to the timing requirements set forth under Civ. L.R. 7-2(a) and scheduling the hearing on that Motion to proceed on the same day as the Show Cause Order hearing, July 2, 2010, as both the Motion for Alternative Service and the Show Cause Order hearing involve the identical nucleus of facts and the same key legal issues.  If the Court elects to hear both matters on July 2, 2010, the same day as the Show Cause Order hearing, Plaintiffs would also be amenable to any exception to the general timing requirements for Defendants to file their opposition brief (as set forth in Civ. L.R. 7-3(a)) or for Plaintiffs to file a Reply.  Alternatively, the Court can continue the Show Cause hearing to proceed on July 30, 2010.

As an initial matter, it is important to frame Plaintiffs' efforts to get Defendants served against the backdrop of Defendant's current position regarding service on Mandana Farhang with its Writ of Summons for the action pending in India.  Defendants currently contend that their informal notice to Plaintiff of the parallel action before the High Court of Kolkata ("Indian Action") should be enough to bring Plaintiff Farhang into the Indian Action, and yet they demand strict adherence to obscure service issues (which they wrongly allege Plaintiffs have violated), notwithstanding the fact that Defendants have informal and actual notice of this U.S. action.

Even more compellingly, it is abundantly clear that Plaintiff Farhang, acting as a *pro se* litigant, and at all times thereafter as a litigant represented by outside counsel, has made more than reasonable efforts to comply with the terms of the Hague Convention. Dkt. No. 130.  As we will detail below, her efforts have been thwarted by the Central Authority of India's complete disregard for Article 4 of the Hague Convention in their failure to notify Plaintiff of an *alleged* defect in service and their complete disregard and silence in the face of formal detailed

432129.DOC

correspondence requesting update on disposition of the request for service.  We further contend that Plaintiff Farhang's actions in serving the Individual Indian Defendants and TIETS were indeed reasonable and ultimately in compliance with the relevant provisions of the Hague Convention and Federal Rules.

## II.   DETAILED SUMMARY OF PLAINTIFF'S DILIGENCE IN PURSUING SERVICE AND PROSECUTING THIS ACTION

It is well known that serving foreign defendants is a complicated matter requiring financial resources as well as navigation of Federal Rules, Hague Convention requirements, and local foreign jurisdiction requirements, and it is undisputed that it can take many months to accomplish service in countries like India.  Dkt. No. 19 (Declaration of Rick Hamilton, Director of Operations for Process Forwarding International, the entity engaged by the U.S. Department of Justice to execute all service of process pursuant to the Hague Convention pursuant to contract # DJJ09-C-1799).  The difficulty of serving foreign defendants in cross border litigation may also be appreciated by the Indian government itself.  In the parallel action filed before the High Court of Kolkata in June of 2009, after the lapse of nearly one year and despite vast government resources and the assistance of local U.S. counsel, IITK and its Indian counsel have not properly served Plaintiff Farhang in said Indian proceedings.  Dkt. No. 133 (Declaration of Partha Mandal, Indian Counsel for Plaintiff Farhang, stating that "as of May 7, 2010, we do not believe that Mandana Farhang was ever properly served…in the Indian proceedings. . .")

Against this backdrop, it is undisputed by Defendants that Plaintiff Farhang, acting *pro se*, successfully served Defendant IITK, a foreign government entity, in less than one year.  Dkt. No. 138, p. 6.  It should be noted, contrary to Defendant's assertions that Plaintiffs have not meaningfully updated the Northern District in connection with her efforts, Plaintiff Farhang provided detailed accounts of her efforts to the then presiding Magistrate Howard Lloyd, updating the Court in September of 2008 and again in December of 2008 and obtaining reasonable extension to document her compliance with her service obligations.  Dkt. No. 3 (Request for Continuance outlining Plaintiff efforts and research in connection with service of

M B V   L A W   L L P
8 5 5   F R O N T   S T R E E T
S A N   F R A N C I S C O   C A   9 4 1 1 1

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -Case No. C-08-02658-RMW (HRL)

432129.DOC

foreign Defendants, filed September 8, 2008, granted September 10, 2008); see also Dkt. No. 5 (Request for Continuance to March 2009, outlining Plaintiff efforts and engagement of PFI and her proposed use of alternative channels of service to complement the efforts of PFI)

By March, 2009, Plaintiff reasonably believed she had complied with the terms of the Hague Convention, depositing all of the original summons and documents required for service for all of the Defendants with the appropriate Central Authority in India, namely the Ministry of Law and Justice.

Specifically, on March 13, 2009, Process Forwarding International prepared, certified and deposited via Federal Express appropriately conformed and duplicated service documents for IITK at the Central Authority in India.  Dkt. No. 131.

On March 9, 2009, a request for service of TIETS and the Individual Defendants was fedexed by Plaintiff Farhang, acting as her own attorney in the United States, to the Central Authority of India.  Dkt No. 131; see also Declaration of Mandana D. Farhang, executed on June 22, 2010, filed concurrently herewith ("**June 22, 2010 Farhang Declaration**").

After researching her options, Plaintiff believed in good faith that service of the Individual Defendants and IITK was permitted to originate from a *pro se* litigant pursuant to Article 3 of the Hague Convention because she believed that private attorneys have been recognized as competent "judicial officers" for the purpose of making service requests under Article 3 of the Convention. *Id* at ¶ 4.  It is not surprising that she came to this conclusion.  Credible secondary sources available to the public on the Internet advise that any private attorney can transmit to a Central Authority (i.e. act as a requesting authority) under the Hague Convention.  For example, Proskauer on International Litigation And Arbitration at http://www.proskauerguide.com/litigation/3/II states that:  "As an officer of the court, a U.S. lawyer for a party seeking service is authorized to act as a requesting authority under the Convention."  Declaration of Sanjiv N. Singh, executed on June 22, 2010, filed concurrently herewith ("**June 22, 2010 Singh Declaration**"), ¶ 2.

Thus, as a *pro se* litigant, acting as her own attorney, she reasonably believed that she was

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -Case No. C-08-02658-RMW (HRL)

432129.DOC

1   entitled to all of the benefits afforded any other attorney representing a similarly situated plaintiff

2   in federal court.  **June 22, 2010 Farhang Declaration** ¶ 4.  She was particularly happy with this

3   option which she believed was available to her as it allowed her to save the considerable expense

4   of using PFI, a professional international service agency, for all nine defendants. *Id.*  Indeed, a

5   single service request using PFI to transmit to the Central Authority requesting service of IITK

6   cost Plaintiff USD 450.  *Id.* To serve the remaining eight defendants with PFI would have cost

7   between 3,000 to 4,000 USD.  *Id.*  At this time, Plaintiff had been financially depleted due in no

8   small part to considerable resources spent on the wasted, sham Joint Venture with Defendants.

9          It was thus quite reasonable that Plaintiff Farhang explored cost sensible options which

10  she believed were permissible under the Hague Convention to serve all of the nine defendants.

11  She reserved use of PFI for Defendant IITK because she was worried about what efforts IITK

12  might take as a large governmental entity to evade service, and wanted the force of a well known

13  process service agency behind the efforts to serve them.  She did not expect that any of the

14  Individual Defendants (individuals and not government entities) or TIETS (an IITK society

15  located on the IITK campus) would be as difficult to serve.

16         Defendant Counsel, pursuant to the TIETS Motion, have now informed Plaintiffs that

17  they believe Plaintiff Farhang's attempted service of process was defective and that she was

18  aware of the alleged defect but proceeded anyway. Dkt. No. 138, pp. 6-7.  Defendants allege that

19  Plaintiff Farhang violated the Hague Convention by requesting, as a "private person", that the

20  Central Authority of India serve the Individual Indian Defendants and TIETS.  *Id.*  Defendants

21  further allege that Plaintiff was aware of the alleged defect but ignored the defect.  *Id.*

22         In reality, Plaintiff was not aware of any alleged defect.  **June 22, 2010 Farhang**

23  **Declaration** ¶ 4-7.  The TIETS Motion was the first time that Plaintiff Farhang had been

24  informed by any party that the March 9, 2009 request to the Central Authority of India for

25  service of the Individual Defendants and TIETS was allegedly defective.  *Id.*  Plaintiff Farhang

26  has always believed and still does believe that her March 9, 2009 request of the Central

27  Authority of India was permitted under the Hague Convention.  *Id.*  Had she been promptly

28

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY
UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -Case No. C-08-02658-
RMW (HRL)

432129.DOC

M B V   L A W   L L P
8 5 5   F R O N T   S T R E E T
S A N   F R A N C I S C O   C A   9 4 1 1 1

1 informed of an alleged defect (even if the allegation of defect was ultimately not valid as is the

2 case here), she would have promptly re-served the Individual Indian Defendants and TIETS with

3 whatever remediation was necessary.  *Id*.

4      As of the date of this submission, the Central Authority has not notified Plaintiff of the

5 alleged defect articulated in the TIETS Motion.  *Id*.; Singh Declaration.  Defendants appear to

6 have direct knowledge as to why the Central Authority has not acted which they assert very

7 confidently and claim to derive from a synthesis of various Docket sources and their

8 interpretation of the Hague Convention rules.  Dkt. No. 138, pp. 6 -7.

9      As has already been documented to the Court, by April 7, 2009, IITK was served and it

10 voluntarily entered the action that same month, requesting extended time to respond to the

11 Original Complaint.  Dkt. No 131.  Since March 9, 2009, Plaintiff waited for confirmation or

12 update of any kind from the Central Authority as to the status of the request for service on the

13 remaining Defendants but no status report was issued or has been issued to date.  *Id.*  Plaintiff had

14 been advised by PFI that:  "Severe delay with process service in India is believed to be caused by

15 their over burdened court system, some cases have taken over a year to receive *confirmation*

16 [emphasis added] of service back from the Indian authorities."  Dkt. No. 19, p. 2.  Thus, Plaintiff

17 Farhang did not find it surprising, at least in the immediate months following her attempted

18 service, that she did not receive confirmation of service for the remaining Indian Individual

19 Defendants or TIETS.  Indeed, her local Indian counsel had informed her that one individual was

20 responsible for all such requests:  "For the time being one gentleman by the name Mr. Kishore

21 Kumar, who is the section officer, Department of Legal Affairs, looks after *all* [emphasis added]

22 the request for service of documents received by the central authority in India."  Dkt. No. 20, pp.

23 2-3.

24      On October 12, 2009, Plaintiff sent a comprehensive outline of her diligence to comply

25 with the Hague Convention and specific request for cooperation to the Central Authority of India

26 (hereinafter "Letter to the Central Authority").  Dkt. No 131, Exhibit A.  The Letter to the Central

27 Authority offered documentary proof that the packages were received by the Central Authority

28

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY
UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -Case No. C-08-02658-
RMW (HRL)

432129.DOC

M B V   L A W   L L P
8 5 5   F R O N T   S T R E E T
S A N   F R A N C I S C O   C A   9 4 1 1 1

1   and documentary proof that the Central Authority acted on the IITK packet. *Id.* The Letter to

2   Central Authority also addressed the then known whereabouts of each of the Individual Indian

3   Defendants and TIETS, specifically noting that Defendant TIETS (the IITK Incubation Society),

4   Defendant Chakrabarti (who was and is indeed a high level IITK Dean who spends most of his

5   time on the IITK campus), Defendant Dasgupta (a similarly situated high level professor at IITK)

6   and Defendant Naskar could all be found on the IITK campus. *Id.*  The Letter to Central

7   Authority pointed out that said Defendants' location on the IITK campus made it logical to

8   assume that if IITK was served as an entity shortly after receipt of the PFI package, it should

9   logically follow that the other four IITK based Defendants should have been served around the

10  same time.  The Letter to Central Authority then offered significant detailed information as to the

11  obvious whereabouts of the other Defendants in India and also notified the Central Authority of

12  Defendant Brar's recently discovered move to the United States.  *Id.*

13         On June 15, 2010, at the request of Plaintiffs Counsel, out of an abundance of caution and

14  in the wake of the recent May, 2010 announcement by Defendants that the March, 2009

15  transmission to the Indian Central Authority was allegedly defective, Process Forwarding

16  International issued a re-request for service of process by the Indian Central Authority of the

17  allegedly unserved Individual Indian Defendants and TIETS.  June 22, 2010 Sanjiv N. Singh

18  Declaration.  Though Plaintiffs have elected to issue said re-request for service, Plaintiffs

19  maintain and will argue here that Plaintiff Farhang's March 2009 <u>first</u> request for service of the

20  allegedly unserved defendants was reasonable and in compliance with relevant provisions of the

21  Hague Convention and Federal Rules.

22  **III.    RELEVANT LEGAL PRINCIPLES AND LEGAL ANALYSIS SHOWING THAT
23          PLAINTIFFS HAVE COMPLIED WITH THEIR OBLIGATIONS UNDER THE
            HAGUE CONVENTION AND THAT AN ORDER DEEMING SERVICE
24          COMPLETED IS APPROPRIATE**

25         Plaintiff Farhang's service of process of the Individual Indian Defendants and TIETS

26  complied with applicable requirements of the Federal Rules and the Hague Convention, contrary

27  to Defendant's assertions that she violated the express provisions of Article 3 of the Hague

28

6/22/2010                                    7

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY
UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS -**CASE NO. C-08-02658-
RMW (HRL)

432129.DOC

Convention.  Plaintiffs further submit that the Indian Central Authority flatly and repeatedly have violated Article 4 of the Hague Convention which requires notice of any alleged defect.  India's Central Authority is thus the truly responsible party for any egregious delay alleged by Defendants.  In view of her reasonable efforts to comply with Article 3 of the Hague Convention and the Indian Central Authority's complete disregard for Article 4, we submit that any dismissal of the possibly unserved Indian Individual Defendants and TIETS would be unfair, is not consistent with the jurisprudence governing dismissal of claims and  parties for alleged defects in service of process, and further note to the Court that no prejudice has resulted to any of the Individual Indian Defendants or TIETS as a result of the alleged delay.  Finally, in view of the urgency to proceed with the matter and the extreme prejudice that would result to Plaintiffs if claims against the Individual Indian Defendants or TIETS were dismissed, and in recognition of the fact that the delayed entry of these parties into the matter will prevent meaningful resolution of these matters, we will submit a separate motion for the Court to authorize alternative service of the remaining allegedly unserved Defendants pursuant to FRCP 4(f)(3 and/or deem the remaining allegedly unserved Defendants served pursuant to FRCP 4(l)(2)(B).

> **A.** **Plaintiff's Service of Process Complied With Applicable Requirements of Federal Rules and the Hague Convention**

In connection with service of foreign defendants in India, Federal Rule 4(f)(1) requires service by compliance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.  FRCP 4(f)(1); see also *Convention On The Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial* (15 November 1965) (hereinafter "Hague Convention").  Relevant Articles of the Hague Convention provide in considerable detail the procedure to be followed by plaintiffs for serving foreign defendants via the appropriate Central Authority within the jurisdiction where service of process is sought.  Hague Convention, Article 3 – 6.   India had ratified the treaty and began operating under its provisions by 2007.  See "Members of the Organisation" at http://www.hcch.net/index_en.php?act=conven-tions.status&cid=17 (last visited by Sanjiv N. Singh, June 12, 2010.)

432129.DOC

M B V   L A W   L L P
855 FRONT STREET
SAN FRANCISCO CA 94111

Article 3 of the Hague Convention provides:

The authority **or judicial officer competent under the law of the State in which the documents originate** shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality.

The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate. *Id. (Emphasis added).*

The question here is whether, pursuant to Article 3, a *pro se* litigant may act as a competent forwarding authority for the purpose of sending a service of process request to the Indian Central Authority. While this appears to be a novel legal issues, the authorities seems to concluded that Plaintiff Farhang was perfectly entitled to forward the materials directly to the Central Authority. Contrary to defense counsel statement that Farhang can not appoint herself to be a judicial officer, the laws of California recognize that a pro se litigant can act as a judicial officer in particular circumstances appropriate here.

Defendants contend, by reference to a footnote in an information outline issued by the Permanent Bureau of the Hague Convention, that Plaintiff Farhang was prohibited from sending the request for service to the Central Authority. Defendants cite the following language from the information outline: "Under the Convention, private persons are not entitled to send directly a request for service to the Central Authority of the Requested State." Dkt. No. 139-1. Chatterjee Declaration.

Defendant's argument does not, however, answer the critical question here, namely, whether a *pro se* plaintiff, acting without counsel, is competent to act as a forwarding authority under Article 3 of the Hague Convention. The express language of Article 3 of the Hague Convention indicates that any decision as to who is an appropriate "authority" or "judicial officer" should be determined by "the law of the State in which the documents originate." Hague Convention, Article 3. Further support for this position can be found in both a 2003 Hague Special Commission Report and a 2009 Hague Special Commission Report, both of which confirm that it is the law of the *originating* jurisdiction which governs who is competent to act as

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -Case No. C-08-02658-RMW (HRL)

432129.DOC

a forwarding authority.  See June 22 Singh Declaration, Exhibits C and D, respectively,

[*Conclusions and Recommendations Adopted By The Special Commission On The Practical*

*Operation of the Hague Apostille, Evidence, and Service Conventions*, (October 28-November 4,

2003) (hereinafter "2003 Hague Special Commission Report")] and [*Conclusions and*

*Recommendations Adopted By The Special Commission On The Practical Operation of the*

*Hague Apostille, Service, Taking of Evidence,  and Access to Justice Conventions*, (February 2 –

February 12, 2009) (hereinafter "2009 Hague Special Commission Report")].  This is expressly

stated in Conclusions and Recommendations numbers 47-49 of the 2003 Hague Special

Commission Report and repeated expressly again by Conclusion and Recommendation number

21 of the 2009 Hague Special Commission Report.  We have attached full copies of the Special

Commission Reports for the Court's convenience as <u>Exhibit C</u> (2003 Hague Special Commission

report) and <u>Exhibit D</u> (2009 Hague Special Commission report) of the accompanying Singh

Declaration.

There does not appear to be any controlling case law that has formally addressed whether

a pro se plaintiff is prohibited from acting as a competent forwarding authority for the purpose of

service under the Hague Convention.

Thus, Plaintiffs' counsel contacted William P. Fritzlen, Attorney Advisor, Office of

Policy Review and Interagency Liaison, U. S. Department of State who has routinely advised

U.S. attorneys and indeed federal district courts and lectured nationally on the complex issues

involved with application of Hague Convention requirements to U.S. cross border litigation.

June 22 Singh Declaration, ¶ 4.  Mr. Fritzlen responded to Plaintiffs' counsel via email and

wrote:  "A 2003 Special Commission at the Hague determined that it is up to the law of the

sending state to determine who is competent to act as a forwarding authority.  So in this case *if*

*the proceedings are in California courts and the California rules permit a pro se plaintiff to serve*

*a defendant without counsel, our view would be that that plaintiff could also forward a request*

*for service to a foreign country under the Convention* [emphasis added].  *Id*. at Exhibit A.  His

analysis was reflected in Conclusions and Recommendations numbers 47-49 of the 2003 Special

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY
UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -CASE NO. C-08-02658-
RMW (HRL)

432129.DOC

Commission and reaffirmed by Conclusion and Recommendation number 21 of the subsequent 2009 Special Commission at the Hague, *at which India had a delegate* [emphasis added]."  June 22, 2010 Singh Declaration, Exhibit C.

Article 4 of the Hague Convention provides that:  "If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request."  Hague Convention, Article 4. When apprised of Plaintiff Farhang's attempt to serve the Individual Indian Defendants and TIETS and the allegation of defective service by Defendants, Mr. Fritzlen stated:  "As to not receiving any notice that the request was refused, Central Authorities are required by Art. 4 of the Convention to promptly notify the requestor and provide the reasons why it was refused."  June 22, 2010 Singh Declaration, Exhibit A.  In other words, with regards to Article 4, there is no ambiguity surrounding, or alternative interpretation of, the import and binding nature of this provision.

### 1.   Plaintiff Farhang, as a pro se litigant, is a competent forwarding authority pursuant to Article 3 of the Hague Convention.

As clearly articulated in the 2003 and 2009 Hague Special Commission Report, the question of whether a pro se litigant is a competent forwarding authority under Article 3 of the Hague Convention is decided by the law of the originating State, which in this case would be U.S. law and applicable Federal Rules.  2003 Hague Special Commission Report; 2009 Hague Special Commission Report; June 22, 2010 Singh Declaration, Exhibits C and D.  Thu, as a pro se litigant, Farhang was deemed competent to effect service on defendants in federal proceedings in California.  A *pro se* litigant in federal court in California has the same obligations as counsel and is fully bound by the Federal Rules of Civil Procedure, including Rule 4, and all applicable local rules. Civ L.R. 3-9.  Indeed, a *pro se* litigant is not merely competent to serve process in federal courts in California but is subject to the same sanctions for failure to do so.  *Id*; see also Section 1654 of Title 28 (which states:  "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively,

RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS -Case No. C-08-02658-RMW (HRL)

432129.DOC

are permitted to manage and conduct causes therein.").

Mr. Fritzlen, as an expert on application of Hague Convention provisions as they apply to U.S. claimants, has opined that if a *pro se* plaintiff is competent to serve process under local rules of the originating state, the same *pro se* plaintiff should be competent to issue a request for service of process to the applicable Central Authority.  June 22, 2010 Singh Declaration, Exhibit A.  Plaintiff Farhang, at the time she was serving process in March 2009, was a pro se plaintiff in federal court with the same obligations as all counsel under applicable Civil Local Rules for the Northern District.  Thus, because she was entitled to serve process in federal court in California, she was also entitled to act as a competent forwarding authority pursuant to Article 3 of the Hague Convention.

It is also instructive to recall and reiterate the direct quotation from Proskauer on International Litigation And Arbitration at http://www.proskauerguide.com/litigation/3/II which states that:  "As an officer of the court, a U.S. lawyer for a party seeking service is authorized to act as a requesting authority under the Convention."  It would violate basic principles of due process if U.S. counsel could act as a requesting authority under the Convention, but a similarly situated pro se plaintiff like Plaintiff Farhang could not.

**2.  Even if Plaintiff Farhang's service of process was defective as has been alleged, India's Central Authority flouted its obligations under Article 4, resulting in significant delay and preventing Plaintiff from remedying the alleged defect.**

Even if Defendants do not agree with the analysis above (including references to the Fritzlen E-mail, the 2003 and 2009 Special Hague Commission reports, and the Proskauer reference), it should be now abundantly clear that Plaintiff's actions were reasonable and in good faith.  If her March 9, 2009, package was defective, India's Central Authority not only had an obligation to notify Plaintiff but also had an obligation to specify the nature of the defect.   Hague Convention, Article 4.  In this case, India's Central Authority has flouted Article 4, making no effort to present day to "inform" Plaintiff of the alleged defect or "specify its objections to the request."  *Id*;  see also June 22, 2010 Farhang Declaration.

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -CASE NO. C-08-02658-RMW (HRL)

432129.DOC

The failure of the Central Authority to comply with Article 4 alone should be dispositive in this matter.  The Court, in its order, has demanded that Plaintiff Farhang show cause as to why the Individual Indian Defendants and TIETS may remain unserved.  As has been demonstrated above, Plaintiff Farhang exercised more than reasonable efforts to comply with Article 3 of the Hague Convention while the Central Authority of India has flouted Article 4 failing to even allege that there was a defect in service.  The only official allegation of defective service of the Individual Indian Defendants and TIETS was issued by Defendants, not the Central Authority of India, in their reply brief alleging delay of prosecution in May of 2010.  Dkt. No. 138.

As Plaintiff Farhang herself has maintained, if the Indian Central Authority had complied with its obligations under Article 4, the parties likely would not be litigating this matter now. June 22, 2010 Farhang Declaration.  Plaintiff would have addressed the issue of the alleged defective service in March or April of 2009 and either addressed the alleged defect or raised the issues outlined above regarding the competency of a pro se plaintiff as a forwarding authority for the purposes of compliance with Article 3 of the Hague Convention.

It should be noted that The Republic of India, while party to the Hague Convention, specifically prohibits the provisions of Article 10, which would otherwise permit alternative service through use of international registered airmail where service via the Central Authority has failed. Dkt. No. 20;  see also Declarations Reservations for India listed on the Hague Convention website at http://www.hcch.net/index_en.php?act-status.comment&cisd-984&disp=resdn (last visited by Sanjiv N. Singh, June 12, 2010.)   Defendant Counsel seemed to have misunderstood our prior arguments because they repeatedly asserted, during oral arguments on May 28, 2010, that Plaintiffs were making "Article 10" arguments.  Plaintiffs are not invoking and have not invoked Article 10 in connection with their service obligations vis a vis the Individual Indian Defendants and TIETS; Plaintiffs indeed brought the Indian reservation regarding Article 10 to the Court's attention as early as March, 2009.  Dkt. No 20.

RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS -CASE NO. C-08-02658-RMW (HRL)

432129.DOC

3. **Plaintiffs Were Required To Wait At Least Six Months for India's Central Authority To Act Before Seeking Alternative Service and Indeed Gave India's Central Authority a Second Chance To Act By Issuing The Comprehensive Letter To Central Authority Documenting Plaintiff Farhang's Properly Conformed Service Request.**

Fed. R. Civ. P. 4 advisory committee's note states:

The Hague Convention does not specify a time within which a foreign country's Central Authority must effect service, but Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months . . . . In such cases, resort may be had to the provisions set forth in subdivision (f)(3).

In this case, Plaintiff Farhang issued the request for service to Indian's Central Authority in March of 2009. After just seven months had passed, in October of 2009, Plaintiff Farhang assembled all her materials and sent the Central Authority the comprehensive Letter to Central Authority documenting her compliance with the Hague Convention and inquiring as to why the Central Authority had not acted. Dkt. No. 131. It should be noted that shortly after this time, Defendants launched a flurry of motions including motions to dismiss on the grounds of sovereign immunity, jurisdiction, forum non convenience, and ultimately seeking to have the matter stayed. These various motions were only recently resolved in the last month, and it was only last month, in May of 2010, that Plaintiffs then learned from Defendants that the Central Authority, at least per Defendants, had allegedly rejected the request for service as being allegedly defective.

Thus, Plaintiffs complied with Federal Rules in giving the Central Authority at least six months before pursuing a motion for alternative service. The requirement to give the Central Authority this kind of time, particularly in light of Plaintiffs comprehensive October 2009, Letter to Central Authority and the barrage of Defendant motions that would have mooted service of process issues, makes it clear that Plaintiffs were not delaying during this period. In fact, Plaintiffa were appropriately focused on service of process within the contemplated time periods of the Federal Rules and permitting the Central Authority time to try to comply with its obligations under the Hague Convention.

432129.DOC

M B V   L A W   L L P
8 5 5   F R O N T   S T R E E T
S A N   F R A N C I S C O   C A   9 4 1 1 1

**B.    Plaintiffs' Claims Against the Allegedly Unserved Defendants Should Not Be Dismissed Because Plaintiffs Have Demonstrated Diligent, Reasonable Efforts And Have Not Engaged in The Kind of Willful or Egregious Delay Meriting Dismissal.**

The Court issued a show cause order and has threatened dismissal of claims against the allegedly unserved Individual Indian Defendants and TIETS. Dkt. No 144. As we outlined in our previous briefs to this Court, and now in this Response to the Show Cause Order, numerous 9th Circuit cases provide significant guidance as to the kinds of cases where Courts will uphold dismissal of claims/parties for alleged defects or delays in service of process and delays in prosecution of case. For example, in *Anderson v. Air West. Inc,* a dismissal on grounds of Rule 41(b) was upheld where the plaintiff, a shareholder bringing claims against defendant Air West, Inc., had not even attempted to serve multiple directors even after she obtained the addresses of the directors via interrogatory. *Anderson v. Air West. Inc.*, 542 F.2d 522, 524 (9th Circuit 1976). The *Anderson* case did not involve international defendants, and the Court found that the plaintiff's delay in service was "willful" with no compelling explanation for failure to serve the defendants. *Id* at 525. The plaintiff in Anderson explained her actions by stating to the appellate court that "no one was intensely gearing up for this litigation prior to appellees' service". *Id* at 525.

Other 9th Circuit cases demonstrate a similar pattern of willful or egregious acts of delay where Courts have taken the extreme measure of dismissing claims and/or parties. In *Henderson v. Duncan*, a Rule 41(b) dismissal was issued and upheld on appeal where plaintiff's counsel repeatedly disregarded deadlines set by the presiding court and three warnings by the presiding court of possible dismissal had been issued. *Henderson v. Duncan*, 779 F. 2d 1421, 1423 (9th Cir. 1986). In *Dewey v. Farchone*, cited by the Defendants for the proposition that indefinite delay of service undercuts fundamental protections afforded to defendants by the statute of limitations, the delay in service and the timing of the filing of the complaint were egregious. *Dewey v.Farchone*, 460 F.2d (7th Cir. 1972). The complaint was a personal injury claim involving a car collision, where mitigation of damages had little relevance, and yet the claim was filed close to the expiration of the statute of limitations. *Id* at 1339-1341. More compellingly, there was no reason

432129.DOC

M B V   L A W   L L P
8 5 5   F R O N T   S T R E E T
S A N   F R A N C I S C O   C A   9 4 1 1 1

1  whatsoever cited by plaintiffs for their delay and there was no finding of reasonable diligence.  *Id*

2  at 1341.

3          All of the preceding cases involve willful delay, egregious lack of reasonable diligence,

4  and did not involve the unusual and challenging circumstances surrounding prosecution of claims

5  against international defendants, including defendants aided by a large government entity.

6  As documented above, Plaintiff was diligent in her efforts to comply with the Hague Convention

7  and serve Defendant TIETS and the Individual Indian Defendants.  That the Central Authority

8  has not confirmed and/or executed service--despite repeated requests and despite unequivocal

9  evidence the Central Authority received the original summons and appropriate request for service

10  documentation—should not constitute a basis for dismissal of claims against the allegedly

11  unserved Defendants.  Unlike any of the plaintiffs in *Anderson*, *Henderson*, or *Dewey*, Plaintiff

12  offered and is offering meaningful explanations and updates to the Court of her efforts to move

13  prosecution at a reasonable pace.  Dkt No 3, 5, 8, 19, 20.  Moreover, as articulated above, she has

14  offered now clear documentary evidence demonstrating her timely and thorough compliance with

15  the Hague Convention in serving all of the Individual Indian Defendants and TIETS.

16      **C.    Statute of Limitation Concerns Should Not Be A Consideration In Assessing
            the Adequacy of Service Efforts for the Unserved Individual Indian
17            Defendants and TIETS.**

18          Plaintiffs appreciate why the Court has issued a Show Cause Order in order to move the

19  proceedings along and prompt resolution of these vexatious matters.  The Court also did note its

20  concern with the delay in service in view of the statute of limitations.  First, we wish to point out

21  to the Court that it was well within Plaintiff's rights to wait until the latter portion of the two year

22  statutory period, particularly where there is a wealth of evidence she was trying to mitigate loss

23  and had been pursuing reasonable efforts to serve the Defendants, despite the egregious delay by

24  the Central Authority.  Second, Plaintiffs wish to further emphasize to the Court that there is clear

25  evidence that the most egregious aspects of breach relating to fraud and trade secret

26  misappropriation did not reveal themselves in full until 2007 and 2008. SAC ¶¶ 47, 48, 49, 65;

27  see also Third Amended Complaint ("TAC") Dkt. No. 147.  Third, Plaintiffs want to remind the

28

6/22/2010                              16

432129.DOC

1   Court that many of the allegedly unserved Individual Indian Defendants have or very likely have

2   actual notice of this matter because of their physical location on the IITK campus and their close

3   coordination with Defendant Chakrabarti who has been submitting declarations to the Court in

4   support of Defendant's various positions.  **Details of these relationships and the likelihood of**

5   **actual notice are highlighted below under Section E.**

6       D.      **None of The Individual Indian Defendants or Defendants TIETS Will Suffer**
                **Prejudice as a Result of the Alleged Delay in Service.**
7

8           In its recent order, the Court observed that the presumption of injury to Defendants

9   arising from alleged delay of service or prosecution is rebuttable.  Dkt. No. 143, page 7; see also

10  *Anderson v. Air West. Inc.*, 542 F.2d at 524.  Of course, we reiterate that any alleged delay of

11  service in connection with the Individual Indian Defendants and TIETS is the result of the Indian

12  Central Authority's failure to comply with Article 4;  Plaintiffs have made diligent and

13  reasonable attempts to comply with the Hague Convention.

14          However, assuming that allegations of delay of service were true, it remains clear that

15  none of the Individual Indian Defendants or TIETS have suffered prejudice as a result of any

16  alleged delay.  Many of the Individual Defendants, such as Defendant Dasgupta, Defendant

17  Naskar, and Defendant TIETS worked at IITK at the time service was attempted, still work now

18  and are located on the IITK campus and have actual notice of the lawsuit by virtue of their past

19  and current close working relationships with Defendant Partha Chakrabarti.  SAC, Paragraph 16.

20  At the relevant times when service was completed for Defendant IITK and now, Defendant

21  Chakrabarti was and is believed to still be the Dean of Sponsored Research at IITK, worked and

22  is believed to still work on the IITK campus, worked directly with and is believed to still work

23  directly with Defendant Dasgupta and Defendant Naskar, and served and is believed to still serve

24  on the board of Defendant TIETS.  SAC, Paragraph 15.  Defendant Chakrabarti has actively

25  participated in this litigation by submitting declarations on behalf of Defendant IITK.  Dkt. No.

26  76 ("Supplemental Declaration of Partha Chakrabarti" executed on September 14, 2009).  In

27  order to make specific statements regarding the Joint Venture and to allege that his team was not

28

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY
UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -Case No. C-08-02658-
RMW (HRL)

432129.DOC

M B V   L A W   L L P
8 5 5   F R O N T   S T R E E T
S A N   F R A N C I S C O ,   C A   9 4 1 1 1

M B V   L A W   L L P
8 5 5   F R O N T   S T R E E T
S A N   F R A N C I S C O   C A   9 4 1 1 1

1  involved in any misconduct or misappropriation of technology, Defendant Chakrabarti would

2  have been required to contact all of the current IITK employees involved with the Joint Venture

3  (including Defendant Dasgupta and Defendant Naskar) and all of the other Individual Defendants

4  involved with the Joint Venture.

5       More importantly, notwithstanding all of the various motions and related activities to date

6  in this case, the fact is that IITK has rather effectively blocked discovery from commencing in

7  this action.  Thus, there is no prejudice to any unserved defendants because discovery has not yet

8  commenced, although Plaintiffs are quite eager to commence discovery immediately.  The fact is

9  that these supposedly unserved defendants have actual notice of this lawsuit and have been

10  participating in IITK's aggressive defense.  Discovery should be commencing shortly, and these

11  defendants will have every opportunity to participate in their defense.

12      **E.**    **This Court Should Authorize Alternative Service of the Remaining Allegedly Unserved Defendants pursuant to FRCP 4(f)(3) and/or Deem the Remaining**

13             **Allegedly Unserved Defendants Served Pursuant to FRCP 4(l)(2)(B).**

14       As Plaintiffs have argued to the Court before and will argue again in a separate motion to

15  be filed concurrent with this response, courts have noted that "although the Hague Convention

16  'carefully articulates the procedure which a litigant must follow in order to perfect service

17  abroad, . . . it does not prescribe the procedure for the forum Court to follow should an element of

18  the procedure fail.'" *Burda Media, Inc. v. Viertel*, 417 F.3d 292 , 301 (2d Cir. 2005) (citing to

19  *Fox v. Regie Nationale Des Usines Renault*, 103 F.R.D. 453, 455 (W.D. Tenn. 1984)).  In such

20  cases, Plaintiffs may ask the court to authorize alternative methods of service as allowed by Fed.

21  R. Civ. P. 4(f)(3).  Fed. R. Civ. P. 4 Advisory Committee's Note.

22       It should also be noted that Courts have consistently ruled that good faith technical errors

23  made while attempting to comply with the Hague Convention should not bar an action.  In *Garg*

24  *v. Winterthur*, the Court notes that: "the Hague Convention "should be read together with Rule 4,

25  which `stresses actual notice, rather than strict formalism.'" *Id.* (quoting *Fox v. Regie Nationale*

26  *des Nines Renault,* 103 F.R.D. 453, 455 (W.D.Tenn.1984)).  **Thus, where the plaintiff made a**

27  **good faith attempt to comply with the Convention, and where the defendant received**

28

18

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -CASE NO. C-08-02658-RMW (HRL)

M B V    L A W    L L P
8 5 5   F R O N T   S T R E E T
S A N   F R A N C I S C O   C A   9 4 1 1 1

1    **sufficient notice of the action such that no injustice would result, the court may deem**

2    **service of process properly perfected**.  *Burda Media*, 417 F.3d at 301; see also *Lemme  v. Wine*

3    *of Japan Import*, *Inc.*, 631 F.Supp. 456, 464 (E.D.N.Y.1986) (finding service sufficient where the

4    defendant had actual notice of the existence of the proceeding against it although only the

5    summons was translated into the recipient's native language)."  *Garg v. Winterthur*, 525 F. Supp

6    2nd 315 (2007).

7         In connection with Defendant TIETS and the remaining individual Indian Defendants,

8    Plaintiffs clearly made reasonable efforts to comply with the terms of the Hague Convention as

9    documented above, *without violating Indian law*, pursuant to the terms of FRCP 4(f)(1) and

10   Article 3 of the Hague Convention.  IITK has been served, and the other eight Individual Indian

11   Defendants and TIETS were sent what Plaintiff reasonably believes to be appropriately

12   conforming documents via the Indian Central Authority as required by Article 3 the Hague

13   Convention.  To date, the Indian Central Authority has neither confirmed nor denied service or

14   alleged any defect in service in connection with the March 9, 2009 package.

15        Plaintiffs have been careful not to violate Indian law by attempting to use any alternative

16   methods of service provided by the Hague Convention because India does <u>not</u> recognize Article

17   10 of that Convention, which provides for alternative methods of service such as international

18   registered mail. Dkt. No. 20.  For this reason, Plaintiffs instead chose to submit the Letter to

19   Central Authority as documented extensively above, as one last attempt to obtain confirmation of

20   the service that may already have occurred or give the Central Authority some additional time to

21   remedy its oversight.  And finally, it should be noted, as outlined in Section D above, all of the

22   Individual Indian Defendants and TIETS have actual notice of the pendency of this action.

23        In view of these unusual circumstances including the failure of India's Central Authority

24   to confirm or deny the validity of attempted service and Plaintiffs' inability to avail themselves of

25   the other methods of service provided for by the Hague Convention in view of India's rejection

26   of Article 10, Plaintiffs will, in a <u>separate motion</u> to be filed concurrently with this Response

27   brief, request a Court Order via Federal Rule 4(f).  Specifically, Federal Rule 4(f)(3) states:

28

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY
UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -Case No. C-08-02658-
RMW (HRL)

432129.DOC

M B V   L A W   L L P
8 5 5   F R O N T   S T R E E T
S A N   F R A N C I S C O   C A   9 4 1 1 1

1   "Unless federal law provides otherwise, an individual [or foreign entity] - other than a minor, an

2   incompetent person, or a person whose waiver has been filed - may be served at a place not

3   within any judicial district of the United States. . .(3) by other means not prohibited by

4   international agreement, as the court orders."  FRCP 4(f)(3).  FRCP 4(f)(3), which is used via

5   court order, has been traditionally used for these kinds of unusual circumstances where service of

6   process is unduly delayed or does not occur despite diligent attempts at compliance with the

7   applicable international agreement.  It is important to note that Rule 4(f)(3) does not need to be

8   used as a last resort, and that the Court has wide discretion to use various methods of alternate

9   service.  *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) citing

10  also *Mayoral-Amy v. BHI Corp.,* 180 F.R.D. 456, 459 n.4 (S.D.Fla.1998).   Indeed, the latitude

11  afforded a court order via Rule 4(f)(3) even permits the alternate service to be in contravention of

12  the foreign jurisdiction's local laws so long as it is consistent with international agreements,

13  which this would be here.  *Id* at 1014.  Thus, this Court could order service by registered air mail,

14  publication, service to defense counsel or even e-mail—methods that Plaintiffs have not been

15  able to use to date without a Court Order.

16        IITK was properly served.  On information and belief, IITK is the known work address

17  and employer of (1) Defendant Chakrabarti, (2) Defendant Dasgupta, (3) Defendant TIETS, and

18  (4) Defendant Naskar. Dkt. No. 131, Farhang Decl., Ex. A.  We have further determined that

19  Defendant Choudhury, who works for the entity Minekey, is also located on the campus of IITK

20  as a key employee for one of the companies incubated by TIETS at IITK.  Please see attached

21  Exhibit E documenting Defendant Choudhury's location on the IITK campus.

22         Consistent with the substance and intent of Rule 4(f)(3), Plaintiffs, under separate

23  motion, will request that the Court hereby:  (i)  request defense counsel, who appears to be acting

24  as counsel for all of the Defendants, to provide copies of the applicable service documentation

25  and operative complaints already provided to IITK and to IITK Defendants Chakrabarti,

26  Dasgupta, Naskar and to the appropriate office of Defendant TIETS, located on the IITK campus,

27  and to provide copies of the same applicable service documentation and complaints to the other

28

**RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY
UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS** -Case No. C-08-02658-
RMW (HRL)

432129.DOC

1   Indian Defendants including Defendant Choudhury who appears to be working directly with

2   TIETS as a key employee of the incubated company Minekey;  or (ii) pursuant to FRCP

3   4(l)(2)(B), deem service completed  in view of the high probability of actual notice to all of the

4   Individual Defendants and TIETS as set forth above, or (iii) authorize service by mail.  The plain

5   language of FRCP 4(l)(2)(B) allows the Court to establish proof of service "if made under Rule

6   4(f)(2) or (f)(3), by a receipt signed by the addressee *or by other evidence satisfying the court*

7   *that the summons and complaint were delivered to the addressee* [emphasis added]."  FRCP.

8   4(l)(2)B).

9        Defendants have already opposed Plaintiffs introduction of this motion principally on the

10   grounds that:  (i)  India has rejected Article 10 of the Hague Convention which would otherwise

11   allow service by postal channels or use of competent persons such as judicial officers within the

12   destination State  (ii)  service on Defendant Counsel would bypass the Central Authority  (iii) any

13   alternative service issued by the Court must be in compliance with Indian law and (iv) use of

14   alternative service would violate principles of due process.  Dkt. No 138.  Plaintiffs shall address

15   all four of these arguments as follows.

16        First, the rejection of Article 10 by India is not the same as prohibition by international

17   agreement.   FRCP 4(f)(3) specifically authorizes alternative service "by other means not

18   prohibited by international agreement" and requires a court order.  FRCP 4(f)(3).  There is no

19   authority Plaintiffs could find to support the argument that a nation's *unilateral* reservation in

20   opposition of the Hague Convention would constitute a prohibition "by international agreement"

21   and preclude use of FRCP 4(f)(3).

22        Second, while it is true that service of Defendant's defense counsel in India or the United

23   States would technically bypass the Central Authority, such a bypass appears necessary at this

24   juncture and indeed serves the exact purpose for which FRCP 4(f)(3) was designed.   The Central

25   Authority appears thoroughly uninterested in the action as it ignored its obligations under Article

26   4 of the Hague Convention, and failed to respond to the October 2009 Letter to Central

27   Authority.

28

MBV   LAW   LLP
855  FRONT  STREET
SAN FRANCISCO  CA 94111

6/22/2010                                    21

432129.DOC

1    Third, it is simply incorrect that alternative service of process must be in compliance with

2    Indian law.  Defendants attempt to factually distinguish *Prewitt Enterprises, Inc. v. Org. of*

3    *Petroleum Exporting Countries* from *Rio Properties v. Rio Intern. Interlink* by arguing that "*Rio*

4    involved an international internet company doing business in the United States, had a viable

5    presence in the United States; that physical personal service had been legally attempted by

6    actually serving a legitimate agent of the defendant in the United States; and that the

7    defendant had evaded the attempted service."  Dkt No. 138, p 10.  In reality, *Rio* is actually quite

8    similar to the case at hand.  Just as the claimants in *Rio* had made significant efforts at service

9    prior to the Rule 4(f)(3) motion, Plaintiff Farhang has fully complied with service obligations

10   pursuant to Article 3 under the Hague Convention.  *Rio Properties v. Rio Intern. Interlink*, 284 F.

11   3d at 1012-1013 (9th Cir. 2002).   Unlike in *Prewitt* where there was an unusual and expansive

12   specific Austrian law prohibiting service of OPEC as an international organization without its

13   express consent, Plaintiffs could find no such expansive law in India that would prohibit some

14   means of permissible alternative service of the Individual Defendants or TIETS in India. *Prewitt*

15   *Enterprises, Inc. v. Org. of Petroleum Exporting Countries* 353 F. 3d 916, 926 (11th Cir. 2003)

16   Moreover, *Rio* is a 9th Circuit case and is controlling over Prewitt (which is an 11th Circuit case)

17   in the matter at hand.  That being said, *Rio* has been cited as good law for the specific proposition

18   that alternative service of process need not be in compliance with the law of the destination state

19   by other circuits.  See *Export-Import Bank of the United States v. Asia Pulp and Paper Company,*

20   *Ltd*., Dist Court, S.D. New York 2005 (where the Court notes that "even if it is technically in

21   violation of Indonesian service requirements, any offense to that country's sovereignty is

22   minimal. Such service is not disruptive, and any party that engages in international transactions

23   must anticipate the use of generally accepted forms of service, especially where it has, through its

24   own actions, frustrated the methods of service provided for in the underlying transaction

25   documents.")

26   Fourth, we reject entirely the notion that use of alternative means of service of process

27   would violate interests of due process.  The test for due process is simple, and we are somewhat

28

6/22/2010                                    22

RESPONSE TO JUNE 2, 2010 SHOW CAUSE ORDER IN CONNECTION WITH ALLEGEDLY
UNSERVED INDIVIDUAL INDIAN DEFENDANTS AND DEFENDANT TIETS -CASE NO. C-08-02658-
RMW (HRL)

432129.DOC

M B V   L A W   L L P
8 5 5   F R O N T   S T R E E T
S A N   F R A N C I S C O   C A   9 4 1 1 1

perplexed by Defendants articulation of the rule.  In simple terms, the Ninth Circuit has stated: "The method of service crafted by the district court must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v.* 1017*1017 *Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314. . .." *Rio Properties v. Rio Intern. Interlink*, 284 F. 3d 1016-1017 (9th Cir. 2002).  There is no doubt that the Individual Indian Defendants and TIETS have been apprised of the pendency of the action, as described in Section D above, and have and will have an opportunity to present their objections.  In particular, Plaintiffs urge the Court to consider that Defendant Chakrabarti, Defendant Dasgupta, Defendant Naskar and Defendant TIETS, as employees or entities located on the IITK campus, all in close coordination with Defendant Chakrabarti who is coordinating with U.S. Counsel in this action, have likely already been presenting their objections in this matter as a matter of practical fact through submission of declarations by Defendant Chakrabarti.

## IV.   **CONCLUSION**

For the reasons stated above, Plaintiffs urge the Court not to dismiss the unserved Defendants.  These defendants are each critical in their own way to this case, and Plaintiffs have done everything possible to effectuate service but have been hampered by the failure of the India's Central Authority to either complete service or notify Plaintiffs of any defect in their papers.  Plaintiffs have just once again sought to re-serve Defendants, this time through PFI to avoid any doubt, and have also moved for an order allowing alternative service.  Discovery in this case has not even commenced yet, because IITK has filed motion after motion trying to prevent this Court from moving forward, and Plaintiffs and their counsel have diligently litigated this case over the past two years and especially just over the past six months since counsel was engaged.

DATED:  June 24, 2010                       MBV LAW LLP

                                            */s/ Micah R. Jacobs*
                                            Micah R. Jacobs
                                            Attorneys for Plaintiffs MANDANA D.
                                            FARHANG and M.A. MOBILE LTD.

432129.DOC