*E-FILED 09-03-2010*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| M.A. MOBILE LTD. and MANDANA D. FARHANG,<br><br>        Plaintiffs,<br>    v.<br><br>INDIAN INSTITUTE OF TECHNOLOGY KHARAGPUR; TECHNOLOGY ENTERPRENEURSHIP AND TRAINING SOCIETY; PARTHA P. CHAKRABARTI; PALLAB DASGUPTA; GURASHISH S. BRAR; RAKESH GUPTA; PRAVANJAN CHOUDHRY; SUBRAT PANDA; ANIMESH NASKAR, and DOES 1 through 100, inclusive,<br><br>        Defendants.<br>                                                           / | No. C08-02658 RMW (HRL)<br><br>**ORDER (1) DENYING PLAINTIFFS' MOTION FOR ENTRY OF PROTECTIVE ORDER AND (2) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR AN ORDER DEEMING TRADE SECRETS DISCLOSURE SUFFICIENT**<br><br>[Re:  Docket No. 183] |

Plaintiffs M.A. Mobile Ltd. and Mandana D. Farhang sue for alleged breach of contract and trade secret misappropriation. According to plaintiffs, the technology in question enables dynamic, real-time parsing of data on mobile handheld devices. Plaintiffs essentially contend that defendants duped them into entering a supposed joint venture (which plaintiffs say turned out to be a sham) in order to obtain and then exploit plaintiffs' claimed trade secrets for themselves. Additionally, the parties dispute the ownership of certain technological "enhancements," which defendant Indian Institute of Technology, Kharagpur (IIT) says it created.

Plaintiffs now move for entry of a protective order governing the disclosure of the parties' confidential information. They also seek an order deeming their trade secrets disclosure sufficient. IIT opposes the motion. This court deems the matter appropriate for determination without oral argument, and the September 7, 2010 hearing is vacated. CIV. L.R. 7-1(b). Upon consideration of the moving and responding papers, this court denies the motion for entry of a protective order under the terms plaintiffs propose and grants in part and denies in part plaintiffs' motion as to the sufficiency of their trade secrets disclosure.

A.   Motion for Entry of Protective Order

The parties have agreed upon nearly all the terms of a protective order, including a "Prosecution Bar" provision. Essentially, under that provision, anyone involved in the prosecution of patents or patent applications relating to the technology at issue is precluded from accessing the opposing party's highly confidential information. The only dispute here is whether any protective order to be entered should expressly *exclude* plaintiffs' patent prosecution counsel at the Fenwick & West firm—namely, attorney John T. McNelis and patent agent Rajendra Panwar—from the application of that provision. The parties disagree whether McNelis' and Panwar's patent prosecution activities properly should be deemed "competitive decisionmaking" that would bar their access to IIT's highly confidential information.

Upon a showing of "good cause," Fed. R. Civ. P. 26(c) authorizes courts to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in discovery by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." FED. R. CIV. P. 26(c)(1)(G). When determining whether a party's patent counsel should have access to the opposing party's confidential information, the court must strike a balance between a party's interest in safeguarding its confidential information and the other side's right to broad discovery under Fed. R. Civ. P. 26(b)(1). *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). In balancing these interests, the court considers the risk of inadvertent disclosure of the confidential information, as well as the potential impairment to the opposing party's case if the requested access to the information is denied. *See id*. Access to

1   confidential information cannot be denied solely because of an attorney's status as a patent
2   prosecutor. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *see
3   also Brown Bag*, 960 F.2d at 1470. The key inquiry is whether the attorney in question is
4   involved in "competitive decisionmaking," a term that the Federal Circuit has defined as
5   "shorthand for a counsel's activities, association, and relationship with a client that are such as
6   to involve counsel's advice and participation in any or all of the client's decisions (pricing,
7   product design, etc.) made in light of similar or corresponding information about a competitor."
8   *United Steel Corp.*, 730 F.2d at 1468 n.3. Each case must be evaluated on its own facts on a
9   counsel-by-counsel basis. *See id*. at 1468.

10  Courts are split on the question whether patent prosecution and patent counseling are
11  "competitive decisionmaking." Some "have concluded that patent prosecution is, by its very
12  nature, a form of competitive decisionmaking because patent attorneys can control the nature
13  and scope of a patented invention." *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254
14  F.R.D. 568, 580 (N.D. Cal. 2008) (citing cases); *see also Methode Elecs., Inc. v. DPH-DAS
15  LLC*, 679 F. Supp.2d 828, 834-35 (E.D. Mich. 2010) (finding that application of a patent
16  prosecution bar was warranted); *Presidio Components, Inc. v. American Technical Ceramics
17  Corp.*, 546 F. Supp.2d 951, 955-59 (S.D. Cal. 2008) (same). Some "courts have extended the
18  conclusion to hold that patent counseling is also a form of competitive decisionmaking if it
19  relates broadly to the scope of a patented invention." *Phoenix Solutions, Inc.*, 254 F.R.D. at
20  580. Other courts have found that patent prosecution activities do not constitute "competitive
21  decisionmaking" activities. *See, e.g., Avocent Redmond Corp. v. U.S.*, 85 Fed. Cl. 640, 645-46
22  (2009) (concluding that patent attorneys working on reexamination proceedings as to several
23  patents-in-suit were not competitive decisionmakers).

24  Under the circumstances presented here, this court finds that McNelis and Panwar are
25  engaged in competitive decisionmaking such that their access to IIT's confidential information
26  properly should be restricted. McNelis says that neither he nor Panwar have "provided
27  significant advice or engaged in any significant activities in connection with marketing,
28  business development, vendor contracts, customer development, pricing, or product design or

3

any other such capacity that would involve competitive decisionmaking." (McNelis Decl. ¶ 5). This language seems to suggest that they have had some involvement in such matters. In any event, unlike the attorneys in *Avocent* (who were engaged in patent reexamination proceedings), McNelis (with Panwar's assistance) currently is prosecuting at least one patent application (non-public status), which plaintiffs say incorporates the very technology at issue in this case. (*Id*.). Thus, plaintiffs' patent counsel and patent agent are involved in "decisions of scope and emphasis that implicate competitive decision making, as claims may be drafted to read on new products and new directions where [a party] project[s] sales to be most critical." *Presidio Components, Inc.*, 546 F. Supp.2d at 956 (citations omitted). Moreover, as noted above, IIT claims ownership of certain aspects of the technology in question. While this court has no reason to question the credibility and good faith of McNelis or Panwar, it is doubtful whether they could properly or practically compartmentalize IIT's confidential information bearing on the subject technology while simultaneously prosecuting patents for plaintiff concerning the very same technology.

Plaintiffs argue that they will be unduly prejudiced because they have also been consulting with McNelis and Panwar about the subject technology and the issues in this litigation. Here, plaintiffs say that McNelis is uniquely qualified to assist in them in this lawsuit because (a) he is knowledgeable about the technology at issue and (b) he has obtained feedback from defendant Chakrabarti for the purpose of responding to U.S. PTO office actions. For the reasons stated above, this court is unpersuaded that any possible prejudice to plaintiffs outweighs the risk of harm to IIT. Thus, plaintiffs may either consult with McNelis and Panwar about this lawsuit or have them continue to prosecute patents on the technology at issue. They cannot do both.

Accordingly, plaintiffs' motion on this issue is denied. Within fourteen days from the date of this order, IIT shall submit a proposed form of protective order, in accordance with this order, for this court's signature.

4

B.  <u>Plaintiffs' Trade Secret Disclosure</u>

Plaintiffs also seek an order deeming their trade secret disclosure to be sufficient. A plaintiff suing for misappropriation of trade secrets must identify them with "reasonable particularity" before commencing discovery related to the claimed secrets. CAL. CODE CIV. PROC. § 2019.210. Such disclosure is required to provide "reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." *Diodes, Inc. v. Franzen*, 260 Cal. App.2d 244, 253, 67 Cal. Rptr. 19 (1968). Courts have broad discretion in determining whether a plaintiff's disclosure satisfies section 2019.210. *Perlan Therapeutics, Inc. v. Super. Ct.*, 178 Cal. App.4th, 1333, 1337, 101 Cal. Rptr.3d 211 (2009).

"Trade secret identification does not require 'every minute detail' of the trade secret or the 'greatest degree of particularity possible.'" *Id*. at 1346, 101 Cal. Rptr.3d 211 (quoting *Advanced Modular Sputtering, Inc. v. Super. Ct.*, 132 Cal. App.4th, 826, 830-31, 33 Cal. Rptr.3d 901 (2005)). "Nor does section 2019.210 envision a 'miniature trial on the merits of a misappropriation claim before discovery may commence.'" *Id*. (quoting *Advanced Modular*, 132 Cal. App.4th at 835-36, 33 Cal. Rptr.3d 901). "[W]here 'the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field.'" *Id*. (quoting *Advanced Modular*, 132 Cal. App.4th at 836, 33 Cal. Rptr.3d 901). However, "when the nature of the alleged trade secret or the technical field in which it arises makes a detailed description alone inadequate to permit the defendant to learn the limits of the secret and develop defenses or to permit the court to understand the secret and fashion discovery, the court may require an explanation of how the alleged trade secret differs from matters known to skilled persons in the field as necessary to satisfy those needs." *Brescia v. Angelin*, 172 Cal. App.4th 133, 150, 90 Cal. Rptr.3d 852 (2009). Nevertheless, "[u]nder this flexible standard, absent a showing that the identification of the alleged trade secret alone lacks the particularity necessary to serve the

5

1 statutory purposes, the trade secret claimant need not specify how the secret or its elements are
2 distinguishable from matters known to skilled persons in the field." *Id*. at 149.

3 Here, in view of the parties' failure to agree on the terms of an appropriate protective
4 order, plaintiffs say that they were obliged to provide defendants with a non-confidential
5 version of their trade secret disclosure, which has also been publicly filed in connection with the
6 instant motion. After that initial disclosure was made, plaintiffs filed their Third Amended
7 Complaint together with certain appended and sealed exhibits, which plaintiffs say also describe
8 the claimed trade secrets with sufficient particularity. In general, plaintiffs' disclosure divides
9 the claimed trade secrets into four categories, which are discussed, in turn, below. Having
10 reviewed plaintiffs' disclosures, as well as the Third Amended Complaint and appended
11 exhibits, this court grants plaintiff motion in part and denies it in part as follows:

12     1. <u>"Plaintiffs' Technology"</u>

13 Plaintiffs' public disclosure describes the subject technology as "a standards-based,
14 mobile application development environment that enables development and full execution of
15 enterprise level applications on mobile devices without requiring a wireless connection."
16 (Jacobs Decl., Ex. A at 5). The "core" of the technology is said to be "a novel mobile markup
17 language intended to replace the universally known Wireless Markup Language defined and
18 promoted by the well recognized and accepted Wireless Application Protocol." (*Id*.). The
19 disclosure goes on to state that the novelty of the claimed secret technology lies in the ability to
20 "dynamically render data in a mobile markup language," "interface with existing legacy
21 applications often found in large enterprise deployments," and "enable users to interact with
22 large enterprise level applications without the need for a constant wireless connection." (*Id*.).
23 Components of the "core functionality" of the claimed trade secret system are identified as "a
24 graphical user interface development tool using Plaintiffs' proprietary mobile markup language
25 to build mobile enterprise applications"; "installation of any said applications on any mobile
26 device running Windows mobile operating systems, Linux, Palm but also adaptable to other
27 mobile operating systems"; "integration of the mobile applications with any customer's existing
28 backend infrastructure, including the customer's existing legacy applications"; and "execution

6

of said mobile applications containing enterprise level data on the mobile devices." (*Id.* at 5-6). Additionally, plaintiffs say that the claimed trade secrets are also specifically described in their pending patent provisional application (non-public status) and a non-provisional application, which are identified by title, filing date, and application serial number(s). Upon entry of a protective order, plaintiffs say that these patent application and other documents will be made available to defendants in the course of discovery.

Plaintiffs' description of the "core technology" is described with sufficient particularity under section 2019.210.[1]

### 2. "Source Code and a CD Containing a Prototype of the Technology"

The gist of this portion of plaintiffs' disclosure is that (a) the claimed trade secrets are also embodied in specific source code; (b) plaintiff Farhang gave defendants a CD containing this source code and a confidential prototype of the mobile technology application; and (c) defendants possess "a CD and other documentation" that reportedly contain enhancements that defendants claim to have created and which plaintiffs contend really belong to plaintiffs or to the purported joint venture. (Jacobs Decl., Ex. A at 6-7). Insofar as plaintiffs contend that certain of these materials were not properly returned to them, they should clarify this in an amended disclosure. (This is especially true with respect to the "CD and other documentation" reportedly containing "enhancements," which the disclosure seems to indicate defendants kept *and* returned to plaintiffs). Plaintiffs' disclosure of these materials is otherwise sufficient to give defendants reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.

---

[1] As noted by plaintiffs, in an order on IIT's prior motion to dismiss, Judge Whyte found that plaintiffs' Second Amended Complaint, together with the identification of the pending patent applications, was sufficient to provide defendants with "reasonable notice of the issues to be met at the time of trial," as well as "reasonable guidance in ascertaining the scope of appropriate discovery" under *Diodes*, 260 Cal. App.2d at 252-53. (Docket No. 143, June 1, 2010 Order at 21).

7

### 3. "Copies of Non-Published Provisional Patent Documentation, the Pending Patent Application, and Related Documentation"

Here, plaintiffs say that their "Pending Patent Application and related documentation" previously were provided to defendants pursuant to a non-disclosure agreement. These documents apparently are the same patent application materials identified in Category 1. The reference to "related documentation" is vague. Nonetheless, as discussed above, the applications themselves are specifically identified, and plaintiffs say that the referenced documentation shall be made available to defendants in discovery after a protective order is entered. Plaintiffs' motion as to the sufficiency of this portion of their disclosure is granted.

### 4. "Critical and Confidential Market Intelligence, Market Analysis and Marketing Strategy Regarding Specifics for Implementation and Marketing of the Technology to Prospective Partnerships."

Plaintiffs' disclosure identifies five subcategories of "business implementations and marketing strategies" that they claim are trade secrets. As to subcategories (i) and (iii)-(v), plaintiffs should serve an amended disclosure which identifies the particular methods, specifications, and marketing intelligence claimed to be trade secrets. Plaintiffs assert that these alleged secrets are contained in several sealed exhibits appended to their Third Amended Complaint. However, those documents appear to include public information and other seemingly non-trade secret information. Defendants should not have to comb through plaintiffs' 148-page pleading and exhibits to determine what is being claimed as trade secret "business implementations and marketing strategies" and what is not. *Brescia*, 172 Cal. App.4th at 150, 90 Cal. Rptr.3d 842. As for subcategory (ii), defendants seem to dispute whether the identified information could truly be trade secrets, but this court finds that plaintiffs' disclosure gives defendants reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.

Plaintiffs have fourteen days from the date of this order in which to serve an amended

8

1  trade secrets disclosure in accordance with this order.

2  SO ORDERED.

3  Dated:    September 3, 2010

4  
5  HOWARD R. LLOYD
   UNITED STATES MAGISTRATE JUDGE

United States District Court
For the Northern District of California

5:08-cv-02658-RMW Notice has been electronically mailed to:

Christopher Yeh    cyeh@orrick.com

Indra Neel Chatterjee    nchatterjee@orrick.com, adalton@orrick.com, kmudurian@orrick.com

Micah R. Jacobs    mjacobs@mbvlaw.com, amber@mbvlaw.com, leah@mbvlaw.com, ssingh@sanjivnsingh.com

Nitin Gambhir    ngambhir@orrick.com

Theresa Ann Sutton    tsutton@orrick.com, kmudurian@orrick.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.