**E-FILED on**  7/7/2011

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

<table>
<tr><td>

MANDANA D. FARHANG and M.A.<br>MOBILE,

        Plaintiffs,

v.

INDIAN INSTITUTE OF TECHNOLOGY,<br>KHARAGPUR; TECHNOLOGY<br>ENTREPRENEURSHIP AND TRAINING<br>SOCIETY; PARTHA P. CHAKRABARTI;<br>PALLAB DASGUPTA; GURASHISH S.<br>BRAR; RAKESH GUPTA; PRAVANJAN<br>CHOUDHURY; SUBRAT PANDA;<br>ANIMESH NASKAR,

        Defendants.

</td><td>

No. C-08-02658 RMW

ORDER GRANTING MOTIONS TO<br>DISMISS FOR LACK OF PERSONAL<br>JURISDICTION, DENYING MOTION TO<br>DISMISS FOR FAILURE TO PROSECUTE<br>AND INSUFFICIENT SERVICE, AND<br>DENYING WITHOUT PREJUDICE MOTION<br>FOR AUTHORIZATION OF ALTERNATIVE<br>SERVICE

**[Re Docket Nos. 217, 218, 221, and 223]**

</td></tr>
</table>

Defendants Pallab Dasgupta, Animesh Naskar, and Subrat Panda move to dismiss plaintiffs'

Second Amended Complaint for lack of personal jurisdiction, for failure to prosecute and for

insufficient service of process. Defendants Technology Entrepreneurship and Training Society and

Partha Chakrabarti also move to dismiss for failure to prosecute and insufficient service of process.

Plaintiffs move to authorize alternative service of the Third Amended Complaint on the unserved

defendants. For the reasons set forth below, the court: (1) grants the motions to dismiss for lack of

United States District Court
For the Northern District of California

personal jurisdiction; (2) denies the motion to dismiss for failure to prosecute and insufficient service; and (3) denies without prejudice authorization for alternative service.

## I.   MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION BY DEFENDANTS DASGUPTA, NASKAR AND PANDA

### A.  Standard for Motion

Defendants Dasgupta and Naskar jointly move and Panda separately moves to dismiss the action against them on the basis of lack of personal jurisdiction over them. They each claim that their activities do not justify the assertion of specific jurisdiction over them.  Plaintiffs contend that defendants consented to jurisdiction by signing a nondisclosure agreement containing a forum selection clause and, in addition, that the three-prong test for the exercise of specific jurisdiction has been met.

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 126, 128 (9th Cir. 1995).  However, because this motion is based on written materials rather than an evidentiary hearing, plaintiffs "need only make a prima facie showing of jurisdictional facts," and the court "only inquire[s] into whether the plaintiff's pleading and affidavits make a prima facie showing of personal jurisdiction."  *Id.* (citing *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).  "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."  *Id.*

### B.  The Defendants Asserting Lack of Jurisdiction Over Them

Dasgupta, Naskar and Panda are citizens and lifelong residents of India.  Dasgupta is a computer science and engineering professor for the Indian Institute of Technology, Kharagpur ("IITK").  He was asked to make himself available for technical guidance if needed with respect to the software at issue.  He, however, performed no development work on the software.  He did sign a non-disclosure agreement at the request of IIT, but he did not recognize at the time he signed it that he could personally be required to go to California to defend against a lawsuit.  In November 2004, Dasgupta traveled to California on business unrelated to IIT's work for Farhang, but he met briefly

**United States District Court**
For the Northern District of California

1  with her at IIT's request, at which time Farhang shared her thoughts about revenue that could be

2  generated if an agreement were successfully reached with the Indian Railways. Dasgupta submits

3  that going to California for litigation would be economially difficult for him and take him away from

4  his teaching responsibilities.  He owns no property in California, maintains no office in California

5  and pays no California taxes.  He asserts that he has not disclosed any confidential information to

6  anyone not entitled to view it.

7       Naskar was an administrative officer for a research and development group at IITK; he has

8  never left India, does not have a passport, and has no business or personal contacts with California.

9  He did send an email to Cool e-Mobile, a company Farhang claims she formed as a potential joint

10 venture vehicle, which stated:

11       On behalf of the competent authority, I am very happy to inform you that based on
         the recommendations of the technical committee, the TIETS Governing
12       Body [which includes the Deputy Manager of IBM] has ratified inclusion of your
         proposed technology development under the Incubation programme. . . .  In view of
13       the above, you are requested to submit within ten days details of your company
         including copies of Incorporation Certificate, Memorandum and Articles of
14       Association, available information on intellectual property ownership of the proposed
         technology, the details of the Company Directors and their
15       ownership.

16 TAC, Ex. D.  Although he sent this email, Naskar is not an engineer and denies any involvement

17 with any of the alleged subject development efforts.  He denies signing any nondisclosure

18 agreement.  He denies viewing or having access to any confidential information described in the

19 Second Amended Complaint.

20       Panda was a student working toward advanced degrees at the relevant time.  He was asked to

21 work on a team to develop certain markup language.  He took direction from a faculty member.  He

22 did not know Farhang nor had he heard of M.A. Mobile at the time he was asked to help.  He signed

23 the nondisclosure agreement at the request of his faculty advisor because he had access to the source

24 code on which he was asked to work.  He has no connections with California.  He denies that he

25 disclosed the software to anyone who was not authorized to receive it.

26       **3. The Forum Selection Clause**

27

28

United States District Court
For the Northern District of California

1    Plaintiffs assert that defendants consented to jurisdiction in Santa Clara County, California

2  when they executed a nondisclosure agreement with M.S. Mobile containing a forum selection

3  clause specifying that "[each of the parties irrevocably consents to the exclusive personal

4  jurisdiction of the federal and state courts located in Santa Clara County, California, as applicable,

5  for any matter arising out of or related to this Agreement."  Dasgupta and Panda admit that they

6  signed the nondisclosure agreement, but argue that its enforcement against them would be

7  unreasonable because they signed the agreement at their employer's direction and did not expect the

8  agreement would subject them personally to suit in California.  Naskar states by affidavit that he did

9  not sign the nondisclosure agreement, and the forum selection clause provides no basis for

10  jurisdiction over him.[1]

11    When contractual forum-selection provisions "have been obtained through 'freely negotiated'

12  agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process."

13  *Burger King Corp. v. Redzewicz*, 471 U.S. 462, 474 n. 14(1985) (quoting *M/S Bremen v. Zapata Off-

14  Shore Co.*, 407 U.S. 1, 15 (1972)).  Although *M/S Bremen* held that forum selection clauses are

15  *prima facie* valid, the opinion pointed out that such clauses can be set aside if the party challenging

16  enforcement shows that it would be unreasonable under the circumstances.  *M/S Bremen*, 407 U.S. at

17  10.  This exception to enforcement, however, has been construed narrowly.  "A forum selection

18  clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue

19  influence, or overweening bargaining power; . . .  (2) the selected forum is so "gravely difficult and

20  inconvenient" that the complaining party will "for all practical purposes be deprived of its day in

21  court" . . .; or (3) enforcement of the clause would contravene a strong public policy of the forum in

22  which the suit is brought.  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996)

23  (internal citations omitted).

24

---

25  [1] Plaintiffs suggest that Naskar must have signed a nondisclosure agreement because Professor
Chakrabarti indicated that everyone involved in the joint venture executed it.  Ordinarily,
26  "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's
favor."  *Schwarzenegger*, at 800.  In this case, however, it appears that Naskar did not do
27  development work, and plaintiffs' assumptions about who was required to sign the agreement are not
sufficient to contradict Naskar's affidavit.

28

United States District Court
For the Northern District of California

1       The facts do not suggest that category (1) or (3) apply.  The question here is whether

2  defendants have met the heavy burden of showing that trial in state or federal court in Santa Clara

3  County would be so difficult and inconvenient that they would effectively be denied a meaningful

4  day in court.  *See  Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 281 (9th

5  Cir. 1984).  Preliminarily, it should be noted that unlike the situation in *M/S Bremen*, the

6  nondisclosure agreement here was a standard form agreement, and there is no evidence that

7  Dasgupta or Panda had any role in negotiating the terms of the agreement.  In other words, there is

8  nothing about the clause that would have called Dasgupta's and Panda's attention to it.  Although by

9  its terms it potentially subjects them to litigation in California if sued, it is not surprising that they

10  did not focus on that possibility, but rather viewed the clause as something that would only subject

11  their employer to suit in California if someone on the development team wrongfully disclosed

12  confidential information to someone not authorized to receive it.  In light of the limited roles each

13  appears to have played in the conduct about which Farhang complains, the defendants' lack of

14  contact and familiarity with California, defendants' modest financial abilities and the interference

15  participating in litigation in California would have with their job responsibilities, the court finds that

16  defendants Dasgupta, Naskar and Panda have met their burden of showing that responding to

17  litigation in California would unduly risk depriving them of their day in court.  Moreover, Dasgupta

18  and Panda's involvement, if any was to work on software in India, for an Indian company as a

19  targeted customer, at the behest of their Indian employer.  Naskar was involved with administrative

20  matters and not the development of the technology.  Enforcement of the forum selection clause

21  against Dasgupta, Naskar and Panda would be unreasonable.

22       **D.  Specific Jurisdiction**

23       The Ninth Circuit has articulated the following three-prong test for analyzing a claim of

24  specific jurisdiction:

25       (1)  The non-resident defendant must purposefully direct activities or consummate some

26  transaction with the forum or resident thereof; or perform some act by which he purposefully avails

27

28

ORDER GRANTING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, DENYING MOTION TO DISMISS FOR
FAILURE TO PROSECUTE AND INSUFFICIENT SERVICE, AND DENYING WITHOUT PREJUDICE MOTION FOR
AUTHORIZATION OF ALTERNATIVE SERVICE    —No. C-08-02658 RMW
MEC                                                                    5

1  himself of the privilege of conducting activities in the forum, thereby invoking the benefits and

2  protection of its laws;

3      (2)  the claim must be one which arises out of or is related to the defendant's forum-related

4  activities; and

5      (3) the exercise of jurisdiction must comport with fair play and substantial justice.

6      *See Schwarzenegger*, 374 F.3d at 802.

7                          **1.  Purposeful Availment**

8      Under the first prong of the specific jurisdiction test, plaintiffs must establish that Dasgupta,

9  Naskar, and Panda either purposefully availed themselves of the privilege of conducting activities in

10 the Northern District of California, or purposefully directed their activities toward the Northern

11 District of California.  *See id.*  "A purposeful availment analysis is most often used in suits sounding

12 in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding

13 in tort."  None of the defendants purposely availed himself of the privilege of conducting activities

14 in Northern California, nor did he personally direct his activities at Northern California.

15     "A showing that a defendant purposefully availed himself of the privilege of doing business

16 in a forum state typically consists of evidence of the defendant's actions in the forum, such as

17 executing or performing a contract there."  *Id.*  By taking such actions, a defendant is said to

18 "purposefully avail[s] itself of the privilege of conducting activities within the forum state, thus

19 invoking the benefits and protections of its laws."  *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253

20 (1958).  In return for invoking these "benefits and protections," "'a defendant must submit to the

21 burdens of litigation in that forum.'"  *Id.* (citing *Burger King*, 471 U.S. at 476).

22     Applying the purposeful availment analysis to these facts, none of the defendants received

23 any benefit, privilege, or protection from California.  Plaintiffs liken defendants' contacts to those

24 discussed in *Burger King*.  That case involved a defendant who "deliberately 'reach[ed] out beyond'

25 Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the

26 manifold benefits that would derive from affiliation with a nationwide organization.  Upon approval,

27 he entered into a carefully structured 20-year relationship that envisioned continuing and wide-

28

ORDER GRANTING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, DENYING MOTION TO DISMISS FOR
FAILURE TO PROSECUTE AND INSUFFICIENT SERVICE, AND DENYING WITHOUT PREJUDICE MOTION FOR
AUTHORIZATION OF ALTERNATIVE SERVICE    —No. C-08-02658 RMW
MEC                                                                                      6

United States District Court
For the Northern District of California

1    reaching contacts with Burger King in Florida." *Burger King Corp.*, 471 U.S. at 479-80.  Such facts

2    do not exist here.  These defendants worked for an Indian employer in India, and it was the

3    plaintiffs, not defendants, who reached out to India in order to develop technology in India for use in

4    India.  They signed contracts in India at the request of their Indian employer.  There is no evidence

5    to support Dasgupta's, Naskar's, or Panda's purposeful availment of California or its laws.

### 2.  Purposeful Direction or Effects

7         To determine whether there are minimum contacts in cases arising in tort, a

8    court applies the Supreme Court's purposeful direction or "effects" test from *Calder v. Jones*, 465

9    U.S. 783 (1983).  *See Schwarzenegger*, 374 F.3d at 803.  The three-part test "requires that the

10   defendant have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

11   harm the defendant knows is likely to be suffered in the forum state.'" *Id.* at 805 (quoting *Dole*

12   *Food*, 303 F.3d at 1111).  Such a showing "usually consists of evidence of the defendant's action

13   outside the forum state that are directed at the forum, such as the distribution in the forum state of

14   goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 802.

15        Plaintiffs do not make a *prima facie* showing that these defendants committed intentional

16   acts aimed at the forum state.  Plaintiffs allege that Dasgupta committed intentional acts aimed at

17   California by signing the nondisclosure agreement and by conducting a brief business meeting with

18   Farhang during travel to California for other purposes.  They allege that Panda committed

19   intentional acts aimed at California by signing the nondisclosure agreement and by allegedly

20   disclosing the trade secrets of California-based plaintiffs.  Naskar allegedly committed intentional

21   acts aimed at California by transmitting confidential information and requesting documents from

22   plaintiffs' agent, which he knew would transmit the message to the plaintiffs in California.  None of

23   these acts constitutes intentional acts aimed at the forum state for purposes of establishing

24   constitutionally adequate minimum contacts with California.  Dasgupta's meeting in California was

25   merely fortuitous.  The other allegations simply state that defendants knew that their work involved

26   a potential plaintiff residing in California.  The foreseeability of harm to a potential plaintiff in the

27   forum alone is not enough to establish personal jurisdiction. *See, e.g.*, *Pebble Beach Co. v. Caddy*,

28

453 F.3d 1151, 1156 (9th Cir. 2006) (requiring "something more" in addition to a mere foreseeable effect–"precisely, whether [defendant's] conduct was expressly aimed at California or alternatively the United States"); *Bancroft & Masters v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (noting that *Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state will always give rise to specific jurisdiction.").

Because plaintiffs cannot demonstrate that Dasgupta, Panda, or Naskar availed himself of the benefits of doing business in California or knowingly committed acts aimed at California likely to cause harm to plaintiffs, the court must dismiss the plaintiffs' claims against Dasgupta, Panda, and Naskar for lack of personal jurisdiction.

## II.      MOTION TO DISMISS FOR FAILURE TO PROSECUTE

### A.  Standard for Dismissal for Failure to Diligently Prosecute

Dasgupta, Chakrabarti, and Naskar move to be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b) and for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5).  Defendants Panda and Technology Entrepreneurship and Training Society ("TIETS") join the motion.  Defendants assert that plaintiffs unreasonably delayed in effecting service and then did not serve the Third Amended Complaint, the operative complaint. Plaintiffs respond that they have made reasonable efforts to effect service and to proceed diligently but have been delayed by others including the Central Authority of India.

The Ninth Circuit looks at least five factors in evaluating whether an action should be dismissed for failure to diligently prosecute.

> Under our precedents, in order for a court to dismiss a case as a sanction, the district court must consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir.1998) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir.1986)). We "may affirm a dismissal where at least four factors support dismissal, ... or where at least three factors 'strongly' support dismissal." *Id.* (quoting *Ferdik*, 963 F.2d at 1263).

*Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999).

United States District Court
For the Northern District of California

1

**B.  Delay in Service**

2    The original complaint was filed on May 27, 2008, apparently immediately before the statute

3   of limitations was to run on several of plaintiffs' claims, unless, as plaintiffs claim, there was

4   justified delay in discovering defendants' alleged wrongdoing.  Defendant ITT was served on April

5   7, 2009.  On March 6, 2009, Farhang faxed a request for service of TIETS and the individual Indian

6   defendants to India's Central Authority.  Service was not accomplished by this attempt.  On

7   October12, 2009 plaintiff attempted to follow-up with the Central Authority pointing out the

8   location of the individual defendant and defendant TIETS.  On June 15, 2010 plaintiffs again

9   transmitted materials for service of the Second Amended Complaint to the Central Authority

10  because defendants' counsel had asserted in May 2010 that plaintiffs' previous attempts at service

11  were defective.  The package was received by the Central Authority on June 18, 2010. Although it is

12  not clear, the Central Authority appears to have served the individual defendants with the Second

13  Amended Complaint about four months later.  Farhang did not request service of the Third Amended

14  Complaint until October 19, 2010.  The Central Authority has apparently rejected the papers for

15  reasons not entirely clear.

16  Farhang blames the Central Authority for ignoring its obligations to accomplish service.

17  Defendants, on the other hand, blame Farhang for not following the rules regarding how to

18  accomplish service and not taking appropriate follow-up action.  They claim that plaintiffs did not

19  attempt to correct the defective service until June of 2010 and then served the Second Amended

20  Complaint when the filing of the Third Amended Complaint was imminent.  Farhang did not attempt

21  to serve defendants with it until October 19, 2010, because she chose to wait and see the outcome of

22  motions attacking the Third Amended Complaint.

23  **C.  Weighing of Factors Relevant to Involuntary Dismissal**

24  Although the public interest in expeditious resolution of litigation and effective case

25  management are relevant considerations that merit some consideration here, the critical issue in this

26  case involves weighing the risk of prejudice to the defendants against the public policy favoring

27  disposition of cases on their merits.  The Ninth Circuit "has consistently held that the failure to

28

ORDER GRANTING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, DENYING MOTION TO DISMISS FOR
FAILURE TO PROSECUTE AND INSUFFICIENT SERVICE, AND DENYING WITHOUT PREJUDICE MOTION FOR
AUTHORIZATION OF ALTERNATIVE SERVICE     —No. C-08-02658 RMW
MEC                                                                                                9

United States District Court
For the Northern District of California

1  prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of

2  actual prejudice to the defendant from the failure [because the] law presumes injury from

3  unreasonable delay." *Anderson*, 542 F.2d at 524 (citations omitted).  This presumption, however, is

4  rebuttable. "Even where a plaintiff has failed to do what he might have done earlier, he may have an

5  explanation that excuses or justifies his failure. It is at this point that the extent of prejudice to the

6  defendant, if any, becomes important. . . . A weak excuse may suffice if there has been no prejudice;

7  an exceedingly good one might still do even when there has been some. *Nealey v. Transportacion*

8  *Maritima Mexicana, S. A.,* 662 F.2d 1275 (9th Cir. 1980) (internal citation omitted).  Here, plaintiffs

9  do offer the delay of service as an excuse.  Defendants blame plaintiffs for the initial delay of several

10 months and for additional delay in failing to follow the technical rules to accomplish service in

11 India.

12   The court agrees that plaintiffs' failure to act more quickly and pay more attention to service

13 requirements significantly contributed to the delay in prosecution.   However, the plaintiffs have

14 made some efforts to get everyone served.  The Federal Rules of Civil Procedure implicitly

15 recognize that service may take some time by excluding foreign defendants from Rule 4(m)'s

16 requirement that service be made within 120 days.  The plaintiffs have offered enough of an excuse

17 to shift the burden to show prejudice back to defendants.  *See id.*  Defendants have made no showing

18 of actual prejudice.  The court concludes based up consideration of the circumstances here, dismissal

19 would be too harsh a remedy.

20 **III.    MOTION FOR AUTHORIZATION OF ALTERNATIVE SERVICE**

21   Because the court has granted the defendants' motions to dismiss the claims against

22 Dasgupta, Naskar, or Panda for lack of personal jurisdiction, it does not reach the request of

23 authorization for alternative service of them.  With respect to Partha Chakrabarti and TIETS it

24 appears that defendants do not contest that they have now been served with at least the SAC and that

25 further service through the Hague Convention is not required.

26   The remaining defendants Gupta and Choudhury are, at least at this point, not represented by

27 defendants' counsel and have not joined defendants' opposition.  There is not adequate evidence in the

28

ORDER GRANTING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, DENYING MOTION TO DISMISS FOR
FAILURE TO PROSECUTE AND INSUFFICIENT SERVICE, AND DENYING WITHOUT PREJUDICE MOTION FOR
AUTHORIZATION OF ALTERNATIVE SERVICE    —No. C-08-02658 RMW
MEC
10

United States District Court
For the Northern District of California

1    record that the Hague Convention procedures have failed as to them.  The Hague Convention of 1965

2    was intended "to create appropriate means to ensure that judicial and extrajudicial documents to be

3    served abroad shall be brought to the notice of the addressee in sufficient time." Hague Convention,

4    Preamble. The Hague Convention provides for several alternative methods of service: (1) service

5    through the Central Authority of member states; (2) service through consular channels; (3) service by

6    mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state.

7    *See id.* Arts. 5, 6, 8, 9 & 10.

8         In this case, plaintiffs elected to serve defendants under the first option: service through the

9    Central Authority. Under this method, process is first sent to the Central Authority of the foreign

10   jurisdiction in which process is to be served. *Id.* Art. 3. The Central Authority must then arrange to

11   have process served on the defendants. *Id.* Art. 5. Upon completion of service, the Central Authority

12   must complete a Certificate detailing how, where, and when service was made, or explaining why

13   service did not occur. *Id.* Art. 6. Finally, the completed Certificate is returned to the applicant. *Id.*

14   The Hague Convention does not require the Central Authority to respond to requests for status

15   updates.

16        The Central Authority apparently succeeded in serving a number of defendants in this case in

17   accordance with the Hague Convention.  The court assumes that Chakrabarti and TIETS will now

18   respond to the Third Amended Complaint since their motion to dismiss for failure to diligently

19   prosecute and for improper service has been denied.  Whether the Central Authority succeeded in

20   serving Gupta or Chodhoury with any version of the complaint is unclear.  If plaintiffs can show that

21   the Central Authority was provided with addresses for service of Gupta and Chodhoury and that this

22   court has personal jurisdiction over them, the court will consider alternative service.  The court notes,

23   however, that plaintiffs do not suggest a viable alternative means of effectuating service on Gupta

24   and Chodhoury, who are not represented by defendants' counsel.  The court will require additional

25   evidence that emailing copies of the operative complaint to these defendants is likely to effectuate

26   service.

27        The motion for an order Pursuant to Fed. R. Civ. P. 403(f)(3) is denied without prejudice.

28

ORDER GRANTING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, DENYING MOTION TO DISMISS FOR
FAILURE TO PROSECUTE AND INSUFFICIENT SERVICE, AND DENYING WITHOUT PREJUDICE MOTION FOR
AUTHORIZATION OF ALTERNATIVE SERVICE     —No. C-08-02658 RMW
MEC                                                      11

**IV.    ORDER**

    For the foregoing reasons, the court grants the motions to dismiss for lack of personal jurisdiction over Dasgupta, Naskar and Panda and denies the motion to dismiss of Chakrabarti and TIETS for failure to prosecute. The court denies the request for authorization of alternative service, although plaintiffs may make another motion for alternative service at a later date.

DATED:_____7/7/2011_____

_Ronald M. Whyte_
RONALD M. WHYTE
United States District Judge

United States District Court
For the Northern District of California