**E-FILED on**   1/12/12

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MANDANA D. FARHANG and M.A. MOBILE,<br><br>    Plaintiffs,<br><br>    v.<br><br>INDIAN INSTITUTE OF TECHNOLOGY, KHARAGPUR; TECHNOLOGY ENTREPRENEURSHIP AND TRAINING SOCIETY; PARTHA P. CHAKRABARTI; PALLAB DASGUPTA; GURASHISH S. BRAR; RAKESH GUPTA; PRAVANJAN CHOUDHURY; SUBRAT PANDA; ANIMESH NASKAR,<br><br>    Defendants. | No. C-08-02658 RMW<br><br><br>ORDER<br><br><br><br>**[Re Docket Nos. 286, 287, 290, and 304]** |

On September 30, 2011, the court heard argument regarding: (1) Defendant Partha P. Chakrabarti's Motion for Judgment on the Pleadings; (2) Defendant Technology Incubation Entrepreneurship Training Society's Motion for Judgment on the Pleadings; and (3) Defendant Technology Incubation Entrepreneurship Training Society's Motion to Dismiss Complaint Pursuant to the Doctrine of Forum Non-Conveniens and the Foreign Sovereign Immunities Act. These motions are resolved as follows:

    **I. CHAKRABARTI'S MOTION FOR JUDGMENT ON THE PLEADINGS**

ORDER —No. C-08-02658 RMW
MEC

1  Defendant Chakrabarti moves for judgment on the pleadings on the grounds that plaintiffs fail to plead that he entered into the relevant non-disclosure agreement in his personal capacity and fail to plead that he violated the "non-use" and "return" provisions of the non-disclosure agreement. Chakrabarti also argues that plaintiffs' claim that he breached any joint venture agreement is barred by the statute of limitations and that the stated allegations do not put him on notice of the factual basis of the claims.

A motion for judgment on the pleadings tests the legal sufficiency of the claims in the complaint after the pleadings are closed, but early enough so as not to delay trial. Fed. R. Civ. P. 12(c). Otherwise, a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1939, 1949 (2009). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**A. Chakrabarti's Personal Agreement to the NDA**

Chakrabarti is the Dean of Sponsored Research and Industrial Consultancy at the defendant Indian Institute of Technology Kharagpur ("IITK") and Secretary and Permanent Member of the Governing Body of the defendant Technology Entrepreneurship and Training Society ("TIETS"). TAC ¶ 15. The operative Third Amended Complaint alleges that Chakrabarti was authorized by IITK and TIETS to enter into legally-binding agreements on behalf of IITK and TIETS. *Id.* The complaint further alleges that Chakrabarti "acting on behalf of IITK" entered into a non-disclosure agreement ("NDA") with plaintiffs. TAC ¶ 29. The NDA provided, "The Recipient may only disclose Confidential Information to those of the Recipient's employees and contractors who need to know such information and who have previously agreed to be bound by terms and conditions substantially similar to those of this Agreement . . . ." *Id.* The complaint alleges that "each of the Defendants executed the NDA" and that IITK was required to have each defendant execute the NDA. TAC ¶ 30.

Chakrabarti contends that the complaint does not allege that he signed the NDA in his personal capacity, and that under California law, he is not liable in an action based on contract brought by a third person when both the fact of agency and the name of the principal are disclosed. Chakrabarti reads the complaint too narrowly. The complaint alleges that the NDA required IITK to have each defendant agree to be bound by the terms of the NDA, and that plaintiffs are informed and believe that each defendant executed the NDA. The allegation that Chakrabarti *also* executed the NDA on behalf of IITK does not negate the facially plausible allegation, which the court must accept as true, that Chakrabarti agreed to be bound by the terms of the NDA. The factual allegations regarding Chakrabarti's personal agreement to the NDA are sufficient to state a plausible claim for relief.

### B. Chakrabarti's Breach of the NDA

#### 1. Breach of Non-Use Provision

Plaintiffs claim that Chakrabarti breached the Non-Use Provision of the NDA, prohibiting making, using, or selling "for any purpose any product or other item using, incorporating, or derived from" plaintiffs' confidential information. TAC ¶ 29. The court previously determined in its September 7, 2010 order that the TAC contains factual allegations showing the plaintiffs waived their right to enforce the Non-Use Provision of the NDA as to ITT and its faculty and students, because the complaint alleges that Farhang gave specific directives regarding use of plaintiffs' technology and assisting in the use of that technology. Those acts were so inconsistent with an intent to enforce the Non-Use Provision as to induce a reasonable belief that the Non-Use Provision had been relinquished. Similarly, the complaint fails to allege facts from which one could reasonably infer that Chakrabarti sold applications derived from plaintiffs' technology to IBM or Indian Railways. The TAC fails to state a claim for breach of the Non-Use Provision against Chakrabarti.

Plaintiffs argue that they may state a claim for violation of the Non-Use Provision by showing that Chakrabarti was acting in his personal capacity in the "use" of plaintiffs' technology for personal benefit, such as to build alliances with industry contacts, even if plaintiffs waived the provisions in light of the ongoing joint venture. But the complaint does not allege how such

discussions breached the Non-Use Provision. Plaintiff fails to plead any specifics from which one could reasonably infer that Chakrabarti used plaintiffs' confidential technology for his own benefit.

### 2.      Breach of Return Provision

The TAC alleges that Chakrabarti breached the NDA's requirement to return all documents and other tangible items with plaintiffs' confidential information upon termination of the NDA or upon written demand ("Return Provision"). Plaintiffs claim that only a single CD containing source code has been returned and that "[d]ocumentation relating to business plans, trade secrets not disclosed in the patent, and other Confidential information have not been returned to date and is believed to reside on the premises of IITK and also may be in the possession of certain individual Defendants in India and the United States." As they were against IITK, these factual allegations are sufficient to state a claim for breach of the Return Provision of the NDA by Chakrabarti.

### C.      Statute of Limitations

Like IITK before him, Chakrabarti contends that plaintiffs' claims are barred by the statute of limitations. Under California law, the statute of limitations for a claim based on the breach of an oral contract is two years. See Cal. Code Civ. Proc. 339. However, an action based on breach of an oral contract "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder." *Id.* As explained in this court's September 7, 2010 order, the claims in this case are based on the existence of an oral contract. Chakrabarti argues that plaintiffs were aware of Chakrabarti's alleged breach no later than October 2005, when Chakrabarti informed them that he did not wish to continue with the venture (as alleged in the original complaint). However, the complaint also contained numerous allegations relating to Chakrabarti's subsequent actions that indicated his continuing involvement with and commitment to the joint venture. As discussed in the court's September 7, 2010 order, there is no reason not to accept plaintiffs' general allegation that it impossible for a reasonable person to determine whether Chakrabarti had abandoned the joint venture until IITK's counsel informed plaintiffs that the joint venture was abandoned on June 7, 2006. The court therefore denies Chakrabarti's motion to dismiss the complaint as barred by the statute of limitations.

### D.      Notice of Factual Basis for Claims

Chakrabarti also argues that the operative complaint fails to put him on notice of the factual basis for the claims against him because it lumps separate and distinct defendants together and fails to distinguish their conduct. As made by Chakrabarti, this argument duplicates the argument that there is no basis for holding Chakrabarti individually liable, and it too fails. Chakrabarti does not contend, nor could he, that the complaint does not contain detailed allegations describing his role in the alleged claims and breaches. While the complaint does not specifically allege that Chakrabarti personally transmitted information to IBM in violation of the parties' agreement, the allegations are sufficiently detailed to survive an attack on the pleadings.

## II. TIETS'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Technology Incubation and Entrepreneurship Training Society ("TIETS") also moves under Rule 12(c) for judgment on the pleadings on the grounds that the complaint (1) fails to give TIETS fair notice because it improperly blends the defendants together; (2) does not adequately allege that TIETS signed the NDA or breached the NDA; (3) does not state a claim against TIETS for breach of a joint venture; and (4) fails to allege that TIETS misappropriated any trade secrets or violated California Civil Code Section 3426.1. In connection with TIETS's motion, the court grants TIETS's request to take judicial notice of the West Bengal Societies Registration Act and the Technology Incubation and Entrepreneurship Training Society Memorandum of Association and Regulations pursuant to Federal Rule of Evidence 201.

### A. Blending of Defendants

TIETS initially contends that the complaint fails to put it on notice of the factual basis of the claims against it because it improperly blends claims as to the various defendants. Plaintiffs respond that the TAC does contain the requisite clarity. They argue that TIETS's and IITK's actions inherently overlap because they presented themselves as interchangeable entities and were both represented by the same agents, defendant Charkrabarti and former defendant Naskar.

The complaint does not merely "lump together" all of the defendants, but contains detailed factual allegations regarding each defendant, including TIETS. The TAC does specifically identify conduct by TIETS, including emails signed by the "Ex Officio Secretary TIETS." TAC, Ex. D. The complaint also sets forth the key allegation that the technology at issue was disclosed to IBM

representatives and other third parties at meeting of TIETS. TAC 45 (c)-(f). The court finds that these allegations are sufficient to put TIETS on notice of the factual basis for the claims against it under Rule 8.

### B.      Agreement to NDA

TIETS next argues that the complaint contains insufficient factual allegations to demonstrate that TIETS agreed to the terms of the NDA. Plaintiffs concede that they do not have an executed document. They contend, however, that they were assured by an officer of TIETS that all individuals required to execute the NDA had done so, and TIETS agreed to abide by the terms of NDA even if it did not physically execute a paper copy of the NDA.

The complaint alleges that "each of the Defendants executed the NDA" and that IITK was required to have each defendant execute the NDA. TAC ¶ 30. As with defendant Chakrabarti, the court finds that plaintiffs have adequately alleged on information and belief that TIETS signed the NDA. As explained in the court's discussion of the motion to dismiss on grounds of forum non conveniens, however, the court need not assume that allegation is true when considering whether the evidence shows that TIETS waived sovereign immunity or consented to litigation in this jurisdiction under the NDA. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

### C.      Breach of NDA

TIETS contends that the complaint does not adequately allege that TIETS breached the Non-Disclosure Provision of the NDA. The TAC alleges that defendants disclosed confidential information in a presentation to a technical committee of the Incubation Society in 2005, that the IBM representative was part of the technical committee, and that the IBM representative had not agreed to be bound by an NDA. TAC 45(c), 63(a). These factual allegations are sufficient to state a claim for breach of the Non-Disclosure Provision by TIETS.

Similarly, TIETS argues that the complaint does not allege that it breached the Non-Return Provision of the NDA. The TAC adequately alleges that TEITS breached the NDA's requirement to return all documents and other tangible items with plaintiffs' confidential information upon termination of the NDA or upon written demand ("Return Provision"). Plaintiffs claim that only a single CD containing source code has been returned and that "[d]ocumentation relating to business

1 plans, trade secrets not disclosed in the patent, and other Confidential information have not been
2 returned to date and is believed to reside on the premises of IITK and also may be in the possession
3 of certain individual Defendants in India and the United States." These factual allegations are
4 sufficient to state a claim for breach of the Return Provision of the NDA by TIETS.

### D. Breach of Joint Venture

TIETS contends that the complaint does not state a claim for breach of a joint venture. The court previously analyzed this issue in detail with respect to defendant IITK and found that the complaint alleged the essential elements of a joint venture agreement "for the express purpose of developing the Technology and marketing the Technology for their collective benefit." TAC 69. The court also found that the terms of the joint venture agreement are sufficiently certain to determine whether breach of the agreement occurred with respect to IITK when defendants "abandoned all efforts to further Technology on behalf of the joint venture." TAC 70. TIETS argues it was not even formed for more than a year after plaintiffs transmitted source code to IITK, and that the complaint does not allege that TIETS was involved in either the alleged formation of the joint venture or the alleged breach. Plaintiffs counter that TIETS, though Charkrabarti, specifically intended or led plaintiffs to believe it intended to enter into a joint venture.

The complaint alleges that Chakrabarti wrote, "Dear Ron, IIT has approved the signing of the agreement. The only change suggested now is that regarding incubation, 2% should be made 3%. Please let me know the next steps." TAC 40. The complaint alleges that the modification was accepted and that IITK therefore agreed to receive increased equity in exchange for incubation. Id. In December 2004, Chakrabarti represented that "The Company . . . is a member of IIT's technology incubation program," or TIETS. Complaint ¶ 50. In June 2005, Chakrabarti indicated that the address for the joint venture should be "c/o" TIETS. *Id.* at 60. Finally, as the court previously observed, Charkrabarti allegedly proposed that TIETS take over IITK's responsibilities and share in the joint venture and stressed that "for all intents and purposes IIT Kharagpur and the Incubation Society were one and the same." Based on the allegations in the complaint, plaintiffs accepted replacing IITK with TIETS as a party to the joint venture agreement because she was led to believe that they were for practical purposes the same entity. The complaint adequately alleges TIETS's

1  participation in the joint venture and that, like IITK, TIETS breached the terms of the joint venture
2  agreement when it "abandoned all efforts to further Technology on behalf of the joint venture."
3  TAC ¶ 70.

### E. Misappropriation of Trade Secrets

Finally, TIETS argues that plaintiffs fail to allege that TIETS misappropriated any trade secrets because they cannot show that TIETS is liable for the conduct of Mr. Bhattacharyya, an IBM manager who sat on TIETS's governing board, and because plaintiffs have no factual basis for the assertion that TIETS improperly acquired the technology or disclosed it. TIETS cites California Corporate Code § 18250 for the principle that an unincorporated association is not liable for the acts or omissions of its directors or officers unless they are acting withing the scope of the office, agency, or employment.

According to TIETS, plaintiffs' theory is that Bhattacharyya misappropriated plaintiffs' idea in order to facilitate a relationship between IBM and Indian Railways. TIETS is an unincorporated nonprofit association operated by volunteer members from the local Indian community. TIETS argues that the TAC does not include factual allegations indicating that TIETS had knowledge of Bhattacharyya's misappropriation of trade secrets or that misappropriating trade secrets was within the course of the society's business affairs. However, the complaint alleges that the transmission of trade secrets took place through TIETS and involved access provided by TIETS to the information, and that TIETS took no steps to ensure the confidentiality of the disclosure. TAC 45(c). The complaint also alleges that TIETS participated in the misappropriation of trade secrets through the actions of Chakrabarti. TAC 63(a). As this court has previously held, misappropriation asks whether the technology was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Cal. Civ. Code § 3426.1. The complaint alleges that Chakrabarti permitted plaintiffs' technology to be presented to IBM without appropriate safeguards to maintain secrecy. TAC ¶ 63(a). These allegations are sufficient to state a claim for misappropriation.

### III. TIETS'S MOTION TO DISMISS PURSUANT TO THE DOCTRINE OF FORUM NON CONVENIENS AND THE FOREIGN SOVEREIGN IMMUNITIES ACT

Separately, TIETS moves to dismiss the Third Amended Complaint on the grounds that a more convenient forum exists for resolution of these claims and that the court lacks subject matter jurisdiction over the claims pursuant to the Foreign Sovereign Immunities Act.

### A. Sovereign Immunity

The court analyzed IITK's claim to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA") in its January 26, 2010 order. As with IITK, the parties agree that TIETS qualifies as a foreign state under the Foreign Sovereign Immunities Act ("FSIA"). TAC ¶ 1(a). Under the FSIA, a foreign state is immune from jurisdiction in the United States unless a statutory exception applies. 28 U.S.C. § 1604. A foreign state is not immune if it "has waived its immunity, either explicitly or by implication." 28 U.S.C. § 1605(a)(1). In addition, under the commercial activity exception set forth in 28 U.S.C. § 1605(a)(2), a foreign state is not immune from suit in any case:

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Farhang asserts that TIETS is not immune from suit under both the waiver and the commercial activity exception.

#### 1. Waiver of Sovereign Immunity

Section 1605 of the FSIA provides that a foreign state is not immune in any case "in which the foreign state has waived its immunity either explicitly by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. § 1605(a)(1). The waiver exception is narrowly construed. *Joseph v. Office of the Consulate General of Nigeria*, 830 F.2d 1018, 1022 (9th Cir. 1987). Implicit waivers are ordinarily found only where: "(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity." *Id.* (quoting *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir. 1985)). These three circumstances in which a foreign state implicitly waives immunity come from

the FSIA's legislative history. *Frolova*, 761 F.2d 370, 377 (7th Cir. 1985). "Since the FSIA became law, courts have been reluctant to stray beyond these examples when considering claims that a nation has implicitly waived its defense of sovereign immunity." *Id.*

Plaintiffs argue that TIETS has waived sovereign immunity under the second of these possible implicit waivers. "[I]t is clear that a sovereign party has waived immunity where a contract *specifically* states that the laws of a jurisdiction within the United States are to govern the transaction." *Joseph*, 830 F.2d at 1022. Moreover, the Ninth Circuit has held that an explicit choice-of-law provision is not required for there to be a waiver of immunity. *Id.* at 1023.

> Waiver by contract is premised on an agreement by the parties that the United States courts may become involved in disputes arising pursuant to the contract. Where an agreement contemplates adjudication of a dispute by the United States courts, the waiver exception should be applied, regardless of whether the governing law is explicitly identified.

*Id.* (citations omitted). In *Joseph*, the Ninth Circuit examined language in a lease agreement providing that, if an action arising out of or concerning the lease were commenced, the prevailing party shall be entitled to recover attorney's fees. *Id.* at 1022. Based on this provision, the Ninth Circuit found that the lease contemplated participation of the United States courts in settling disputes between the parties, and therefore, the defendant had implicitly waived sovereign immunity. *Id.* at 1023.

The NDA at issue in this case states:

> This agreement shall be governed in all respects by the laws of the United States and by the laws of the State of California without application of the principles of conflicts of law. Each of the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state courts located in Santa Clara County, California, as applicable, for any matter arising out of or relating to this Agreement. . . .

NDA ¶ 10. The choice-of-law provision would clearly constitute an implicit waiver of TIETS's sovereign immunity. However, while plaintiffs have alleged that TIETS executed or agreed to the NDA, they have not provided evidence that TIETS (or an officer acting on behalf of TIETS at the time) executed the NDA. Plaintiffs suggest that as the court held that Farhang could bring claims based on the NDA to the extent she stands in the shoes of M.A. Mobile as an assignee of M.A. Mobile and as a third party beneficiary under the contact, the court should apply the same analysis to hold that TIETS's immunity was waived by IITK's waiver. But that analysis is fundamentally

flawed. Extending the number of beneficiaries of a waiver of sovereign immunity does not correspond to extending the waiver itself to other government entities. While Farhang could benefit from the terms of the NDA, a party that never agreed to be bound by the NDA cannot be limited by its terms. TIETS did not clearly consent to the waiver of sovereign immunity.

### 2. Commercial Activity Exception

Nonetheless, the commercial activity exception of 28 U.S.C. § 1605(a)(2) provides an alternative basis for finding that TIETS is not immune from suit under the FSIA. Under the commercial activity exception, a foreign state is not immune from suit in any case:

> in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Plaintiffs assert that TIETS's conduct falls within the third prong of the commercial activity exception.

To qualify under the third prong of the commercial activity exception, Farhang's claims must be based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Farhang alleges that TIETS entered or purported to enter into a joint venture agreement with M.A. Mobile and Farhang for the development and marketing of the technology, and that this conduct constitutes commercial activity under the FSIA. FAC ¶ 1(c).

As explained in this court's earlier order, the FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The legislative history of the FSIA provides further guidance as to what constitutes "commercial activity," suggesting that courts should "inquire whether the activity in question is one which private persons ordinarily perform or whether it is peculiarly within the realm of governments." *de Sanchez v. Banco Central De Nicaragua*, 770 F.2d 1385, 1392 (5th Cir. 1985) (quoting *Jurisdiction of U.S. Courts in Suits Against Foreign States: Hearings on H.R. 11315 Before Subcomm. on*

*Administrative Law and Governmental Relations of the House Comm. on the Judiciary*, 94th Cong., 2d Sess. 53 (1976) (statement of Monroe Leigh, Legal Advisor, U.S. Dep't of State)). The Ninth Circuit has adopted this approach, holding that "an activity is commercial unless it is one that only a sovereign state could perform." *Park v. Shin*, 313 F.3d 1138, 1145 (9th Cir. 2002).

It is undisputed that entering into a joint venture for commercial purposes constitutes "commercial activity" under the FSIA. Nonetheless, TIETS contends that it did not engage in any commercial activity because it did not engage in the joint venture as a separate entity. As explained above, plaintiffs have adequately alleged the TIETS negotiated for a role and participated in a joint venture. TIETS's conduct is sufficient to constitute commercial activity.

The court concludes that the present action is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The commercial activity exception thus provides a basis for finding that IIT is not immune from suit in this action.

### B. Forum Non Conveniens

The doctrine of forum non conveniens allows a court to decline otherwise proper jurisdiction when the chosen forum is disproportionately inconvenient to the defendant or inappropriately burdensome to the court. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). "A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). A complaint may be dismissed on grounds of forum non conveniens where a defendant shows (1) the existence of an adequate alternative forum; and (2) that the balance of public and private interests weighs in favor of dismissal. *See Lueck*, 236 F.3d at 1142. The burden is on the moving party, who must make "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to a plaintiff's convenience." *Boston Telecommications Group, Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009). In a motion to dismiss for forum non conveniens, the allegations in the complaint need not be accepted as true and the court may consider evidence outside the pleadings. *Cf. Murphy*, 362 F.3d at 1137.

ORDER —No. C-08-02658 RMW
MEC 12

When a case involves a forum selection clause in a "freely negotiated international commercial transaction" and the alleged inconvenience that would result from being forced to litigate in the contractual forum was foreseeable at the time of contracting, "the party seeking to escape his contract [must] show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 (1972) (overruled in part on other grounds by *Powerex Corp. v. Reliant Energy Servs., Inc.*). But as explained above, while the NDA in this case provides for jurisdiction in the United States, plaintiffs have failed to demonstrate that TIETS, as opposed to IITK, executed or expressly agreed to that agreement.

Plaintiffs contend that TIETS executed the NDA or its equivalent because the NDA executed by Charkrabarti on behalf of IITK required all agents of IITK to sign the NDA. In addition, plaintiffs argue that Chakrabarti represented as an officer of IITK that IITK would comply with the NDA obligations during the joint venture and ensure that "all people" would agree to the terms of the NDA. However, neither of these contentions demonstrate that TIETS signed the NDA and consented to jurisdiction in the United States. At best, they demonstrate that IITK was contractually required to obtain TIETS's consent and signature to the NDA. The specific allegations regarding Chakrabarti's consent predate the formation of TIETS, and the mere fact that Chakrabarti was also an officer of TIETS does not by itself demonstrate that TIETS agreed to the NDA. Because TIETS and IIRK are separate legal entities, IITK's failure to meet a contract obligation cannot automatically result in TIETS's liability for that breach. Nor does the fact that TIETS may have expressly negotiated for a position in the joint venture demonstrate that it consented to the NDA or to a seemingly burdensome forum selection clause.

### 1. Adequate Alternative Forum

An adequate alternative forum exists "when the defendant is amenable to process in the other jurisdiction." TIETS is an Indian organization that amenable to service of process in India. Although plaintiffs contend India is not an adequate alternative forum because Farhang has yet to be served in the Indian action filed in August 2009, and the M.A. Mobile, Ltd. has not been named or

served, the issue is not whether the defendants in this action have succeeded in serving plaintiffs in India, but whether the defendants in this case could be served. There is no contention that TIETS or any other defendant could not be served, nor is there any realistic contention that the High Court at Calcutta does not provide "some potential avenue for redress." *See Creative Technology, Ltd. v. Aztech Sys. PTE Ltd.*, 61 F.3d 696, 702 (9th Cir. 1995). Indian courts permit litigation of tort disputes. *See In re Union Carbide Corp. Gas Plant Disaster as Bhopal, India in Dec. 1984*, 809 F.2d 195, 199 (2d Cir. 1987). India therefore provides an adequate alternative forum for litigation of this dispute.

### 2. Private Interests

The private interests a court should consider when conducting a forum non conveniens analysis include (1) the residence of the parties and witnesses; (2) the forum's convenience to the litigants, (3) access to physical evidence and other sources of proof, (4) whether unwilling witnesses can be compelled to testify, (6) the enforceability of the judgment; (7) any practical problems or other facts that contribute to an efficient resolution. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006).

Many of the private interests in this case weigh in favor of dismissal of TIETS of the grounds of forum non conveniens. All of TIETS's members live in India, and most of the witnesses are located in India. This litigation stems from plaintiffs' efforts to do business in India, TIETS's alleged wrongful conduct took place in India, and the majority of the discovery in this case will come from and take place in India. It is true that electronic evidence can be produced anywhere–but it is undisputed that any non-electronic evidence in this case, including deposition testimony of witnesses, must be gathered in India.

However, because this case also involves defendants who clearly did sign a forum selection clause consenting to jurisdiction in the United States, it seems that at least part of this case will be litigated in the United States and will require the witnesses and evidence to come to this forum. It is therefore more efficient and practical to conduct the entire litigation in this forum rather than impose piecemeal litigation by dismissing one party.

### 3. Public Interests

The public interests a court should consider when conducting a forum non conveniens analysis are (1) the local interest in the lawsuit; (2) the court's familiarity with the governing law, (3) the burden on local courts and juries; and (4) congestion in the court. *Tuazon*, 433 F.3d at 1181.

California's interest in this litigation is not particularly strong, based only on plaintiffs' California residence and the fact that the technology at issue in the case was originally developed here. Plaintiffs have no alleged that they have any ongoing business operations in California, and this suit concerns activities and events that took place almost entirely in India and technology allegedly used by the Indian Railways and allegedly misappropriated by an Indian educational organization. However, IITK will continue as a defendant in this case even if the non-profit TIETS is dismissed. Because dismissing TIETS does nothing unburden the local courts or juries or relieve congestion, TIETS has not demonstrated that the public interests weigh in favor of dismissal.

Although India provides an adequate alternative forum, the balance of public and private factors weighs against dismissing TIETS from this litigation. The motion to dismiss on grounds of forum non conveniens is denied.

### IV. ORDER

1. Defendant Partha P. Chakrabarti's Motion for Judgment on the Pleadings is granted with respect to breach of the Non-Use Provision of the NDA. In all other aspects, it is denied.

2. Defendant Technology Incubation Entrepreneurship Training Society's Motion for Judgment on the Pleadings is denied.

3. Defendant Technology Incubation Entrepreneurship Training Society's Motion to Dismiss Complaint Pursuant to the Doctrine of Forum Non Conveniens and the Foreign Sovereign Immunities Act is denied.

DATED: 3134134

RONALD M. WHYTE
United States District Judge