SANJIV N. SINGH (SBN 193525)
E-mail:  ssingh@sanjivnsingh.com
SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
21 Columbus Avenue, Suite 205
San Francisco, CA 94111
Telephone: 415-296-0152
Facsimile: 415-358-4006

MICAH R. JACOBS (SBN 174630)
E-mail:  mjacobs@jacobslawsf.com
JACOBS LAW GROUP SF
388 Market St., Suite 1300
San Francisco, CA 94111
Telephone: 415-445-4696
Facsimile: 415-445-4697

Attorneys for Plaintiffs
MANDANA D. FARHANG and M.A. MOBILE LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| M.A. MOBILE LTD., a limited liability company chartered in Dominica; and MANDANA D. FARHANG,<br><br>Plaintiffs,<br><br>v.<br><br>INDIAN INSTITUTE OF TECHNOLOGY KHARAGPUR, an Indian Institute of Technology incorporated under the "Institutes of Technology Act, 1961"; PARTHA P. CHAKRABARTI; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. C-08-02658 RMW<br><br>PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY DEFENDANTS' COUNSEL AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER<br><br>Date:      March 7, 2014<br>Time:     9:00 AM<br>Dept:     6, 4th Floor<br>Judge:    Honorable Ronald M. Whyte |

1

TABLE OF CONTENTS

2   I.   INTRODUCTION ............................................................................................- 6 -

3   II.   FACTUAL BACKGROUND ......................................................................- 8 -

4   A.   Plaintiff Farhang Engaged Orrick For Advice About Her Work And Transactions With
5   Ikonodyne and Therein Orrick Acquired Critical Knowledge About Ownership of and Ms.
    Farhang's Views Of Ikonodyne's Mobile Technology .........................................- 8 -

6
7   B.   As a Result of Mr. Telfer's Representation of Ms. Farhang, Orrick Had Critical Knowledge
    Regarding the Mobile Technology, Its Ownership, and Ms. Farhang's Views and Plans for The
8   Mobile Technology.............................................................................................- 9 -

9   C.   Starting in 2004, Neel Chatterjee And Or His Intermediary Bijoy Chatterjee Engaged in
    Repeated Communications With Defendant Chakrabarti About Ms. Farhang And The Joint
10  Venture...............................................................................................................- 13 -

11  D.   Additional Purported Privilege Logs Produced in 2013 Contradict Mr. Chatterjee's Sworn
12  Testimony And Confirm Active Communications About Ms. Farhang During The Very Same
    Period When Mr. Telfer And Ms. Farhang's Files Were Still At Orrick .............................- 14 -

13
14  E.   Since 2009,  Mr. Chatterjee Has Purported To Be Lead Counsel And Even After
    Irregularities Were Revealed, Orrick Has Flatly Refused To Wall Mr. Chatterjee From
    Representation of Defendants And Has Insisted That Mr. Chatterjee is Intertwined With Every
15  Aspect Of Litigation………………………………………………………………….-15-

16
17  III.   LEGAL ANALYSIS .....................................................................................- 16 -

18  A. Overview Of Legal Standard for Disqualification Based on Prior
    Representation……………………………………………………………………..- 16 -
19
20  B. This Court Previously Found A Substantial Relationship Between Orrick's Representation of
    Plaintiff Farhang And Orrick's Representation of Defendants............................................- 17 -

21  C. The Limited Exception To The Presumption of Imputed Knowledge Should Not Be
22  Available In This Case Where Mr. Telfer And Mr. Telfer's Files Were All Present During Mr.
    Chatterjee's Repeated Interactions With Defendant Chakrabarti .........................................- 19 -

23
24  D.   Even If Orrick Is Permitted To Try To Rebut The Presumption of Imputed Knowledge,
    They Must Fail Because All Of The Factual Predicates Underlying The Court's Previous
25  Evaluation of Evidence Have Been Shown To Be False.....................................................- 21 -

26

27                                          - 1 -

E.  Facts Revealed Since The 2010 Hearings Raise The Possibility That Defendant Chatterjee May Be A Defendant ........................................................................................... - 22 -

F.   The Advocate-Witness Rule May Be Applied Here To Disqualify Orrick,  Particularly Where Orrick Has Refused To Screen Mr. Chatterjee From The Matter For Months Even After They Became Aware Of His Conflicting Testimony And Deeper Involvement And In View Of Orrick's Intertwined Operations ......................................................................... - 25 -

G.   A Belated Wall Can Not Cure Orrick's Imputed Knowledge ........................................ - 27 -

H.  The Court Has Inherent Authority To Sua Sponte Impose Sanctions ............................ - 28 -

IV.      CONCLUSION ............................................................................................. - 29 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
Case No. C-08-02658 RMW

TABLE OF AUTHORITIES

**Cases**

*Adams v. Aerojet-General Corp.*
86 Cal.App.4th 1324 (2001) ................................................................... - 18 -, - 25 -

*Caluori v. One World Technologies, Inc.*
CV 07-2035 CAS VBKX, 2012 WL 2004173 (C.D. Cal. June 4, 2012) ................................. - 24 -

*Chambers v. NASCO, Inc.*
501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ................................................ - 27 -

*Davis v. EMI Grp. Ltd.*
12-CV-1602 YGR, 2013 WL 75781 (N.D. Cal. Jan. 4, 2013)........................................ - 19 -, - 21 -

*Dieter v. Regents of the Univ. of Cal.*
963 F. Supp. 908 (E.D. Cal. 1997) ........................................................................ - 18 -

*Global Van Lines, Inc. v. Superior Court*
144 Cal.App.3d 483, 192 Cal.Rptr. 609 (1983) ....................................................... - 16 -

*Goldberg v. Warner/Chappell Music, Inc.*
125 Cal.App.4th 752, 23 Cal. Rptr. 3d 116 (2005) ....................................... - 18 -, - 21 -

*H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (2nd Dist. 1991)
229 Cal.App.3d 1445, 280 Cal.Rptr. 614.......................................................... - 16 -, - 21 -

*Jessen v. Hartford Cas. Ins. Co.*
111 Cal.App.4th 698, 3 Cal. Rptr. 3d 877 (2003) ........................................... - 15 -, - 16 -

*Kennedy v. Eldridge*
201 Cal.App.4th 1197, 135 Cal. Rptr. 3d 545 (2011)........................................ - 24 -, - 25 -

*Rosenfeld Construction Co. v. Superior Court,*
235 Cal.App.3d 566 (1991) .......................................................................... - 16 -, - 18 -

**Statutes**

California Business and Professions Code Section 6068(e) ....................................... - 4 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S
PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS
DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS
MATTER
Case No. C-08-02658 RMW

1

**Rules**

2      California Rule of Professional Conduct 3-310 ................................................................. - 4 -, -15-

3      California Rule of Professional Conduct 3-700 ................................................................- 18 -

4      Civil Local Rule 7-9.........................................................................................................- 4 -

5      Civil Local Rule 11-4.......................................................................................................- 4 -

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S
PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS
DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS
MATTER
Case No. C-08-02658 RMW

1

2  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3        **PLEASE TAKE NOTICE** that on March 7, 2014 at 9:00 AM or as soon thereafter as the

4  matter may be heard, in Courtroom 6, Fourth Floor, the Honorable Ronald M. Whyte presiding,

5  Plaintiffs will move the Court to reconsider (or seeks leave of the Court to file said motion) [1] and

6  reverse its previous order ("Order") denying Plaintiff's original motion to disqualify Orrick,

7  Herrington & Sutcliffe LLP ("Orrick") as counsel to Defendant Indian Institute of Technology,

8  Kharagpur ("IIT") and Defendant Partha P. Chakrabarti, and will move the Court for a new order

9  disqualifying Orrick as counsel to any third party witnesses in this matter (e.g. Former Defendant

10 Gurashish S. Brar, Former Defendant Pallab Dasgupta, etc.) This motion is made pursuant to U.S.

11 District Court Northern District of California Civil Local Rule 11-4, California Rule of

12 Professional Conduct 3-310, California Business and Professions Code Section 6068(e), and Civil

13 Local Rule 7-9 on the grounds that: (i) Orrick previously represented Ms. Farhang in connection

14 with an employment transaction and dispute involving negotiation over rights to the very same

15 intellectual property that is at the heart of the present lawsuit, (ii) unbeknownst to this Court and

16 Plaintiffs in 2010 at the time of the Order, Defendants' lead counsel I. Neel Chatterjee falsely

17 denied the timing, scope and substance of his interactions with Defendants while under oath in the

18 previous January 2010 evidentiary hearings, (iii) unbeknownst to this Court and Plaintiffs in 2010

19 at the time of the Order, Orrick attorneys falsely denied the scope of the former client documents

20 they retained and the presence of Ms. Farhang's former counsel in the same Bay Area practice as

21 Mr. Chatterjee during the very time period when Mr. Chatterjee and Mr. Chatterjee's intermediary

22 (his father Bijoy Chatteree) were having repeated interactions with Defendant Chakrabarti about

23 Ms. Farhang and the joint venture, and (iv) This Court, at the September 24, 2014 Hearing,

24
_____

25 [1] As of the date of this filing, a copy of the transcript for the September 24, 2014 hearing is not yet available. *At said hearing, the Court appeared to authorize the filing of a motion for reconsideration when Plaintiff inquired about scheduling a new motion to disqualify. Declaration of Sanjiv N. Singh In Support Of This Motion ("Singh Decl."),*

26 *¶23. To the extent the Court requires a formal motion seeking leave to file the motion for reconsideration, please consider this motion as Plaintiffs' motion seeking leave to file the above captioned motion for reconsideration.*

27

28 PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S
   PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS
   DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS
   MATTER
   Case No. C-08-02658 RMW

expressed significant concerns about Orrick continuing as counsel and verbally authorized Plaintiff, while on the record, to file a motion for reconsideration to brief the issue. Moreover, although not necessary to show for Plaintiff to prevail on this Motion, the interactions between Mr. Chatterjee, Mr. Chatterjee's father, and Defendant Chakrabarti also show Neel Chatterjee to be at the very least a material witness to material events during the joint venture, including events relating to the termination of the joint venture, and more concerningly raise the real possibility that Mr. Chatterjee may be a defendant in this matter given his access to Ms. Farhang's confidential information and the fact that he may have unwittingly or intentionally transmitted confidential client information which facilitated breach of the joint venture. Dkt. No. 459 at 6:10-20. This motion is based on this Notice, the Motion brief that follows, the pleadings, the attached supporting documents, and any argument or legal authority that the Court may consider at the scheduled hearing or otherwise.

## I. INTRODUCTION

Without a doubt, between 2010 and the present day, this Court and Plaintiffs have learned of extraordinary events and circumstances concerning Neel Chatterjee's prior connections, communications and relationship with Defendants, and said events and circumstances now demand disqualification of Orrick as attorneys of record in this matter and in addition should prompt this Court to *sua sponte* impose appropriate sanctions. Each of the factual predicates the Court relied on in denying the previous Motion to Disqualify (Dkt. Nos. 29 - 31) has now been shown to be false: (1) Contrary to Neel Chatterjee's previous sworn testimony, it has since been discovered that Mr. Chatterjee and his intermediary (and father) Mr. Bijoy Chatterjee secretly and repeatedly communicated about the joint venture and Ms. Farhang (including termination of the joint venture) with Defendant Chakrabarti, and all of this took place more than three years earlier than previously represented; (Singh Decl., ¶¶7-9; *see also* Declaration of Micah R. Jacobs In Support of This Motion ("Jacobs Decl.")., ¶¶8-10; *see also* Singh Decl., Ex. 2 ("August 2013

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
Case No. C-08-02658 RMW

Privilege Log") at Document Nos. 1-3 and Ex. 3 ("December 2013 Privilege Log") at Document

Nos. 77, 108, 240-242, 251-253, 307-310); (2) Mr. Chatterjee's and his intermediary's repeated

discussions with Defendant Chakrabarti took place without notice to or consent from Ms. Farhang;

(Singh Decl., ¶8); (3) Contrary to Orrick's previous sworn testimony, those discussions took place

while Mr. Telfer was still working for and residing in Orrick's Bay Area practice where Mr.

Chatterjee was and is an attorney, and Mr. Telfer acknowledges the possibility that he talked to

Mr. Chatterjee during this time period; (*Id.*; *see also* Dkt. No. 30, ¶3-5; *see also* Singh Decl., ¶18-

20); and (4) Contrary to Orrick's previous sworn testimony, Ms. Farhang's client file contained

significant information about her views of the Mobile Technology and its ownership, was present

at Orrick and accessible to Mr. Chatterjee and other Orrick attorneys during the entire time he was

talking to his close friend Defendant Chakrabarti, and was much larger than previously disclosed

to this Court. Singh Decl., ¶¶10, 21; *see also* Dkt. No. 459-1, Ex. 3 [Previously Submitted Under

Seal].

In light of these circumstances, in particular the fact that Mr. Telfer (in full possession of

his Farhang files and emails) was present and accessible to Mr. Chatterjee when Mr. Chatterjee

was communicating with Defendant Chakrabarti (Singh Decl. ¶¶7-9), the substantial relationship

test should apply and no imputed knowledge analysis is necessary or frankly appropriate.  *See*

*infra* at Section III(A)-(C). By virtue of Mr. Telfer's presence at Orrick during the relevant time

period (not to mention Mr. Telfer's recent statements to Plaintiffs' counsel acknowledging that he

may have talked to Mr. Chatterjee)(Singh Decl. at ¶¶18-20)[2], it is clear that Orrick presumptively

---

[2] In 2010, Mr. Chatterjee testified that when he first heard of the lawsuit filed by Ms. Farhang against Defendants in the summer of 2008, he ran a conflicts check and found Ms. Farhang's name. Dkt. No. 458-3 at 70:3-5. He then claims and expressly admits that he tried to get information about Ms. Farhang from Orrick's servers, but hedges on whether he accessed it by stating vaguely that it was "not really accessible." *Id*. at 70:6-10.  He then states that he took the "out of the norm" step of calling Mr. Telfer (who was not at Orrick at that point) to talk to Mr. Telfer. *Id*. at 70:10-20.  In view of Mr. Chatterjee's conduct in 2008, it is not surprising that Mr. Telfer acknowledged to Plaintiffs' counsel that it was possible Mr. Chatterjee also may have reached out to him while he was at Orrick during the earlier time frame from 2004 to 2006. Singh

1  and conclusively had knowledge of Ms. Farhang's confidential information during the time Mr.

2  Chatterjee began to have material communications with Defendant Chakrabarti, and said

3  knowledge and communications demand disqualification of Orrick. Moreover, although not

4  necessary to show here, Orrick's lead trial counsel Neel Chatterjee is either a material witness or

5  potentially a defendant in this matter (*see infra* at Section III(E)), and as Orrick itself has insisted

6  (Dkt. No. 463 at ¶2), Mr. Chatterjee is inseparable from Orrick's representation of Defendants.

7  The only just and reasonable remedy under these extraordinary circumstances, and in view of

8  Orrick's extraordinary pattern of providing false and incorrect information to the Court on these

9  gravely important matters, is for the Court to disqualify Orrick as counsel of record to Defendants

10  and consider *sue sponte* imposition of appropriate sanctions. Defendants' rights will not be

11  prejudiced as they enjoy unlimited governmental resources and can quickly retain a suitable global

12  firm to continue their representation in this matter.[3]

13  ## II. FACTUAL BACKGROUND

14      The following is a summary of the facts relevant to the Court's disposition of this Motion:

15  **A. Plaintiff Farhang Engaged Orrick For Advice About Her Work And Transactions**

16      **With Ikonodyne and Therein Orrick Acquired Critical Knowledge About Ownership of and Ms. Farhang's Views Of Ikonodyne's Mobile Technology**

17      In May 2000, Plaintiff Mandana D. Farhang hired Orrick partner and employment law

18  attorney James Telfer, who was then partner at Orrick, Herrington & Sutcliffe LLP ("Orrick") in

19  the same Bay Area practice group as Mr. Chatterjee. Dkt. No. 31, ¶¶3-14. By Mr. Telfer's own

20

21  Decl., ¶18. Similarly, it is also not surprising that if Mr. Chatterjee tried to find documents about

22  Ms. Farhang in 2010, he likely would have tried to do the same thing—i.e. to find relevant

23  documents about Ms. Farhang—when he was communicating with Defendant Chakrabarti about

Ms. Farhang from 2004 to 2006. *Id.*

24  [3] Indeed, during the summer of 2012, shortly before the Ninth Circuit's stay of this matter,

25  Counselor Thomas Zellerbach and Counselor Neel Chatterjee attended a meet and confer with Counselor Micah Jacobs and Counselor Sanjiv Singh. At that meet and confer, Defendants'

26  counsel announced that they had enlisted the Global Legal Network of PriceWaterhouse Coopers ("PwC") to assist Orrick and that PwC was coordinating all of the discovery production for the

27  case. Singh Decl. ¶6.

28

testimony (and consistent with Plaintiff Farhang's testimony), Mr. Telfer represented Plaintiff in the following interrelated areas  (i) negotiation of an employment agreement with the entity ("Ikonodyne")  that owned the mobile technology ("Mobile Technology") which would ultimately be used in the joint venture at issue in this litigation;  (ii) formation of a new company for Ms. Farhang to house certain rights to the Mobile Technology; and (iii)  ownership of the Mobile Technology and Ms. Farhang's intention to obtain rights to the Mobile Technology from Ikonodyne for use in a commercial venture. Dkt. No. 30, ¶¶ 3 – 6; *see also* Dkt. No. 31, ¶¶3-14; *see also* Dkt. No. 41, ¶¶1-9. In fact, as Ms. Farhang and Mr. Telfer both testified, Mr. Telfer did not merely advise on the terms of her employment but ultimately also advised on handling the negotiations and early phases of the dispute which ensued between Ms. Farhang and Ikonodyne, and in doing so had knowledge both that Ms. Farhang did not *initially* own the Mobile Technology in 2000 and specific knowledge about her views and preferences with regards to owning and using the Mobile Technology for a future commercial venture and new commercial entity. *Id*. It is not surprising that this Court, despite Defendants' repeated arguments to the contrary (which arguments have been repeated to this day and were repeated by Counselor Alderman in the recent January 24, 2014 hearing), found a substantial relationship between Mr. Telfer's previous representation of Ms. Farhang and Orrick's subsequent representation of Defendants in connection with the joint venture involving the very same Mobile Technology. Dkt. No. 86 at  6:1-12.

**B. As a Result of Mr. Telfer's Representation of Ms. Farhang, Orrick Had Critical Knowledge Regarding the Mobile Technology, Its Ownership, and Ms. Farhang's Views and Plans for The Mobile Technology**

At the time that Neel Chatterjee was having repeated interactions with Defendant Chakrabarti, Plaintiffs now know that Orrick's knowledge of Ms. Farhang's confidential information existed through at least <u>three</u> distinct channels:

First, Mr. Telfer had personal knowledge of the relevant facts and issues and resided as a partner in the Bay Area practice of Orrick from 2000 to 2008, including the same 2003 to 2006

- 9 -

timeframe during which Mr. Chatterjee (another Bay Area partner) and/or his intermediary Mr. Bijoy Chatterjee (Neel Chatterjee' father) were having repeated communications with Defendant Chakrabarti including specific dialogue about the joint venture and Ms. Farhang. Dkt. No. 30, ¶¶ 3 – 6; *see also* Singh Decl., Ex. 1 and ¶¶7-10; *see also* August 2013 Privilege Log; *see also* December 2013 Privilege Log at Document Nos. 77, 108, 240-242, 251-253, and 307-310. Mr. Telfer did not leave the firm until 2008, and was thus present in the same Bay Area practice of Orrick as Mr. Chatterjee. Dkt. No. 30, ¶¶3-5; Mr. Telfer expressly told Plaintiffs' counsel that it was possible he spoke to Mr. Chatterjee about Ms. Farhang and the joint venture while still at Orrick. Singh Decl., ¶18; *see also supra* at Foonote 2. Moreover, Mr. Telfer's prior 2009 declaration states unequivocally that his engagement focused in part on her ownership rights associated with the Mobile Technology. Dkt. No. 30, ¶3; *see also* Singh Decl., ¶¶10, 21; *see also* Dkt. No. 459-1, Ex. 3 [Previously Submitted Under Seal].

Second, Orrick's previously disclosed purported "client file" (an implausibly trim 39 page packet which was erroneously represented by Orrick in the 2010 evidentiary proceedings as the complete client file and documents relating to Ms. Farhang on the Orrick servers (Dkt. No. 458-3 ("January 2010 Hearing Transcript") at 15:25-16:3) was residing on the Orrick's servers during the same time frame that Mr. Chatterjee was having repeated interactions (either directly or through his father Bijoy Chatterjee as intermediary) with Defendant Chakrabarti. *See* Client File Submitted for In Camera Review By Orrick (received by this Court under seal pursuant to Administrative Motion, Dkt. Nos. 35-37, p. 18 of the PDF [Section 9 entitled "Formation of New Entity" of draft employment agreement with Ikonodyne]).  Although Orrick confirmed that this Client File was on their servers, in 2010 Mr. Chatterjee  provided evasive testimony where he appears to initially deny trying to access it but then claimed that he requested information about Ms. Farhang that was "not *really* [emphasis added] accessible" and then took the "out of the norm [Mr. Chatterjee's own words]" step to call Mr. Telfer. *See supra* at Footnote 2. Regardless, the purported "client files" were present during the earlier period (2003-2006) when Mr. Chatterjee

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
Case No. C-08-02658 RMW

1  and/or his intermediary Bijoy Chatterjee were having repeated interactions with Defendant

2  Chakrabarti, and Mr. Telfer has confirmed that said files were accessible to any Orrick attorney

3  through simple access to the draft documents retained on the Orrick server. Singh Decl. ¶¶7-9, 18-

4  20. Said documents were also plainly accessible during the same period when Mr. Telfer still

5  resided at Orrick, and were accessible by either Mr. Telfer (in response to inquiries by Mr.

6  Chatterjee) or by Mr. Chatterjee. *Id.*

7         Third, it has now been discovered that Orrick's knowledge of Ms. Farhang's client matters

8  included a previously undisclosed tranche of numerous emails residing this entire time on Orrick's

9  servers.  Specifically, Orrick finally admitted in February of 2013 that during the 2010 evidentiary

10  hearings, Orrick had previously misrepresented the size and content of Ms. Farhang's files to the

11  Court (January 2010 Hearing Transcript at 15:25-16:3)  and that in fact it had retained on its

12  servers a much larger tranche of Plaintiff's files including confidential emails and work product.

13  Singh Decl., ¶¶10, 21. Only after Plaintiff's demand, Counselor Alderman provided a copy of a

14  much larger client file to Plaintiff but discounted its significance by stating that it had not been

15  located previously due to some kind of internal litigation hold. *Id*. Plaintiffs' counsel questioned

16  Mr. Alderman, pointing out that a litigation hold should have made it easier to locate, but Mr.

17  Alderman offered no credible explanation and admitted that the files were present on Orrick's

18  servers during the entire time Counselor Chatterjee interacted with Defendant Chakrabarti. *Id.*

19  Most notably, the files contained more than two hundred emails and work product, several of

20  which discuss intellectual property ownership of the Mobile Technology and contain discussions

21  of Ms. Farhang's plans for use and commercialization of the Mobile Technology. *Id.*; *see also*

22  Dkt. No. 459-1, Ex. 3 [Previously Submitted Under Seal].

23         Although Orrick disputes Mr. Chatterjee's access to these files, it is clear that Mr.

24  Chatterjee had access to Mr. Telfer who controlled the emails, and Mr. Telfer recently disclosed to

25  Plaintiff's counsel that it was possible that he had spoken to Mr. Chatterjee. Singh Decl., ¶18; *see*

26  *also supra* at Footnote 2.  In addition, Mr. Telfer noted to Plaintiffs' counsel that, given his

27

28

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S
PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS
DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS
MATTER
Case No. C-08-02658 RMW

knowledge of how outgoing partner emails are processed, his email would have been accessible to other Orrick partners after he left the firm. *Id*. Moreover, the Court should note that:

(i)   Mr. Kaufman previously acknowledged that Orrick's servers were not designed to comprehensively or completely track access or usage of electronic documents during the relevant time period; (*see* Jacobs Decl., ¶3; *see also* January 2010 Hearing Transcript at 48:21-49:24);

(ii)   Orrick itself in 2010, despite being under oath, could not even track that the Telfer files existed let alone who accessed them (*Id*.);

(iii)   Mr. Chatterjee, also under oath, supposedly could not apparently even remember he had the 2005 or 2006 Chakrabarti conversations until reminded and provided false testimony on the timing, content, and nature of his communications with Defendant Chakrabarti (Dkt. No. 458-2, Ex. B; *see also* Singh Decl. Ex. 1);

(iv)   Mr. Telfer acknowledges it is possible he spoke to Mr. Chatterjee (Singh Decl., ¶18), and Mr. Chatterjee admits he spoke to Mr. Telfer on a separate occasion in 2008 but claims he did not do so under very similar circumstances when contacted by Defendant Chakrabarti repeatedly from 2004 to 2006 (*see infra* at Footnote 2);

(v)   Both the 39-page Client File provided in 2009 and the larger client file revealed in 2013 (including more than 200 emails) (Singh Decl., ¶21) contain express references to critical intellectual property ownership issues, and Mr. Telfer has confirmed to Plaintiff's counsel that to his knowledge such documents were accessible on Orrick's servers (Singh Decl., ¶18); and

(vi)   In 2008, Mr. Chatterjee states that the first thing he did when he heard of the lawsuit was to try to obtain information about it from Orrick's servers and from Mr. Telfer (Transcript at 70:6-25) , but expects the Court to now believe, while giving false testimony in 2010 in which he denied ever speaking to Mr.

Chakrabarti about the joint venture, that he did not attempt to access relevant information or talk to Mr. Telfer when Mr. Chakrabarti contacted Mr. Chatterjee several years before. *See supra* at Footnote 2.

**C. Starting in 2004, Neel Chatterjee And Or His Intermediary Bijoy Chatterjee Engaged in Repeated Communications With Defendant Chakrabarti About Ms. Farhang And The Joint Venture**

Since the inception of this matter, Orrick has on various occasions maintained that it had not represented Defendant Chakrabarti or Defendant IIT until 2008 when Orrick was engaged by Defendants. Dkt. No. 32 at p. 5, 11:1-10; *see also* January 2010 Hearing Transcript at 79:1-21. During the 2010 proceedings on Plaintiff Farhang's previous Motion to Disqualify Orrick, Orrick claimed that the representation of IIT was removed from the prior representation of Ms. Farhang by substantial passage of time, and claimed that their prior representation of Ms. Farhang had no bearing on the present matter. *Id.* at 14:12-18. Moreover, they claimed that Orrick's communications with Defendant IIT and Defendant Chakrabarti began after Mr. Telfer left the firm (2008) and years after relevant documents were available for review. January 2010 Transcript at 16:1-25; 65:8-66:18;and 79:1-21. Equally importantly, Mr. Chatterjee expressly told the Court, in sworn testimony, that his interaction with Defendant Chakrabarti in 2004 and prior to the commencement of this lawsuit had nothing to do with the joint venture or Ms. Farhang and that at most Ms. Farhang was mentioned in passing in an immaterial manner. *Id* at 65:8-66:18;and 79:1-21.

Mr. Chatterjee and/or his counsel William Alderman have changed their characterization of Mr. Chatterjee's communications with Mr. Chakrabarti on multiple occasions. Initially, in 2010, when under oath, Mr. Chatterjee claimed that any communications with Defendant Chakrabarti during this time period were of a personal and/or immaterial nature, and flatly denied any attorney client relationship, formal or informal, with Defendants in connection with the subject of this lawsuit. Transcript at 65:8-66:18; 79:1-21. Three years later, he admitted he in fact

- 13 -

had communicated with Defendants about Ms. Farhang and the joint venture but claimed that a portion of these communications may have been privileged and involved discussions about the joint venture. Singh Decl., Ex. 1. Subsequently, in additional conversations with Plaintiffs' counsel, Mr. Alderman divulged that the conversations were more personal but still related to the joint venture, thus supposedly excusing the fact that Mr. Chatterjee did not obtain Ms. Farhang's consent or run a conflicts check, and indicated that his colleague Counselor Zellerbach would submit a privilege log which would clarify which communications were not privileged. Singh Decl., ¶¶ 8-9. A first privilege log (the August 2013 Privilege Log—*see* Singh Decl. Ex. 2) was eventually produced but notably absent from the log were several key communications between Mr. Chakrabarti and Mr. Chatterjee, which communications (as Mr. Alderman expressly disclosed to Plaintiffs' counsel) took place in 2005 and 2006 concerning Mr. Chakrabarti's desire to terminate the joint venture and his concerns about Ms. Farhang. August 2013 Privilege Log; *cf.* Singh Decl., ¶9. The August 2013 Privilege Log does not include these 2005 and 2006 communications, which Plaintiffs have been told took place verbally, by phone, and possibly by other media including instant messaging. Singh Decl., ¶¶8-9. Mr. Alderman just a few days ago changed yet again Orrick's description of the relevant communications, claiming now that there are not "several" instant messages but only one instant message to his knowledge. Singh Decl., ¶24.

### D. Additional Purported Privilege Logs Produced in 2013 Contradict Mr. Chatterjee's Sworn Testimony And Confirm Active Communications About Ms. Farhang During The Very Same Period When Mr. Telfer And Ms. Farhang's Files Were Still At Orrick

On December 31, 2013, Counselor Thomas Zellerbach sent Plaintiffs another privilege log, this time for Defendants. Singh Decl., Ex. 3. In this log, there are now numerous other "Chatterjee" privilege log entries which either appear blatantly inappropriate (i.e. privilege claimed on relevant April 2006 communications with "B.G. Chatterjee", i.e. Neel's father, Bijoy Chatterjee—e.g. Privilege Log Document No. 77, 108, 240, 241, and 242 ) or which now are

- 14 -

1   claiming privilege over 2004 and 2006 communications during the time period when Mr.

2   Chatterjee described, under oath, his communications as non-legal (e.g. Privilege Log Document

3   No. 307, 308, 309, 310) and which the August 2013 log did not mention. *Id.*; *cf*. January 2010

4   Hearing Transcript at 65:8-66:18; 79:1-21. Absent from the log still are the 2005 and 2006 instant

5   messages which had been expressly described to Plaintiffs' counsel by Mr. Alderman. Singh

6   Decl., Ex. 3; *see also* Singh Decl., ¶¶8-9.

7         Both the August  2013 Privilege Log and the December 2013 Privilege Log make it clear,

8   regardless of their propriety or whether all of the logged communications were in fact privileged,

9   that Mr. Chatterjee and or Mr. Chatterjee's intermediary Bijoy Chatterjee, were having multiple

10  interactions with Defendant Chakrabarti about Ms. Farhang and the joint venture during the very

11  time period when Mr. Telfer was still at Orrick and Ms. Farhang's documents (both the

12  purportedly complete Client File presented in 2010 and the subsequently discovered tranche of

13  Telfer emails) were still on the Orrick servers.  Singh Decl. ¶9, Ex. 2, Ex. 3; *cf*. Dkt. No. 30, ¶¶3-

14  6.

15

16      **E.   Since 2009,  Mr. Chatterjee Has Purported To Be Lead Counsel And Even After**
            **Irregularities Were Revealed, Orrick Has Flatly Refused To Wall Mr. Chatterjee**
17          **From Representation of Defendants And Has Insisted That Mr. Chatterjee is**
            **Intertwined With Every Aspect Of Litigation**

18        In 2009, Orrick entered the current lawsuit as counsel for Defendants and Ms. Farhang

19  filed a Motion to Disqualify Orrick as counsel. Dkt. No. 25; *see also* Dkt. No. 29. When the

20  Motion was filed, Orrick claimed that Orrick's representation of IIT and Defendant Chakrabarti

21  began after Mr. Telfer left the firm (2008) and years after relevant documents were available for

22  review." Dkt. No. 32 at 4:23-5:7. Two year later, Mr. Chatterjee revealed in November of 2012

23  that he had in fact discussed Ms. Farhang and the joint venture, purportedly in a privileged

24  context, during the joint venture and long before 2008 while Mr. Telfer was still present at Orrick.

25  Singh Decl., Ex. 1 and ¶¶7-10, 18-20.

26

27                                           - 15 -

1    While analyzing these discrepancies and attempting to evaluate the implication of the

2    numerous recently identified discrepancies in Orrick's prior sworn testimony, Plaintiffs' counsel

3    repeatedly and expressly requested that Neel Chatterjee should be walled off from the matter while

4    the investigation was pending. Singh Decl., ¶23. Defendants have flatly, brazenly and

5    condescendingly refused for almost a year, and in fact have confirmed in Counselor Tom

6    Zellerbach's recent declaration that Counselor Chatterjee has been involved as lead counsel for

7    Defendants throughout all relevant periods. Dkt. No. 463, ¶2. In fact, Orrick has also failed to

8    follow any meaningful protocol to wall its attorneys appropriately, and as recently as one week

9    ago, a member of its merits team sought access to the January 24, 2010 Hearing Transcript despite

10   a tentative making it clear that sensitive information would be and had in fact been discussed.

11   Singh Decl. ¶23.

12   **III. LEGAL ANALYSIS**

13        Based on the preceding facts, disqualification of Orrick is not only appropriate but now

14   virtually mandatory.

15   **A. Overview Of Legal Standard for Disqualification Based on Prior**
16   **Representation**

17        Pursuant to Rule 3-310(E) of the State Bar Rules of Professional Conduct, a member of the

18   bar "shall not, without the informed written consent of the client or former client, accept

19   employment adverse to the client or former client where, by reason of the representation of the

20   client or former client, the member has obtained confidential information material to the

21   employment." If a substantial relationship is established between successive representations and

22   the former representing attorney is still present with the firm, disqualification is virtually

23   automatic. *See Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 706, 3 Cal. Rptr. 3d 877,

24   882 (2003) ("This standard, with its conclusive presumption of knowledge of confidential

25   information, is 'justified as a rule of necessity' because: 'it is not within the power of the former

26   client to prove what is in the mind of the attorney.  . .The conclusive presumption also avoids the

27

28

ironic result of disclosing the former client's confidences and secrets through an inquiry into the actual state of the lawyer's knowledge and it makes clear the legal profession's intent to preserve the public's trust over its own self-interest."); *see also Global Van Lines, Inc. v. Superior Court* (1983) 144 Cal.App.3d 483, 192 Cal.Rptr. 609.; *see also Rosenfeld Constr. Co. v. Superior Court*, 235 Cal. App. 3d 566, 575, 286 Cal. Rptr. 609, 614 (Ct. App. 1991) ("Therefore, in the usual case when the substantial relationship of the matters is established, the inquiry ends and the disqualification should be ordered. If it were otherwise, a weighing process would be inevitable. The rights of the former client would be lined up against those of the new client, perhaps to the detriment of both. The purpose of the substantial relationship test is to avoid such an inquiry." [citations omitted]); *see also  H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (2nd Dist. 1991) 229 Cal.App.3d 1445, 280 Cal.Rptr. 614.

### B. This Court Previously Found A Substantial Relationship Between Orrick's Representation of Plaintiff Farhang And Orrick's Representation of Defendants

To determine "whether a substantial relationship exists between successive representations the court must first determine if the attorney had a direct and personal relationship with the former client." *Jessen,* 111 Cal. App. 4th 698, 705 (2003). Applying the substantial relationship test, courts often look at: 1. Similarities between the respective factual situations, 2. The legal questions involved, and 3. The nature and degree of the attorney's involvement with the cases. Dkt. No. 86, p. 4, citing *H.F. Ahmanson & Co. v. Salomon Brothers, Inc*., 229 Cal. App. 3d 1445, 1456 (1991).

Applying the above referenced test, this Court reasonably and appropriately concluded in 2010 that "it would appear that at a minimum that Orrick's representation would have involved confidential discussion concerning Farhang's ownership and contribution toward the development of the IP and the initial and potential value would all seem material to the evaluation, prosecution, and settlement of Farhang's current litigation against IIT" thus finding "a substantial relationship exists between the current litigation and Orrick's prior representation of Farhang." Dkt. No. 86 at 4-6. In its analysis, the Court correctly applied a substantial relationship test and highlighted the

- 17 -

1   extensive time spent by Mr. Telfer, the nature of Mr. Telfer's representation, and the legal

2   questions posed in Mr. Telfer's representation and the current case. *Id*.

3          In their related and recently filed briefing opposing the deposition of Neel Chatterjee,

4   Orrick argues that the recently revealed Telfer emails suggest that Ms. Farhang's representation

5   about the substantial relationship between Orrick's representation of her and Defendants was not

6   properly characterized or understood by the Court. (Dkt. No. 461 at 4:1-20). This after-the-fact

7   attack on the Court's previous conclusion is faulty in several respects. Indeed, it ignores the plain

8   English reading of the new sample emails submitted (which originated from the tranche of Telfer

9   emails which Orrick previously concealed). Plaintiffs refer the Court to Conditionally Sealed

10  Exhibit 3 of the previously submitted Declaration of Sanjiv N. Singh submitted in support of

11  Plaintiff's opposition to Orrick's motion to quash the Chatterjee subpoena. Dkt. No. 459-1, Ex. 3

12  [Previously Submitted Under Seal] (specifically sentences on p.2 of the Exhibit with sentences

13  beginning "After it is over…" and "**Most importantly…"). This email clearly shows Plaintiff

14  Farhang having key strategic discussions with Mr. Telfer about not only her plans to own the

15  technology but her planned usage of the technology for a commercial venture. *Id*.[4]  Even if

16  *arguendo* this were the only email in the tranche (which it is not), the email itself is sufficient and

17  troubling evidence because: (i) it is a "correspondence" and thus falls within the plain meaning of

18  "client papers and property" as defined by California Rule of Professional Conduct 3-700(D)(1);

19

20         [4] Moreover, this sample email gives rich context to the previously submitted supposedly complete client file which Orrick had submitted in 2010 and confirms that those files, including the draft employment agreements, also reflected active discussion between Mr. Telfer and Ms.

21  Farhang about intellectual property rights she was interested to acquire, whether by license initially or later by ownership.  *See* Client File Submitted for In Camera Review By Orrick

22  (received by this Court under seal pursuant to Administrative Motion, Dkt. Nos. 35-37, p. 18 of the PDF [Section 9 entitled "Formation of New Entity" of draft employment agreement with

23  Ikonodyne]).  A brief comparison of Section 9 in the cited draft agreement (*Id*.) from the previously submitted client file with the newly discovered Telfer emails (Conditionally Sealed Ex.

24  3 to Dkt. No. 459-1) reveals that Mr. Telfer was very actively assisting Ms. Farhang position her

25  employment negotiations to acquire intellectual property rights to the Mobile Technology. This flatly and decisively contradicts Orrick's previous contentions that Mr. Telfer was a mere

26  employment (or to use Mr. Chatterjee's words "overcompensated") attorney advising on tangential matters unrelated to the joint venture.

27                                                  - 18 -

1  (ii) it was retained by Orrick and not disclosed in 2010 (January 2010 Hearing Transcript at 15:25-

2  16:3); (iii) it was on the Orrick server and is on the server to this day (Singh Decl., ¶¶10, 21); and

3  (iv) it was moreover in the possession and knowledge of the Orrick attorney who represented Ms.

4  Farhang and who was still present in the same Bay Area practice as Mr. Chatterjee when Mr.

5  Chatterjee began his repeated conversations and interactions with Defendant Chakrabarti about

6  Ms. Farhang and the joint venture. *Id.*

7  
8  **C. The Limited Exception To The Presumption of Imputed Knowledge Should Not Be Available In This Case Where Mr. Telfer And Mr. Telfer's Files Were All Present During Mr. Chatterjee's Repeated Interactions With Defendant Chakrabarti**

9  

10  As previously set forth by this court, "the State Bar Rules of Professional Conduct

11  prohibits the use of confidential information in adverse representation" and "'it has long been

12  recognized that knowledge obtained by one member of a firm of lawyers is imputed to all the

13  other members.'" Dkt. No. 86, p. 6; citing *Rosenfeld Construction Co. v. Superior Court*, 235 Cal.

14  App. 3d 566, 573 (1991). However, there is "a recognized '*limited* [emphasis added] exception to

15  this conclusive presumption in the *rare* [emphasis added] instance where the lawyer can show that

16  there was no opportunity for confidential information to be divulged.'" *Goldberg v.*

17  *Warner/Chappell Music, Inc.*, 125 Cal. App. 4th 752, 760, 23 Cal. Rptr. 3d 116, 121 (2005).

18  Specifically, when the representing attorney has departed the firm considering successive

19  representation, California courts have looked to ABA Model Rule 1.10(b) for guidance.

20  *Goldberg,* 125 Cal. App. 4th at 765; *Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324,

21  1337 (2001); *Dieter v. Regents of the Univ. of Cal.*, 963 F. Supp. 908, 912 (E.D. Cal. 1997).

22  Courts have applied the Model Rule to create a narrowly rebuttable presumption where "the

23  presumption of imputed knowledge is rebutted when 'the evidence establishes that no one other

24  than the departed attorney had any dealings with the client or obtained confidential information.'"

25  *Goldberg*, 125 Cal. App. 4th at 765.  It is important to note that: (i) this very narrowly rebuttable

26  presumption is only supposed to be applied in "rare" instances; and (ii) the burden of proof to

27  
28  

- 19 -

1   rebut the presumption rests with the firm opposing disqualification and not with the moving party.

2   *Goldberg,* 125 Cal. App. 4th at 765; *see also Davis v. EMI Grp. Ltd.*, 12-CV-1602 YGR, 2013

3   WL 75781 (N.D. Cal. Jan. 4, 2013) (where the court emphasizes the rare and limited instances in

4   which parties should be able to rebut the presumption that confidential information is exchanged

5   in successive representations).

6           This "limited" and "rare" exception however is clearly not applicable in light of Orrick's

7   latest assertions and claims of privilege whereby they assert that Mr. Chatterjee was

8   communicating with Mr. Chakrabarti in supposedly protectable, attorney-client communications

9   dating back to 2004. *See* Dkt. No. 30, ¶¶ 3 – 6; *see also* Singh Decl., Ex. 1 and ¶¶7-10; see also

10  August 2013 Privilege Log; *see also* December 2013 Privilege Log at Document Nos. 77, 108,

11  240-242, 251-253, and 307-310 As abundant evidence shows, Mr. Telfer and both the trimmed 39

12  page file and the more expansive file including all of Mr. Telfer's emails were physically located

13  in Orrick's Bay Area practice during the very same period that the Bay Area-based Mr. Chatterjee

14  (or his intermediary Bijoy Chatterjee) was having repeated communications with Defendant

15  Chakrabarti. *Id.* In such case, *Goldberg* does not apply and the Court should simply apply the

16  substantial relationship test (on which it already ruled in this case). *See infra* at Section III (A)-

17  (B).  In such case, Mr. Telfer's knowledge is imputed to Orrick as a firm and would have been the

18  basis for disqualifying Orrick from providing advice to Mr. Chakrabarti (including advice that

19  may have improperly facilitated breach of the joint venture). *Id.* In fact, it is not even necessary to

20  show that Mr. Chatterjee actually communicated with Mr. Telfer or actually accessed his files

21  from 2004 to 2006, though Mr. Telfer's recent statements to Plaintiffs' counsel raises this

22  possibility as does Mr. Chatterjee's questionable, contradictory testimony and the privilege logs.

23  *See* Ahmanson, 229 Cal.App.3d at p. 1453, 280 Cal.Rptr. 614 ("It is not within the power of the

24  former client [Farhang] to prove what is the mind of the attorney [Chatterjee or other Orrick

25  attorneys]"); *see also* Singh Decl., ¶¶7-10, 18-20. The fact that Mr. Chatterjee and Orrick did not

26  seek Ms. Farhang's consent for their prior interactions with Mr. Chakrabarti (and that therefore

27

28

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S
PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS
DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS
MATTER
Case No. C-08-02658 RMW

Orrick's representation of Defendants was thus not known to Ms. Farhang until after Mr. Telfer left Orrick in 2008) (Singh Decl. ¶8) should not provide Orrick the opportunity to rebut a presumption intended to protect the sanctity of the duty of loyalty and confidentiality. This is a textbook (albeit shocking) case where the presumption should be preserved, and disqualification should have been virtually automatic but for Orrick failing to disclose vital material facts in 2010.

**D.  Even If Orrick Is Permitted To Try To Rebut The Presumption of Imputed Knowledge, They Must Fail Because All Of The Factual Predicates Underlying The Court's Previous Evaluation of Evidence Have Been Shown To Be False.**

Deprived of material information, this Court denied Plaintiff's original Motion to Disqualify Defendants' Counsel on the notion that the risk of disclosure of Ms. Farhang's confidential information was low because (1) the attorneys that previously represented Ms. Farhang left Orrick prior to the commencement of this lawsuit and (2) there were no longer any relevant, obtainable confidential documents at Orrick. *See* Dkt. No. 98 at 6:3-9.

As set forth above, the opportunity to rebut the presumption of imputed knowledge should not apply in this case, but even if it does, the Court's evaluation of evidence would be very different now than it was in 2010. Each of the factual predicates the Court relied on has now been shown to be false: (1) Contrary to Mr. Chatterjee's previous sworn testimony, Mr. Chatterjee discussed the joint venture and Ms. Farhang, including termination of the joint venture, with Mr. Chakrabarti more than three years earlier than previously represented; (*see* Singh Decl., ¶¶7-10; *see also* Jacobs Decl., ¶¶8-10; *see also* August 2013 Privilege Log; *see also* December 2013 Privilege Log at Document Nos. 77, 108, 240-242, 251-253, and 307-310) (2) Those discussions took place without notice to or consent from Ms. Farhang; (Singh Decl., ¶¶8-9) (3) Contrary to Orrick's previous sworn testimony, those discussions took place while Mr. Telfer was still working for Orrick's Bay Area practice, and Mr. Telfer acknowledges the possibility that he talked to Mr. Chatterjee; (*Id.*; *see also* Dkt. No. 30, ¶3-5; *see also* Singh Decl., ¶18-20) and (4) Contrary to Orrick's previous sworn testimony, Ms. Farhang's client file containing significant information

- 21 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
Case No. C-08-02658 RMW

about her views of the Mobile Technology and its ownership, as well as Mr. Telfer himself residing in the same Bay Area practice, were present at Orrick and accessible to Mr. Chatterjee during the entire time he was talking to his close friend Mr. Chakrabarti. Singh Decl., ¶¶10, 21; *see also* Dkt. No. 459-1, Ex. 3 [Previously Submitted Under Seal].

These factual discrepancies in aggregate raise very serious questions about Mr. Chatterjee, Mr. Kaufman, and Orrick's credibility.  In such a case, where the presumption should only be rebutted with a strong showing of evidence and where the burden remains with Orrick (*Goldberg,* 125 Cal. App. 4th at 765; *see also  Davis,* 12-CV-1602 YGR, 2013 WL 75781 (N.D. Cal. Jan. 4, 2013)) , the Court must err on the side of caution and must now seriously question whether Orrick is capable of providing credible rebuttal evidence where there has been such a systemic breakdown in its ability to track its own communication, files and the conduct and communications of its own attorneys. Regardless of whether the facts appeared on surface to be sufficient to rebut the presumption in 2010, it is abundantly clear now that the facts were false and thus cannot possibly be sufficient to overcome the presumption of firm knowledge. *See* Singh Decl., ¶¶7-10, 18-20; *see also* Jacobs Decl., ¶¶1-10; *see also* August 2013 Privilege Log; *see also* December 2013 Privilege Log at Document Nos. 77, 108, 240-242, 251-253, and 307-310).

**E.  Facts Revealed Since The 2010 Hearings Raise The Possibility That Defendant Chatterjee May Be A Defendant**

It is well recognized that substantial relationship analysis requires Court to look at "similarities between the two factual situations."   Dkt. No. 86, p. 4, citing *H.F. Ahmanson*, 229 Cal. App. 3d at 1456. In this case, this Court is presented with the remarkable situation where the factual situations involved in the two successive representations may actually involve the current representing attorney of the new client as a percipient witness and a possible defendant, and there is a real question as to whether his access to Farhang confidential information from the Farhang Orrick matter facilitated breach of the joint venture that is the subject of the IIT/Chakrabarti Orrick matter.  Consider the following undisputed facts:

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
Case No. C-08-02658 RMW

● Beginning in 2004, the recently revealed privilege logs show that Defendants were having repeated contact with Neel Chatterjee, and the presence of these communications on the log now directly contradict Mr. Chatterjee's sworn testimony that his pre-2008 communications had nothing to do with the joint venture. *see* Singh Decl., ¶¶7-10; *see also* Jacobs Decl., ¶¶8-10; see also August 2013 Privilege Log at Documents Nos.1-3; *see also* December 2013 Privilege Log at Document Nos. 77, 108, 240-242, 251-253, and 307-310). This discrepancy raises important questions as to why Counselor Chatterjee hid or failed to recall these communications.

● During the end of 2005 and early 2006, according to Orrick's Counselor Alderman as communicated to Mr. Jacobs and Mr. Singh, Neel Chatterjee and Defendant Chakrabarti were talking about Ms. Farhang and the joint venture and about concerns Defendant Chakrabarti had about the joint venture and Ms. Farhang. Singh Decl., ¶8. To date, some of these communications, which Mr. Alderman indicated were by instant messaging, appear nowhere on any of the available , purported privilege logs. Id. at ¶¶9. More concerningly, Counselor Alderman initially stated there were "several" such IM messages, but immediately after the January 24, 2014 hearing stated that there was only "one" instant message to his knowledge. *Id*. at ¶ 24.

● In April of 2006,  within the same time span, specifically on April 19, 2006, Defendant Chakrabarti sent a letter to Ms. Farhang purportedly admitting her to Defendant IIT's incubation program but demanding that she produce evidence of intellectual property ownership. TAC, Ex. D. Earlier that month, on April 6, 2006, Defendant Chakrabarti secretly instructed the engineers to quit the project and deceive Ms. Farhang into believing it was ongoing (Dkt. No. 444, Ex. 17);  the April 19, 2006 invitation was thus clearly sham.

● During April of 2006,  and in fact approximately two weeks prior to the April 19, 2006 fraudulent incubation admission invitation described above,  Neel Chatterjee and his

father (who Counselor Zellerbach has confirmed was acting as an "intermediary" for his son Neel Chatterjee, thereby supposedly justifying privilege over communications between Bijoy Chatterjee, a non lawyer, and Partha Chakrabarti) repeatedly communicated with Defendant Chakrabarti including but not limited to multiple emails on April 7 and April 8, 2006, including direct emailing between Defendant Chakrabarti and Neel Chatterjee on April 8, 2006. December 2013 Privilege Log, Document Nos. 240-242, 251.

● In June of 2006, after repeated and previously undisclosed interactions with Orrick's Neel Chatterjee, who had access to Farhang's confidential client information and Mr. Telfer, Defendants issued a flat repudiation of the entire joint venture and invoked specific intellectual property arguments to try to terminate the joint venture, including incorrect factual arguments about ownership which appear directly motivated by incomplete information contained in Ms. Farhang's confidential Orrick files. Dkt. No. 179 (TAC) at p. 48:11-16 (¶53); *see also* Dkt. No. 50-1 at p. 11 (¶14 of Indian Complaint); *cf.* Dkt. No. 459-1., Ex. 3 [Previously Submitted Under Seal]; *see also* Client File Submitted for In Camera Review By Orrick (received by this Court under seal pursuant to Administrative Motion, Dkt. Nos. 35-37, p. 18 of the PDF [Section 9 entitled "Formation of New Entity" of draft employment agreement with Ikonodyne]); *see also* Singh Decl., ¶¶ 10, 21.

The above chronology reveals that Mr. Chatterjee is inextricably woven into the material facts of Ms. Farhang's claims against Defendants. Against this backdrop, it seems inconceivable that Orrick would claim, under these circumstances, that the newly discovered evidence about Orrick's conduct would "weaken" the Court's finding of a substantial relationship between the two representations.

**F.   The Advocate-Witness Rule May Be Applied Here To Disqualify Orrick, Particularly Where Orrick Has Refused To Screen Mr. Chatterjee From The Matter For Months Even After They Became Aware Of His Conflicting Testimony And Deeper Involvement And In View Of Orrick's Intertwined Operations**

It is well recognized that "'District courts have the inherent power and discretion to disqualify counsel in order to maintain the ethical standards of professional responsibility.'" *See Caluori v. One World Technologies, Inc.*, CV 07-2035 CAS VBKX, 2012 WL 2004173 (C.D. Cal. June 4, 2012) . Included in this inherent power and discretion is the specific ability to disqualify counsel who become material witnesses in the matter where they are acting as counsel.

The "advocate-witness" rule has been regularly applied in California to disqualify counsel of record, particularly. *See Kennedy v. Eldridge*, 201 Cal. App. 4th 1197, 1211, 135 Cal. Rptr. 3d 545, 556 (2011). The *Kennedy* court noted: "The "advocate-witness rule," which prohibits an attorney from acting both as an advocate and a witness in the same proceeding, has long been a tenet of ethics in the American legal system, and traces its roots back to Roman Law." *Kennedy v. Eldridge*, 201 Cal. App. 4th 1197, 1208-09, 135 Cal. Rptr. 3d 545, 554 (2011) The exceptions to the advocate witness rule are narrow and courts often look to the ABA Model Rule 3.7 which states: "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:(1) the testimony relates to an uncontested issue;(2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." Id at 1209; see also ABA Model Rule 3.7.

Federal courts in California applying the "advocate-witness" rule have applied it with appropriate vigor, using the narrow exceptions set forth by *Kennedy* sparingly and further confirming that client consent makes no difference and should not bar application of the advocate-witness rule to disqualify counsel of record. *Caluori v. One World Technologies, Inc.*, CV 07-2035 CAS VBKX, 2012 WL 2004173 (C.D. Cal. June 4, 2012) These same courts define "necessary witness" as follows: "A lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and obtainable elsewhere." *Id.*

- 25 -

1   Applying California state appellate and California federal court application  of the

2   advocate witness rule to this matter, although not needed, provides additional basis to disqualify

3   Orrick as counsel of record in this matter. As set forth above and like in *Kennedy* and/or *Caluori*,

4   Mr. Chatterjee's testimony is relevant and material to disposition of the underlying matter. *See*

5   *infra* at Section III(E).

6   Consistent with *Caluori*, it is also obvious that this kind of evidence is not "cumulative"

7   and not "obtainable elsewhere". Mr. Chatterjee occupied the unique and inimitable position of

8   being the only individual on this planet who had access to Mr. Telfer and Ms. Farhang's client

9   files (which contained confidential information about intellectual property ownership), who was

10   friends with Mr. Chakrabarti, and who was communicating with Mr. Chakrabarti and his father

11   Bijoy Chatterjee about the joint venture during the very time period when Mr. Chakrabarti

12   coincidentally invoked intellectual property ownership arguments and abandoned the joint

13   venture. Singh Decl., ¶¶7-10, 18-21; *see also* August 2013 Privilege Log; *see also* December 2013

14   Privilege Log at Document Nos. 77, 108, 240-242, 251-253, and 307-310) There is simply no

15   other individual who can shed full light on these issues, and for this reason Mr. Chatterjee must

16   relinquish his position as counsel to Defendants.

17   Because Mr. Chatterjee must relinquish his position as counsel, his firm must be

18   disqualified as well.  It is well recognized that the taint of conflict on an individual attorney

19   automatically taints the firm as a whole:  "Under the vicarious disqualification doctrine, the taint

20   of an ethical conflict that affects one attorney extends to his or her entire law firm." *See Kennedy* ,

21   201 Cal. App. 4th 1197, 1205, 135 Cal. Rptr. 3d 545, 552 (citing (*Adams v. Aerojet–General*

22   *Corp.* (2001) 86 Cal.App.4th 1324, 1333, 104 Cal.Rptr.2d 116)  In this particular case, the rule

23   could not be more appropriate.  *See infra* at Section III (G).

24

25

26

27

- 26 -

### G.   A Belated Wall Can Not Cure Orrick's Imputed Knowledge

At every juncture of the saga of this long standing conflict, Orrick has ignored  or at the least been quite laissez faire installing appropriate protocol to try to wall offending attorneys or minimize the risk of transmission of confidential information. Consider the following: (i) Craig Kaufman was chosen as the attorney to act as ethical counsel in 2010, despite the fact he was an intellectual property attorney technically subordinate to Neel Chatterjee who resided in the same office as Mr. Chatterjee (January 2010 Hearing Transcript at 49:25-50:2; 56:24; and 159:8-11); (ii) William Alderman now acts as ethics counsel for Mr. Chatterjee, but appears to be assisted by Mr. Chatterjee in carrying out his duties as ethics counsel given that Mr. Chatterjee actually files documents for him including the recent Motion to Quash (Dkt. No. 458, e-filed by Counselor Chatterjee); (iii) Mr. Zellerbach is another intellectual property litigator, and as recently as 2012 was working hand in hand with Mr. Chatterjee (Dkt. No. 463, ¶2); (iv) despite repeated requests to wall Mr. Chatterjee from the matter, Orrick has refused to do so and according to Mr. Zellerbach's recent declaration in support of Mr. Alderman's Motion to Quash, Mr. Chatterjee has remained as lead counsel to this day (*Id.*; *see also* Singh Decl., ¶23); (v) Orrick has demonstrated similar laissez faire negligence and recklessness in connection with other ethical walls supposed to protect Ms. Farhang, which required this Court to request at least one Orrick attorney to relocate her office or resign as counsel of record when it was apparent Orrick was not abiding by the ethical wall to which both parties had stipulated in connection with former Skadden attorney Jeffrey McKenna who had been Farhang's attorney in another matter (Dkt. No. 362); and (vi) Orrick cannot accurately track what documents it has as evidenced by Mr. Kaufman's ignorance of the fact that the Telfer emails were sitting on Orrick's servers and indeed specially flagged as such under an obvious litigation hold. Singh Decl., ¶ 10. It is simply inconceivable against this backdrop that Neel Chatterjee could be disqualified without disqualifying Orrick as a firm.

The time for walling is over;  the walls that should have been in place to maintain loyalty and confidentiality were likely breached years ago and at the very least, in the alternative, should

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
Case No. C-08-02658 RMW

not, and by law cannot, be trusted to withstand the ongoing representation of a firm who has shown such cavalier disregard for Ms. Farhang's interests as their former client.

### H.  The Court Has Inherent Authority To Sua Sponte Impose Sanctions

This Court has the inherent authority and broad discretion to impose sanctions on parties for misconduct. In *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), the Supreme Court made clear that "Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33, 111 S. Ct. 2123, 2126, 115 L. Ed. 2d 27 (1991).

Plaintiffs believe that Defendants' counsel has now failed on several occasions to abide by well recognized rules of professional conduct. Defendants' counsel's conduct in connection with Plaintiff Farhang's reasonable efforts to protect her rights as a former client has been very concerning to say the least and cannot be ignored:

1. Orrick and/or Mr. Chatterjee failed to obtain the informed, written consent of Ms. Farhang, a previous client of Orrick, when Orrick began communicating with Mr. Chakrabarti in 2004. Singh Decl., ¶8.

2. Mr. Chatterjee and Mr. Kaufman provided false testimony during the Evidentiary Hearing held on January 12, 2010, evidencing at the minimum reckless disregard for the duties they had to investigate relevant facts before their testimony. Singh Decl., ¶¶7-10, ¶21.  Counselor Jacobs recently highlighted for the Court, with specific references to the January 2010 transcript, how it is simply implausible that Counselor Chatterjee was ambushed at the hearing and did not know he was going to have to testify about his long relationship with Defendant Chakrabarti. *See* Jacobs Decl. at ¶¶4-6; *see also* January 2010 Hearing Transcript at 69:4-7.

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
Case No. C-08-02658 RMW

3. Orrick and/or Mr. Kaufman failed to perform a diligent and/or good faith search with regard to whether there were no longer any relevant, obtainable confidential documents at Orrick. Singh Decl., ¶¶7-10, ¶21.

Defendants' counsel's seeming lack of respect for the sanctity of professional responsibility to Plaintiff Farhang (and their insinuations that the number of hours should dictate the measure of loyalty owed to her—*see* January 2010 Transcript at 53:7-15) is appalling. If the court considers *sua sponte* sanctions, Plaintiffs request that the Court consider the extraordinary time spent by Plaintiffs and this Court since 2010 on this issue, and whether the enormous waste of resources could have been avoided had Orrick conducted an appropriate investigation and Mr. Chatterjee given correct testimony.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that Plaintiff's motion to disqualify Orrick as counsel to both Defendants and any third party witnesses be granted, and suggest that the Court consider *sua sponte* imposing monetary sanctions and whatever other measures the Court deems appropriate.

Dated: January 29, 2014

Respectfully submitted,

SANJIV N. SINGH, APLC

By: _____/s/Sanjiv N. Singh_____
　　　　Sanjiv N. Singh, Esq.


Attorneys for Plaintiff Mandana D. Farhang and M.A. Mobile Ltd.

- 29 -

1

**CERTIFICATE OF SERVICE**

2

3    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the
     registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be
4    sent to those indicated as non registered participants on January 29th, 2014.

5

6    Dated: January 29th, 2014

7

8                                              Respectfully submitted,
                                               SANJIV N. SINGH, A PROFESSIONAL LAW
9                                              CORPORATION

10                                             By /s/ Sanjiv N. Singh_____
                                               Sanjiv N. Singh
11                                             Attorneys for Plaintiffs
                                               MANDANA D. FARHANG
12                                             and M.A. MOBILE LTD

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          - 30 -