1   SANJIV N. SINGH (SBN 193525)
    E-mail:  ssingh@sanjivnsingh.com
2   SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
    21 Columbus Avenue, Suite 205
3   San Francisco, CA 94111
    Telephone:  415-296-0152
4   Facsimile:  415-358-4006

5   MICAH R. JACOBS (SBN 174630)
    E-mail:  mjacobs@jacobslawsf.com
6   JACOBS LAW GROUP SF
    388 Market St., Suite 1300
7   San Francisco, CA 94111
    Telephone:  415-445-4696
8   Facsimile:   415-445-4697

9   Attorneys for Plaintiffs
    MANDANA D. FARHANG and M.A. MOBILE LTD.

10

11

12

13                        UNITED STATES DISTRICT COURT

14                       NORTHERN DISTRICT OF CALIFORNIA

15                               SAN JOSE DIVISION

16   M.A. MOBILE LTD., a limited liability         CASE No. C-08-02658-RMW (HRL)
     company chartered in Dominica; and
17   MANDANA D. FARHANG,                           **DECLARATION OF MICAH R. JACOBS**
                                                   **IN SUPPORT OF PLAINTIFFS' MOTION**
18                       Plaintiffs,               **FOR RECONSIDERATION OF THE**
                                                   **COURT'S PREVIOUS ORDER**
19             v.                                  **DENYING PLAINTIFF'S MOTION TO**
                                                   **DISQUALIFY ORRICK, HERRINGTON**
20   INDIAN INSTITUTE OF TECHNOLOGY                **& SUTCLIFFE LLP AS DEFENDANTS'**
     KHARAGPUR, an Indian Institute of             **COUNSEL AND MOTION TO**
21   Technology incorporated under the             **DISQUALIFY DEFENDANTS' COUNSEL**
     "Institutes of Technology Act, 1961";         **AS COUNSEL TO ANY THIRD PARTY**
22   PARTHA P. CHAKRABARTI; and DOES 1             **WITNESSES IN THIS MATTER**
     through 100, inclusive,
23                                                 Date:    March 7, 2014
                         Defendants.               Time:    9:00 a.m.
24                                                 Dept:    6, 4th Floor
                                                   Judge:   Honorable Ronald M. Whyte
25

26

27

28
     DECLARATION OF MICAH R. JACOBS IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S
     PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS
     DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY DEFENDANTS' COUNSEL AS COUNSEL TO ANY THIRD PARTY
     WITNESSES IN THIS MATTER
     CASE NO. C-08-02658 RMW (HRL)

I, Micah R. Jacobs, declare as follows:

1.  I am a member of the State Bar of California and admitted to practice before this Court.  I am co-counsel for the Plaintiffs in this action and am submitting this Declaration in support of Plaintiffs' Motion for Reconsideration Of The Order Denying Plaintiff's Motion to Disqualify Orrick, Herrington & Sutcliffe LLP As Defendants' Counsel, and in support of the Motion to Disqualify Defendants' Counsel As Counsel To Any Third Party Witnesses In This Matter.

2.  I make this declaration based upon my own personal knowledge, unless expressly stated otherwise.

3.  I entered this case as counsel of record in late 2009.  At that time, there was a pending motion to disqualify Orrick as defense counsel given that it had previously represented Plaintiff Farhang, a motion which had been filed by my client on a pro per basis before I appeared as her counsel.  After the motion to disqualify was fully briefed, this Court issued an order finding that Orrick's prior representation of Farhang was substantially related to this case.  Because Orrick had testified that its representation of Defendants did not begin until this lawsuit was filed and thus after attorney Jim Telfer left Orrick, the Court ordered an evidentiary hearing to give Orrick a chance to rebut the presumption that Orrick had Farhang's client confidential information in its possession. At that time, I began preparing for the evidentiary hearing, learning more about Orrick's various positions in opposing the motion, and reviewing the underlying documents my client had in her possession. I reviewed a series of documents between Defendant Partha Chakrabarti ("Chakrabarti") and Neel Chatterjee's father, Bijoy Chatterjee, which expressly referenced Neel Chatterjee dating back to the original negotiations between the parties for the joint venture agreement. It was clear from the documents that Defendant Chakrabarti had a personal relationship with Neel Chatterjee and/or his father, Bijoy Chatterjee, and had expressed several times an intention to communicate with Neel Chatterjee about Farhang and the joint venture. I believed that Neel's potential relationship with Chakrabarti and their communications regarding the joint venture were a critical area of inquiry for the evidentiary

1

DECLARATION OF MICAH R. JACOBS IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY DEFENDANTS' COUNSEL AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER

CASE NO. C-08-02658 RMW (HRL)

hearing on Orrick's potential conflicts, when the representation began, how Orrick handled its former client's confidential information, and the conflict analysis at the time it mattered most—during the joint venture itself. Prior to the evidentiary hearing I met and conferred by telephone with Orrick's ethics counsel who was leading the opposition to the motion to disqualify at that time (attorney Craig Kaufman) in preparation for the evidentiary hearing. During those meet and confer conversations, I explained to Mr. Kaufman several areas of inquiry that I intended to address during the evidentiary hearing, including (1) why Orrick was so sure that the Farhang client file retained by Orrick was so small, (2) Orrick's position that it did not maintain its client files after the client and/or attorney Telfer left the firm, which did not make sense to me given my experience working in large firms and my personal knowledge of document retention practices, and (3) Mr. Neel Chatterjee's prior communications and relationship with Defendant Chakrabarti. Among other things, Mr. Kaufman claimed that because Orrick's representation of Farhang had occurred so many years before the litigation and because her primary contact at Orrick, Jim Telfer, had left the firm, he was sure the trim 39 page file it claimed to have in its possession which they submitted to the Court for *in camera* review was the sum total of Ms. Farhang's files retained by Orrick. He said he could not personally verify whether Mr. Chatterjee did or did not access Farhang's confidential files, but said he relied solely on Mr. Chatterjee's statements. He explained to me that Orrick's document retention system and document tracking system prior to 2010 was not unified, and that generally there was not any way of tracking access to or retention of documents.  He indicated that any attorney or staff member could access documents by doing a simple name search. He indicated that an organized archive system which would track access and document retention was not implemented until 2009, long after the events relevant to the alleged conduct here.

4.      During this same conversation, I specifically informed Mr. Kaufman that we intended to call Mr. Neel Chatterjee as a witness during the evidentiary hearing. I have a very clear and specific recollection of notifying Mr. Kaufman that we intended to call Mr. Chatterjee as witness.  Indeed, I specifically decided as a professional courtesy to tell Mr. Kaufman to

DECLARATION OF MICAH R. JACOBS IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY DEFENDANTS' COUNSEL AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
CASE NO. C-08-02658 RMW (HRL)

advise Mr. Chatterjee before the hearing that we knew he had a family relationship with Mr. Chakrabarti and that we had seen documents indicating that Defendant Chakrabarti had previously discussed the formation of the joint venture with Mr. Chatterjee years before the litigation arose. I wanted Neel to know we had seen those documents although it seemed to me that was something I could have surprised him with during the evidentiary hearing, because he probably did not know that we had those emails from years earlier or otherwise knew about his personal relationship with Defendant Chakrabarti. However, we decided to give him the professional courtesy of notice that we had those documents before the hearing, specifically so that he would be prepared to discuss these critical issues of when he began representing Defendants and how he performed his conflicts check, at the hearing. I specifically told Mr. Kaufman that I intended to cross examine Counselor Chatterjee about his pre-lawsuit communications with Defendants regarding the joint venture, and asked him to tell Mr. Chatterjee that we had seen documents indicating that Mr. Chakrabarti had indeed discussed the joint venture with Mr. Neel Chatterjee. Indeed, I extended this courtesy specifically so that he would not be surprised with this information while testifying.  Part of the reason I remember this so clearly is because my co-counsel Sanjiv Singh was not initially in favor of disclosing to Mr. Chatterjee that we had those documents, and he proposed that we should instead surprise Mr. Chatterjee on the stand.  Mr. Singh and I ultimately decided it was better to give Mr. Chatterjee the benefit of the doubt and the professional courtesy rather than ambushing him during his testimony, specifically so that he could prepare and we could elicit his most truthful testimony on the subject matter, and so that he could conduct whatever diligence was necessary on the critical issues to be presented regarding Orrick's conflicts before he testified.

        5.      At the January 2010 evidentiary hearing, I questioned both Mr. Kaufman and Mr. Chatterjee. Ultimately, Mr. Chatterjee denied he ever had any substantive conversations about Mr. Farhang or the joint venture with Defendant Chakrabarti, and denied that he ever provided any legal advice or represented Defendants prior to when the litigation commenced. He claimed he never communicated about this matter, until after the litigation arose. He also admitted on the

3

1    stand that he had notice that he would be testifying, when he referenced the fact that Mr.

2    Kaufman told him we knew about his relationship with Defendant Chakrabarti.  Mr. Kaufman, on

3    the other hand, testified that Orrick had no Farhang documents other than the paltry 39 page file.

4    Mr. Kaufman testified that Orrick did not have an organized archive to track retention or access

5    to documents prior to 2009, and he also added that his investigation was very limited in that he

6    did not investigate the knowledge  of intellectual property attorneys within Orrick. He also

7    testified that the 39 page Client File Orrick submitted for in camera review was supposedly the

8    entire Farhang client file Orrick had in its possession, and indeed stated that his entire analysis of

9    the matter, the alleged conflicts, and issues of actual or imputed knowledge were based on that

10   Client File. Remarkably, over the past several months, we have now learned that Mr. Chatterjee

11   and Mr. Kaufman each gave false testimony, which I find very troubling.  In fact, we learned that

12   Orrick had actually retained, and still has, hundreds of other Farhang client confidential

13   documents that were never disclosed during the 2010 motion to disqualify Orrick.  More

14   troubling, Mr. Chatterjee has now admitted he gave false testimony during that hearing, and

15   admits that he did in fact speak with and claims to have had privileged communication with

16   Defendant Chakrabarti concerning  Farhang and the joint venture long before the litigation began

17   and while Jim Telfer was still an attorney at Orrick.

18          6.      In his November 2012 Letter to Judge Whyte, Mr. Chatterjee claimed that the

19   reason he provided false testimony during the January 2010 Disqualification Hearing was

20   because he did not know he was going to testify that day, that we had called him as a witness

21   only because he happened to be at court that morning, and that he had forgot about his previous

22   representation of Chakrabarti.  He claims he had no time to prepare or review documents, and

23   that is why he forgot about his repeated, multiple and substantive communications with Mr.

24   Chakrabarti over the course of several years regarding Farhang and the joint venture.  I believe

25   Mr. Chatterjee's excuse for not remembering his prior representation is itself false.  He absolutely

26   knew he would be testifying at that hearing, and he acknowledged on the record that Mr.

27   Kaufman had informed him ahead of time, as I had requested.  He even expressly acknowledged

28
DECLARATION OF MICAH R. JACOBS IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE ORDER
DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND
MOTION TO DISQUALIFY DEFENDANTS' COUNSEL AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
CASE NO. C-08-02658 RMW (HRL)

on the record that, during our meet and confer sessions before the evidentiary hearing, I had asked Mr. Kaufman to warn Mr. Chatterjee that we had documents indicating his relationship and his father's relationship with Mr. Chakrabarti and specifically regarding Farhang's intellectual property and the joint venture *before* the evidentiary hearing.  For example, when I asked if he knew that his father, Bijoy Chatterjee, Mr. Chakrabarti, and Ms. Farhang had met to discuss intellectual property issues and a proposed joint venture, Neel Chatterjee admitted that Mr. Kaufman had forewarned Mr. Chatterjee about these issues just days before the hearing.  See Transcript, pages 68:19-69:7:  Q: [Jacobs]: "And were you aware that they met during the time that Plaintiff was in negotiations with PPC over the intellectual property and the proposed joint venture agreement?  A: [Chatterjee]: I heard that in the past several days from Mr. Kaufman.  In the course of our meet and confer, he mentioned something about that.  Before that, I had never heard about that."].  This testimony reveals to me (1) that Mr. Chatterjee knew in advance he was going to be called to testify, which is precisely why Mr. Kaufman had informed Mr. Chatterjee about that issue at my request, and (2) that he was specifically advised by me to be prepared to discuss his early communications with his father and/or Mr. Chakrabarti regarding Farhang, and (3) that I afforded him every professional courtesy in telling him ahead of time we knew about the prior relationship and he should be prepared to address it during his testimony.  His claims today that he was somehow ambushed, did not know he would be testifying, or did not know the subject matter of his expected testimony and therefore did not have time to prepare, are directly contrary to my recollection and the record as I have reviewed it.

7.     Once discovery began in this case in 2012, we decided to serve subpoenas given we knew there were communications between Neel Chatterjee, Bijoy Chatterjee and Mr. Chakrabarti, and we knew that Bijoy Chatterjee had met with Plaintiff in California and encouraged her to disclose her technology to Defendants.  Given that Neel had denied any attorney client relationship, we felt those communications, to the extent they existed, were non-privileged.

8.     In November of 2012, after these subpoenas had been served but before the

5

Chatterjees had produced any documents, and long after discovery was stayed pending the appeal, Mr. Chatterjee sent his remarkable *ex parte* letter to Judge Whyte in which he disclosed to the Court (and to us for the first time) that his testimony during the 2010 hearing on the motion to disqualify Orrick was incorrect.  In this November 2012 Letter, Neel Chatterjee remarkably admitted that he gave false testimony and now claimed he did in fact have communications with Mr. Chakrabarti about Ms. Farhang well before this litigation began and in fact during the critical joint venture time period.  He claimed he had documents in his possession that were otherwise responsive to our subpoena, but was now claiming that they were protected by the attorney client privilege, after previously testifying that he had no such communications or any prior attorney client relationship.

9.    My co-counsel Sanjiv Singh and I were stunned by Mr. Chatterjee's admission, and equally surprised by his excuse, given that we had warned him ahead of time specifically so that he would be prepared to testify on this very subject matter.  We responded to the November 2012 Letter with a letter informing the Court that we intended to investigate this matter further, and notified Defendants that we intended to investigate the matter promptly.  We met with Mr. Chatterjee on December 21, 2012 to learn more about what happened, why he gave false testimony, and the nature of his newly disclosed communications with Chakrabarti.[1]  After that meeting, it was clear there were important issues we needed to investigate, and Orrick decided to appoint an ethics counsel, William Alderman, to handle our investigation.  During that investigation, Mr. Alderman confirmed that Mr. Chatterjee had discussions and correspondence with Chakrabarti during critical periods in the underlying dispute years before litigation commenced, and that the discussions and correspondence between Mr. Chatterjee and Mr. Chakrabarti indeed addressed issues regarding Ms. Farhang and the joint venture. We were told

---

[1] I believe we agreed to keep that December meeting off the record and will do so unless the Court orders otherwise. That said, all of the important facts for opposing the motion to quash or bringing any other relevant motions have been confirmed by on the record meetings with Mr. Alderman, Orrick's ethics counsel appointed to follow up on these important issues.

DECLARATION OF MICAH R. JACOBS IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY DEFENDANTS' COUNSEL AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
CASE NO. C-08-02658 RMW (HRL)

that that these conversations took place either by phone or by some kind of instant messaging, and that they took place in 2005 and/or early 2006. We were surprised however to learn that Mr. Alderman did not seem to be initially aware of the earlier interactions which are discussed in the 2010 evidentiary hearing; we were also surprised that Mr. Alderman seemed to have a fundamental misunderstanding about the nature of the issues, and seemed to think we were alleging that Mr. Chatterjee had "seen confidential technology" during the joint venture. We explained to Mr. Alderman that our focus was quite different and quite specific, namely whether Mr. Chatterjee had facilitated Mr. Chakrabarti's breach of the joint venture by unwittingly or intentionally sharing confidential information from Orrick's files pertaining to its former client about Farhang's *ownership* of the intellectual property, and whether Mr. Chatterjee had given IIT some confidential client information about Farhang or her ownership of the intellectual property that IIT then used as a pretext for purportedly terminating the joint venture, and whether Mr. Chatterjee had caused Orrick to breach various duties to Ms. Farhang as a former client of Orrick, based on communications that Mr. Chatterjee at first testified never existed and now claim are privileged.

10. To my recollection and based on my personal knowledge, I believe that Mr. Chatterjee and his colleagues have changed his characterization of his relationship with Mr. Chakrabarti on multiple occasions. Initially, in 2010, when under oath, he claimed that his relationship with Defendant Chakrabarti during this time period was personal in nature and that he never had any attorney client relationship. In 2010 at the evidentiary hearing, he emphatically denied any legal representation prior to 2008, and stated that the only time he heard of Farhang at all was because Mr. Chakrabarti mentioned her name as someone he was meeting in California for a possible project. Three years later, in his November 2012, ex parte letter to the Court, after he discovered that his testimony would be shown to be false by documents produced in discovery, he changed his position and claimed that a portion of this pre-2008 communications may have been privileged and involved discussions about the Ms. Farhang, so he refused to produce the documents. Subsequently, Orrick disclosed to us in meetings with Mr. Alderman

that: (i) Mr. Chatterjee's had additional conversations with Mr. Chakrabarti which took place most likely in 2005 or early 2006 during the joint venture, (ii) that Orrick did not obtain Ms. Farhang's consent or give her notice of these conversations or check Orrick's conflicts database in connection with Orrick's prior representation of Ms. Farhang, and (iii) that these conversations concerned Ms. Farhang and also concerned Mr. Chakrabarti's desire to get out of the joint venture. As our investigation continued, we learned there were significantly more communications between Mr. Neel Chatterjee and Chakrabarti than was first disclosed at the outset of our investigation, and indeed the new privilege log produced by Defendants identifies many more communications than was first disclosed to us. We also learned from Mr. Alderman that attorney Kaufman's prior testimony that Orrick had only 39 pages of Farhang's client file was also false, and that Orrick actually had the full client file of approximately 300 pages.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 29th day of January, 2014 in San Francisco, California.

_/s/ Micah R. Jacobs_____
MICAH R. JACOBS

DECLARATION OF MICAH R. JACOBS IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY DEFENDANTS' COUNSEL AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER

CASE NO. C-08-02658 RMW (HRL)

1

2

**FILER'S ATTESTATION:**

3    Pursuant to General Order No. 45, §X(B), I attest under penalty of perjury that concurrence in the
     filing of the document has been obtained from its signatory.

4

     Dated: January 29, 2014

5

6

                                                       Respectfully submitted,
7                                                      SANJIV N. SINGH, A PROFESSIONAL
                                                       LAW CORPORATION
8

                                                       By: */s/ Sanjiv N. Singh*_____
9                                                      Sanjiv N. Singh
                                                       Attorneys for Plaintiffs
10                                                     MANDANA D. FARHANG
                                                       and M.A. MOBILE LTD
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

                                                       9
28    DECLARATION OF MICAH R. JACOBS IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE ORDER
      DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND
      MOTION TO DISQUALIFY DEFENDANTS' COUNSEL AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
      CASE NO. C-08-02658 RMW (HRL)

1

2

## CERTIFICATE OF SERVICE

3

4

5

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 29th, 2014.

6

Dated: January 29th, 2014

7

8

9

Respectfully submitted,
SANJIV N. SINGH, A PROFESSIONAL LAW
CORPORATION

10

11

12

13

By /s/ Sanjiv N. Singh
Sanjiv N. Singh
Attorneys for Plaintiffs
MANDANA D. FARHANG
and M.A. MOBILE LTD

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

DECLARATION OF MICAH R. JACOBS IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY DEFENDANTS' COUNSEL AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER

CASE NO. C-08-02658 RMW (HRL)