SANJIV N. SINGH (SBN 193525)
E-mail: ssingh@sanjivnsingh.com
SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
21 Columbus Avenue, Suite 205
San Francisco, CA 94111
Telephone: 415-296-0152
Facsimile: 415-358-4006

MICAH R. JACOBS (SBN 174630)
E-mail: mjacobs@jacobslawsf.com
JACOBS LAW GROUP SF
388 Market St., Suite 1300
San Francisco, CA 94111
Telephone: 415-445-4696
Facsimile: 415-445-4697

Attorneys for Plaintiffs
MANDANA D. FARHANG and M.A. MOBILE LTD.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| M.A. MOBILE LTD., a limited liability company chartered in Dominica; and MANDANA D. FARHANG,<br><br>Plaintiffs,<br><br>v.<br><br>INDIAN INSTITUTE OF TECHNOLOGY KHARAGPUR; PARTHA P. CHAKRABARTI; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. C-08-02658 RMW (HRL)<br><br>DISCOVERY JOINT REPORT #1 |

**Relevant Dates:** Opp. to Mtn. to Disqualify: 2/12/14; Hearing on Motion to Disqualify: 3/7/14; Close of discovery: Not Yet Set

**Identification Of The Issue**: Defendants Indian Institute of Technology Kharagpur and Defendant Partha Chakrabarti (collectively, "Defendants") issued a document production subpoena on Friday, February 7, 2014 with an accelerated compliance date of Tuesday, February 11, 2014, seeking production of documents from the third party law firm Keker & Van Vest LLP, which law firm now represents Plaintiff Mandana Farhang's former legal counsel, Skadden, Arps, Slate, Meagher & Flom LLP, in a malpractice action brought by her; Plaintiff Farhang now seeks to quash or modify the subpoena because Plaintiffs believe it is procedurally defective and seeks privileged information.

**Joint Meetings**: Teleconference and numerous emails were initiated by Plaintiffs on February 7th and continued through February 10, 2014. For reasons set forth below, a physical joint meeting could not occur prior to the deadline for filing this report.

**Attestation of Lead Counsel**: I have complied with Judge Lloyd's Standing Order Regarding Discovery Disputes.

*Dated: February 10, 2014*

| | |
|---|---|
| SANJIV N. SINGH, APLC<br>By: _____/s/Sanjiv N. Singh_____<br>**Sanjiv N. Singh, Esq., Atty for Plaintiffs** | ORRICK, HERRINGTON & SUTCLIFFE LLP<br>By: _____/s/Thomas Zellerbach_____<br>**Thomas Zellerbach, Esq., Atty for Defendants** |

---

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION REQUESTING RECONSIDERATION OF THE COURT'S PREVIOUS ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP AS DEFENDANTS' COUNSEL AND MOTION TO DISQUALIFY ORRICK AS COUNSEL TO ANY THIRD PARTY WITNESSES IN THIS MATTER
Case No. C-08-02658 RMW

## I. FACTS UNDERLYING DISPUTE

On Friday, February 7, 2014, Defendants served a subpoena on third party law firm Keker & Van Vest LLP ("Keker") ("Keker Subpoena", a true and correct copy of which is attached as **Exhibit A**). Keker now represents Plaintiff Mandana Farhang's former law firm, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"). The Keker Subpoena, which has a compliance date for tomorrow February 11, 2014, is the subject of this joint report. Plaintiff Farhang was previously represented by Skadden from 2006 to 2008 and has sued Skadden for malpractice in an unrelated state court matter pending in the Superior Court of the State of California (*Mandana Farhang v. Jose R. Allen, et al.,* Case no. CGC-09-492064). Keker is defending Skadden in that lawsuit.

## II. PLAINTIFFS' POSITION

### A. Background Procedural Posture and Facts

Given the complexity and duration of this matter, Plaintiffs offer this Court a relevant synopsis of the procedural posture of this case and relevant background facts. As this Court is aware, the above captioned lawsuit was filed by Plaintiffs against Defendants alleging misappropriation of trade secrets, breaches of an NDA and a joint venture that occurred between 2003 to 2006 involving certain mobile technology owned by Plaintiff. Dkt. No. 179., ¶¶ 62-115. Defendants' law firm in this case, Orrick, Herrington & Sutcliffe LLP ("Orrick"), previously represented Ms. Farhang from 2000 to 2001 in connection with employment transactions and issues relating to Ms. Farhang's plans to acquire ownership of the *very same* technology at issue in this case. Dkt. No. 467 at pp. 8-9. In 2010, Plaintiff moved to disqualify Orrick based on its prior representation of Farhang, but Judge Ronald M. Whyte, though finding a substantial relationship between the Orrick representations, initially declined to disqualify Orrick relying on sworn testimony provided by Orrick attorneys Neel Chatterjee and Craig Kauffman that Ms. Farhang's Orrick attorney (James Telfer) had departed Orrick prior to the commencement of Orrick's legal representation of Defendants in 2008 and that Orrick had only retained a trim 39 pages worth of Farhang's client files. *Id.* at pp. 9-15; *see also* Dkt. No. 86 at 4-6. Plaintiffs subsequently discovered that Orrick had provided false testimony in that 2010 hearing, and Judge Whyte just

- 1 -

recently observed that "the court is concerned that the evidence presented subsequent to the [2010] Order Denying Disqualification raises a substantial question as to whether Orrick should be disqualified." January 24, 2014 Tentative Order of Judge Ronald M. Whyte. Plaintiffs filed a renewed motion to disqualify Orrick on January 29, 2014. Dkt. No. 467. With this pending motion to disqualify invited by the Court, Plaintiffs suggested to Defendants that they should be very careful, pending the hearing, to maintain an ethical wall between the attorney handling the disqualification issues (Counselor William Alderman, located in San Francisco) and the potentially tainted Orrick merits team located in Orrick's other Bay Area facility in Silicon Valley, and also to wall off Neel Chatterjee. *Id*. at 16:1-11. Orrick has refused to wall Counselor Chatterjee who remains their lead counsel.

**B. Prior to Serving the Keker Subpoena, Orrick Served A Subpoena For Document Production and Interrogatories on Much Of The Same Subject Matter**

Discovery opened in this case long ago. On or about January 29, 2014, on the very same day that Plaintiffs filed their motion to disqualify, Defendant IIT served a second set of document requests on Plaintiff seeking documents about Cool e-mobile, loan applications, and Varsha Singh among other things. The Farhang discovery requests, combined with the more than 12,000 documents already produced by Ms. Farhang, cover substantially many of the same topics covered by the Keker Subpoena including documents relating to Cool e-mobile and Varsha Singh.

**C. Defendants Served The Deficient Keker Subpoena, Providing No Meaningful Prior Notice And Disregarding The Need For Meeting And Conferring With Keker And With Plaintiffs On Discovery Issues**

The Keker Subpoena sets forth requests for broad buckets of information obtained by Keker in the underlying malpractice case, including many of the same topics that are subject of the Farhang document requests or already produced to Defendants by Ms. Farhang. Ex. A at p. 4. The compliance date of the Keker Subpoena is **tomorrow**, giving Plaintiffs just two business days to object, evaluate the obviously complex issues surrounding the subpoena request, and/or move to quash the subpoena, and giving no time for any meaningful meet and confer efforts with Orrick or the third party Keker (who not surprisingly, given their representation of Skadden who is now

- 2 -

1 adverse to Plaintiff Farhang, had until today refused Plaintiff's legitimate request to meet and
2 confer directly to discuss privilege issues while instead communicating directly with Orrick and
3 suggesting a waiver of privilege). Upon receipt of an email copy of the Keker Subpoena,
4 Plaintiffs' lead counsel, Sanjiv N. Singh, who was travelling back from a deposition in Los
5 Angeles on Route 5, immediately called Orrick attorney Benjamin Lin to commence prompt meet
6 and confer efforts given the two business day notice. In that call, Counselor Singh stated that the
7 Keker Subpoena was deficient in two respects:  (i) it encroached on privileged communications
8 given Skadden's prior representation of Ms. Farhang, and (ii) that the meet and confer would take
9 much more time than two business days, and thus an extension was essential and appropriate.
10 Counselor Lin told Counselor Singh that Mr. Zellerbach, who issued the subpoena that morning,
11 was travelling on some kind of personal trip, and later in the day stated that Counselor Zellerbach
12 was unavailable and could not meet and confer until  Monday, the day before the compliance date.

13 Later that day, despite his apparent unavailability, Counselor Zellerbach began emailing
14 Plaintiffs. First, he flatly refused any extension and when asked what the sudden urgency was, he
15 claimed that the documents were <u>not</u> needed for the underlying matter but were instead needed to
16 help Orrick prepare its  opposition to the motion to disqualify which Orrick's ethics team was
17 preparing. He implicitly admitted he was participating in preparing an opposition to the motion,
18 despite previous assurances of an ethical wall preventing him from doing so. *Cf*. Dkt. No. 467 at
19 19:7-24:23. Mr. Zellerbach has declined to answer and explain how the documents are relevant or
20 urgent or explain the apparent breakdown of Orrick's supposed ethical wall. Due to the
21 <u>unprecedented</u> short notice on the Subpoena, Plaintiffs are unable to meet physically with Orrick
22 but so far have engaged in two phone calls and numerous email exchanges (approximately 8 to 10
23 so far) on the Keker Subpoena.

24 **D.  The Keker Subpoena Should Be Quashed**

25 The Keker Subpoena as presently worded should be quashed.  First, it violates Rule 45's
26 requirement for prior notice of a third party subpoena.  Rule 45(a)(4) expressly required Orrick to
27 have given prior notice of the Keker subpoena. See *Schweizer v. Mulvehill,* 93 F.Supp.2d 376, 411

28

- 3 -

DISCOVERY JOINTT REPORT #1
Case No. C-08-02658 RMW

(S.D.N.Y.2000); *see Seewald v. IIS Intelligent Information Sys., Ltd.,* 1996 WL 612497, at *4 (E.D.N.Y. Oct.16, 1996)("The requirement of prior notice has been interpreted to require that notice be given prior to the issuance of the subpoena, *not prior to its return date* [emphasis added]."); *see also Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 196 F.R.D. 220, 222-23 (W.D.N.Y. 2000). Federal Courts consistently recognize that "[t]he purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things. [citation to Advisory Committee Notes omitted]" *Murphy*, 196 F.R.D. at 222. As set forth above, Keker was served on the same day and likely even before Plaintiffs. Even if simultaneous service were achieved and somehow acceptable, in this case it should not be because the production date is just two business days later with no compelling reason or urgency, and the only reason offered suggests that Orrick is disregarding the ethical wall regarding disqualification.

Second, the manner in which Orrick has refused meaningful meet and confer efforts combined with their refusal to grant an extension for reasonable dialogue violates this Court's *April 3, 2012 Standing Order Re: Civil Discovery Disputes* which permits "an order in favor of the other side" where such refusals have occurred and where "excuses such as press of business, inconvenience, or cost will not suffice." Counselor Zellerbach simply refused meaningful meet and confer efforts for personal or strategic reasons.

Third, as set forth above, the Keker Subpoena clearly seeks privileged information and Plaintiffs can easily describe with appropriate detail the nature of said information: (i) the vast majority of documents sought by the subpoena were either provided to Keker by Ms. Farhang's former attorney (Skadden) or by Ms. Farhang to Skadden's attorneys at Keker under protective order, and (ii) those documents undoubtedly involved communications between Ms. Farhang and her attorneys at Skadden attorneys during their representation. During the time Skadden represented Ms. Farhang, she would have had privileged communications about the joint venture at issue in this case because the joint venture dispute arose during the same time period (summer of 2006) while Skadden was representing Ms. Farhang in an unrelated oil and gas matter. Skadden

- 4 -

was not however engaged to advise on IIT matters and thus the malpractice suit against Skadden does not allege negligence or breaches in connection with joint venture communications. The malpractice suit thus does not effect a general waiver of privilege that would encompass these communications. Rule 45 and relevant case law expressly states that a motion to quash must and should be granted where a subpoena seeks privileged information and no exception or waiver applies. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii); *see also Phalp v. City of Overland Park, Kansas*, 00-2354-JAR, 2002 WL 1162449 (D. Kan. May 8, 2002) (where for subpoena providing a much longer period of <u>eleven days for compliance</u>, court still grants protective order to plaintiff party opposing third party subpoena of its former counsel and quashes subpoena so that parties and third party former counsel could better define privilege issues in question). The rushed Keker Subpoena in its present state makes no distinction between privileged and non privileged information. (Ex. A at p. 4.) While there might be non-privileged information sought by the subpoena, the subpoena does not make that distinction, and Keker and Orrick have refused meaningful dialogue.

If the Court declines to quash the subpoena, Plaintiffs request that the Court in the alternative issue a protective order and require Orrick and nonparty Keker to provide adequate time (at least 30 days given the breadth of documents involved) to meet and confer regarding the scope of privilege. This amount of time is particularly needed where there are more than 300,000 pages of documents in Keker's possession obtained either from Skadden or Ms. Farhang. Plaintiff's pending motion to disqualify Orrick in this case should not allow Orrick to quickly and rashly obtain documents from another firm that previously represented Farhang, where: (i) Orrick had ample time before Friday to serve the subpoena; (ii) Counselor Zellerbach and Lin are on the merits team and not supposed to be involved in opposing the motion to disqualify; (iii) the documents sought are not relevant to Judge Whyte's analysis of whether Orrick provided false testimony under oath in 2010, as none of the requested documents involve the key and relatively simple question of when Orrick began representing Defendants in this case. Moreover, any request by Orrick to delay the motion to disqualify is without basis; that motion was filed in a timely manner at the request of Judge Whyte. Orrick knows Plaintiffs have been investigating this matter

- 5 -

DISCOVERY JOINTT REPORT #1
Case No. C-08-02658 RMW

since November 2013, and it delayed issuing any subpoena until now; the disqualification motion is urgent and imminently needed given Orrick's continued disregard of ethical walls in connection with its prior representation of Ms. Farhang. *See* Dkt. No. 467 at 15:18-25 and 27:1-28:2.

### III. DEFENDANTS' POSITION

Defendants served their subpoena on Keker & Van Nest LLP ("Keker") to obtain non-privileged documents that Defendants believe Keker has in its possession. The subpoena seeks documents produced or obtained in the Skadden action that pertain to the current action before this Court (the "IIT action"), the two defendants in the IIT action (IIT and Chakrabarti), the alleged joint venture (Cool e-Mobile) that is the subject of the IIT action, the alleged lost customer (Indian Railways) that is at the center of the IIT action, and two key witnesses (Varsha Singh and Matt Dowling) in the IIT action. The subpoena also calls for the production of any deposition transcripts that concern the foregoing. The subpoena does not seek the Skadden files of Farhang. Nor does it specifically seek documents that refer to Farhang, although a communication from one of the witnesses in the IIT case to her obviously would include her name. Given that the nature of the Skadden action and the IIT action are different (the Skadden action concerns limited partnerships in Kansas oil leases, the IIT action an alleged joint venture and trade secret misappropriation in India), the number of responsive documents Keker has is expected to be very modest, albeit important. To the extent Plaintiffs have any confidentiality concerns, such concerns are covered by the protective order entered in the IIT action.

It is noteworthy that Defendants had already requested the production of almost all of these documents from Plaintiffs back in 2012 ( e.g. "All documents that summarize, describe, refer to or relate to IIT" (RFP 1); "All documents that summarize, describe, refer to or relate to Indian Railways" (RFP 2); "All documents that summarize, describe, refer to, relate to or constitute your communications with Varsha Singh that refer or relate to the technology, or any portion thereof; any defendant; Cool e-mobile" (RFP 10); "All documents that summarize, describe, refer to, relate to, or constitute your communications with Matt Dowling" (RFP12); "All documents that

summarize, describe, refer to, relate to, or constitute your communications with Chakrabarti" (RFP 30); "All documents that mention, refer to, or relate to "Cool e-mobile" (RFP32). Plaintiffs repeatedly told Defendants that they have produced all documents. Defendants have a good faith basis to believe that Plaintiffs have concealed documents pertinent not only to the underlying merits of the case, but to Plaintiffs' renewed motion to disqualify Orrick, and that at least some of these documents have been produced in the Skadden action and thus are in Keker's possession.

Farhang claims there are two issues with the subpoena, neither of which has any merit.

First, she complains that there may be attorney-client privileged documents that would be responsive. Not likely. Skadden advised Farhang on limited partnerships on oil leases, not on issues in the IIT action. Moreover, Plaintiffs did not list a single document to or from Skadden on its privilege log in the IIT action, further indicating there are no privileged documents. As almost all of the documents sought in the subpoena had been requested earlier from Plainitffs, privileged communications would have been logged.

Nonetheless, in response to Farhang's stated concern after the issuance of the subpoena and to resolve the issue, Defendants wrote to Keker confirming that no privileged documents were sought by the subpoena or should be produced and requested that Keker confirm that it would not produce any privileged materials. Keker later responded that it was not going to produce anything that was even arguably privileged. Specifically, Defendants' counsel wrote to Keker and stated:

> Sanjiv Singh has stated a concern that the subpoena that I served on Keker calls for the production of attorney-client communications between Ms. Farhang and Skadden. While I think the subpoena is clear on its face that it does not seek such privileged communications – and I am sure Keker would not produce such documents even were they to exist and Keker were to have them – I am writing to confirm that the subpoena we served on Keker does not seek the production or disclosure of any privileged attorney-client communications between Ms. Farhang and Skadden, or between her and any other attorney she may have retained for that matter. Similarly, the subpoena does not seek the production of any protected attorney work product. If you would please confirm your receipt of this email and your understanding that no attorney-client communications or work product are being sought or will be produced, I would appreciate it.

Keker responded:

> We believe that by suing Skadden, Farhang waived the attorney-client privilege regarding matters alleged in the lawsuit. Moreover, we do not believe your subpoena calls for the production of any otherwise privileged material. **Finally, in an excess of caution, we are willing to respond to your subpoena in a way which does not include production of any materials which could arguably have been viewed as privileged**

(emphasis added).  Plaintiffs dismiss Keker's assurances but are unable to describe the nature of the documents allegedly protected by privilege, as required by Fed. R. Civ. P. 45(d)(2)(A), even though Plaintiffs' counsel represent Plaintiff Farhang in both litigations. *See Sterling Merch., Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77, 84 (D.P.R. 2006) (a motion to quash based on a claim of privilege must comply with Fed.R.Civ.P. 45(d)(2)(A), which provides that:"[w]henever information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made **expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim**."(emphasis added).   Plaintiffs have admitted that they have all of the documents themselves, but have not identified any privileged documents either on their privilege log or in their assertion that the subpoena calls for privileged documents.

Second, Farhang complains that the short return time on the subpoena does not provide an opportunity to meet and confer with Defendants about the Keker subpoena.  This complaint lacks merit.  A party has no standing to quash a third-party subpoena except if the subpoena calls for the production of privileged documents. *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought.").  As Defendants have emphasized to Keker that the subpoena does not seek privileged documents and Keker has unequivocally stated that it will not produce any privileged documents, the return time on the

- 8 -

subpoena is an issue only to Keker, not to Farhang. Keker has indicated it can meet the subpoena's return date.

The short return time in any event was necessitated by Farhang's stated refusal to produce any more discovery, including supplementation of late and deficient discovery, until after Defendants must file their opposition.

On January 28, 2014, Defendants wrote Plaintiffs a letter detailing gross deficiencies in interrogatory responses (which Plaintiffs had recently and improperly served months after they were due) and document productions and demanding supplementation of those responses. The following day, January 29, Plaintiffs filed a motion to disqualify Orrick, requiring Defendants to file their opposition by February 12, 2014. Plaintiffs also wrote to Defendants that they did not intend to provide any supplemental discovery until after the motion to disqualify was heard in March. On January 30, Defendants wrote Plaintiffs demanding an immediate meet and confer the following day. Plaintiffs responded that they would not meet and confer until at least February 3, four days away. At the meet and confer on February 3, Plaintiffs made clear that they were going to take their time on supplementing discovery and did not intend to provide it to Defendants until after the hearing in March. Up until Plaintiffs informed Defendants they would not provide any discovery prior to the hearing date (let alone the opposition date), Defendants had no intention of issuing a subpoena to Keker. After realizing they would get no discovery from Plaintiffs prior to the date for filing the opposition, Defendants made a decision over the next few days to subpoena relevant documents that are believed to be in the possession of Keker. Defendants' counsel emailed Plaintiffs' counsel at 7:22 a.m. on January 7 to give them a heads up that they would be serving them a Notice of Subpoena later that morning, and then served that Notice as soon as the subpoena was prepared. Counsel for Plaintiffs were served the Notice of Subpoena before Keker was served with the subpoena, not afterwards as Plaintiffs speculate. Plaintiffs' recitation of the

- 9 -

DISCOVERY JOINTT REPORT #1
Case No. C-08-02658 RMW

facts surrounding efforts to meet and confer also are not accurate.  Defendants' counsel was out of town on business meetings and could not meet and confer on February 7 or the weekend, but offered to meet and confer first thing Monday morning, February 10.  Plaintiffs' counsel, Mr. Singh, responded that he would not be available to meet and confer on February 10 or 11 but could meet and confer on February 12 (the day Defendants' opposition brief is due and too late for Defendants to obtain the documents in time for their opposition).  As it turned out, counsel for Plaintiffs and Defendants were able to meet and confer telephonically today (February 10, 2014).

While Defendants believe the number of responsive documents will be modest at best, Defendants have a good faith basis to believe the documents sought by the subpoena will badly discredit Farhang's case and Farhang, will show material elements of Farhang's IIT case are different from what she has alleged, and will show that Plaintiffs concealed these document from Defendants notwithstanding discovery requests clearly calling for their production.  In addition to being critical to Defendants' defense, the documents are likely important to Defendants' opposition to Plaintiffs' motion to disqualify.

As an accommodation to Plaintiffs' request for more time to talk, Defendants agreed to extend the time for Keker to respond if Plaintiffs on their part would continue the deadline for Defendants to file their opposition to the motion to disqualify.  Plaintiffs refused.  Plaintiffs' desire to deny Defendants information relevant to the case and to their opposition to Plaintiffs' motion to disqualify is both unfair and improper.  Similarly, their assertion that merits counsel not be involved at all in opposing the motion to disqualify is legally wrong and would effectively allow Plaintiffs to be the only party who can explain the nature of the IIT action to Judge Whyte.  Plaintiff's request to quash the subpoena should be denied.

# CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 10, 2014.

Dated: February 10, 2014

        Respectfully submitted,
        SANJIV N. SINGH, A PROFESSIONAL LAW
        CORPORATION

        By /s/ Sanjiv N. Singh_____
        Sanjiv N. Singh
        Attorneys for Plaintiffs
        MANDANA D. FARHANG
        and M.A. MOBILE LTD

- 11 -

DISCOVERY JOINTT REPORT #1
Case No. C-08-02658 RMW