SANJIV N. SINGH (SBN 193525)
E-mail: ssingh@sanjivnsingh.com
SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
21 Columbus Avenue, Suite 205
San Francisco, CA 94111
Telephone: 415-296-0152
Facsimile: 415-358-4006

MICAH R. JACOBS (SBN 174630)
E-mail: mjacobs@jacobslawsf.com
JACOBS LAW GROUP SF
388 Market St., Suite 1300
San Francisco, CA 94111
Telephone: 415-445-4696
Facsimile: 415-445-4697

Attorneys for Plaintiffs
MANDANA D. FARHANG and M.A. MOBILE LTD.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| M.A. MOBILE LTD., a limited liability company chartered in Dominica; and MANDANA D. FARHANG,<br><br>Plaintiffs,<br><br>v.<br><br>INDIAN INSTITUTE OF TECHNOLOGY KHARAGPUR; PARTHA P. CHAKRABARTI; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. C-08-02658 RMW (HRL)<br><br>DISCOVERY JOINT REPORT #2 |

**Relevant Dates:** Opp. to Mtn. to Disqualify: 2/12/14; Hearing on Motion to Disqualify: 3/7/14; Order Issued Regarding Joint Report #1: 2/13/14; Expected Compliance Date for Keker Subpoena Per 2/13/14 Order: 2/28/14; Close of discovery: Not Yet Set.

**Identification Of The Issue**: In its 2/13/14 order regarding Joint Report #1, the Court found that notice for the Keker subpoena was insufficient but denied plainitff's request for an order quashing the subpoena. The Court stayed Keker's compliance date to 2/28/2014 so that plaintiffs may meet-and-confer about possible privilege issues. While the parties have largely addressed the privilege issues, the parties cannot resolve issues regarding Plaintiff Farhang's claim of privacy of certain consumer loan applications. Plaintiffs seek a protective order preventing disclosure of any such loan information and Defendants' oppose such an order.

**Joint Meetings**: Teleconference and numerous emails were initiated by the parties on February 14th and continued through February 26, 2014. A joint meeting occurred between Tom Zellerbach and Sanjiv N. Singh in person at the Le Meridien Hotel in San Francisco on February 26, 2014 and lasted approx. 1 hour.

**Attestation of Lead Counsel**: I have complied with Judge Lloyd's Standing Order Regarding Discovery Disputes.

*Dated: February 27, 2014*

| | |
|---|---|
| SANJIV N. SINGH, APLC<br>By: _____/s/Sanjiv N. Singh_____<br>**Sanjiv N. Singh, Esq., Atty for Plaintiffs** | ORRICK, HERRINGTON & SUTCLIFFE LLP<br>By: _____/s/Thomas Zellerbach_____<br>**Thomas Zellerbach, Esq., Atty for Defendants** |

DISCOVERY JOINT REPORT #2
Case No. C-08-02658 RMW

## I. FACTS UNDERLYING DISPUTE

On Thursday, February 7, 2014, this Court issued its order (Dkt. No. 476) in connection with Defendants' subpoena on third party law firm Keker & Van Vest LLP ("Keker") ("Keker Subpoena", a true and correct copy of which was attached to Joint Report #1 (Dkt. No. 470, Ex. A). Immediately following that order, Plaintiffs and Defendants began to meet and confer on the relevant issues and have reached agreement on disclosure of documents and depositions that may contain privileged information for which Plaintiffs contend there is privilege. The parties are not in agreement concerning certain consumer loan documents that were produced in the Skadden action. Plaintiffs contend that the loan applications, including any attached to deposition transcripts, are largely irrelevant in this case, and more importantly they are protected by Ms. Farhang's constitutional right to privacy. Defendants contend that the loan applications and responsive deposition transcripts at issue are relevant to claims or defenses in this case and must be produced and that any privacy concerns can be addressed by the Protective Order entered in the case.

## II. PLAINTIFFS' POSITION

### A. Background Procedural Posture and Facts

Immediately following this Court's February 13, 2013 order on Joint Discovery Report #1, Plaintiffs sought to meet and confer on the Keker subpoena issues with Defendants and with Skadden's counsel Keker. While Plaintiffs and Defendants effectively hammered out the privilege issues with the time permitted by the Court, Keker did not participate in the discussions except for essentially two cursory emails. First, on February 18, 2014 (three days after being contacted), Keker cut and paste the brief email they sent on the day Joint Report #1 was filed and stated that their position remained the same. The somewhat dismissive email, largely cut and pasted from the February 10th email, read as follows:

> We are aware of the following: Farhang's deposition, Slovensky deposition,11/2/04 memo from Varsha Singh to Farhang. To our knowledge, none of these documents were designated under the Protective Order, and none could possibly be covered by the attorney-client privilege.

> Accordingly, to the extent that ITT and its counsel would accept those documents as satisfying our duties under the subpoena they served, your concerns and objections might then be alleviated, and our legal duties further to comply would similarly be alleviated . . .Kindly respond. That response could/should be the beginning and end of the "meet and confer process" to which you refer.

In none of its preceding communications did Keker mention its intention to produce the loan applications themselves or private loan information, and it was thus reasonably assumed that Keker would withhold Plaintiff Farhang's private consumer loan information (whether in documents it obtained from its Skadden attorneys or from third parties Mr. Slovensky (a mortgage broker) or from third party Capital One.) Keker knew the loan information had been subject of a long pending motion to quash in state court, and that said motion was withdrawn only after colloquy with the presiding judge and only where the documents were needed for evaluation of Farhang's earning capacity specifically at issue in that case. In addition, on February 10, 2014, prior to the filing of Joint Report #1, Plaintiffs had taken the additional and appropriately cautious step of serving objections on the Keker subpoena which stated: ***"Plaintiff Farhang objects to the subpoena to the extent that it seeks information or materials protected by the United States Constitution, the California Constitution, the Federal Rules of Evidence, or Internal Revenue Code Section 6103."***

On February 19, 2014, Plaintiffs sought to meet and confer with Keker about the subpoena and indicated that some of the discussions would be best in private since Keker and Plaintiffs needed to discuss information candidly that related to privilege. Keker did not respond.

On the evening of February 24, 2014, <u>after business hours were over</u>, three business days before the subpoena compliance date set by this Court, Keker unilaterally announced, contradicting its previous email, that it actually planned to produce hundreds of pages of documents, and sent a cursory email reiterating its contention that Plaintiffs had "waived all privilege" and expressing its unwavering intent to produce everything, including three deposition transcripts and **hundreds of pages** of documents. This was the very first time it expressed its intent to produce such a large tranche of documents, and was in stark contrast to their February

- 2 -

10th and February 18th emails identifying just a few documents. They then sent a <u>very long</u> list of Bates citations (too long to cite here) and not the actual documents, making review of their proposed production even further cumbersome. From the review that Plaintiffs have been able to conduct so far (***which is not complete by any stretch of imagination and will take at least two weeks***), many of the documents include Skadden form and special interrogatory responses where Cool e-mobile or other such terms may have been mentioned in passing with minimal reference to Plaintiff's extensive work history—i.e. they are not documents that were actively concealed by Plaintiffs from the IIT litigation, and as stated, have very little if anything to do with this case. Despite their frustrations with Keker's obviously irregular tactics and lack of communication, and the amount of effort Plaintiffs have expended to reduce the risk of exposure of privilege communications, and to facilitate Defendants getting these documents so that they are not prejudiced, ***Plaintiffs have informed Defendants they have no issue with the production of such documents provided that the large production proposed by Keker, including the deposition of Ms. Farhang are all properly reviewed for privacy and privilege.[1]*** Defendants appeared to agree with this approach at least with regards to attorney-client privilege and confirmed this by email. Defendants did not agree however to Keker withholding private information.

Compounding this, Plaintiffs have now learned that Keker also plans to produce Ms. Farhang's largely irrelevant and very private consumer loan documents which occur in various places in its possible production, including as an attachment to Ms. Farhang's deposition transcript, as attachments to Mr. Slovensky's deposition and likely elsewhere. As mentioned, Keker obtained many of these documents in the Skadden litigation only after Plaintiff Farhang

---

[1] Plaintiffs question Keker's motives for producing wholesale the entire deposition of Mandana Farhang and Carol Korycinski to Plaintiffs, where Cool e-mobile and Matt Dowling are mentioned only in passing in both. Plaintiffs cannot prevent that, but believe the timing, manner of meeting and conferring, and contradictory Keker communications further illustrate how the Keker subpoena appears to be an orchestrated platform whereby one former law firm appears to be assisting another former law firm in what truly resembles a concerted and collaborative assault on their former client—all of this somewhat unseemly, but technically permitted it appears according to Orrick and Skadden.

- 3 -

1 withdrew a motion to quash in the state court proceeding, <u>only</u> after close consultation with
2 presiding Complex Case Judge John Munter, and <u>only</u> on the express understanding that the
3 information was needed because Ms. Farhang's personal financial status and earning capacity
4 were key issues in that case. In that case, unlike here, she alleged loss of her career as a capital
5 raiser due to Skadden's malpractice (for which she paid Skadden $750,000 in fees and costs, and
6 for which Skadden billed around $1.9 million or more in fees). Plaintiffs notified both Keker and
7 Defendants that they did not authorize the production of these highly sensitive, confidential and
8 private loan documents for the IIT litigation. Plaintiffs remain particularly stunned that Keker had
9 waited until a mere three business days before the end of this Court's meet and confer compliance
10 date to drop a long list of document citations on Plaintiffs and assert its *laissez faire* position that it
11 planned to produce everything regardless of Plaintiff's rights of privacy and privilege. Plaintiffs
12 notified Defendants and Keker as follows:

> In the Skadden case, we withdrew our objection and motion to quash [on privacy issues relating to loan applications] after careful review of the issues and colloquy with the judge where it was decided that ***because earning capacity was at issue***, the loans could be reviewed. That did not constitute some general waiver of our clients' constitutional right to privacy for all [other] cases--where earning capacity is not at issue in the IIT case and there is no other legal issue, other than credibility, that would justify seeing the applications. Because Skadden obtained some of the loan apps during its representation, it also would have an ongoing obligation to keep that information private.

19 Despite this, Defendants rejected any offer of compromise on the privacy issue at the last
20 second, and seemed to once again coordinate with Keker and/or capitalize on Keker's
21 determination to disclose as much as possible. Plaintiffs even suggested screen shots from the loan
22 applications where just the Cool e-mobile portion would be shown with an applicable date, but
23 Defendants rejected this and insistently claim they need the entire private consumer loan
24 application without any substantial justification. Plaintiffs communicated their concerns and offer
25 of compromise to Defendants as follows:

> It seems to me that the process is being rushed also for no reason--if Tom [Zellerbach, Defendants' counsel] needs the Cool emobile excerpts of the loan app

- 4 -

> for the motion to disqualify, I am offering up a very reasonable compromise to get the Cool e-mobile info to IIT so it can use it for opposing the motion to disqualify to the extent it think[s] it will be helpful and is needed urgently. Judge Lloyd's order did not I think contemplate wholesale production of loan information at breakneck speed in the manner proposed by your email.

Plaintiffs reminded Defendants that, unlike in the Skadden malpractice case, there was no earning capacity issue or allegation in the ITT dispute where damages have been framed around traditional contractual and lost opportunity rubrics. Defendants rejected this logic, and claimed they needed full scale loan information to fish for information that may reflect on Ms. Farhang's credibility issues and to verify representations Ms. Farhang supposedly made about her work history, and wished to verify whether the work history in the loan applications matched her work history representations elsewhere—and all of this despite the fact that Farhang's extensive employment documents are now being provided to Defendants by Keker including detailed employment interrogatory responses about Ms. Farhang's employment history from the HT Oil case, some of which are also publicly available in the Skadden case docket which Mr. Zellerbach has admitted to studying on several occasions.

Against this backdrop, Plaintiffs request a protective order restricting access to Ms. Farhang's private consumer loan information. Ms. Farhang's paramount right to privacy is well protected under both state and federal law. Courts regularly and in the **<u>vast majority</u>** of instances protect privacy interests from illegitimate intrusions, particularly where the consumer information sought is not materially relevant to the matter at hand or not relevant enough to justify the intrusion. California courts have consistently held that "the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced." *Lantz v. Sup. Ct.* (1994) 28 Cal.App.4th 1839, 1853-1854; *see also Wood v. Sup. Ct.* (1985) 166 Cal.App.3d 1138, 1148; *see also Britt v. Sup. Ct.* (San Diego Unified Port Dist.) (1978) 20 Cal.3d 844, 859. Federal jurisprudence is no different. Federal courts will grant motions to quash where parties seek private loan testimony merely to evaluate credibility, establish inconsistent testimony, or for other reasons not directly relevant to the alleged causes of action. *See e.g. Kiger v.*

- 5 -

DISCOVERY JOINT REPORT #2
Case No. C-08-02658 RMW

1  *Plaisance Dragline*, CIV A 04-3153, 2006 WL 3228289 (E.D. La. Nov. 2, 2006) (where court
2  grants motion to quash subpoena of loan documents even where party issuing subpoena claims
3  information is needed to evaluate inconsistency in testimony),

4  For the foregoing reasons, Plaintiffs request that this Court grant a protective order
5  prohibiting Keker from disclosing any loan applications or deposition testimony that discloses Ms.
6  Farhang's private consumer loan or private financial information.  There has been no waiver of the
7  right of privacy in the IIT case, and any waiver of privilege or privacy that occurred in the
8  Skadden case does not automatically transfer to this matter.  *See* <u>Gerawan Farming, Inc. v.</u>
9  <u>Townsend & Townsend & Crew LLP</u>, 1:10-CV-02011 LJO JL, 2011 WL 4440188 (E.D. Cal. Sept.
10 23, 2011) (where analogously, attorney-client privilege waiver in one case does not transfer to
11 another.)

12 **III. DEFENDANTS' POSITION**

13 The specific residential loan applications and testimony about them that Plaintiffs seek to
14 keep from Defendants are relevant both to both claims and defenses in this action and are thus
15 discoverable.  Fed.R.Civ.P. 26(b)(1).  Those specific applications – Defendants do not seek broad
16 discovery of Plaintiffs' financial records as Plaintiffs suggest – are closely related to highly
17 damaging documents that Plaintiffs were required to produce in 2012 but concealed until late
18 November 2013.  The reason that Plaintiffs seek to keep these specific loan applications out of
19 Defendants' hands is surely not privacy – the protective order in place can address that concern –
20 but to keep out evidence that bolsters Defendants' unclean hands defense and likely undercuts
21 Plaintiffs' claim that the her technology at issue in this case is extremely valuable and would
22 justify a high damages award.

23 The gravamen of Plaintiffs' complaint against Defendants is that they allegedly
24 misappropriated valuable technology owned by Plaintiff Farhang and that they allegedly breached
25 a joint venture agreement to further develop and market that technology in India.  Farhang sought
26 to get Defendant IIT – India's premier technical institue – and Professor Chakrabarti -- one of its
27 preeminent engineers and professors – to form a joint venture with her company.  Farhang touted
28

- 6 -

the value of her technology and her allegedly-extensive work history and proposed the formation of a joint venture – to be named Cool e-Mobile – where all participants would be rewarded with equity interests and future profits based on equity interests but not for cash compensation or salaries.[2]  Unknown to Defendants at the time, Farhang hired a close friend, Varsha Singh, to be the COO and CFO for Cool e-Mobile.  Farhang in bad faith then had Singh, on behalf of Cool e-Mobile, secretly agree in writing on November 2, 2004 (16 days before Farhang even told Defendants she had hired Singh) that Farhang would receive a deferred salary of $32,500 a month.  The Agreement further provided that Farhang would receive 8% interest and that at any time Farhang wanted to be paid, Cool e-Mobile and its affiliates (presumably including IIT) would take all actions to pay her, including encumbering the very technology they were further developing for Cool e-Mobile.  Farhang never breathed a word of this arrangement to Defendants.  Nor did she disclose the commitment to pay her an exorbitant salary and promise to encumber the technology as liabilities of Cool e-Mobile.  Nor did she ever seek her alleged JV partners' consent to her priority to money from the joint venture.  This Agreement was indisputably responsive to RFPs served in May 2012, but only produced by Farhang on November 25, 2013.

A publicly-filed document disclosed that Farhang submitted a residential loan application and used her purported salary from Cool e-Mobile as a basis for that loan.  Farhang never disclosed to her alleged joint venturers that she was seeking a personal loan based on her secret salary from Cool e-Mobile, and the *only* loan application documents at issue with respect to the Keker subpoena pertain to Farhang basing the loan on her purported Cool e-Mobile salary.  Plaintiffs assert that these documents are relevant to the *Skadden* litigation because Farhang's earning capacity is at issue in that case but not to this case because her earning capacity is not at issue.  This is a fallacious argument because a document can be relevant to more than one issue.  It clearly is here.

---

[2] Farhang even makes this representation in her Third Amended Complaint:  "[I]t was expressly understood that all participants were entering into the Joint Venture in return for equity interests and the promise of future profits based on those equity interests, and not for cash compensation or salaries."  Third Amended Complaint at ¶ 33(c) (Dkt. 177).

- 7 -

DISCOVERY JOINT REPORT #2
Case No. C-08-02658 RMW

First and foremost, these documents are relevant to Defendants' defense of unclean hands. Answer at 11 (Dkt. 204). "The doctrine [of unclean hands] applies [to bar a plaintiff's recovery] where a plaintiff acted unconscionably, or exhibited bad faith or inequitable conduct in connection with the matter in controversy." *See Infor Global Solutions (Michigan), Inc. v. St. Paul & Marine Ins. Co.,* C 08-02621 JW, 2009 WL5909255, at*2 (N.D. Cal. Oct. 21, 2009). There can be no dispute that Farhang's secret Cool e-Mobile salary agreement supports Defendants' unclean hands defense, and loan documents submitted by Farhang where she relies on that purported income obligation from Cool e-Mobile support the existence of that agreement as well as Farhang's understanding and intention that it was meant to be binding. Plaintiffs have acknowledged that the loan application is based on the Uniform Residential Loan Application "URLA"). Such a document is particularly probative. This is because the URLA requires an applicant to sign an acknowledgment that any intentional or negligent misrepresentation may result in civil liability and/or criminal liability.

In addition to source of income, the URLA also requires an applicant to state past employment information. Defendants now have reason to believe that representations Farhang made about her work experience to induce Defendants into working with her were in large part false. If Farhang materially misrepresented her qualifications to get Defendants to do business with her, such misrepresentations also support Defendants' unclean hands defense. Plaintiffs argue there are other documents that will show Farhang's work history. This argument misses the point. Farhang's statements about her work history – or lack thereof – made under the threat of civil or criminal liability have a higher indicia of reliability than other documents. Such an application is an evidentiary document.

Loan applications resting on Farhang's purported Cool e-Mobile income are independently discoverable for yet another reason. The URLA also requires an applicant to state the applicant's assets and value of those assets. Plaintiffs seek millions of dollars in damages for alleged misappropriation of Farhang's technology. While Plaintiffs assert the technology had great value, Defendants dispute this claim. To the extent that Farhang placed a particular value on this

- 8 -

"prized" asset of hers – or placed no value on it – in an application signed under a threat of civil or criminal liability for false statements is certainly relevant to her claim for damages.[3]

Plaintiffs' assertion that they only just found out that the subject loan applications and testimony were going to be produced is without merit. As the Court recognized in its Order on Joint Report 1, the subpoena called for responsive "transcripts and exhibits." Plaintiffs knew before they even submitted Joint Report 1 about these exhibits and the responsive depositions, and the Court denied their motion to quash. Their new request for a protective order on the same subpoena is an attempt to get a second bite at the apple.

Moreover, Plaintiffs assertion that Defendants were unwilling to compromise is false. On February 21, 2014, Defendants' counsel offered to make various categorical redactions, including: the year acquired, original cost, and amount of existing liens in the Property Information and Purpose of Loan section (section II) of the application(s) and Farhang's social security number and date of birth (provided she agrees that she is the Mandana Farhang identified in the application(s)) that are in the Borrower Information section (section III) of the application(s).

Plaintiffs rejected this compromise. The compromise Plaintiffs proposed – discrete screenshots – would conceal important information such as whether Farhang declined to identify her technology as having value, whether she omitted jobs she represented to Defendants she held, whether she signed the acknowledgment that her representations were made under penalty of civil or criminal liability. Not surprisingly, Defendants rejected this proposal. Given the wide range of

---

[3] Plaintiffs cite only inapposite cases to support its request for a protective order. For instance, the court in *Kiger v. Plaisance Dragline*, CIV A 04-3153, 2006 WL 3228289, at *2 (E.D. La. Nov. 2, 2006), granted a motion to quash because the subpoenas in question sought "irrelevant information" and requested bank records of the law firm representing the movant in a manner that would make it "impossible or the banks to decide which transactions made by the law firm would fulfill the request." Here, to the contrary, the information is highly relevant for a number of reasons identified herein and the subpoena recipient has had no difficulty responding to defendants' requests, other than plaintiffs' obstructions. *Gerawan Farming, Inc. v. Townsend & Townsend & Crew LLP*, 1:10-CV-02011 LJO JL, 2011 WL 4440188 (E.D. Cal. Sept. 23, 2011), relates to attorney-client privilege—not privacy rights. Finally, *Lantz v. Superior Court*, 28 Cal. App. 4th 1839, 1855 (1994), and *Britt v. Superior Court*, 20 Cal. 3d 844, 848 (1978) involve statutory privacy rights in unrelated contexts (*e.g.*, requests for medical information, for which specific statutory authority applies that is not relevant to the instant dispute).

- 9 -

DISCOVERY JOINT REPORT #2
Case No. C-08-02658 RMW

1  issues to which these particular loan applications are relevant, the potential importance of the
2  documents as evidentiary exhibits, and the Protective Order, the applications should be produced
3  as well as deposition testimony related to them.[4]

4  Whatever privacy interest Ms. Farhang may have in these specific loan applications and
5  testimony about them is outweighed by their relevance to the claims and defenses in this action
6  and can be adequately protected by the Protective Order entered in the action. *See, e.g., In re*
7  *Heritage Bond Litig.*, CV 02-1475-DT(RCX), 2004 WL 1970058, at *5 n. 12 (C.D. Cal. July 23,
8  2004) ("Any privacy concerns . . . defendants have in their bank records and related financial
9  statements are adequately protected by the protective order, and are not sufficient to prevent
10 production in this matter"); *In re Yassai*, 225 B.R. 478, 482-83 (Bankr. C.D. Cal. 1998) (finding
11 asserted privacy rights in bank records "insufficient to prevent discovery of that information,");
12 *Rawnsley v. Superior Court*, 183 Cal. App. 3d 86, 91-2 (1986) (allowing discovery into
13 defendants' profits and finances, because they were directly relevant to the plaintiffs' claim for
14 misappropriation of partnership assets); *Alch v. Superior Court*, 165 Cal. App. 4th 1412, 1427
15 (2008) (reversing the trial court and allowing discovery into third parties' work histories, as well
16 as demographic and other information, for use in a statistical analysis supporting a class-action
17 discrimination claim); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2008 WL 4858502,
18 at *3-5 (N.D. Cal. Nov. 10, 2008) (ordering production of financial records after balancing the
19 need for the information against asserted privacy interests).

20 Plaintiffs' request for a protective order should be denied.

---

[4] Defendants are informed that the deposition transcripts at issue were not even designated as confidential as provided by the protective order in place in the *Skadden* litigation. In any event, they can be so designated in this action if Plaintiffs desire.

- 10 -

DISCOVERY JOINT REPORT #2
Case No. C-08-02658 RMW

# CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 27, 2014.

Dated: February 27, 2014

                                                Respectfully submitted,
                                                ORRICK, HERRINGTON & SUTCLIFFE LLP

                                                By /s/ Thomas H. Zellerbach
                                                Thomas H. Zellerbach
                                                Attorneys for Defendants
                                                INDIAN INSTITUTE OF TECHNOLOGY,
                                                KHARAGPUR and
                                                PARTHA P. CHAKRABARTI

OHSUSA:756827131.1