1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10          SAN JOSE DIVISION

11

12  M.A. MOBILE LTD., a limited liability          Case No. C-08-02658-RMW
    company chartered in Dominica; and
13  MANDANA D. FARHANG,

                                                    **ORDER: (1) DENYING MOTION TO**
14                Plaintiffs,                       **VACATE AND DISMISS ITT; (2)**
                                                    **DENYING MOTION TO STAY**
15  v.                                              **DISCOVERY; (3) DENYING MOTION**
                                                    **TO DISMISS CHAKRABARTI; (4)**
16  INDIAN INSTITUTE OF TECHNOLOGY                  **DENYING MOTION FOR**
    KHARAGPUR, an Indian Institute of               **JURISDICTIONAL DISCOVERY**
17  Technology incorporated under the "Institutes
    of Technology Act, 1961", TECHNOLOGY
18  ENTREPRENEURSHIP AND TRAINING
    SOCIETY, an Indian society; PARTHA P.
19  CHAKRABARTI; and Does 1 through 100,            [Re: Docket Nos. 403, 413, 420, and 437]
    inclusive,

20                Defendants.

21

22          In this case about breach of contract and misappropriation of trade secrets related to a joint

23  venture to exploit a new mobile technology, Defendant Indian Institute of Technology, Kharagpur

24  ("IIT") asks the court to vacate its prior ruling and dismiss IIT as immune under the Foreign

25  Sovereign Immunities Act.  Defendant Partha P. Chakrabarti moves the court to dismiss the claims

26  against him pursuant to Federal Rule of Civil Procedure 12(h)(3) for lack of subject-matter

27  jurisdiction based on immunity under the Foreign Sovereign Immunities Act and common law.  For

28  the reasons explained below, the court denies the motion to vacate and the motion to dismiss.

# I.  BACKGROUND

Plaintiffs Mandana Farhang and M.A. Mobile bring claims against alleged former co-participants in a joint venture, IIT and Chakrabarti.

## A.  The Parties

The IIT is an educational and research institution incorporated under the Indian Institutes of Technology of Act of 1961 with its principal place of business in Kharagpur, West Bengal, India. Third Am. Compl. ("TAC") ¶ 13, Dkt. No. 179.  The Indian government funds and runs IIT.  *Id.*

Chakrabarti, an Indian citizen, is Dean of Sponsored Research and Industrial Consultancy and Professor of Computer Science and Engineering at IIT.  He is also Secretary and Permanent Member of the Governing Body of dismissed defendant Technology Entrepreneurship and Training Society ("TIETS").  TAC ¶ 15; Order dismissing TIETS, Dkt. Nos. 402, 404, 407 and 487).

Farhang is a citizen of Marin County, California and is the owner of M.A. Mobile, a Dominica chartered LLC operated from California.  TAC ¶¶ 1, 8-9.  M.A. Mobile is the owner of rights in a mobile device technology that enables dynamic data access and data parsing.  TAC ¶¶ 11-12.

## B.  The Joint Venture

On approximately August 11, 2003, IIT entered into a Mutual Nondisclosure Agreement ("NDA") with plaintiff M.A. Mobile concerning the mobile device technology, which relates to a new platform for mobile computing.  TAC ¶ 1.  Chakrabarti acted as IIT's representative in signing the agreement.  TAC ¶ 29.  Farhang subsequently shared the technology with IIT.  TAC ¶ 31.  After reviewing the technology, defendants launched a joint venture with plaintiffs to exploit the technology through an entity called Cool e-mobile Pvt Ltd.  TAC ¶ 33.

One of the early target customers for the technology of the joint venture was Indian Railways, with whom Chakrabarti claimed to have arranged a meeting in June 2004.  TAC ¶ 37. Farhang also revealed to IIT that a likely exit strategy for the company would be through an acquisition by IBM.  TAC ¶ 44.  Plaintiffs allege that sometime in 2005, IIT improperly disclosed the joint venture trade secrets to IBM, and IBM subsequently won the technology deal with Indian Railways that Cool e-mobile sought.  TAC ¶ 45(g).

**C. Claims**

Plaintiffs allege in the operative third amended complaint that IIT breached the NDA through its disclosure of confidential information to persons or entities not bound by its terms.

The TAC further alleges that IIT breached the joint venture agreement by "abandoning all efforts to further Technology on behalf of the Joint Venture, and instead working to deliberately move forward their own plans of commercialization at the expense of the Joint Venture." TAC ¶ 70.

With respect to Chakrabarti, the TAC alleges that he was a "key representative coordinating efforts of IIT[], TIETS [] and IIT[]'s affiliates to achieve their general business objectives under the technology consultancy and incubator, and to specifically gain access to Farhang's technology." TAC ¶ 15. The complaint further alleges that Chakrabarti was authorized by IIT and TIETS to enter into legally binding agreements on behalf of IIT and TIETS, *id.*, and that Chakrabarti, "acting on behalf of IIT[]" entered into a non-disclosure agreement ("NDA") with M.A. Mobile. TAC ¶ 29.

The TAC finally alleges Chakrabarti accepted a role as Co-Founder and Chief Technology Officer ("CTO") of the joint venture in his individual capacity and then failed to fulfill his obligations to the joint venture in those roles. TAC ¶¶ 40, 43, 70(a).

**D. Procedural History**

On May 27, 2008, Farhang filed her original complaint, which she amended on July 9, 2009. Dkt. Nos. 1, 57. IIT filed a motion to dismiss the amended complaint for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), which the court denied on January 26, 2010. Dkt. No. 107. Farhang then filed a second amended complaint on February 25, 2010, which added M.A. Mobile as a plaintiff, followed by her third amended complaint on June 21, 2010. Dkt. Nos. 111, 147. IIT moved to dismiss the third amended complaint, and on September 7, 2010, the court dismissed plaintiffs' claim for breach of the Non-Use Provision of the NDA, but otherwise denied IIT's motion to dismiss. Dkt. No. 201. The court also struck various sections of the TAC, including the fraud and breach of fiduciary duty claims, which plaintiffs did not oppose. *Id.* The TAC is still the operative complaint, which IIT and Chakrabarti answered on September 21, 2010 and July 28, 2011, respectively. Plaintiffs' surviving claims in the TAC are: (1) breach of the

1    NDA disclosure and return provisions; (2) breach of the joint venture agreement; and (3) trade

2    secret misappropriation.  *Id.*

3            On July 7, 2011, the court dismissed, for lack of personal jurisdiction, three individual

4    defendants who had limited roles in the alleged conduct, after finding that enforcement of the forum

5    selection clause against them would be unreasonable and that the three had insufficient contact with

6    California for specific jurisdiction.  Dkt. No. 282.  The court also denied a motion to dismiss for

7    failure to prosecute.  *Id.*  Shortly thereafter, on July 13, 2011, the court denied a motion to dismiss

8    for improper venue.  Dkt. No. 283.

9            On January 12, 2012, the court denied TIETS and Chakrabarti's motions for judgment on the

10   pleadings.  Dkt. No. 341.  In the same order, the court denied TIETS' motion to dismiss the TAC for

11   *forum non conveniens* and for immunity under the FSIA.  Dkt. No. 341.  On January 25, 2012, IIT

12   and TIETS filed a notice of appeal as to the sovereign immunity ruling.[1]  The Ninth Circuit held

13   that the commercial activity exception did not apply to TIETS in this case and thus it qualified for

14   sovereign immunity.  9th Cir. Order, Dkt. No. 404; *Farhang v. Indian Inst. of Tech., Kharagpur*,

15   No. 12-15178, 2013 WL 3001106 (9th Cir. June 18, 2013).  With respect to IIT, the Ninth Circuit

16   ruled that the Institute did not file a timely appeal of this court's January 26, 2010 order denying its

17   motion to dismiss, declined to exercise discretion, and dismissed IIT's appeal since it raised

18   different issues from TIETS' appeal, specifically as to waiver.  *Id.*

19           Currently before this court are four different motions.  First, IIT moves to vacate this court's

20   January 26, 2010 order denying its motion to dismiss for lack of subject-matter jurisdiction and to

21   dismiss the TAC with respect to IIT because of immunity under FSIA.  Dkt. No. 403.  Second, IIT

22   moves to stay discovery pending resolution of its above-mentioned motions.  Dkt. No. 413.  Third,

23   Chakrabarti moves to dismiss for lack of subject-matter jurisdiction based on sovereign immunity.

24   Dkt. No. 420.  Fourth, plaintiffs move the court to allow more jurisdictional discovery if it is

25   inclined to grant defendants' motions.

26

27

28
_____

[1] IIT appealed the court's January 26, 2010 denial of its motion to dismiss plaintiff's First Amended Complaint and TIETS appealed the court's January 12, 2012 denial of Farhang's Third Amended Complaint.

ORDER DENYING MOTIONS
Case No. C-08-02658-RMW
SW

## II.  ANALYSIS

IIT and Chakrabarti each challenge subject-matter jurisdiction.  There are two ways to challenge subject-matter jurisdiction: (1) facial attacks where "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction" and (2) factual attacks where "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In resolving facial attacks, the court assumes the allegations are true and draws all reasonable inferences in plaintiff's favor.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see also Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (addressing subject-matter jurisdiction under the FSIA).  In resolving factual attacks, the court considers evidence beyond the complaint and does not presume the truthfulness of the allegations.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  At the hearing, the defendants clarified that they were making factual attacks.

The Foreign Sovereign Immunities Act immunizes foreign states from the jurisdiction of United States courts.  28 U.S.C. § 1604.  Both IIT and Chakrabarti argue that they are immune under the Act.

### A.  IIT's Motion to Vacate the Prior Immunity Ruling and Motion to Dismiss

IIT argues that the court should vacate its January 26, 2010 order denying IIT's motion to dismiss for lack of subject-matter jurisdiction and dismiss IIT in light of the Ninth Circuit's ruling as to TIETS.  Plaintiffs do not dispute that IIT qualifies as a foreign state under the Foreign Sovereign Immunities Act, and thus it is immune unless one of the statutory exceptions applies.  *See* 28 U.S.C. § 1605(a).  In its January 26, 2010 order, the court considered two statutory exceptions to IIT's immunity: (1) waiver and (2) commercial activity.  Order, Dkt. No. 107.  The court found that the commercial activity exception applied and that the waiver exception would apply if Farhang amended her complaint to be consistent with her opposition brief.  *Id.*  This court also found in a January 2012 order, Dkt. No. 341, that the commercial activity exception applied to TIETS.  But, the Ninth Circuit overruled this court, finding that the commercial activity exception did *not* apply to TIETS.  The Ninth Circuit declined to consider IIT's appeal because it was untimely and raised

different issues.  9th Cir. Mem., Dkt. No. 402.  Nevertheless, IIT argues that because of the Ninth

Circuit's decision, this court should reconsider its immunity ruling as to IIT.

### 1.  Appropriateness of the motion

An objection that a court lacks subject-matter jurisdiction is always timely.  *See* Fed. R. Civ.

P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).  Nevertheless, IIT's motion is

essentially a motion for reconsideration, which would require a showing of new material facts, a

change of law, or manifest failure by the court to consider material facts or dispositive legal

arguments.  L.R. 7-9(b).  Even if the Ninth Circuit's decision made reconsideration of this court's

commercial activity analysis appropriate, the court does not have to reach that issue because the

Ninth Circuit's decision explicitly did not alter the court's finding of waiver by IIT, which provides

an independent basis for jurisdiction.

### 2.  Immunity as to Farhang's Claims

Under the Foreign Sovereigns Immunity Act, a foreign state is not immune from jurisdiction

if it waives immunity either explicitly or by implication.  28 U.S.C. § 1605(a)(1).  In its January

2010 order the court held that "IIT ha[d] implicitly waived sovereign immunity with respect to any

claim 'arising out of or relating to' the NDA," by agreeing to the NDA's choice of law provision.

January 2010 Order at 5-6, Dkt. No. 107.  And, the court found that "all of Farhang's claims fall

within the scope of IIT's implicit waiver of sovereign immunity."  *Id.*  This court would have found

IIT waived immunity except that Farhang had not adequately pled that she was the intended third

party beneficiary of IIT's NDA with M.A. Mobile.  *Id.* at 9.  The court determined Farhang had

proffered enough evidence in her opposition papers to establish that she was an intended third-party

beneficiary and granted her leave to amend the complaint to so allege.  *Id.*

In her third amended complaint, Farhang alleges that she was entitled to 100% of the

revenue from M.A. Mobile and that IIT was aware that she was the beneficiary.  TAC ¶¶ 2(b)(2),

10.  The court found these allegations marginally sufficient to allege that the terms of the NDA

necessarily benefitted Farhang and the parties intended this benefit, which is enough to overcome a

facial challenge to jurisdiction.  To the extent IIT makes a factual challenge, neither party has

provided much evidence.  Nevertheless, once Farhang offers some evidence that an exception to

United States District Court
For the Northern District of California

1   immunity under the Foreign Sovereigns Immunity Act applies, IIT has the burden of proving by a

2   preponderance of the evidence that the exception does not apply.  *See Joseph v. Office of Consulate*

3   *Gen. of Nigeria,* 830 F.2d 1018, 1021 (9th Cir. 1987).

4        Here both parties provide somewhat conflicting declarations as to whether IIT was on notice

5   that Farhang was the beneficiary M.A. Mobile's activities.  *See* Farhang Decl. ¶ 21, Dkt. No. 73;

6   Chakrabarti Decl. ¶ 9, Dkt. No. 76.  Farhang declares that she repeatedly informed IIT that

7   "pursuant to contractual arrangements between me and M.A. Mobile . . . [Farhang] was entitled to

8   receive 100% of any monies that M.A. Mobile might in the future obtain from or through the

9   Technology covered by the NDA."  Farhang Decl. ¶ 21, Dkt. No. 73.  IIT relies on Chakrabarti's

10  declaration, which makes a narrower claim.  Chakrabarti only declares that IIT was unaware at the

11  time he signed the NDA of any assignment of the intellectual property at issue between M.A.

12  Mobile and Farhang.  Chakrabarti Decl. ¶ 9, Dkt. No. 76.  This declaration does not actually

13  contradict Farhang's declaration because Chakrabarti's statement does not necessarily mean that IIT

14  was unaware that Farhang was a beneficiary of the NDA.  Given that IIT dealt exclusively with

15  Farhang while signing the NDA with M.A. Mobile, it seems unlikely that IIT could *not* have known

16  that Farhang was a beneficiary of the NDA.  Farhang also cites to an unauthenticated[2] April 27,

17  2003 introductory email from Farhang to Chakrabarti where Farhang describes herself as the owner

18  of the company and the intellectual property.  Dkt. No. 111-1.  The court finds that IIT has failed to

19  prove by a preponderance of the evidence that the waiver exception does not apply.

20       Accordingly, the court finds that IIT waived immunity as to Farhang's claims by agreeing to

21  the NDA and thus this court has subject-matter jurisdiction.

22              **3.  Immunity as to M.A. Mobile's Claims**

23       M.A. Mobile signed the NDA with IIT and thus it is clearly a proper beneficiary of the

24  NDA.  As the court previously ruled, by signing the NDA, IIT implicitly waived immunity as to all

25  claims arising out of or relating to the NDA.  *See* January 2010 Order 5-6.  The court previously

26  found that all of Farhang's claims arise out of or are related to the NDA and thus fall within the

27  scope of IIT's implicit waiver of sovereign immunity.  M.A. Mobile is situated similarly to Farhang

28

---

[2] The email was attached to the second amended complaint as Exhibit A.

with respect to the claims at issue in this lawsuit, and thus like Farhang, all of M.A. Mobile's claims are also within the scope of the implied waiver.  Therefore, this court has jurisdiction to hear M.A. Mobile's claims against IIT.

**B.  Motion to Stay**

IIT has also moved for a stay of discovery pending resolution of its motion to vacate and dismiss.  The court now denies it as moot.

**C.  Subject-matter Jurisdiction over Chakrabarti**

Chakrabarti also argues that the court should dismiss him, individually, for lack of subject-matter jurisdiction.  Plaintiffs counter by arguing that his motion is untimely and by challenging his claim of immunity.

**1.  Timeliness of the Motion**

Chakrabarti has already moved to dismiss for failure to prosecute and insufficient service or process.  *See* Dkt. No. 215.  After that failed, he moved for judgment on the pleadings, arguing he did not agree to the NDA in his personal capacity.  *See* Dkt. No. 286.  He also did not participate in an earlier motion by IIT to dismiss for lack of subject-matter jurisdiction under the Foreign Sovereigns Immunity Act.  *See* Dkt. No. 45.  While the court agrees with plaintiffs that this motion would have been more appropriate earlier, subject-matter jurisdiction can never be waived or be untimely because without it the court lacks authority to hear the case.  *See* Fed. R. Civ. Pro. 12(h)(3); *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012).  Thus, the court must satisfy itself that it has jurisdiction.

**2.  Immunity**

Chakrabarti claims that he is immune from jurisdiction under the Foreign Sovereign Immunities Act and under common law foreign sovereign immunity.

a.  Foreign Sovereign Immunities Act

Although the Foreign Sovereign Immunities Act only protects "foreign states," Chakrabarti argues that he is immune because the "real party in interest" is a foreign state.  *See* 28 U.S.C. § 1604.  In a detailed analysis of whether the statutory definition of "foreign state" includes individual persons, the Supreme Court concluded that there is nothing in the statute or the legislative history to

United States District Court
For the Northern District of California

1   indicate that "foreign state" should "include an official acting on behalf of the foreign state."

2   *Samantar v. Yousuf*, 130 S. Ct. 2278, 2289 (2010).  To address other courts' concern that such a

3   narrow reading would allow litigants to plead around the statute, the court noted that when the state

4   is the "real party in interest," a court should generally treat a suit against an official in his official

5   capacity as an action against a foreign state.  *Id.* at 2292; *see also Hassen v. Nahyan*, No. CV-09-

6   01106 DMG MANX, 2010 WL 9538408 (C.D. Cal. Sept. 17, 2010) (concluding *Samantar* held that

7   "FSIA applies only to foreign states, not foreign officials).  The Court in *Samantar* found that the

8   state was not the real party in interest because the plaintiffs sued the defendant in his personal

9   capacity and sought damages from the defendant's own pockets.  *Id.*

                    b.  Common Law Immunity

11          Under common law, any non-head of state, such as public ministers, officials, or agents of

12   the state, only receives immunity "with respect to acts performed in his official capacity if the effect

13   of exercising jurisdiction would be to enforce a rule of law against the state."  Restatement (Second)

14   of Foreign Relations Law § 66 (1965) (discussed in *Samantar,* 130 S. Ct. at 2290).  In *Hassen v.*

15   *Nahyan*, a California district court looked to the same section of the Restatement and determined

16   that because one of the defendants acted "outside the scope of [his] official position[]" common law

17   immunity did not apply.  2010 WL 9538408, at *5-6.

                    c.  Analysis

19          As explained above, for either Foreign Sovereign Immunities Act or common law immunity

20   to apply, at minimum, plaintiffs' claims against Chakrabarti must be against him in his official

21   capacity or based upon actions he took in his official capacity.  Although a plaintiff generally has

22   the burden of establishing subject-matter jurisdiction, the party asserting immunity has the burden of

23   establishing that he is entitled to it.  *See Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1470 (9th Cir.

24   1995).

25          Here, plaintiffs have provided evidence that Chakrabarti participated in the joint venture in

26   his individual capacity.  A number of documents indicate that Farhang offered and for a time

27   Chakrabarti accepted the position of Chief Technology Officer in the joint venture.  For example, in

28   Farhang's initial April 27, 2003 email to Chakrabarti, Farhang wrote, "I am interested in discussing

the possibility of having you serve as the Chief Technology Officer, with all future development happening under your direction and with a team of your choosing (in concert with your other activities at IIT of course)."  Chakrabarti Decl. Ex. F, Dkt. No. 443-6.  Approximately a month later, Chakrabarti appears to have forwarded Farhang's proposal to one of his former students asking for advice.  Dkt. 444, Ex. 28.  In response, the student wrote that Farhang's proposal looked like "an excellent opportunity" and advised Chakrabarti to negotiate with Farhang for "a three year contract with a US$250K/year salary + benefits + stock option."  *Id.*  Plaintiffs also produced an unsigned letter dated July 7, 2004, which supposedly documents the parties' mutual agreement regarding the structure of the joint venture, which included Chakrabarti as the Co-Founder and Chief Technology Officer of Cool e-mobile, the joint venture vehicle.  Dkt. No. 64-2 at 3.  The same letter allocated 25% ownership of the Cool e-mobile to Chakrabarti to split between himself and the other engineers.  *Id.*  Finally, plaintiffs produced an undated Cool e-mobile PowerPoint presentation listing Chakrabarti as the Co-Founder and Chief Technology Officer.  Dkt. 454-1, Ex. 4.  All of this evidence suggests that Chakrabarti's role in the joint venture was outside of his official role at IIT and his involvement was for his personal benefit.

Chakrabarti's own email confirms that he regularly did work and received compensation outside of his official role at IIT and that he took a position in the joint venture.  In an October 9, 2005 email Chakrabarti told Farhang he could no longer "keep a formal role and shares," implying that at one point he had them.  Dkt. No. 444, Ex. 20.  In the same email, he also writes that "If you think of the value of the money that I have spent in two years on this effort, which would otherwise have been *my personal money* - - - it is more than 5 years my salary as a Professor."  *Id.* (emphasis added).  He goes on to say that this "extra money comes from my own consulting money that I earn from doing things beyond a Professor and a Dean."  *Id.*  This email suggests that Chakrabarti regularly takes employment outside of the scope of IIT and that this work is outside of his official duties.  Chakrabarti's investment of personal money is also a strong indication that his involvement in the joint venture was not purely official.

Chakrabarti provides little evidence to dispute these emails.  He filed a declaration stating that he "declined to take a formal role in the proposed business in a personal capacity."  Chakrabarti

United States District Court
For the Northern District of California

Decl. ¶ 6, Dkt. No. 443.  But, Farhang's declaration, Dkt. No. 427 ¶ 7, contradicts this statement, and the evidence cited above does not support it.  Chakrabarti also argues that he did not sign the NDA in his personal capacity and the parties have filed opposing declarations on this issue.  *See* Chakrabarti Decl. ¶ 4, Ex. G, H; Farhang Decl. ¶ 12.  Even if Chakrabarti did not sign the NDA in his personal capacity that does not refute the evidence explained above that suggests he was personally involved in the joint venture.

The evidence suggests that Chakrabarti's role in the joint venture was outside the scope of his official duties and that he was personally financially involved in the venture.  His personal involvement is the basis of plaintiffs' claims.  Thus, the court finds that Chakrabarti has failed to meet his burden to establish that his involvement was purely official, which would entitle him to immunity.  Accordingly, the court denies Chakrabarti's motion to dismiss for lack of jurisdiction.

**D.  Motion for Jurisdictional Discovery**

Plaintiffs filed a motion for jurisdictional discovery in case the court was inclined to grant the defendants' motions to dismiss for lack of subject-matter jurisdiction.  Dkt. No. 437.  Because the court has denied the jurisdictional challenges, this motion is also denied as moot.

**III.  ORDER**

For the reasons explained above, the court DENIES: IIT's motion to vacate and dismiss; IIT's motion to stay discovery; Chakrabarti's motion to dismiss; and plaintiffs' motion for jurisdictional discovery.

Dated: March 25, 2014



RONALD M. WHYTE
United States District Judge