1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| M.A. MOBILE LTD., a limited liability company chartered in Dominica; and MANDANA D. FARHANG<br><br>Plaintiffs,<br><br>v.<br><br>INDIAN INSTITUTE OF TECHNOLOGY KHARAGPUR, an Indian Institute of Technology incorporated under the "Institutes of Technology Act, 1961"; PARTHA P. CHAKRABARTI; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. C-08-02658-RMW<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR DISQUALIFICATION AFTER RECONSIDERATION**<br><br>[Re Docket No. 467] |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Mandana Farhang ("Farhang") and M.A. Mobile Ltd. (collectively "plaintiffs")

move the court to reconsider its January 13, 2010 Order Denying Plaintiffs' Motion to Disqualify

the law firm Orrick, Herrington & Sutcliffe LLP ("Orrick") as counsel for defendants Indian

Institute of Technology Kharagpur ("IIT") and Partha P. Chakrabarti's ("Chakrabarti"). The court's

prior ruling was based on the premise that Attorney Neel Chatterjee, lead counsel for defendants,

did not enter into an attorney-client relationship with the defendants until after Attorney James

Telfer, an Orrick attorney who represented Farhang from July 2000 to January 2001, had left the

Orrick firm. Dkt. Nos. 86, 98. After the court issued its order, new facts were presented to the court

1    showing that Attorney Chatterjee had privileged communications with defendant Chakrabarti while

2    Attorney Telfer was still at Orrick. Dkt. No. 458-4. The court therefore granted leave to plaintiffs to

3    file a motion for reconsideration based on new material facts. *See* Local Rule 7-9(b); Dkt. No. 485.

4    After reviewing the new facts and reconsidering parties' previous submissions and the evidence, the

5    court DENIES the motion for disqualification.

6           The issue of disqualification is a difficult one to resolve and the court has carefully analyzed

7    the substantial relationship question on which the motion now turns. The parties' acrimony has led

8    to some extreme accusations in their papers that the court finds lack support in the evidentiary

9    record. *See, e.g.,* Dkt. No. 473, Orrick Opp. at 23 (stating that motion to disqualify was "a baldface

10   litigation tactic"); Dkt. No. 467, Motion to Disqualify at 23-24 (listing "facts" suggesting that

11   Attorney Chatterjee stole information from Orrick's client files for Chakrabarti). These

12   overstatements were not helpful in resolving this motion.  Hopefully, the parties can avoid extreme

13   rhetoric in going forward with this case.

## I.  BACKGROUND

### A.  Current Litigation

16          In the current lawsuit, Farhang accuses defendants of taking her intellectual property and

17   breaching a joint venture agreement. Plaintiff alleges that she initiated discussion with defendants in

18   May of 2003 concerning a joint business venture and they then unsuccessfully negotiated over a

19   three-year period during which time defendants developed her invention. Plaintiff further claims

20   that defendants then stopped communicating with her and terminated their relationship. She now

21   sues on theories of breach of contract and fraud, among others.

### B.  Attorney Telfer's Prior Representation of Plaintiff

23          In July of 2000, Farhang retained Orrick in connection with her negotiations over an

24   employment agreement with the company Ikonodyne. Dkt. No. 30, Telfer Decl. ¶ 3; Dkt. No. 34-1

25   (Engagement Letter).  Attorney Jim Telfer ("Attorney Telfer") was the primary Orrick attorney who

26   rendered services to Farhang.  He signed an engagement letter on July 27, 2000 which defined the

27   scope of representation as providing assistance "in connection with your negotiations concerning

28   your employment agreement."  Dkt. No. 34-1.  The parties do not appear to dispute that the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   employment agreement to be negotiated would define the rights of Farhang and lkonodyne with

2   respect to intellectual property originally invented by Brian Kenville of Ikonodyne and one of his

3   former colleagues and in collaboration with plaintiff.

4          The negotiations were not successful and Telfer's representation ended in January 2001.

5   Farhang then initiated litigation against Ikonodyne's founders using different counsel.  Orrick was

6   not involved in that litigation. The lawsuit settled in May 2003.  Farhang acquired ownership rights

7   in the intellectual property through the May 2003 settlement. Dkt. No. 31, Farhang Decl. ¶ 14.

8          Orrick's billing records for the period of time during which it represented Farhang reflect

9   only work on an employment agreement and show that she was billed for a total of 19.5 hours of

10  time: James Telfer- 19 hours; Greg Schick- 0.25 hours and Richard Rahm- 0.25 hours. Telfer and

11  Schick were in Orrick's Compensation and Benefits Group while Rahm was in the Employment

12  Law Group. None of the three was still with Orrick at the time Farhang instituted the current lawsuit

13  against IIT and Chakrabarti. Telfer left Orrick on January 14, 2008; Schick left June 8, 2007 and

14  Rahm departed September 23, 2003. Dkt. No. 34 (Kaufman Decl.) ¶¶ 6, 7.

15         **C.  Attorney Chatterjee's 2004 and 2006 Communications with Chakrabarti**

16         While Attorney Telfer was still employed at Orrick, Orrick Attorney Neel Chatterjee

17  ("Attorney Chatterjee") had privileged communications with defendant Chakrabarti about plaintiff

18  Farhang and a "business proposal." *See* Dkt. No. 463-4 (Dec. 31, 2013 privilege log) (Priv. 251,

19  "email chain" between Attorney Chatterjee and defendant Chakrabarti "providing legal advice

20  regarding business proposal" on April 8, 2006; Priv. 252, 253, August 30, 2006 email regarding

21  same; Priv. 307-310, March 28, 2004 email "regarding potential legal assistance"); *see also* Dkt.

22  No. 458-11 (Aug. 17, 2013 privilege log) (disclosing March 28, 2004 and April 2004 emails

23  between Attorney Chatterjee and defendant Chakrabarti "regarding potential legal assistance"); *see*

24  *also* Dkt. No. 458-4 (Nov. 6, 2012 letter from Attorney Chatterjee to the court disclosing

25  "communications with [defendant Chakrabarti] in which he sought my legal advice regarding Ms.

26  Farhang."). The court refers to these communications as the "Chakrabarti-Chatterjee"

27  communications.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

### D.  Prior Motion to Disqualify

In May 2009, Farhang, at that point proceeding pro se, filed a Motion to Disqualify Orrick. Dkt. No. 29. The basis for her motion was that the current litigation between her and IIT and Chakrabarti is substantially related to the representation provided to her by Orrick, and, therefore, Orrick should be disqualified under California's imputed conflicts rule. *See* Cal. R. Prof. Conduct 3-310(E).

After reviewing the parties' submissions, the court focused on whether the conflicted attorneys, prior to leaving, shared Farhang's confidential information with other attorneys in the firm or whether other attorneys had any dealings with Farhang. Dkt. No. 86. To answer this question, the court held an evidentiary hearing on January 12, 2010. *See* Dkt. No. 100. The court heard from five witnesses and determined that "no current Orrick attorney has confidential information material to the current litigation" Dkt. No. 98 at 3. The court therefore denied the motion to disqualify. *Id.* Critical to the court's decision was the fact that Telfer, Schick, and Rahm had all left Orrick prior to the filing of Farhang's lawsuit against IIT and Chakrabarti.

### E.  Subsequent Litigation

Following denial of the motion to disqualify, litigation proceeded with Orrick as counsel for defendants. On November 6, 2012, Attorney Chatterjee sent a letter to the court indicating that he had communications with Chakrabarti about Farhang that were not revealed at the 2010 hearing. Dkt. No. 458-4 (Nov. 6, 2012 letter).

This letter "deeply concerned" the plaintiffs and counsel, who began "to investigate this matter further." Dkt. No. 468-2 (Singh Decl., Ex. 1A) (Nov. 27, 2012 letter). One year later, plaintiff's counsel subpoenaed Attorney Chatterjee, seeking his deposition to probe his relationship with Chakrabarti. Defendants moved to quash the subpoena. Dkt. No. 458.

The court held a hearing on the motion to quash, and expressed its concern that the pre-suit communications raised new issues regarding the earlier motion to disqualify. Dkt. No. 466 (Hearing Tr. at 3-4). Following the hearing, plaintiffs filed the instant Motion for Reconsideration of the prior Order Denying Disqualification. Dkt. No. 467. The court granted the motion to quash because

ORDER DENYING DISQUALIFICATION
Case No. C-08-02658-RMW
LRM
- 4 -

United States District Court
For the Northern District of California

1    deposing Attorney Chatterjee was not likely to lead to relevant, non-privileged information, but

2    authorized plaintiffs' filing of the Motion for Reconsideration. Dkt. No. 485.

3        After the hearing on the motion for reconsideration, Orrick submitted the Chakrabarti-

4    Chatterjee communications for *in camera* review by the court. Consistent with defendants' privilege

5    logs, the communications show that Attorney Chatterjee had provided Chakrabarti with confidential

6    legal advice while Attorney Telfer was still at Orrick. Contrary to plaintiffs' speculation, nothing in

7    the communications contains any suggestion that Attorney Chatterjee talked to Attorney Telfer or

8    accessed Attorney Telfer's files. The communications are consistent with Orrick's representations

9    throughout this lawsuit: Attorney Chatterjee and Chakrabarti know each other through family

10   connections, and Chakrabarti reached out to Attorney Chatterjee personally for legal assistance.

11   Attorney Chatterjee provided legal advice without first running a conflicts check through Orrick

12   because he was essentially giving advice on the spot to a family friend.

13       The court now reconsiders its prior Order Denying Disqualification.

14                        **II.  ANALYSIS**

15   **A.  Imputed Conflicts of Interest**

16       A motion to disqualify counsel implicates two competing issues: the current client's right to

17   the attorney of his or her choice versus the need to maintain ethical standards of professional

18   responsibility.  *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698 (2003).

19       Farhang moves to disqualify Orrick under California Rule of Professional Conduct 3-310(E).

20   Rule 3-310(E) prohibits an attorney from later agreeing to represent an adversary of the attorney's

21   former client unless the former client provides an "informed written consent" waiving the conflict.

22   If the attorney fails to obtain such consent and undertakes to represent the adversary, the former

23   client may disqualify the attorney by showing a "substantial relationship" between the subjects of

24   the prior and the current representations. *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994).

25       Here, the undisputed facts show that Attorney Chatterjee had confidential attorney-client

26   communications with Chakrabarti while Attorney Telfer was still at Orrick. Therefore, under

27   California's imputed conflicts rule, Orrick must be disqualified if there is a substantial relationship

28   between the two representations. There is no need to inquire as to whether any Orrick attorney

ORDER DENYING DISQUALIFICATION
Case No. C-08-02658-RMW
LRM
                              - 5 -

United States District Court
For the Northern District of California

1    actually received confidential information, which was a key question on the prior Motion to

2    Disqualify. *See* Dkt. Nos. 86, 98 (applying imputed conflicts rule for departed law firm attorneys).

3    However, as part of reconsidering the prior Order Denying Disqualification, the court takes a second

4    look at whether such a substantial relationship exists. *See also* Dkt. No. 473 (Orrick Opp.) at 20

5    (requesting that the court reconsider its prior finding of a substantial relationship).

### B.  Reconsideration of the Issue of Whether there is a Substantial Relationship Between the Telfer Representation and the Current Representation

To determine whether there is a substantial relationship between successive representations,

> the courts focus less on the meaning of the words substantial and
> relationship and look instead at the practical consequences of the
> attorney's representation of the former client. The courts ask whether
> confidential information material to the current dispute would normally
> have been imparted to the attorney by virtue of the nature of the former
> representation.

*H. F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1454 (1991).  *Jessen*

elaborated on the *Ahmanson* test, and concluded that

> successive representations will be "substantially related" when the
> evidence . . . supports a rational conclusion that information material to
> the evaluation, prosecution, settlement, or accomplishment of the former
> representation given its factual issues is also material to the evaluation,
> prosecution, settlement, or accomplishment of the current representation
> given its factual and legal issues.

*Jessen*, 111 Cal. App. 4th. at 713.

As mentioned above, the Telfer representation involved negotiation of an employment

agreement between Farhang and Ikonodyne. Some of the issues addressed included Farhang's role

within Ikonodyne, compensation for her services, and formation of a new company which would

hold a license to certain rights in Ikonodyne's technology. Dkt. No. 473-5 (Employment

Agreement) (filed under seal); Dkt. No. 31 (Farhang Decl.) ¶ 5. However, this agreement was never

signed, and Farhang actually acquired her interest in the intellectual property in her later litigation

settlement with Ikonodyne. Farhang Decl. ¶ 14 ("In 2003, I acquired rights to the Invention as part

of a confidential agreement that I entered into with Mr. Kenville and Ikonodyne . . . . This

foundation enabled me to immediately embark upon my plans to develop and market the

Invention . . . .").

ORDER DENYING DISQUALIFICATION
Case No. C-08-02658-RMW
LRM

- 6 -

1    Plaintiffs allege that Orrick's involvement with the intellectual property creates the

2   substantial relationship. Farhang alleges that Orrick learned of her "long term goals as they

3   pertained to the Invention," "what rights [she] preferred to own regarding the Invention," and "what

4   role [she] intended to play in furthering the work of the Invention." *Id.* ¶¶ 3, 5.

5    Farhang's client file suggests that the only legal service Orrick provided to Farhang was to

6   attempt to negotiate an employment agreement with Ikonodyne or Kenville or otherwise splitting

7   the Invention between Farhang and Ikonodyne.  Orrick did not prosecute any patents on the

8   intellectual property.  It does not appear that Orrick provided any advice tailored to the intellectual

9   property beyond what was included in the draft employment agreement.  Farhang had intellectual

10   property counsel from the Fenwick firm accompany her at the settlement discussions with

11   Ikonodyne.  In fact, Farhang testified that no one gave her advice concerning the intellectual

12   property during the ligation with Ikonodyne and Kenville:

13      The Court: Who did your I.P – who did you consult with for I.P. matters
        when Orrick no longer represented you?

14
        Ms. Farhang: As part of my settlement with Mr. Kenville, I actually had
15      the Fenwick firm come with me.

16      The Court: All right. But who – as I understand it, you were concerned
        about your I.P. rights when you were negotiating the settlement with Mr.
17      Kenville.

18      Ms. Farhang: Right.

        The Court: That wasn't resolved until months after Orrick was no longer
19      representing you; correct?

20      Ms. Farhang: Correct.

21      The Court: Who gave you advice concerning I.P. during the time between
        when Orrick stopped representing you and the time that you settled with
22      Kenville?

23      Ms. Farhang: No one gave me advice. The litigation counsel may have
        used someone, but because it was not at the point yet in the case where the
24      I.P. was being examined, there were no experts or anything, and then I
        ended up getting all the rights, so there was no negotiations at that point
25      about how to split the I.P. because I – it was sort of clear that I was going
        to get everything. So – which I did end up getting.
26
        The Court:  So that was different than the situation when you were with
27      Mr. Telfer?

28      Ms. Farhang: Well, Mr. – yes. At the point when I was with Mr. Telfer,
        there were – we were trying to settle the matter by splitting up the

ORDER DENYING DISQUALIFICATION
Case No. C-08-02658-RMW
LRM                                      - 7 -

United States District Court
For the Northern District of California

intellectual property into different groups so that I could go my own way
with part of it and Mr. Kenville could go his way with part of it. But as we
entered the litigation it became clear that Mr. Kenville's case was so weak
and really his liability was so large that I actually ended up getting all of
the I.P. rights and there was no need to split them up. So all – I got all the
parts, if you will.

Dkt. No. 400 (Farhang test.) at 132:25-134:17

The issues raised in the current litigation relate to Farhang's attempt to develop intellectual

property she secured through a different agreement from the employment agreement that Attorney

Telfer tried to negotiate for her. Farhang's original complaint did not mention Ikonodyne, Mr.

Kenville, or Farhang's prior employment.[1] Instead, the facts giving rise to the complaint all

occurred after her separation from Ikonodyne and after the Telfer representation. Dkt. No. 147,

Third Amended Complaint at ¶¶ 22, 86. The knowledge that Orrick had acquired about Farhang and

the intellectual property became close to irrelevant after the Ikonodyne settlement.

Farhang also alleges that Orrick has acquired "playbook" knowledge of her litigation and

settlement strategies. In some cases, "playbook" knowledge is enough to require disqualification.

*See, e.g. Global Van Lines v. Superior Court*, 144 Cal. App. 3d 483, 488-89 (1983). This is not such

a case. Farhang was billed for less than 20 hours legal work performed in a non-litigation setting. It

is difficult to believe that Orrick acquired an in-depth understanding of Farhang's litigation

philosophy or "substantial knowledge of [her] policies, attitudes, and practices." *Id.*

In addition, a significant amount of time passed between the Telfer representation and the

Chakrabarti-Chatterjee communications. During that time, Farhang had entered into a litigation

settlement with Ikonodyne in which Orrick played no role or even had knowledge.  The Telfer

representation related to events involving Farhang and the intellectual property that are two steps

removed from the current dispute. Based on the court's more critical analysis of the legal services

Orrick rendered to Farhang, the court reconsiders its previous finding of a substantial relationship

and now finds that there is not a substantial relationship between Orrick's current representation of

IIT and Chakrabarti and Orrick's past representation of Farhang. The court finds that it is highly

---

[1] The current complaint, the Third Amended Complaint contains two references to Ikonodyne. The
first states that plaintiff maintained confidentiality of the IP owned by Ikonodyne while working
there. Dkt. No. 147 at 21:7-11. The second alleges that Farhang showed Chakrabarti an "Ikonodyne
Business Plan." *Id.* at 41:14.

ORDER DENYING DISQUALIFICATION
Case No. C-08-02658-RMW
LRM

- 8 -

United States District Court
For the Northern District of California

1    unlikely that confidential information material to the current dispute would have been imparted to

2    Attorney Telfer by virtue of the nature of his representation of Farhang. Therefore, in light of the

3    court's reconsideration of the relationship between the Orrick firm and Farhang, it continues to deny

4    disqualification.  As an added assurance that Orrick respects the confidentiality of its past

5    communications with Farhang, it must continue to wall-off Farhang's client file and its ethics

6    counsel from all other Orrick attorneys.[2] *See* Dkt. No. 473-1 (Alderman Decl.) ¶ 8.

7                                    **III.  ORDER**

8        For the reasons explained above, the court denies the motion to disqualify.

9

10

11   Dated: April 4, 2014

12                                    Ronald M. Whyte
                                      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   _____
     [2] The court therefore denies the motion for a finding of implied limited waiver of privilege. Dkt. No.
     472.
     ORDER DENYING DISQUALIFICATION
     Case No. C-08-02658-RMW          - 9 -
     LRM

*United States District Court*
*For the Northern District of California*