UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.A. MOBILE LTD., <br><br> Plaintiff, <br><br> v. <br><br> INDIAN INSTITUTE OF TECHNOLOGY KHARAGPUR, et al., <br><br> Defendants. | Case No. 3:08-cv-02658-WHO <br><br> **ORDER ON MOTION FOR ATTORNEY FEES AND MOTION TO WITHDRAW AS COUNSEL** <br><br> Re: Dkt. Nos. 658, 659, 667, 678, 683 |

This long and complex litigation, and longer and more complex course of dealings between the parties, ended when I granted summary judgment in favor of defendant Indian Institute of Technology, Kharagpur ("IIT") and against plaintiff M.A. Mobile Ltd. on September 5, 2019. Now before me are two more disputes. First, IIT moves for attorney fees, arguing that M.A. Mobile pursued its claim for misappropriation of trade secrets in bad faith. I disagree and will deny that motion. Second, M.A. Mobile attorney Sanjiv Singh moves to withdraw as counsel, while M.A. Mobile opposes that motion and asserts that Singh is obligated to represent it on appeal. For the reasons set forth below, I disagree that Singh is obligated to continue representing M.A.Mobile given the breakdown in their relationship, not to mention the limitation of his engagement agreement to litigation in the district case. Singh's motion to withdraw from this closed case is granted.

**BACKGROUND**

I will not repeat the lengthy factual history of this case, which I explained in detail in my September 5, 2019 Summary Judgment Order. *See* Order Granting Motion for Summary Judgment [Dkt. No. 655] 1-19. Relevant here, on September 19, 2019, IIT moved for attorney fees under California's Uniform Trade Secrets Act ("CUTSA") and my inherent authority.

Motion for Attorney Fees ("Fee Mot.") [Dkt. No. 658-4].  After opposing that motion, on October 4, 2019, Singh moved to withdraw as counsel for M.A. Mobile.[1]  Motion to Withdraw ("Withdrawal Mot.") [Dkt. No. 667].  He asserts that withdrawal is appropriate for several reasons, among them a breakdown in communication with M.A. Mobile's sole owner Mandana Farhang.

On November 1, 2019, M.A. Mobile filed a motion for an extension of time in which to oppose through specially appearing counsel William Balin, which I granted.  Dkt. Nos. 675, 676.  Singh then filed an administrative motion requesting permission to oppose the motion I had already granted, arguing that it included "scandalous and false" information and noting that he intended to file a Rule 11 motion for sanctions if Balin refused to withdraw certain accusations.  Dkt. No. 678.  In its opposition to the motion to withdraw, M.A. Mobile recharacterized the dispute as one over whether Singh is obligated to represent it on appeal.  M.A. Mobile Opposition to Motion to Withdraw ("M.A. Mobile Oppo.") [Dkt. No. 680].

**DISCUSSION**

**I.   MOTION FOR ATTORNEY FEES**

IIT asks that I award it attorney fees for part of its defense of this case under California's Uniform Trade Secrets Act ("CUTSA") and my inherent authority.  "[A] district court may levy sanctions pursuant to its inherent power . . . when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (internal quotation marks omitted).  Under CUTSA, courts have authority to award reasonable attorney's fees and costs to the prevailing party in the event that a claim of misappropriation is made in bad faith.  Cal. Civ. Code § 3426.4.  "California courts have held that bad faith 'requires objective speciousness of the plaintiff's claim, as opposed to frivolousness, and its subjective bad faith in bringing or maintaining the claim.'"  *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016) (quoting *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 116 (2002)); *see also Gabriel Techs. Corp. v.*

---

[1] M.A. Mobile terminated Micah Jacobs, who previously served as Singh's co-counsel.  Dkt. No. 682.

2

*Qualcomm Inc.*, 560 F. App'x 966, 973-74 (Fed. Cir. 2014) (agreeing with the district court that there was objective speciousness and subjective bad faith where plaintiffs failed to articulate their trade secrets after seven attempts and where it was clear the claims were time-barred). Trial courts have broad discretion in ruling on fees motions. *See Gemini*, 95 Cal. App. 4th at 1262; *Integral Dev. Corp. v. Tolat*, No. 12-cv-06575 JSW, 2015 WL 674425, at *10 (N.D. Cal. Feb. 12, 2015).

M.A. Mobile's trade secret misappropriation claims were not objectively specious, nor is there evidence to support a finding of subjective bad faith. The facts that IIT relies on in support of its motion show weaknesses in M.A. Mobile's case, but those weaknesses do not establish speciousness. Neither does my summary judgment ruling. In addition, M.A. Mobile's decision to pursue its claims despite IIT pointing out contradictory evidence does not establish subjective bad faith. The motion for attorney fees is DENIED.

At the end of its opposition, M.A. Mobile objects to IIT's bill of costs, asserting that it lacks detail, and asks that I stay the imposition of costs during the pendency of the appeal. When considering whether to stay an award of attorney fees and costs pending appeal, courts apply the factors set forth in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). *See League For Coastal Prot. v. Kempthorne*, No. 05-cv-0991-CW, 2007 WL 1982778, at *3 (N.D. Cal. July 2, 2007). Those factors include:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Braunskill*, 481 U.S. at 776. M.A. Mobile provides no reasons why these factors support a stay, and I see none. Parties are frequently responsible for costs imposed in the district court case even when an appeal is pending. *See Kempthorne*, 2007 WL 1982778, at *3 (rejecting defendants' "speculation" regarding inability to recover fees and costs paid in the event of success on appeal). I decline to stay payment of any costs to which IIT is entitled.

## II. MOTION TO WITHDRAW AS COUNSEL

Singh's motion to withdraw raises two central reasons why his representation cannot continue; his communication with Farhang has broken down, and M.A. Mobile has breached the

3

terms of his engagement. In his reply to IIT's response, Singh further asserts that he will likely be a material witness if not a plaintiff in a separate case that a third party is preparing against Farhang.[2] *See* Withdrawal Mot. 4; Singh Decl. ISO Reply to IIT ¶ 3; Singh Decl. ISO Reply to M.A. Mobile ¶ 18.

In response, M.A. Mobile argues that the question before me is different: "Whatever happened during the pendency of the case in District Court is now over; the only issue before the court now is whether counsel will represent his client on appeal." M.A. Mobile Oppo. 6. In response to the "Issues" referenced by Singh, M.A. Mobile disputes that Farhang failed to engage with Singh in order to resolve them or that other aspects of her conduct have made Singh's representation unreasonably difficult.[3] *Id.* at 6-11.

The parties have two disputes: one over continued representation before me and one over appellate representation. I address each one in turn.

### A. Representation in this Court

Counsel may withdraw from a case only after giving reasonable notice to the client and other parties and with a court order approving such withdrawal. Civ. L.R. 11-5(a). Courts may make withdrawal conditional if it is not accompanied by simultaneous appearance of substitute counsel. *Id.* at 11-5(b). In this regard, "the conduct of counsel is governed by the standards of professional conduct required of members of the State Bar of California, including the Rules of Professional Conduct of the State Bar of California." *Hill Design Grp. v. Wang*, No. 04-cv-521 JF (RS), 2006 U.S. Dist. LEXIS 93449, at *11 (N.D. Cal. Dec. 11, 2006). Under California Rule of Professional Conduct 1.16, counsel may withdraw from representation if, *inter alia,* the client "renders it unreasonably difficult for the lawyer to carry out the representation effectively" or "breaches a material term of an agreement with, or obligation to, the lawyer relating to the representation, and the lawyer has given the client a reasonable warning after the breach that the

---

[2] The third party is apparently a member of Singh's family who loaned M.A. Mobile money. *See* Singh Decl. ISO Reply Withdrawal ¶ 18. The parties dispute whether the loan is currently due. *See id.*; M.A. Mobile Oppo. 11.

[3] IIT takes no position on the motion but reserves its right to oppose withdrawal if circumstances show withdrawal would prejudice IIT. Dkt. No. 672.

4

lawyer will withdraw unless the client fulfills the agreement or performs the obligation."[4] Cal. R. Prof. Conduct 1.16(b)(4)-(5).

In order to balance the equities in deciding a motion to withdraw, courts analyze the following factors:
> (1) the reasons counsel seeks to withdraw; (2) the possible prejudice that withdrawal may cause to other litigants; (3) the harm that withdrawal might cause to the administration of justice; (4) and the extent to which withdrawal will delay resolution of the case.

*Deal v. Countrywide Home Loans*, No. 09-cv-01643 SBA, 2010 U.S. Dist. LEXIS 101701, at *8 (N.D. Cal. Sep. 15, 2010).

Singh moves to withdraw as counsel for M.A. Mobile in any further proceedings in this court, excluding the attorney fee motion resolved above. He asserts that withdrawal is appropriate under California Rule of Professional Conduct 1.16(b)(4) and (5).[5] The issues under each subsection are tied up in one another, so I address them together here. Singh asserts that Farhang has breached their agreement over a costs cap and that her failures to communicate—about this issue and others—have rendered his representation unreasonably difficult.

The Agreement provides that Singh would be responsible for advancing $70,000 in costs.[6] Agreement 8 § 3. On the previous page, the Agreement provides,
> Client acknowledges and understands and consents to the fact that SNS PLC and JLGSF shall also have the right to withdraw if the Total Cost Limit and Advanced Cost Funds have been exceeded (as defined in Section 3), though all Parties will meet and confer at least once two months before the Total Cost Limit is expected to be reached to discuss other reasonable options by which SNS PLC and JLGSF could continue their representation. Any such meeting and conferring, however, shall not obligate SNS PLC or JLGSF to continue to represent Clients or obligate Clients to continue to engage SNS PLC or JLGSF.

---

[4] "Reasonable" means "the conduct of a reasonably prudent and competent lawyer." Cal. R. Prof. Conduct 1.0.1(h).

[5] California Rule of Professional Conduct 1.16(b)(7)—"the inability to work with co-counsel indicates that the best interests of the client likely will be served by withdrawal"—does not apply here. While M.A. Mobile has retained Balin, difficulties stemming from his relationship with Singh would fall under the subsection (4) rather than subsection (7) because he is not Singh's co-counsel.

[6] Jacobs's former firm was also responsible for advancing $25,000. Agreement 8 § 3.

5

Agreement 7 § 2. There is no dispute that the costs in this case have exceeded the cap provided for in the Agreement, but there is substantial disagreement over the communication that occurred about that fact and over what Singh's continuing obligations are.

According to Singh, M.A. Mobile has breached the Agreement's provisions about costs. Withdrawal Mot. 9. He asserts that he "implored" Farhang to engage with him about the costs issue after notifying her in February 2019. Declaration of Sanjiv Singh ISO Reply ("Singh Reply Decl.") [Dkt. No. 685-2] ¶ 19. By May he provided notice that the costs had exceeded the cap but continued to pay pending and new invoices so that the case could progress. *Id.* He alleges that despite frequent communications from him on this issue, Farhang repeatedly refused to engage. *Id.* ¶¶ 20, 22-23. Farhang has made representation unreasonably difficult by failing to communicate regularly with him, instead running all communications through Balin.[7] Withdrawal Mot. 8.

The picture Farhang paints is substantially different. According to her, Singh first notified her that the costs in the case were approaching the limit on February 19, 2019. Farhang Decl. ¶ 6. On March 21, 2019—less than two months later—Singh informed her that the costs had exceeded the cap. *Id.* Farhang asserts that from May to June she offered to meet with counsel and made proposals about how to deal with the costs issue, but Singh "declined to meet and confer about costs and rejected [her] proposals." *Id.* He neither made proposals himself nor provided M.A. Mobile with a monthly accounting as required.[8] *Id.* ¶ 7. Based on these failures, Farhang "concluded that Mr. Singh was obligated to keep representing M.A. Mobile, even if the total costs incurred exceeded the Total Cost Limit." *Id.* ¶ 8.

Both the factors and the terms of the parties' Agreement support withdrawal. First, as for

---

[7] Singh asserts that Balin has sent "aggressive correspondence" and who fired Jacobs without informing Singh. *Id.* He also notes that Farhang's failures to communicate negatively impacted last-minute settlement talks in anticipation of the summary judgment hearing. *Id.*

[8] Later, when Farhang requested a spreadsheet of all costs, dates, and outstanding invoices, Singh sent only an incomplete spreadsheet. Farhang Decl. ¶ 9. Singh asserts that contrary to Farhang's declaration, they had agreed monthly cost statements were not "needed or appropriate," and Farhang never asked him to provide such a statement over the course of this ten-year case. *Id.* ¶ 21.

the reasons behind Singh's motion, I disagree with M.A. Mobile that the circumstances suggest a contrived or improper purpose. Instead, it seems clear that the relationship between Farhang and Singh has deteriorated over the course of many months; Farhang's offer to involve a different point of contact within M.A. Mobile would not do enough to ameliorate the difficulties apparent here because Farhang remains the 100% owner. Second, I see no prejudice to IIT given that judgment has been entered in its favor.[9] Third, withdrawal should not harm the administration of justice given that this case—the only one for which Singh took on representation—has been resolved. To the extent M.A. Mobile is successful on appeal, it has ample time to identify new counsel. Finally, there is clearly no delay to the resolution of the case because it has already been resolved.

The Agreement further supports the appropriateness of withdrawal. As I noted above, there is no dispute that the costs in this case have exceeded the agreed-to limit. Accordingly, the Agreement expressly provides that Singh can withdraw from representation. Even assuming Singh failed to appropriately address the costs in the spring and early summer and instead continued his representation, it is entirely unreasonable to conclude from these actions that he waived the issue of costs. This case was in the throes of summary judgment, and it is hard to imagine any court granting a motion to withdraw filed at that time.

For all of these reasons, withdrawal is warranted. The relationship between Singh and Farhang—who is the sole M.A. Mobile shareholder—has deteriorated beyond repair. **Singh's motion to withdraw is granted. Unless and until substitute counsel makes an appearance, filings in this case shall be served on Singh, and he shall forward them to M.A. Mobile.**

M.A. Mobile contends that Singh is obligated to represent it on appeal. For the reasons discussed above, Singh is not required to continue to represent M.A. Mobile under any circumstance. And that is particularly true regarding the question of whether he is obligated to do so on appeal, because as discussed below, Singh never agreed to do so.

---

[9] Singh apparently learned from IIT that its concern primarily relates to the potential for M.A. Mobile to flee the country to avoid paying costs. Singh Decl. ISO Reply to IIT ¶ 6. I agree with him that this concern is not a basis for keeping Singh in the case.

7

## B. Representation on Appeal

Singh's motion maintains that he never agreed to represent M.A. Mobile on appeal, while M.A. Mobile asserts that he is obligated to do so per the engagement agreement ("Agreement") between them.[10] *See* Agreement, Declaration of Mandana Farhang ISO Oppo. Withdrawal Mot., Ex. A [Dkt. No. 608-1]. The Agreement reads:

> The Attorneys will represent Client in connection with the matter entitled *M.A. Mobile Ltd. And Mandana D. Farhang v. Indian Institute of Technology, et al.* (Case No CV-08-02658 RMW HRL) (the "Case"). The attorneys do not represent Client in connection with any matters pending before the High Court of Kolkata or any other case not expressly named in this Agreement. Further terms and the scope of Engagement for the Attorneys shall be set forth below under Section 2 entitled "Additional Engagement Matters."

*Id.* § 1. M.A. Mobile argues that the absence of "appeal" from the list of exceptions means that it is included, while Singh counters that the Agreement is expressly limited to the district court case. *See* M.A. Mobile Oppo. 5; Reply Withdrawal 3.

I agree with Singh. The plain language of the Agreement does not extend his representation to an appeal. The district court case number is expressly listed; the Ninth Circuit assigns different numbers to cases after an appeal has been filed. While the "in connection with" language is broad, the Agreement provides that Singh does not represent M.A. Mobile in "any other case not expressly named." The course of Singh and M.A. Mobile's conduct in this case further supports the conclusion that the Agreement does not obligate Singh to represent M.A. Mobile on appeal. Twice M.A. Mobile appealed interlocutory orders, and each time separate appellate counsel was retained. M.A. Mobile also retained separate counsel for the petition for writ of certiorari to the Supreme Court. Although M.A. Mobile argues that Singh participated in these efforts, his past history of aiding appellate counsel—who represented M.A. Mobile under distinct agreements—does not establish that he has a continuing obligation to represent M.A. Mobile now.

M.A. Mobile raises several arguments to show that the Agreement obligates Singh to

---

[10] M.A. Mobile also waives privilege "only for the engagement agreement between itself and counsel, and only for the purposes of this motion." M.A. Mobile Oppo. 4.

8

1  represent it on appeal. First, it notes that the contingency fee increases to 50% of recovery in the

2  event of an appeal. M.A. Mobile Oppo. 5. Singh counters that this increase did not increase his

3  share but instead increased the overall share of the fee to account for the need to hire appellate

4  counsel. Reply Withdrawal 3. Both of these interpretations are plausible; M.A. Mobile's is not

5  sufficient to overcome the express language of the Agreement. Second, M.A. Mobile notes that

6  the Agreement expressly omits Jacobs from any obligation to represent M.A. Mobile on appeal.

7  M.A. Mobile Oppo. 5; *see* Agreement 16 § (c)(i) ("JLGSF makes no promises to represent Client

8  on appeal after judgment and Client makes no commitment to use JLGSF on appeal."). Singh

9  counters that Jacobs negotiated this clause because "his overall compensation was much lower,"

10 so he "wanted the ability to negotiate a completely separate base of compensation for appellate

11 work if his services were requested and required." Reply Withdrawal 3. According to my reading

12 of the Agreement, neither Singh nor Jacobs was obligated to work on an appeal; this additional

13 language apparently reinforced that notion for Jacobs.

14     M.A. Mobile further argues that "withdrawal" on appeal would "harm the administration

15 of justice by forcing a party that cannot represent itself to go unrepresented." M.A. Mobile Oppo.

16 14. But Singh was never bound to represent M.A. Mobile on appeal. And given the breakdown in

17 the relationship between lawyer and client, California Rule of Professional Conduct 1.16

18 precludes M.A. Mobile from forcing Singh to remain as its counsel. Finally, M.A. Mobile cites

19 the expected cost of an appeal, noting that one group of appellate attorneys estimated that it would

20 cost between $150,000 and $250,000. M.A. Mobile Oppo. 13; Farhang Decl. ¶ 19. This fact does

21 not change my reading of the Agreement or Rules of Professional Conduct.

22 **III. MOTION TO SEAL**

23     IIT filed a motion to seal associated with its attorney fee motion, and M.A. Mobile filed a

24 motion to seal associated with its opposition to Singh's motion to withdraw. Where a motion is

25 "not related, or only tangentially related, to the merits of a case," accompanying motions to seal

26 are subject to the "good cause" standard. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d

27 1092, 1098, 1099 (9th Cir. 2016). The issues raised in both the attorney fee motion and the

28 withdrawal motion are "only tangentially related" to the merits of the case; accordingly, I will

9

1 apply the good cause standard. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3067783, at *2 (N.D. Cal. Mar. 16, 2018) (applying the good cause standard to a motion for fees and sealing "rates for individual attorneys and information that could be used to derive an individual attorney's rate").

IIT moves to seal the hourly rates of its attorneys and staff along with the time billed for this case, which could be used to determine those rates. Dkt. No. 658. It asserts that public disclosure of the rates could harm its ability to negotiate with clients in the future. Declaration of Brendan Radke [Dkt. No. 658-1] ¶ 2. The request is narrowly tailored because it does not extend to the total amount requested. *See In re Anthem*, 2018 WL 3067783, at *2. The motion is GRANTED.

M.A. Mobile moves to seal portions of Farhang's declaration in opposition to the motion to withdraw along with the entire Fee Agreement between M.A. Mobile and Singh. It asserts that the Agreement is confidential and includes references to M.A. Mobile's and Farhang's finances, which could be used against them in the future. As for the declaration, M.A. Mobile did not in fact redact the version that it publicly filed in the docket; accordingly, that information has been available since November 12, 2019, and it will remain available. As for the Agreement, M.A. Mobile's request is not narrowly tailored as required by Civil Local Rule 79-5(b). It is conceivable that revealing the details of the Agreement's financial structure could harm M.A. Mobile, but I will only allow sealing of narrowly tailored redactions, not a 20-page document. M.A. Mobile may submit such redactions for my review within 21 days; if it fails to do so, the Clerk will unseal the Agreement. M.A. Mobile should note that I will not seal any of the information cited in this Order or in the publicly filed Farhang declaration.

**CONCLUSION**

IIT's motion for attorney fees is DENIED. Singh's motion to withdraw as counsel for M.A. Mobile is GRANTED, although he shall continue to forward filings to M.A. Mobile until replacement counsel appears. The motions to seal are resolved as set forth above.

**IT IS SO ORDERED.**

Dated: December 4, 2019

William H. Orrick
United States District Judge